SHEARMAN & STERLING LLP
Fredric Sosnick
Randall Martin
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000

*Attorneys for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------- x | | |
| **In re:** | : | **Chapter 15** |
| | : | |
| **LUPATECH S.A.,** *et al.,*[1] | : | **Case No. 16-[●] (__)** |
| | : | |
| | : | **(Joint Administration Pending)** |
| **Debtors in a Foreign Proceeding.** | : | |
| | : | |
| ------------------------------------------------------------- x | | |

**FOREIGN REPRESENTATIVE'S MOTION FOR ORDER GRANTING**
**<u>FINAL RELIEF IN AID OF A FOREIGN PROCEEDING</u>**

---

[1]    The last four digits of the Taxpayer Registration Number or Tax ID, as applicable, of each of the Debtors follow in parentheses:  (a) Lupatech S.A. (01-12); (b) Lupatech – Equipamentos e Serviços para Petróleo Ltda. (01-04); (c) Mipel Indústria e Comércio de Válvulas Ltda. (01-00); and (d) Lupatech Finance Limited (none).  The Debtors' collective executive headquarters is located at Rua Alcides Lourenço da Rocha, 167 8o andar, Conjunto 81, São Paulo, Brazil.

## <u>TABLE OF CONTENTS</u>

Page

Introduction.................................................................................................................1

Jurisdiction and Venue................................................................................................2

Background..................................................................................................................2

Relief Requested .........................................................................................................3

Basis for Relief ...........................................................................................................5

    A.  The Foreign Proceeding Is Entitled to Recognition as a Foreign Main Proceeding............5

        1.  The Court Has Jurisdiction to Recognize the Foreign Proceeding and Grant the Relief Requested and Venue Is Proper in this District .................................................5

        2.  These Cases Are Proper Under Chapter 15 .................................................................6

            a.  The Foreign Proceeding Is a "Foreign Proceeding" Under the Bankruptcy Code ..7

            b.  Ricardo Doebeli Is a Proper "Foreign Representative" ...........................................7

            c.  The Foreign Representative Properly Filed these Cases...........................................8

            d.  The Chapter 15 Petitions Are Consistent with the Purpose of Chapter 15 .............8

        3.  The Foreign Proceeding Is a "Foreign Main Proceeding" Under Sections 1502(4) and 1517(b)(1) of the Bankruptcy Code...............................................................................9

    B.  The Court Should Recognize and Enforce the Lupatech Brazilian Plan and the Homologation Order in the United States...........................................................................12

        1.  The Brazilian Insolvency Law Is Substantially Similar to Applicable United States Law  .............................................................................................................................12

        2.  The Lupatech Brazilian Plan Provides for Fair Distribution to the Debtors' Creditors in Accordance with Brazilian Law .............................................................................14

        3.  The Homologation Order Approved the Lupatech Brazilian Plan .............................18

        4.  Relief Pursuant to Section 1507, 1521, and 105 Is Warranted and Appropriate .........19

        5.  The Requested Relief Fulfills the Mandates of Sections 1525 and 1527 of the Bankruptcy Code .....................................................................................................20

i

    C.   Recognizing the Foreign Proceeding as a Foreign Main Proceeding and Granting the Other Relief Requested Herein Is Consistent with the Purpose of Chapter 15 and United States Public Policy ......................................................................................................... 21

Notice ............................................................................................................................................ 24

No Prior Request ........................................................................................................................... 25

Conclusion .................................................................................................................................... 26

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page**

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ...............8, 9, 10

*In re Berau Capital Resources Pte Ltd*, Bk. No. 15-11804-MG, 2015 WL
6507871 (Bankr. S.D.N.Y. Oct. 28, 2015) ................................................................5

*Centrais Elétricas Do Pará S.A.,* No. 12-14568 (Bankr. S.D.N.Y. Nov. 9, 2012)...................7, 20

*Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255 (S.D.N.Y. 1979),
*aff'd,* 614 F.2d 1286 (2d Cir 1979) ......................................................................21

*In re Enco Zolcsak Equipamentos Industriais Ltda.*, No. 11-22924
(Bankr. S.D. Fla. July 12, 2011) .........................................................................7

*In re Fairfield Sentry Ltd.*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010), *aff'd,* 714 F.3d
127 (2d Cir. 2013).............................................................................................11

*In re Independência S.A.*, Case No. 09-10903 (Bankr. S.D.N.Y. Mar. 26, 2009)..........................7

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) .............................................22

*In re ITSA Intercontinental Telecomunicações Ltda.*, No. 08-13927 (Bankr.
S.D.N.Y. Jan. 29, 2009).....................................................................................7

*In re Lupatech S.A., et al.*, Case No. 14-11559 (SMB) (Bankr. S.D.N.Y. May 28,
2014) ...........................................................................................................7, 20

*In re OAS S.A.*, 533 B.R. 83 (Bankr. S.D.N.Y. 2015) .................................................21

*In re Rede Energia S.A.*, 515 B.R. 69 (Bankr. S.D.N.Y. 2014)......................................21

*In re SPhinX, Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10
(S.D.N.Y. 2007)................................................................................................10

*In re Transbrasil S.A. Linhas Aéreas*, Case No. 11-19484 (Bankr. S.D. Fla.
May 11, 2011)...................................................................................................7

*In re Tri-Cont'l Exch. Ltd.*, 349 B.R. 627 (Bankr. E.D. Cal. 2006) ...............................11

*In re Varig Logística S.A.*, Case No. 09-15717 (Bankr. S.D. Fla. May 11, 2009) .........................7

**Statutes**

11 U.S.C. § 101(23) .............................................................................................7

11 U.S.C. § 101(24) ...........................................................................7, 8, 12

11 U.S.C. § 105 ...................................................................1, 2, 4, 12, 19, 20

11 U.S.C. § 109(a) ...........................................................................................5

11 U.S.C. § 362 ..........................................................................................1, 2

11 U.S.C. § 1501 .......................................................................................5, 23

11 U.S.C. § 1501(a)(3) ................................................................................8, 9

11 U.S.C. § 1501(b)(1) ....................................................................................6

11 U.S.C. § 1502(4) ....................................................................................9, 12

11 U.S.C. § 1504 .....................................................................................1, 2, 8

11 U.S.C. § 1506 ...........................................................................................21

11 U.S.C. § 1507 ....................................................................1, 2, 4, 12, 19

11 U.S.C. § 1507(a) ..................................................................................19, 20

11 U.S.C. § 1507(b) .......................................................................................20

11 U.S.C. § 1509 ..........................................................................................1, 2

11 U.S.C. § 1509(a) .........................................................................................8

11 U.S.C. § 1515 .....................................................................................2, 8, 12

11 U.S.C. § 1515(a) .........................................................................................8

11 U.S.C. § 1515(b) .........................................................................................8

11 U.S.C. § 1515(c) .........................................................................................8

11 U.S.C. § 1516(c) ....................................................................................9, 11

11 U.S.C. § 1517 ................................................................................1, 2, 3, 12

11 U.S.C. § 1517(a) .......................................................................................12

11 U.S.C. § 1517(b)(1) ...............................................................................9, 12

11 U.S.C. § 1519(a) .........................................................................................3

11 U.S.C. § 1519(e) .........................................................................................4

11 U.S.C. § 1520 ................................................................................................................1, 2

11 U.S.C. § 1521 .............................................................................................1, 2, 4, 12, 19, 20

11 U.S.C. § 1521(a) ...........................................................................................................19, 20

11 U.S.C. § 1525 .............................................................................................1, 2, 4, 12, 20

11 U.S.C. § 1525(a) .................................................................................................................20

11 U.S.C. § 1527 .............................................................................................1, 2, 4, 12, 20

28 U.S.C. § 157 ......................................................................................................................2, 5

28 U.S.C. § 157(b)(2)(P) ..........................................................................................................5

28 U.S.C. § 1334 ...................................................................................................................2, 5

28 U.S.C. § 1410 .......................................................................................................................2

28 U.S.C. § 1410(1) ..................................................................................................................6

28 U.S.C. § 1410(3) ..................................................................................................................6

## Introduction

1.     Ricardo Doebeli, or any lawful successor thereto, in his capacity as the
authorized foreign representative (the "**Foreign Representative**") for Lupatech S.A. and each of
the other above-captioned debtors (collectively, the "**Debtors**") in a proceeding (the "**Foreign
Proceeding**"), commenced in the Federative Republic of Brazil pursuant to Federal Law 11.101
of February 9, 2005 (the "**Brazilian Insolvency Law**") (pending before the First Chamber of
Bankruptcy, Judicial Recovery and Arbitration Disputes of the Comarca Forum of São Paulo (the
"**Foreign Court**")), respectfully submits this motion (this "**Motion**"), by and through his
undersigned counsel, pursuant to sections 362, 1504, 1507, 1509, 1517, 1520, 1521, 1525, 1527,
and 105 of title 11 of the United States Code, (as amended from time to time, the "**Bankruptcy
Code**"), for entry of an order, after notice and a hearing, in the form attached hereto as Exhibit A
(the "**Proposed Notice Order**"), (i) granting the verified petitions in these chapter 15 cases
("**Chapter 15 Petitions**") and recognizing the Foreign Proceeding as a foreign main proceeding
pursuant to section 1517 of the Bankruptcy Code, (ii) permanently enjoining all parties from
commencing or taking any action in the United States to obtain possession of, exercise control
over, or assert claims against the Debtors or their property, (iii) recognizing and enforcing the
Judicial Recovery Plan of Grupo Lupatech as it relates to the above-captioned Debtors (the
"**Lupatech Brazilian Plan**") (a copy of the Lupatech Brazilian Plan is attached to the Doebeli
Declaration (defined below) as Exhibit E) and the Foreign Court's order approving, or
homologating the Lupatech Brazilian Plan (the "**Homologation Order**") (a copy of the
Homologation Order is attached to the Doebeli Declaration (defined below) as Exhibit G))
within the territorial jurisdiction of the United States[1] and (iv) granting such other and further

---

[1]     A certified translation of the Lupatech Brazilian Plan and the Homologation Order from Portuguese to
English is appended to the Translation Certificate attached to the Doebeli Declaration.

1

relief as the Court deems just and proper.  In support of this Motion, the Foreign Representative

refers the Court to the statements contained in the (a) *Declaration of Ricardo Doebeli in Support*

*of (I) Verified Chapter 15 Petitions, (II) Foreign Representative's Motion for Proposed Order*

*Granting Relief in Aid of a Foreign Proceeding, and (III) Certain Related Relief*

(the "**Doebeli Declaration**"), which was filed concurrently herewith and is incorporated herein

by reference and (b) the *Declaration of Thomas Benes Felsberg in Support of Foreign*

*Representative's Motion for Order Granting Final Relief in Aid of the Foreign Proceeding* (the

"**Felsberg Declaration**"), which was filed contemporaneously herewith and is incorporated

herein by reference.  In further support of the relief requested herein, the Foreign Representative

respectfully represents as follows:

## Jurisdiction and Venue

2.       The Court has jurisdiction to consider this Motion pursuant to sections 157

and 1334 of title 28 of the United States Code, and the Amended Standing Order of Reference

from the United States District Court for the Southern District of New York dated as of

January 31, 2012.  These chapter 15 cases have been commenced properly pursuant to

section 1504 of the Bankruptcy Code by the filing of verified Chapter 15 Petitions for

recognition of the Foreign Proceeding pursuant to section 1515 of the Bankruptcy Code.  This is

a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code.  Venue

is proper in this District pursuant to section 1410 of title 28 of the United States Code.  The

statutory predicates for the relief requested herein are sections 362, 1504, 1507, 1509, 1517,

1520, 1521, 1525, 1527, and 105 of the Bankruptcy Code.

## Background

3.       Lupatech S.A. is the direct or indirect parent company of each of the other

Debtors and all of their non-Debtor affiliates.  Collectively, these companies form the Lupatech

2

Group, a provider of highly technical components and related specialized services to the oil and gas industries.

4.    On August 24, 2015, the Debtors filed the Lupatech Brazilian Plan with the Foreign Court to facilitate the restructuring of all claims against the Debtors, including the 3.00% Guaranteed Senior Amortizing Notes, initially issued on October 8, 2014 by Lupatech Finance Limited and guaranteed by each of the other Debtors (the "**3% Notes**").  On December 11, 2015, the Foreign Court entered its Order homologating, or approving, the Lupatech Brazilian Plan (the "**Homologation Order**").

5.    On the date hereof (the "**Chapter 15 Petition Date**"), the Foreign Representative commenced these chapter 15 cases by filing, among other things, the verified Chapter 15 Petitions, seeking recognition of the Foreign Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code.  Detailed information about the Debtors' business and operations, the events leading to the Chapter 15 Petition Date, and the facts and circumstances surrounding the Foreign Proceeding and these chapter 15 cases is set forth in the Doebeli Declaration.

## **Relief Requested**

6.    By this Motion, the Foreign Representative respectfully requests that the Court enter the Proposed Notice Order, after notice and a hearing, (i) granting the Chapter 15 Petitions in these chapter 15 cases and recognizing the Foreign Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, (ii) permanently enjoining all parties from commencing or taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtors or their property, (iii) recognizing and enforcing the Lupatech Brazilian Plan and the Homologation Order within the territorial jurisdiction of the United States and (iv) granting such other and further relief as the Court deems

3

just and proper.

       7.     In addition, the Foreign Representative seeks assistance from the Court, in the form of the Proposed Order, (a) authorizing and directing The Depository Trust Company (the "**DTC**"), the Bank of New York Mellon, as Indenture Trustee (the "**3% Notes Trustee**") under the Indenture governing the 3% Notes ("**3% Notes Indenture**"), and all brokers, nominees, noticing agents, and DTC participants that hold the securities in "street name" on behalf of the beneficial owners of the 3% Notes (collectively, the "**Noteholder Representatives**"; together with the DTC and the 3% Notes Trustee, the "**U.S. Intermediaries**")[2] to carry out any ministerial actions that are required of them under the Lupatech Brazilian Plan, or that are otherwise necessary and appropriate to consummate the terms of the Lupatech Brazilian Plan, and (b) granting certain protections to the U.S. Intermediaries in the performance of their obligations under the Lupatech Brazilian Plan, the Homologation Order, and the Proposed Order, all in accordance with sections 1507, 1521, 1525, 1527, and 105 of the Bankruptcy Code.  This relief is necessary because, for among other reasons, the U.S. Intermediaries may not be, or may not believe themselves to be, subject to the direct jurisdiction of the Foreign Court, and, therefore may be unable or unwilling to act in support of the Lupatech Brazilian Plan and the Homologation Order without authorization and direction from, and limited protection granted by, a United States Court in the form of entry of the Proposed Order.

---

[2]     The U.S. Intermediaries are notice parties in these cases, and will receive notice of this Motion.

## Basis for Relief

### A.  The Foreign Proceeding Is Entitled to Recognition as a Foreign Main Proceeding

#### 1.    The Court Has Jurisdiction to Recognize the Foreign Proceeding and Grant the Relief Requested and Venue Is Proper in this District

8.    The Court has jurisdiction to hear and determine cases commenced under the Bankruptcy Code and all core proceedings arising thereunder pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code, as well as the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated as of January 31, 2012.  A case under chapter 15 is a "case" under the Bankruptcy Code. Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code have expressly been designated as core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P).

9.    The Debtors maintain property in the United States for purposes of section 109(a) of the Bankruptcy Code,[3] and venue is proper in this District.  Lead Debtor Lupatech S.A., which is the parent company of each of the other Debtors, has no employees, operations, or real property in the United States.  Other than the holders of the 3% Notes (the "**3% Noteholders**"), it also has no known creditors in the United States whose rights are modified or impacted by the Lupatech Brazilian Plan.  As described in the Doebeli Declaration, each of the Debtors' only tangible asset in the United States is an interest in cash paid by each Debtor to Shearman & Sterling LLP as a retainer for its services in connection with these chapter 15 cases, which is held in a client trust account in New York, New York.  None of the Debtors are party to any pending litigation in the United States.

---

[3]    *See In re Berau Capital Resources Pte Ltd (In re Berau)*, Bk. No. 15-11804-MG, 2015 WL 6507871 (Bankr. S.D.N.Y. Oct. 28, 2015).

10.     The Debtors' only shared connection to the United States is that, collectively, they issued and guaranteed the 3% Notes pursuant to the 3% Notes Indenture, a New York law governed contract that contains a New York venue clause.  Therefore, each of the Debtors also has intangible property in the United States in the form of contractual rights that are located, for legal purposes, in New York.  *See In re Berau Capital Resources Pte Ltd (In re Berau)*, Bk. No. 15-11804-MG, 2015 WL 6507871 (Bankr. S.D.N.Y. Oct. 28, 2015).  Moreover, many of the 3% Noteholders are sophisticated financial institutions with offices in New York, New York.  The 3% Notes Trustee is a major financial institution with headquarters in New York, New York.  Because of the proximity of its United States creditors and United States counsel to the Court, the existence of the New York law governed 3% Notes Indenture, the limited scope of these chapter 15 cases, and the fact that the Debtors are not party to any litigation in any United States jurisdiction, the Foreign Representative believes that the interests of justice will be served by establishing venue in this District.  Accordingly, it is respectfully submitted that, venue in this District is consistent with the interests of justice and the convenience of the parties and is proper pursuant to 28 U.S.C. §§ 1410(1) and (3).

### 2.     These Cases Are Proper Under Chapter 15

11.     Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks the assistance of a United States court in connection with a foreign proceeding.  11 U.S.C. § 1501(b)(1).  The Debtors' cases are proper under chapter 15 because (a) they concern a "foreign proceeding," (b) they have been commenced by the Foreign Representative, a duly authorized "foreign representative," (c) the Chapter 15 Petitions and all required supporting documentation were properly filed, and (d) the relief sought by the Chapter 15 Petitions is consistent with the objectives of chapter 15.

### a. The Foreign Proceeding Is a "Foreign Proceeding" Under the Bankruptcy Code

12.     Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

13.     The Foreign Proceeding fits squarely within the Bankruptcy Code's definition of a "foreign proceeding" as it involves an insolvency action brought under the laws of Brazil.  Brazilian insolvency laws provide for controlled, court-supervised, and collective reorganization and capital restructuring procedures designed to enable financially distressed companies to avoid foreclosure or seizure of assets while maximizing going concern value for the benefit of all of their creditors and other parties in interest.  *See, e.g.*, *In re Lupatech S.A., et al.*, No. 14-11559 (SMB) (Bankr. S.D.N.Y. May 28, 2014); *Centrais Elétricas Do Pará S.A.*, No. 12-14568 (SCC) (Bankr. S.D.N.Y. Nov. 9, 2012)*; In re Independência S.A.*, No. 09-10903 (Bankr. S.D.N.Y. Mar. 26, 2009); *In re Varig Logística S.A.*, No. 09-15717 (Bankr. S.D. Fla. May 11, 2009); *In re ITSA Intercontinental Telecomunicações Ltda.*, No. 08-13927 (Bankr. S.D.N.Y. Jan. 29, 2009); *In re Enco Zolcsak Equipamentos Industriais Ltda.*, No. 11-22924 (Bankr. S.D. Fla. July 12, 2011); *In re Transbrasil S.A. Linhas Aéreas*, No. 11-19484 (Bankr. S.D. Fla. May 11, 2011).

### b. Ricardo Doebeli Is a Proper "Foreign Representative"

14.     Section 101(24) of the Bankruptcy Code provides that:

The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the

7

debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

15.     Ricardo Doebeli is an individual person and an officer of Lupatech S.A. On May 25, 2015, Board of Directors of Lupatech S.A., on behalf of itself and each of the other Debtors, unanimously resolved (the "**Authorizing Resolution**") to authorize the Foreign Proceeding and authorized Lupatech S.A. officers to take measures and actions required to give effect to the Foreign Proceeding.  A certified copy of the Authorizing Resolution is attached to the Doebeli Declaration as <u>Exhibit H</u>.

16.     Accordingly, Ricardo Doebeli is a "foreign representative" as defined in the Bankruptcy Code.

### c.   The Foreign Representative Properly Filed these Cases

17.     These chapter 15 cases were duly and properly commenced as required by sections 1504 and 1509(a) of the Bankruptcy Code by the filing of the Chapter 15 Petitions pursuant to section 1515(a) of the Bankruptcy Code, which were accompanied by all documents and information required by sections 1515(b) and (c).  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code"), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

### d.   The Chapter 15 Petitions Are Consistent with the Purpose of Chapter 15

18.     One of the stated objectives of chapter 15 is the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor."  11 U.S.C. § 1501(a)(3).  These chapter 15 cases have

been commenced for the purpose of obtaining the assistance of the Court in order to:  (i) ensure

the effective and economic administration and implementation of the Foreign Proceeding by,

among other things, restricting the Debtors' creditors from taking certain actions in the United

States that would undermine the unified, collective, and equitable resolution of the Debtors'

liabilities in the Foreign Proceeding; and (ii) facilitate enforcement of the Lupatech Brazilian

Plan in the United States.  As such, the Chapter 15 Petitions are consistent with the purpose of

chapter 15 and the cross-border coordination it promotes.

### 3.    The Foreign Proceeding Is a "Foreign Main Proceeding" Under Sections 1502(4) and 1517(b)(1) of the Bankruptcy Code

19.    The Foreign Representative respectfully submits that the Court should

grant recognition of the Foreign Proceeding as a "foreign main proceeding" as defined in

section 1502(4) of the Bankruptcy Code.  The Bankruptcy Code provides that a foreign

proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has the

center of its main interests.  11 U.S.C. § 1517(b)(1).  Absent evidence to the contrary, a debtor's

registered office is presumed to be the center of its main interests.  11 U.S.C. § 1516(c).  *See In*

*re Bear Stearns*, 374 B.R. at 127, 130.

20.    Each of the Debtors other than Debtor Lupatech Finance Limited

maintains its registered office in Brazil.  Therefore, the center of main interests for each Debtor

other than Debtor Lupatech Finance Limited is presumed to be in Brazil, pursuant to section

1516(c) of the Bankruptcy Code, absent evidence to the contrary.

21.    Debtor Lupatech Finance Limited is organized under the laws of, and

maintains its registered office in, the Cayman Islands.  However, as set forth in the Doebeli

Declaration, Lupatech Finance Limited maintains no other connection with the Cayman Islands,

and all of its management activities have been consolidated with those of Lupatech S.A., in Brazil.

22.    As described below, substantially all of the Debtors' corporate business is conducted from Brazil.  As such, Brazil is "ascertainable by third parties" as the Debtors' center of main interests.  *Id*. at 129.  While the location of the Debtors' registered offices is indicative, many other factors also weigh into the center of main interests analysis, including "the location of the debtor's headquarters; the location of those who actually manage the debtors (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes."  *Id*. at 128 (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007)).

23.    The center of main interests for each of the Debtors' enterprises is located in Brazil.  The Debtors are operationally and functionally centered in the states of São Paulo, Rio de Janeiro, Rio Grande do Sul and Bahia, Brazil, largely organized under centralized senior management in the state of São Paulo, Brazil, and subject to combined cash management and accounting functions, all of which are based in the state of São Paulo, Brazil.  Indeed, among other connections to their center of main interests:

(a)    all of the Debtors' operations are managed and directed from offices in the states of São Paulo, Rio de Janeiro, Rio Grande do Sul and Bahia, Brazil;

(b)    corporate governance for the Debtors is directed from the state of São Paulo, Brazil;

(c)    in-person meetings of the Debtors' Board of Directors are typically held in the state of São Paulo, Brazil;

(d)    all members of the Debtors' Board of Directors maintain their offices in the states of São Paulo and Rio de Janeiro, Brazil;

10

(e)   strategic and key operating decisions and key policy decisions for the Debtors are made by staff located in the states of São Paulo, Rio de Janeiro, and Rio Grande do Sul, Brazil;

(f)   the Debtors' corporate accounting, accounts payable, insurance procurement, accounts receivable, financial planning, internal auditing, marketing, treasury, real estate, research & development, and tax services are provided from the state of São Paulo, Brazil;

(g)   the Debtors' finance, legal, human resources, payroll, billing, freight management, procurement, and engineering services are carried out in the state of São Paulo, Brazil;

(h)   the Debtors' cash management functions are maintained and directed from the state of São Paulo, Brazil;

(i)   key information technology and systems used by the Debtors are provided from the state of São Paulo, Brazil;

(j)   management and senior staff of the Debtors regularly attend meetings in the states of São Paulo, Rio de Janeiro, and Rio Grande do Sul, Brazil;

(k)   the chief executive officer that oversees financial management of the Debtors (who is the Foreign Representative in these chapter 15 cases) is based in the state of São Paulo, Brazil;

(l)   all capital expenditure decisions affecting the Debtors are managed in the state of São Paulo, Brazil; and

(m)   the vast majority of the Debtors' creditors, both in number and amount, other than the 3% Noteholders, are located in Brazil.

24.   Pursuant to section 1516(c) of the Bankruptcy Code and based on the facts present in these chapter 15 cases, the Foreign Representative respectfully submits that Brazil should be found to be the center of the Debtors' main interests. *See In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) (noting that a debtor's center of main interests is the "place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties"); *see also In re Fairfield Sentry Ltd.*, 440 B.R. 60, 63 (Bankr. S.D.N.Y. 2010), *aff'd*, 714 F.3d (2d Cir. 2013).   Accordingly, given that the Foreign Proceeding is pending in the Debtors' center of main interests, it should be recognized as a

11

foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

25.     Pursuant to Section 1517 of the Bankruptcy Code, an order recognizing a foreign proceeding shall be entered if all of the requirements for recognition have been met.  11 U.S.C. § 1517.  As set forth above, the Foreign Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code, the Foreign Representative qualifies as a "foreign representative" under section 101(24) of the Bankruptcy Code, and the Chapter 15 Petitions meet the requirements of Bankruptcy Code section 1515.  Accordingly, based on the submissions contained herein and in the Doebeli Declaration, pursuant to section 1517(a) of the Bankruptcy Code, entry of an order granting recognition of the Foreign Proceeding as a foreign main proceeding is appropriate under the circumstances.

**B.  The Court Should Recognize and Enforce the Lupatech Brazilian Plan and the Homologation Order in the United States**

26.     As set forth in the Proposed Order, the Foreign Representative also seeks, upon recognition of the Foreign Proceeding as a foreign main proceeding, the Court's assistance in recognizing and enforcing the Lupatech Brazilian Plan and the Homologation Order in the United States pursuant to sections 1507, 1521, 1525, 1527 and 105 of the Bankruptcy Code.  For the reasons set forth below, recognition and enforcement of the Lupatech Brazilian Plan and the Homologation Order in the United States is critical to the Debtors' ability to consummate the Lupatech Brazilian Plan.

**1.     The Brazilian Insolvency Law Is Substantially Similar to Applicable United States Law**

27.     The Brazilian Insolvency Law provides a method for Brazilian companies to reorganize in a proceeding that is analogous to a chapter 11 proceeding in the United States. In a Judicial Reorganization Proceeding under the Brazilian Insolvency Law, a debtor may negotiate a judicial recovery plan (such as the Lupatech Brazilian Plan) with its creditors,

12

organize a vote on the final form of that plan, and then submit it to a Brazilian court for

confirmation. *Felsberg Decl.* at ¶ ¶ 13, 20, 35. In addition, the Brazilian Insolvency Law

provides many of the same creditor protections as the U.S. Bankruptcy Code, including

formation of a creditors' committee under certain circumstances,[4] ability to object to a debtor's

proposed plan,[5] the calling of a meeting of creditors under certain circumstances,[6] and protection

against unfair discrimination in the debtor's proposed plan.[7]"

28.    Pursuant to Article 163 of the Brazilian Insolvency Law, any claims

against a debtor (other than labor claims, tax claims and certain other claims that are not relevant

in these chapter 15 cases), whether matured or unmatured, that exist at the time that the plan is

approved by a Brazilian court may be compromised thereunder. A plan of reorganization must

address all statutory classes of claims against a debtor including labor claims, secured claims,

and unsecured claims. Each member of a class of claims affected by such a plan must receive

similar treatment under the plan.

29.    Under the requirements of the Brazilian Insolvency Law, a plan must be

approved with the affirmative vote of more than 50% of the voting members of the class of

labor-related claims (regardless of the value of the claims held) and the microenterprise and

small enterprise claims, and with respect to the secured and unsecured claimant classes, more

than fifty percent in both number and amount of the voting members of each class. Specifically,

(i) 99.87% of the labor-related creditors voted to approve the plan, (ii) 68.25% of the unsecured

creditors voted to approve the plan and (iii) 85.04% of the creditors of the Microenterprise and

---

[4]    *See* Felsberg Decl. at ¶ 16–17.

[5]    *See* Felsberg Decl. at ¶ 20.

[6]    *Id.*

[7]    *Id.*

Small Enterprise claims voted to approve the plan. *Felsberg Decl.* at ¶¶ 22, 45.

30.     According to Article 164 of the Brazilian Insolvency Law, upon the receipt of a petition for confirmation of a judicial reorganization plan, a court must order the publication of a notice in the Official Gazette of Brazil and in a newspaper with national circulation.  This notice must be reasonably calculated to inform all affected creditors of their right to challenge the proposed plan on various grounds within a statutory 30-day objection period. *Felsberg Decl.* at ¶ 30.

31.     After the expiration of the 30-day objection deadline, a debtor has five days to answer any timely filed opposition to the proposed plan.  Upon the expiration of this response period, the case record is closed and sent to the applicable judge to render a decision regarding the confirmation of the proposed plan.  In general, a court is required to approve a proposed judicial plan if it has been approved by the requisite majority of each class of affected creditors, notice of it was properly published and all other related administrative requirements were properly completed, and the court finds that it is not the result of (and will not result in) any fraudulent or otherwise harmful acts.  A Brazilian court's decision on confirmation is subject to potential appeal, but any appeals that are filed do not stay the proceeding or the effectiveness of approved judicial plan. *Felsberg Decl.* at ¶ 27–28.

**2.     The Lupatech Brazilian Plan Provides for Fair Distribution to the Debtors' Creditors in Accordance with Brazilian Law**

32.     As described in detail in the Doebeli Declaration,  the Lupatech Brazilian Plan provides for three primary classes of claims in accordance with the Brazilian Insolvency Law:  (a) Labor Claims, (b) Secured Claims, and (c) Unsecured Claims.[8]  As originally

---

[8]     In addition, so-called Microenterprise and Small Enterprise Claims are separately classified under the Lupatech Brazilian Plan.  Holders of allowed Microenterprise and Small Enterprise Claims are entitled to

proposed, holders of Unsecured Claims, including the 3% Noteholders, could elect one of four payment options under the Lupatech Brazilian Plan: "Option A," "Option B," "Option C" and "Option D." Ultimately, following the homologation of the Lupatech Brazilian Plan, the Lupatech Group concluded that the fourth option (Option D) was not feasible.[9] Option A (which is described in greater detail below) is the default option if no option was selected by a holder of an Unsecured Claim.[10]

      a. Option A: 3% Noteholders electing Option A (or deemed to elect Option A as the default option) will receive payment of 100% of the value of its 3% Notes in new notes ("**Type A Notes**") with 3% interest to be payable in installments as follows: (1) one initial installment in the fixed amount of R$500 to be paid to the 3% Notes Trustee on behalf of all 3% Noteholders exchanging into Type A Notes up to 12 months after approval of the Lupatech Brazilian Plan; (2) four annual installments in the fixed amount of Brazilian reais ("**R$**") R$1,000 to be paid to the 3% Notes Trustee on behalf of all 3% Noteholders exchanging into Type A Notes, with the first installment due 24 months after approval of the Lupatech Brazilian Plan; and (3) 72 successive quarterly installments, calculated based on the balance of claims under Option A as of the 60th month after approval of the Lupatech Brazilian Plan, according to the payment schedule attached to the Lupatech Brazilian Plan as Attachment 5.1.2 with the first installment due 63

---

payment in full of the principal amount of their claim over the course of a 40-quarter payment schedule commencing 63 months after the entry of the Homologation Order.

[9]      Option D provided 3% Noteholders with an option to convert 100% of the value of their 3% Notes into newly issued Shares, but appoint a third party nominated by the Lupatech Group to act as their proxy for purposes of the receipt and liquidation of such Shares.

[10]      Initially, Option D was designated as the default option.

months after the approval date of the Lupatech Brazilian Plan.  The Type A Notes
will be issued not more than 180 days after entry of an Order by the Court
enforcing the Lupatech Brazilian Plan in the United States, and will be issued in
R$ according to the PTAX800 exchange rate in effect on May 25, 2015, the date
that the Lupatech Group commenced the Foreign Proceeding (the "**Request
Date**"), and then converted back into United States dollars on the date of each
payment.  The Type A Notes are expected to be distributed and paid through the
DTC.

b.  Option B: 3% Noteholders electing Option B will receive payment of 100% of the
value of its 3% Notes in new notes ("**Type B Notes**" and collectively with the
Type A Notes, the "**New Notes**") with 3% interest to be payable in installments
(substantially similar to Option A) with a "liquidity clause."[11]  The installments
are as follows: (1) one initial installment in the fixed amount of R$500 to be paid
to the 3% Notes Trustee on behalf of all 3% Noteholders exchanging into Type B
Notes up to 12 months after approval of the Lupatech Brazilian Plan; (2) four
annual installments in the fixed amount of R$1,000 to be paid to the 3% Notes
Trustee on behalf of all 3% Noteholders exchanging into Type B Notes,
beginning twenty-four months after approval of the Lupatech Brazilian Plan; and
(3) 80 successive quarterly installments, calculated based on the balance of claims
under Option B as of the 60th month after approval of the Lupatech Brazilian
Plan, according to the payment schedule attached to the Lupatech Brazilian Plan

---

[11]   Under the so-called "liquidity clause" of Option B, the Lupatech Group will attempt to pay down the Type
B Notes in advance by using the proceeds of certain potential asset sales.

as Attachment 5.1.3 with the first installment due 63 months after the Lupatech

Brazilian Plan is approved.  Type B Notes will be issued not more than 180 days

after entry of an Order by the Court enforcing the Lupatech Brazilian Plan in the

United States, and will be issued in Brazilian reais according to the PTAX800

exchange rate in effect on the Request Date to be converted into United States

dollars on the date of each payment.  The Type B Notes are expected to be

distributed and paid through the DTC.

c.   Option C allows a 3% Noteholder to exchange 100% of the value of the 3% Notes

for newly issued capital stock of Lupatech S.A. in the form of American

Depositary Shares ("**ADS**s") representing Shares (as defined in the Doebeli

Declaration).  The conversion shall be effected on the basis of 3.14 Brazilian reais

to each ADS and the exchange rate shall be in accordance with the PTAX800 in

effect on the date of the exchange.  Option C is also expected to be carried out

through the DTC but will require electing 3% Noteholders to execute and deliver

a Power of Attorney.

33.     The Debtors have taken appropriate steps to ensure that all 3%

Noteholders: (i) were informed and received notice of their rights and obligations under the

Lupatech Brazilian Plan in preparation for the commencement of and in connection with the

administration of, the Foreign Proceeding; (ii) were given the opportunity to vote on the

Lupatech Brazilian Plan; and     (iii) will have the opportunity to tender their 3% Notes in

accordance with the Lupatech Brazilian Plan.  The 3% Trustee nominated its attorney in the

Foreign Court on August 18, 2015 and has been made aware of all actions related to the judicial

proceeding since that time.  In addition, three public notices were published in the Official

Gazette to provide notice of the General Meeting (as defined in the Doebeli Declaration) and to present the list of creditors.

### 3.     The Homologation Order Approved the Lupatech Brazilian Plan

34.     The Foreign Court issued the Homologation Order on December 11, 2015. That order included findings, among other things, that applicable legal requirements under the Brazilian Insolvency Law were met by the Debtors and that the Lupatech Brazilian Plan was approved by the Creditors with the required quorum during the General Meeting.  The Homologation Order provides that the provisions and payment conditions in the Lupatech Brazilian Plan do not violate Brazilian law.  In addition, the order exempts the Debtors from filing tax clearance certificates.

35.     Banco BMG S.A., Banco Bradesco S/A, National Oilwell Varco de Brasil Ltda. and Varco International do Brasil Equipamentos e Serviços Ltda. appealed the enforcement of the Homologation Order to the 2nd Chamber Reserved to Corporate Law of the Court of Justice of the State of São Paulo on December 15, 2015, January 26, 2016 and January 26, 2016, respectively (collectively, the "Pending Appeal").  The Pending Appeals seek the annulment of the Homologation Order, asserting the following alleged grounds: (i) payment conditions excessively unfavorable to creditors; (ii) interest and monetary restatement rates below the legal rates; (iii) possibility of sale of assets without judicial supervision; and (iv) unfair discrimination among creditors of the same class.  Although the parties who filed the Pending Appeal sought a stay of the effectiveness of the Homologation Order, the request for stay was denied by the Foreign Court.  The Homologation Order is in full force and effect and the Lupatech Brazilian Plan can be implemented notwithstanding the Pending Appeal.  *Felsberg Decl.* at ¶ 48.

18

4.      **Relief Pursuant to Section 1507, 1521, and 105 Is Warranted and Appropriate**

36.      By this Motion, in addition to the relief automatically provided by section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding, to further the goal of orderly administration of the Debtors' assets, the Foreign Representative requests additional relief and assistance pursuant to sections 1507, 1521, and 105 of the Bankruptcy Code.

37.      Upon recognition of a foreign proceeding and at the request of a foreign representative, the Court may grant, with certain express exceptions not applicable here, "any appropriate relief," including "any additional relief that may be available to a trustee," provided that the Court determines that doing so is necessary to effectuate the purpose of Chapter 15 and to protect the assets of the debtor or the interests of the creditors.  11 U.S.C. § 1521(a).  Further, the Court may provide "additional assistance to a foreign representative."  11 U.S.C. § 1507(a).

38.      The Foreign Representative submits that the assistance requested in this motion is "necessary to effectuate the purpose of [chapter 15 of the Bankruptcy Code] and to protect . . . the interests of the [Debtors'] creditors,"[12] and therefore fulfills the requirements of section 1521(a) of the Bankruptcy Code.  Entry of the Proposed Order will give clear direction and authority under United States law to the U.S. Intermediaries to carry out the requirements of the Lupatech Brazilian Plan – and specifically to facilitate the exchange of the 3% Notes for the Type A Notes, Type B Notes and ADSs and the distribution of those new securities to the 3% Noteholders – in accordance with Brazilian law, the Lupatech Brazilian Plan, the Homologation Order, and the affirmative vote of the requisite majorities of the Debtors' creditors.  The requested assistance is necessary to implement the Lupatech Brazilian Plan, which provides for

---

[12]      11 U.S.C. § 1521(a).

19

the just treatment of the 3% Noteholders and other creditors of the Debtors through distributions

of value in a manner similar to that prescribed by the Bankruptcy Code, all in accordance with

section 1507(b) of the Bankruptcy Code.  The requested relief also will benefit the Debtors and

their estates, and provide meaningful assistance to the Foreign Court in the implementation of

the Homologation Order and the Lupatech Brazilian Plan.  The relief sought herein, therefore, is

warranted under section 1521 of the Bankruptcy Code.

39.      By enforcing the Lupatech Brazilian Plan and the Homologation Order

within the United States, the Court will also ensure a fair distribution to the 3% Noteholders.

Accordingly, pursuant to sections 1507(a) and 1521(a) of the Bankruptcy Code, as well as the

Court's general equitable powers pursuant to section 105 of the Bankruptcy Code, the Foreign

Representative requests that the Court assist in the implementation of the Homologation Order

and the Lupatech Brazilian Plan in the United States by entering the Proposed Order.

**5.    The Requested Relief Fulfills the Mandates of Sections 1525 and 1527 of the
Bankruptcy Code**

40.      Section 1525(a) of the Bankruptcy Code provides that "the court shall

cooperate to the maximum extent possible with a foreign court or a foreign representative."

Section 1527 of the Bankruptcy Code provides that such cooperation "may be implemented by

any appropriate means, including . . . coordination of the administration and supervision of the

debtor's assets and affairs."  As described below, the relief requested herein fulfills the mandates

of sections 1525 and 1527 of the Bankruptcy Code.

41.      The Foreign Representative seeks recognition and enforcement of the

Lupatech Brazilian Plan and the Homologation Order so that:  (a) the Lupatech Brazilian Plan

can become effective in the United States, (b) the Lupatech Brazilian Plan and Homologation

Order will be clearly enforceable under the laws of the United States, (c) the U.S. Intermediaries

will have clear authority and direction (and appropriate protections) under United States laws to take all actions necessary to effectuate the terms of the Lupatech Brazilian Plan and the Homologation Order, (d) the exchange of 3% Notes for new securities as required by the Lupatech Brazilian Plan will occur, and (e) the Type A Notes, Type B Notes and ADSs will be distributed to 3% Noteholders in accordance with the terms of the Lupatech Brazilian Plan. Effective coordination and administration of the Foreign Proceeding and these Chapter 15 cases only can be achieved through recognition and enforcement of the Lupatech Brazilian Plan and the Homologation Order in the United States.

42.    Courts in this District have granted similar relief and assistance under Chapter 15 of the Bankruptcy Code. *See, e.g.*, *In re OAS S.A.*, 533 B.R. 83 (Bankr. S.D.N.Y. 2015); *In re Lupatech S.A., et al.*, Case No. 14-11559 (SMB) (Bankr. S.D.N.Y. Nov. 18, 2014); *Centrais Eléctricas do Pará S.A.*, Case No. 12-14568 (SCC) (Bankr. S.D.N.Y. Nov. 9, 2012). In addition, the court in *In re Rede Energia S.A.*, 515 B.R. 69 (Bankr. S.D.N.Y. 2014), recognized the foreign proceeding in Brazil and enforced the Brazilian reorganization plan notwithstanding pending appeals thereof.

43.    Accordingly, the Foreign Representative respectfully submits that the Court should recognize and give full effect and force under the laws of the United States to the Lupatech Brazilian Plan and to the findings, authorities, and provisions set forth in the Homologation Order entered by the Foreign Court.

**C. Recognizing the Foreign Proceeding as a Foreign Main Proceeding and Granting the Other Relief Requested Herein Is Consistent with the Purpose of Chapter 15 and United States Public Policy**

44.    Section 1506 of the Bankruptcy Code provides that nothing in chapter 15 shall prevent the Court from refusing to take an action otherwise required therein if such action manifestly would be contrary to the public policy of the United States. 11 U.S.C. § 1506. The

21

Foreign Representative submits that the relief requested herein is not manifestly contrary to, and is consistent with, the public policy of the United States.

45.     It is well established that one of the fundamental goals of the Bankruptcy Code is the centralization of disputes involving the debtor.  *See, e.g., In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . .'") (internal citations omitted).  Indeed, as one court in this District has noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction."  *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that a Canadian liquidation proceeding would not violate laws or public policy of New York or the United States).

46.     The Foreign Proceeding is similar to cases under chapter 11 of the Bankruptcy Code because it provides for a centralized process to assert and resolve claims against an estate and to provide distributions to creditors in order of priority.  Recognizing the Foreign Proceeding, enjoining certain actions or proceedings with respect to the Debtors and their assets in the United States, and authorizing and directing the U.S. Intermediaries to take administrative actions necessary to facilitate consummation of the Lupatech Brazilian Plan will assist the orderly administration of the Debtors' assets in the Foreign Proceeding.  Such orderly administration is consistent with the public policy of the United States, as embodied in the Bankruptcy Code.  Absent the relief requested, there is a possibility that certain United States based 3% Noteholders, the 3% Notes Trustee, or other U.S. Intermediaries could attempt to circumvent the Foreign Proceeding by commencing actions against the Debtors in the United States, notwithstanding any stay order issued by the Foreign Court.  Avoiding such potential

22

outcomes through the recognition of the Foreign Proceeding and the attendant imposition of the

automatic stay in these chapter 15 cases, after notice and hearing, is consistent with United States

public policy and promotes the public policies embodied in the Bankruptcy Code.

47.    Further, recognition of the Foreign Proceeding, and recognition and

enforcement of the Lupatech Brazilian Plan and the Homologation Order, is consistent with the

purpose of chapter 15 and the UNCITRAL Model Law on Cross-Border Insolvency.

Section 1501(a) of the Bankruptcy Code provides, in pertinent part, that:

> The purpose of this chapter is to incorporate the Model Law on
> Cross-Border Insolvency so as to provide effective mechanisms for
> dealing with cases of cross-border insolvency with the objectives of -
>
> (1)    cooperation between -
>
> * * *
>
> > (B)    the courts and other competent authorities of foreign
> > countries involved in cross-border insolvency cases;
>
> * * *
>
> (3)    fair and efficient administration of cross-border insolvencies that
> protects the interests of all creditors, and other interested entities,
> including the debtor; [and]
>
> (4)    protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501.

48.    The relief requested by the Foreign Representative is consistent with the

objectives of chapter 15.  First, recognition of the Foreign Proceeding, and recognition and

enforcement of the Lupatech Brazilian Plan and the Homologation Order, would constitute

cooperation between courts in Brazil and the United States with respect to the Debtors'

restructuring proceeding.  By granting such relief, the Court effectively will assist the Foreign

Court in the orderly administration of the Debtors' assets because the Debtors' creditors would

be enjoined from commencing or continuing actions against the Debtors or their assets in the

United States, and the U.S. Intermediaries would be in a position to facilitate the securities

exchange required by the terms of the Lupatech Brazilian Plan. Such relief, therefore, also would assist in the uniform resolution of claims against the Debtors.

49.     Recognition of the Foreign Proceeding, and recognition and enforcement of the Lupatech Brazilian Plan and the Homologation Order, also would promote the fair and efficient administration of a cross-border reorganization procedure that protects the interests of all creditors and interested entities.  By recognizing the Foreign Proceeding and granting the other relief requested, the process of resolving claims against the Debtors would be centralized in their center of main interests.  Claims would be treated in accordance with Brazilian law, which is similar in relevant respects to United States law, and any disputes would be subject to the jurisdiction of the most appropriate tribunal, the Foreign Court.  If creditors' actions with respect to the Debtors in the United States are not effectively stayed, the uniform and orderly voluntary administration of the Debtors' assets in the Foreign Proceeding will be jeopardized. Accordingly, the relief requested furthers the objectives of chapter 15 by assisting the orderly voluntary administration of the Debtors in the Foreign Proceeding.

## Notice

50.     The Foreign Representative proposes to notify creditors and parties in interest of the filing of the Chapter 15 Petitions and the Foreign Representative's request for entry of the Proposed Order in the form and manner set forth in the *Foreign Representative's Motion for Order Scheduling Hearing and Specifying the Form and Manner of Service of Notice*, which was filed contemporaneously herewith.  In light of the nature of the relief requested herein, the Foreign Representative submits that no other or further notice of this Motion is necessary or required.

## **No Prior Request**

51.     No previous request for the relief sought in this Motion has been made to this or any other court.

## **Conclusion**

WHEREFORE, the Foreign Representative respectfully requests that the Court:

(a) enter the Proposed Order, upon notice and a hearing, substantially in the form attached hereto

as Exhibit A, and (b) grant such other and further relief as may be just and proper.

Dated:  New York, New York                   Respectfully submitted,
        April 27, 2016

                                             /s/ Fredric Sosnick
                                             SHEARMAN & STERLING LLP
                                             Fredric Sosnick
                                             Randall Martin
                                             599 Lexington Avenue
                                             New York, New York 10022
                                             Telephone:  (212) 848-4000
                                             Facsimile:  (646) 848-7174

                                             *Attorneys for the Foreign Representative*

**<u>EXHIBIT A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------- x
                                                               :
In re:                                                         :        Chapter 15
                                                               :
LUPATECH S.A, et al.,¹                                         :        Case No. 16-[●] (__)
                                                               :
        Debtors in a Foreign Proceeding.                       :        (Jointly Administered)
                                                               :
                                                               :        Ref. Docket No. __
-------------------------------------------------------------- x
```

## ORDER GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING AND CERTAIN RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Ricardo Doebeli, in his capacity as the authorized foreign representative (the "**Foreign Representative**") for the above-captioned Debtors (collectively, the "**Debtors**") in a proceeding (the "**Foreign Proceeding**") commenced in the Federative Republic of Brazil pursuant to Federal Law 11.101 of February 9, 2005 (pending before the First Chamber of Bankruptcy, Judicial Recovery and Arbitration Disputes of the Comarca Forum of São Paulo (the "**Foreign Court**")), pursuant to sections 362, 1504, 1507, 1509, 1517, 1520, 1521, 1525, 1527 and 105(a) of title 11 of the United States Code, (as amended from time to time, the "**Bankruptcy Code**") for entry of a final order, after notice and a hearing (this "**Order**"), (i) granting the verified Chapter 15 Petitions and recognizing the Foreign Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, (ii) permanently enjoining all parties from commencing or taking any action in the United

---

[1]    The last four digits of the Taxpayer Registration Number or Tax ID, as applicable, of each of the Debtors follow in parentheses: (a) Lupatech S.A. (01-12); (b) Lupatech – Equipamentos e Serviços para Petróleo Ltda (01-04); (c) Lupatech Finance Limited (none); and (d) Mipel Indústria e Comércio de Válvulas Ltda (01-00).  The Debtors' collective executive headquarters is located at Rua Alcides Lourenço da Rocha, 167 8o andar, Conjunto 81, São Paulo, Brazil.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

States to obtain possession of, exercise control over, or assert claims against the Debtors or their

property, (iii) recognizing and enforcing the Judicial Recovery Plan of Grupo Lupatech as it

relates to the above-captioned Debtors (the "**Lupatech Brazilian Plan**") and the Foreign Court's

order approving, or homologating the Lupatech Brazilian Plan (the "**Homologation Order**")

within the territorial jurisdiction of the United States[3], and (iv) granting such other and further

relief as the Court deems just and proper; and this Court having reviewed the Motion, the

Chapter 15 Petitions, the Doebeli Declaration, the Felsberg Declaration and the statements of

counsel with respect to the Motion at the hearing before this Court (the "**Hearing**"); and

appropriate and timely notice of the filing of the Motion and the Hearings having been given;

and no other or further notice being necessary or required; and this Court having determined that

the legal and factual bases set forth in the Motion, the Chapter 15 Petitions, the Doebeli

Declaration, the Felsberg Declaration and all other pleadings and papers in these chapter 15

cases establish just cause to grant the relief ordered herein, and after due deliberation therefor;

### THIS COURT HEREBY FINDS AND DETERMINES THAT:

A.      The findings and conclusions set forth herein constitute this Court's

findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to

Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions

of law, they are adopted as such.  To the extent any of the following conclusions of law

constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction to consider this matter pursuant to

28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United

---

[3]      A certified translation of the Lupatech Brazilian Plan and the Homologation Order from Portuguese to
English is appended to the Translation Certificate attached to the Doebeli Declaration as Exhibit I.

States District Court for the Southern District of New York dated as of January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

        C.      The Foreign Representative is the duly appointed "foreign representative" of the Debtor within the meaning of section 101(24) of the Bankruptcy Code.

        D.      These chapter 15 cases were properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

        E.      The Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 2002(q).

        F.      The Foreign Proceeding is a "foreign proceeding" pursuant to section 101(23) of the Bankruptcy Code.

        G.      The Foreign Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

        H.      Brazil is the center of main interests of each of the Debtors, and accordingly the Foreign Proceeding is a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code, and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

        I.      The Foreign Representative and the Debtors, as applicable, are entitled to all of the automatic relief available pursuant to section 1520 of the Bankruptcy Code without limitation.

        J.      The Foreign Representative and the Debtors, as applicable, are further entitled to the additional assistance and discretionary relief requested in the Motion pursuant to sections 1507 and 1521(a) of the Bankruptcy Code.

K.      Absent permanent injunctive relief, the Foreign Proceeding and the

Debtors' efforts to consummate their restructuring plan may be thwarted by the actions of certain

creditors, or by the failure of certain parties to take actions necessary to consummate the

Lupatech Brazilian Plan, results at odds with the purposes of chapter 15 of the Bankruptcy Code

as set forth, *inter alia*, in section 1501(a) of the Bankruptcy Code.  Such results could threaten,

frustrate, delay, and ultimately jeopardize the Foreign Proceeding and the implementation of the

plan of reorganization in that proceeding.

L.      The relief sought by the Motion will not cause undue hardship or

inconvenience to any party in interest and, to the extent that any hardship or inconvenience may

result to such parties, it is outweighed by the benefits of the requested relief to the Foreign

Representative, the Debtors, their estates, and their creditors.

M.      The relief granted herein is necessary and appropriate, in the interests of

the public and international comity, consistent with the public policy of the United States, and

warranted pursuant to sections 362, 1504, 1507, 1509, 1517, 1520, 1521, 1525, 1527 and 105(a)

of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND**

**DECREED THAT:**

1.      The Chapter 15 Petitions are granted.

2.      The Motion is granted.

3.      All objections, if any, to the Motion or the relief requested therein that

have not been withdrawn, waived, or settled as announced to this Court at the Hearing, or by

stipulation filed with this Court, and all reservations of rights included therein, are hereby

overruled on the merits.

4

4.     The Foreign Proceeding is granted recognition as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code.

5.     The Foreign Representative is the duly appointed foreign representative of the Debtors within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of the Debtors in these chapter 15 cases.

6.     All relief afforded to a foreign main proceeding pursuant to section 1520 of the Bankruptcy Code is hereby granted to the Foreign Proceeding.

7.     Subject to sections 1520 and 1521 of the Bankruptcy Code, the Foreign Proceeding and all orders of the Foreign Court shall be granted comity in the United States.

8.     All entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Foreign Representative and his expressly authorized representatives and agents, are hereby enjoined from:

    a.     execution against any of the Debtors' assets;

    b.     the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, arbitral, or other action or proceeding, or to recover a claim, which in either case in any way relates to, or would interfere with, the administration of the Debtors' estates in the Foreign Proceeding, including without limitation any and all unpaid judgments, settlements, notes, or otherwise against the Debtors in the United States;

    c.     taking or continuing any act to create, perfect, or enforce a lien or other security interest, set-off, or other claim against the Debtors or any of their property;

    d.     transferring, relinquishing, or disposing of any property of the Debtors to any entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Foreign Representative; and

    e.     commencing or continuing an individual action or proceeding concerning the Debtors' assets, rights, obligations, or liabilities to the extent they have not been stayed pursuant to section 1520(a)

and 362 of the Bankruptcy Code;

*provided*, in each case, that such injunction shall be effective solely within the territorial

jurisdiction of the United States.

       9.     Notwithstanding anything to the contrary contained herein, this Order

shall not be construed as enjoining the police or regulatory act of a governmental unit, including

a criminal action or proceeding, to the extent not stayed pursuant to section 362 of the

Bankruptcy Code or staying the exercise of any rights that section 362(o) of the Bankruptcy

Code does not allow to be stayed.

       10.    The Foreign Representative hereby is authorized to apply to this Court to

examine witnesses, take evidence, seek production of documents, and deliver information

concerning the assets, affairs, rights, obligations, or liabilities of the Debtors, as and to the extent

that such information is required in connection with the Foreign Proceeding.

       11.    The Foreign Representative, the Debtor, and/or each of their respective

successors, agents, representatives, advisors, and counsel shall be entitled to the protections

contained in sections 306 and 1510 of the Bankruptcy Code.

       12.    The Lupatech Brazilian Plan is hereby recognized, affirmed and effective

within the territorial jurisdiction of the United States in all respects, and shall be fully

enforceable pursuant to its terms.

       13.    The Homologation Order is hereby recognized, affirmed and effective

within the territorial jurisdiction of the United States in all respects, and shall be fully

enforceable pursuant to its terms.

       14.    The U.S. Intermediaries are hereby authorized and directed to take any

ministerial actions that may be necessary to consummate the transactions contemplated by the

Lupatech Brazilian Plan, including the issuance and distribution of new securities to the 3% Noteholders and the cancellation of the 3% Notes.

15.    Upon the completion of the transactions necessary to consummate distributions to the 3% Noteholders pursuant to the terms of the Lupatech Brazilian Plan and the cancellation of the 3% Notes, the 3% Notes Trustee shall be automatically relieved of any further obligations under the 3% Notes Indenture.

16.    Nothing in this Order shall affect the rights of the 3% Notes Trustee to collect its fees and expenses from the 3% Noteholders or the Debtors in accordance with the terms of the 3% Notes Indenture.

17.    Notwithstanding any provision in the Bankruptcy Code or the Bankruptcy Rules to the contrary:  (a) this Order shall be effective immediately and enforceable upon entry; (b) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Foreign Representative is authorized and empowered, and may in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

18.    A copy of this Order, confirmed to be true and correct, shall be served, within seven business days of entry of this Order, upon all persons or bodies authorized to administer a foreign proceeding of the Debtor, any parties to litigation pending in the United States in which the Debtor was a party at the time of the filing of the Chapter 15 Petitions, the Office of the United States Trustee for the Southern District of New York, and such other entities as this Court may direct, pursuant to this Court's *Order Scheduling Hearings and Specifying the Form and Manner of Service of Notice* Docket No. [●].  Such service shall be good and sufficient service and adequate notice for all purposes.

7

19.      This Court shall retain jurisdiction with respect to the enforcement,

amendment, or modification of this Order and any requests for additional relief.

Dated:  New York, New York
         _____, 2016

_____
UNITED STATES BANKRUPTCY JUDGE