SHEARMAN & STERLING LLP
Fredric Sosnick
Randall Martin
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000

*Attorneys for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | **Chapter 15** |
| | : | |
| **Lupatech S.A.,** *et al.*, [1] | : | **Case No. 16-[●] (__)** |
| | : | |
| **Debtors in a Foreign Proceeding.** | : | **(Joint Administration Pending)** |
| | : | |

------------------------------------------------------------ x

### DECLARATION OF RICARDO DOEBELI IN SUPPORT OF (I) VERIFIED CHAPTER 15 PETITIONS, (II) FOREIGN REPRESENTATIVE'S MOTION FOR ORDER GRANTING FINAL RELIEF IN AID OF A FOREIGN PROCEEDING, AND (III) CERTAIN RELATED RELIEF

Ricardo Doebeli, a citizen of the Federative Republic of Brazil ("**Brazil**") hereby

declares, under penalty of perjury under the laws of the United States of America, as follows:

1.     I am the Chief Executive Officer and authorized foreign representative

(the "**Foreign Representative**") for the above-captioned debtors (collectively, the "**Debtors**")

filed a petition for commencement of a Judicial Reorganization proceeding (the "**Brazil**

**Petition**") in Brazil on May 25, 2015 (the "**Foreign Proceeding**") pursuant to Article 61 of

Brazilian Law 11.101/2005 of February 9, 2005 (the "**Brazilian Insolvency Law**").  I am fully

authorized to act on behalf of the Debtors with respect to the Foreign Proceeding.

---

[1]     The last four digits of the Taxpayer Registration Number or Tax ID, as applicable, of each of the Debtors follow in parentheses: (a) Lupatech S.A. (01-12); (b) Lupatech – Equipamentos e Serviços para Petróleo Ltda. (01-04); (c) Mipel Indústria e Comércio de Válvulas Ltda. (01-00); and (d) Lupatech Finance Limited (none). The Debtors' collective executive headquarters is located at Rua Alcides Lourenço da Rocha, 167 8o andar, Conjunto 81, São Paulo, Brazil.

2.      On the same day that it filed for Judicial Reorganization, Lupatech issued a press release, a copy of which was posted on its website, to provide public notice that it had filed a petition ("**Lupatech Press Release**").  On June 22, 2015, the First Chamber of Bankruptcy, Judicial Recovery and Arbitration Disputes of the Comarca Forum of São Paulo (the "**Brazilian Court**") entered an order, granting the reorganization of the Debtors (the "**Commencement Order**").  Pursuant to a decision dated on June 22, 2015 and published on July 7, 2015, (the "**Initial Brazilian Court Decision**"), the Brazilian Court appointed Alta Administração Judicial Ltda. as Lupatech's judicial administrator. On August 24, 2015, Lupatech presented before the Brazilian Court a reorganization plan based on negotiations with its creditors (the "**Lupatech Brazilian Plan**").

3.      On September 21, 2015, Lupatech published a notice in the Official Gazette ("**September Notice**").  This notice provided creditors with notice of the Lupatech Brazilian Plan and gave them the opportunity to object.  On October 22, 2015, due to certain creditors' objections to the Lupatech Brazilian Plan, a summoning notice was published in the Official Gazette ("**Publication Notice**") requesting a court supervised creditors' meeting on November 11, 2015 and November 18, 2015.  The Publication Notice was also published in Valor Econômico, a newspaper with nationwide coverage in Brazil on October 26, 2015.  On November 18, 2015, a general meeting of the Debtors and their creditors (the "**General Meeting**") was held.  At the General Meeting, the Debtors presented the Lupatech Brazilian Plan to their creditors who voted on and approved the Lupatech Brazilian Plan.

4.      On December 11, 2015, the Brazilian Court issued an order homologating, or approving, the Lupatech Brazilian Plan (the "**Homologation Order**").[2]  On May 25, 2015,

---

[2]      Banco BMG S.A., Banco Bradesco S/A, National Oilwell Varco do Brasil Ltda. and Varco International do Brasil Equipamentos e Serviços Ltda. appealed the enforcement of the Homologation Order to the 2nd

Board of Directors of Lupatech S.A., on behalf of itself and each of the other Debtors,

unanimously resolved (the "**Authorizing Resolution**") to authorize the Foreign Proceeding and

authorized Lupatech S.A. officers, of which I am one, to take measures and actions required to

give effect to the Foreign Proceeding.

5.      A copy of the Lupatech Press Release is attached hereto as <u>Exhibit A</u>.  A

copy of the Commencement Order is attached hereto as <u>Exhibit B</u>.  A copy of the September

Notice is attached hereto as <u>Exhibit C</u>. A copy of the Publication Notice is attached hereto as

<u>Exhibit D</u>.  A copy of the Lupatech Brazilian Plan is attached hereto as <u>Exhibit E</u>.  A copy of the

minutes of the General Meeting is attached hereto at <u>Exhibit F</u>.  A copy of the Homologation

Order is attached hereto as <u>Exhibit G</u>.  A copy of the Authorizing Resolution is attached hereto

as <u>Exhibit H</u>.  Certificate of translation (the "**Translation Certificates**") is attached hereto as

<u>Exhibit I</u>.  English translations of the Lupatech Press Release, the Commencement Order, the

September Notice, the Publication Notice, the Lupatech Brazilian Plan, the minutes of the

General Meeting, the Homologation Order, and the Authorizing Resolution are appended to the

Translation Certificates.

6.      I submit this Declaration in support of the: (a) verified chapter 15 petitions

of the Debtors; (b) *Foreign Representative's Motion for an Order Directing the Joint*

*Administration of the Debtors' Chapter 15 Cases* (the "**Joint Administration Motion**"); (c)

*Foreign Representative's Motion for an Order Scheduling Hearing and Specifying the Form and*

*Manner of Service of Notice* (the "**Notice Procedures Motion**"); and (d) *Foreign*

*Representative's Motion for Order Granting Final Relief in Aid of a Foreign Proceeding* (the

---

Chamber Reserved to Corporate Law of the Court of Justice of the State of São Paulo on December 15,
2015, January 26, 2016 and January 26, 2016, respectively (the "**Pending Appeal**"). No stay of the
enforcement of the Homologation Order has been put in place by the Brazilian Court or any other court, as
a result of the Pending Appeal.

"**Recognition and Relief Motion**").

7.      In my role as the Chief Executive Officer of Lupatech S.A., I have become familiar with the history, day-to-day operations, assets, financial condition, business affairs, and books and records of each of the Debtors.  Except as otherwise indicated, all facts set forth in this Declaration are based upon:  (a) my personal knowledge; (b) my review of relevant documents; (c) information supplied to me by other employees, affiliates, officers, or directors of the Debtors, or by professionals retained by me or the Debtors, including, with respect to matters of United States bankruptcy law, information provided to me by United States counsel, Shearman & Sterling LLP ("**S&S**") and Felsberg e Pedretti Advogados e Consultores Legais ("**Felsberg**") with respect to Brazilian reorganization law; or (d) my opinion based upon my experience and knowledge of the Debtors' operations and financial condition.  I am an individual over the age of 18 and, if I am called upon to testify, I will testify competently to the facts set forth herein.

## Background

A.      **The Debtors' Business**

8.      The Debtors are part of a group of businesses (collectively, the "**Lupatech Group**") that manufacture highly technical components and deliver specialized services principally within the oil, gas, and foundry industries in Latin America.  The company is divided into two principal segments.  The Products Segment focuses on the production of industrial valves, synthetic fiber ropes, and other tools for oil and gas production.  The Services Segment focuses on drilling and pipe servicing for the oil and gas industries.

9.      The Lupatech Group's operations began in 1980 in Brazil and currently consist of 17 separate business units located in Brazil and Colombia.  In 2006, the shares of Lupatech S.A. began trading publicly on the *Novo Mercado* segment of the *Bolsa de Valores,*

*Mercadorias & Futuros de São Paulo*, or the São Paulo Stock, Mercantile, and Futures

Exchange, under the symbol "LUPA3." The *Novo Mercado* segment consists of companies that

agree to commit themselves voluntarily to certain corporate governance practices that are more

stringent than those strictly required by Brazilian law.

        10.     Lupatech Finance Limited ("**Lupatech Finance**"), which is managed by

Lupatech S.A. in Brazil and maintains no operations, is organized under the laws of, and

registered in, the Cayman Islands. Each of the other Debtors maintains its registered offices in,

and is organized under the laws of, Brazil.

        11.     The center of main interests for each of the Debtors' enterprises are

located in Brazil. The Debtors operationally and functionally are centered in the states of São

Paulo, Rio de Janeiro, Rio Grande do Sul and Bahia, Brazil, largely organized under centralized

senior management in the state of São Paulo, Brazil, and subject to combined cash management

and accounting functions, all of which are based in the state of São Paulo, Brazil. Indeed, among

other connections to their center of main interests:

(a)    all of the Debtors' operations are managed and directed from offices in the states of São Paulo, Rio de Janeiro, Rio Grande do Sul and Bahia, Brazil;

(b)    corporate governance for the Debtors is directed from the state of São Paulo, Brazil;

(c)    in-person meetings of the Debtors' Board of Directors are typically held in the state of São Paulo, Brazil;

(d)    all members of the Debtors' Board of Directors maintain their offices in the states of São Paulo and Rio de Janeiro, Brazil;

(e)    strategic and key operating decisions and key policy decisions for the Debtors are made by staff located in the states of São Paulo, Rio de Janeiro, and Rio Grande do Sul, Brazil;

(f)    the Debtors' corporate accounting, accounts payable, insurance procurement, accounts receivable, financial planning, internal auditing,

marketing, treasury, real estate, research & development, and tax services
are provided from the state of São Paulo, Brazil;

(g)   the Debtors' finance, legal, human resources, payroll, billing, freight
management, procurement, and engineering services are carried out in the
state of São Paulo, Brazil;

(h)   the Debtors' cash management functions are maintained and directed from
the state of São Paulo, Brazil;

(i)   key information technology and systems used by the Debtors are provided
from the state of São Paulo, Brazil;

(j)   management and senior staff of the Debtors regularly attend meetings in
the states of São Paulo, Rio de Janeiro, and Rio Grande do Sul, Brazil;

(k)   the chief executive officer that oversees financial management of the
Debtors (who is the Foreign Representative in these chapter 15 cases) is
based in the state of São Paulo, Brazil;

(l)   all capital expenditure decisions affecting the Debtors are managed in the
state of São Paulo, Brazil; and

(m)  the vast majority of the Debtors' creditors, both in number and amount,
other than the Noteholders, are located in Brazil.

**B.      Connections to the United States**

12.      The Lupatech Group's worldwide headquarters is located in São Paulo,

State of São Paulo, Brazil, and substantially all of the Debtors' directly owned assets are located

in Brazil.  However, each of the Debtors currently maintains an asset in the United States

consisting of an interest in an undrawn cash retainer deposited with S&S, the Debtors' and the

Foreign Representative's United States counsel in connection with these chapter 15 cases.  These

retainers were separately deposited by each of the Debtors and are being held by S&S in a client

trust account with Citibank in New York, New York (the "**Client Trust Account**").  To the

extent that such funds ultimately are not applied to fees charged and expenses incurred by S&S

in connection with the administration of these chapter 15 cases, each of the Debtors has the right

to the return of its funds held in the Client Trust Account.

6

13.    In addition, each of the Debtors is party, as Issuer or Guarantor, to that certain Indenture (as modified, supplemented, or amended from time to time, the "**3% Notes Indenture**"), dated as of October 8, 2014, among Lupatech Finance Limited, as Issuer, Lupatech S.A., Lupatech – Equipamentos e Serviços para Petróleo Ltda., Mipel Indústria e Comércio de Válvulas Ltda and Jefferson Solenoidbras Ltda.,[3] as Guarantors, and The Bank of New York Mellon, as Indenture Trustee, Principal Paying Agent, Registrar, and Transfer Agent (the "**3% Notes Trustee**"), which governs the Debtors' issued and outstanding 3.00% Guaranteed Senior Amortizing Notes (the "**3% Notes**").  Pursuant to Section 12.9 of the 3% Notes Indenture, the 3% Notes Indenture and the 3% Notes are governed by New York law.  Pursuant to Section 12.10 of the 3% Notes Indenture, each of the parties thereto, including each of the Debtors, submitted to the non-exclusive jurisdiction of any New York state or U.S. federal court sitting in the Borough of Manhattan in the The City of New York, New York.  Therefore, it is my understanding that each of the Debtors also has significant intangible property interests in the form of contractual rights under the 3% Notes Indenture that are located, for legal purposes, in New York, New York.[4]

C.    **Corporate and Capital Structure**

14.    Lupatech S.A. is the direct or ultimate indirect parent company of each member of the Lupatech Group.  In total, the Lupatech Group is composed of 17 legal entities organized under the laws of various jurisdictions around the world.

15.    The 3% Notes are not registered under the U.S. Securities Act of 1933, as

---

[3]    Jefferson Solenoidbras Ltda. was an original Guarantor under the 3% Notes Indenture, but it was subsequently sold on January 29, 2015 by the Lupatech Group and released as Guarantor under, and in accordance with the terms of, the 3% Notes Indenture. It is therefore not a Debtor in these chapter 15 cases.

[4]    In addition to the 3% Notes, there are other claims against the Debtors that are also addressed by the Lupatech Brazilian Plan, but which are not the subject of these chapter 15 cases.

amended (the "**Securities Act**").  Instead, they were offered and sold only to qualified

institutional buyers, in accordance with applicable registration exemptions including Section

4(a)(2), Regulation S and Section 3(a)(9) of the Securities Act.  Trades of the Unsecured Bonds

are processed by the Depository Trust Company (the "**DTC**"), which serves as their central

depository.  As of the commencement date of the Foreign Proceeding, the Debtors owed

$48,760,675.79 under the 3% Notes (including principal and accrued and unpaid interest).

16.     The Lupatech Group's total debt subject to the judicial reorganization is

approximately R$650 million.[5]  At the end of the third quarter of 2015, the Lupatech Group

reported current assets of R$263.9 million and current liabilities of R$760.6 million.  The

Lupatech Group's consolidated net revenue for the third quarter of 2015 was R$66.7 million.

**D.     Prior Restructuring Actions and Events Leading to the Filing of these Chapter 15
       Cases**

17.     On October 10, 2007, Lupatech Finance[6] issued, and each of the other

Debtors and certain of their affiliates guaranteed, those certain 9.875% Guaranteed Perpetual

Bonds (the "**Original Unsecured Bonds**") in the original principal amount of US$200 million

pursuant to the terms of that certain Indenture (as modified, supplemented, or amended from

time to time, the "**Original Indenture**") by and among Lupatech Finance Limited, as Issuer, the

Guarantors party thereto, The Bank of New York Mellon, as Trustee, Principal Paying Agent,

Registrar and Transfer Agent, and The Bank of New York Mellon (Luxembourg) S.A., as

Luxembourg Paying Agent, Transfer Agent and Listing Agent.  On June 30, 2008, an additional

US$75 million of Original Unsecured Bonds were issued under the Original Indenture.  The

---

[5]     According to the Brazilian Central Bank, as of January 21, 2015, one Brazilian *real* (R$) was equal to
        approximately 0.241 United States dollars (US$).

[6]     Lupatech Finance was formed by the Lupatech Group under the Companies Law (2004 Revision) of the
        Cayman Islands for the express purpose of issuing the Original Unsecured Bonds, and it is the issuer of the
        3% Notes.  Lupatech Finance has no assets and has no obligations other than under the 3% Notes
        Indenture.

proceeds of the Original Unsecured Bonds were used, in large part, to fund acquisitions in the

period leading to the global economic recession that began in late 2008.  The global recession led

to lower than expected utilization of all of the Lupatech Group's plants, equipment, and services.

This low utilization rate combined with increased leverage from debt issuances contributed to a

rapid deterioration of the Lupatech Group's financial position.  As a result, the Lupatech Group

took steps to streamline its physical and organizational structures and to strengthen its position

within key industries.  This process included the divestment of "non-core" assets and an internal

restructuring of the entire organization.

18.     Despite these efforts, the events stemming from the onset of the global

economic recession led the Debtors and certain of their affiliates to file that certain Joint Pre-

Packaged Reorganization Plan of Lupatech S.A. and its Debtor Affiliates in Brazil on February

5, 2014.  On May 22, 2014, the Foreign Representative commenced cases under chapter 15 of

the United States Bankruptcy Code before this Court to recognize their foreign proceeding and

enforce their Joint Pre-Packaged Plan in the United States (the "**First Restructuring

Proceedings**").  The Court recognized the Brazilian proceedings in the First Restructuring

Proceeding as foreign main proceedings on June 26, 2014.  The Brazilian Court in the First

Restructuring Proceeding entered an order homologating, or approving, the Debtors' Joint Pre-

packaged Plan on June 6, 2014.  This Court recognized and enforced that Homologation Order

and the Joint Pre-Packaged Plan in the United States on July 14, 2014.  Pursuant to the Joint Pre-

Packaged Plan that was approved in the First Restructuring Proceedings, the Lupatech Group

exchanged the Original Unsecured Bonds for (a) the 3% Notes in a principal amount equal to

15% of the aggregate outstanding principal and accrued and unpaid interest under the Original

Unsecured Bonds and (b) new equity interests in Lupatech, S.A. in an amount equal to the

remaining 85% of the aggregate outstanding principal and unpaid interest under the Original

Unsecured Bonds.  The Joint Pre-Packaged Plan in the First Restructuring Proceedings became

effective on October 8, 2014, following recognition and enforcement in the United States by this

Court.

19.    Following the Debtors' emergence from the First Restructuring

Proceedings and issuance of the 3% Notes, the Brazilian economy and the Debtors' business

continued to deteriorate.  In general, increasing rates of inflation and decreasing GDP in Brazil

have affected the Brazilian economy and Brazilian industry negatively as a whole.  With respect

to the Lupatech Group specifically, key customers in the oil and gas industries have decreased

capital expenditures significantly as a result of the global turmoil in those markets, resulting in

decreased revenue to the Debtors.  In addition, the Debtors' most significant customer, Petrobras

has become the subject of significant government scrutiny related to the so-called "Car Wash"

investigations, leading it to cancel many supplier contracts, including contracts with the

Lupatech Group.  As a result of these economic and political trends, after the First Restructuring

Proceedings the Lupatech Group's management team made significant efforts to negotiate with

creditors, divest non-core assets and search for potential investors in an effort to further

rationalize the Lupatech Group's capital structure.

20.    Despite these efforts, the Lupatech Group was forced to file for

bankruptcy protection in Brazil and, on May 25, 2015, Lupatech S.A. informed its shareholders

and the public generally that it had filed the Foreign Proceeding jointly with other subsidiaries of

the Lupatech Group before the Brazilian Court pursuant to the Brazilian Insolvency Law.  On

August 24, 2015, Lupatech S.A. filed the Lupatech Brazilian Plan in the Foreign Proceeding.  On

November 18, 2015, the General Meeting of creditors was held and creditors voted to approve

the Lupatech Brazilian Plan in accordance with Brazilian law. The 3% Notes Trustee attended

the General Meeting on behalf of the holders of the 3% Notes ("**3% Noteholders**") and

abstained from voting.  On December 11, 2015, the Brazilian Court approved, or homologated,

the Lupatech Brazilian Plan.  Recognition of the Foreign Proceeding and enforcement of the

Lupatech Brazilian Plan and the Homologation Order in the United States by this Court is a

critical step needed for the Lupatech Group to complete its most recent effort to reorganize and

recapitalize its business for the benefit of all of its stakeholders, including the 3% Noteholders.

**F.      The Foreign Proceeding and the Lupatech Brazilian Plan**[7]

21.      The Foreign Proceeding is an in-court restructuring proceeding known as a

*recuperação judicial*.  That proceeding, analogous to a chapter 11 proceeding under the U.S.

Bankruptcy Code, is a court-supervised proceeding in which the debtor maintains control of its

operations and a six-month stay is granted by the court to provide the debtor time to negotiate

with its creditors on a restructuring plan.  A *recuperação judicial* offers a financially distressed

debtor a means of restructuring its debt through a plan of reorganization that must be negotiated

with and approved by the debtor's creditors, and satisfy certain other statutory requirements.

22.      The Lupatech Brazilian Plan is predicated on the restructuring of

substantially all claims against the Debtors, including the 3% Notes, with the exception of certain

claims that are generally exempt from restructuring under Brazilian law, such as post-petition

claims against the Debtors, claims secured by a fiduciary assignment in accordance with

Brazilian law (up to the value of the collateral), claims arising from certain commercial lease

agreements, and claims arising from taxes.  The Lupatech Brazilian Plan provides for four

---

[7]      The summary of certain provisions of the Lupatech Brazilian Plan set forth below is provided for the
convenience of the Court and other parties, and is qualified in its entirety by the terms of the Lupatech
Brazilian Plan.  In the event of an inconsistency between the description below and the terms of the Lupatech
Brazilian Plan, the terms of the Lupatech Brazilian Plan shall control.

primary classes of claims: (a) Labor Claims, (b) Secured Claims, (c) Unsecured Claims and (d) Microenterprise and Small Enterprise Claims.[8]  In accordance with the Brazilian Insolvency Law, the Plan was required to, and did, receive the affirmative vote of more than 50% of the voting members of each class of labor-related claims and claims held by small-sized companies (regardless of the value of the claims held) and more than 50% in both number and amount of the voting members of each of the secured and unsecured claimant classes.

23.     Under the terms of the Lupatech Brazilian Plan, holders of allowed Labor Claims are entitled to payment in full within one year of entry of the Homologation Order. Holders of allowed Secured Claims may elect either (i) payment in full of the principal amount of their claim over the course of a 72 quarter payment schedule commencing 63 months after entry of the Homologation order, or (ii) the exchange of the full principal amount of their claim for newly issued Shares of Lupatech S.A.[9]  Holders of Unsecured Claims, including the 3% Noteholders, could elect one of four payment options under the Lupatech Brazilian Plan: "Option A," "Option B," "Option C" and "Option D."  Ultimately, following the homologation of the Lupatech Brazilian Plan, the Lupatch Group concluded that the fourth option (Option D) was not feasible.[10]  Option A (which is described in greater detail below) is the default option if no option was selected by a holder of an Unsecured Claim.[11]

_____

[8]      So-called Microenterprise and Small Enterprise Claims are separately classified under the Lupatech Brazilian Plan.  Holders of allowed Microenterprise and Small Enterprise Claims are entitled to payment in full of the principal amount of their claim over the course of a 40 quarter payment schedule commencing 63 months after the entry of the Homologation Order.

[9]      Shares issued under the Lupatech Brazilian Plan will be issued at a price of R$3.14 per Share, which was calculated based on the volume weighted average price of the Shares trading on the BOVESPA Stock Exchange between August 13, 2015 and August 20, 2015.

[10]     Option D provided 3% Noteholders with an option to convert 100% of the value of their 3% Notes into newly issued Shares, but appoint a third party nominated by the Lupatech Group to act as their proxy for purposes of the receipt and liquidation of such Shares.

[11]     Initially, Option D was designated as the default option.

a.  Option A: 3% Noteholders electing Option A (or deemed to elect Option A as the default option) will receive payment of 100% of the value of its 3% Notes in new notes ("**Type A Notes**") with 3% interest to be payable in installments as follows: (i) one initial installment in the fixed amount of R$500 to be paid to the 3% Notes Trustee on behalf of all 3% Noteholders exchanging into Type A Notes up to 12 months after approval of the Lupatech Brazilian Plan; (ii) four annual installments in the fixed amount of R$1,000 to be paid to the 3% Notes Trustee on behalf of all 3% Noteholders exchanging into Type A Notes, with the first installment due 24 months after approval of the Lupatech Brazilian Plan; and (iii) 72 successive quarterly installments, calculated based on the balance of claims under Option A as of the 60th month after approval of the Lupatech Brazilian Plan, according to the payment schedule attached to the Lupatech Brazilian Plan as Attachment 5.1.2 with the first installment due 63 months after the approval date of the Lupatech Brazilian Plan.  The Type A Notes will be issued not more than 180 days after entry of an Order by the Court enforcing the Lupatech Brazilian Plan in the United States, and will be issued in Brazilian reais ("**R$**") according to the PTAX800 exchange rate in effect on May 25, 2015,[12] the date that the Lupatech Group commenced the Foreign Proceeding (the "**Request Date**"), and then converted back into United States dollars on the date of each payment.  The Type A Notes are expected to be distributed and paid through the DTC.

b.  Option B: 3% Noteholders electing Option B will receive payment of 100% of the value of its 3% Notes in new notes ("**Type B Notes**" and collectively with the

---

[12]   The PTAX800 exchange rate for buying U.S. Dollars on May 25, 2015 was 3,1212 according to the Brazilian Central Bank website.

Type A Notes, the "**New Notes**") with 3% interest to be payable in installments

(substantially similar to Option A) with a "liquidity clause." The installments are

as follows: (i) one initial installment in the fixed amount of R$500 to be paid to

the 3% Notes Trustee on behalf of all 3% Noteholders exchanging into Type B

Notes up to 12 months after approval of the Lupatech Brazilian Plan; (ii) four

annual installments in the fixed amount of R$1,000 to be paid to the 3% Notes

Trustee on behalf of all 3% Noteholders exchanging into Type B Notes,

beginning twenty-four months after approval of the Lupatech Brazilian Plan; and

(iii) 80 successive quarterly installments, calculated based on the balance of

claims under Option B as of the 60th month after approval of the Lupatech

Brazilian Plan, according to the payment schedule attached to the Lupatech

Brazilian Plan as Attachment 5.1.3 with the first installment due 63 months after

the Lupatech Brazilian Plan is approved. Type B Notes will be issued not more

than 180 days after entry of an Order by the Court enforcing the Lupatech

Brazilian Plan in the United States, and will be issued in Brazilian reais according

to the PTAX800 exchange rate in effect on the Request Date to be converted into

United States dollars on the date of each payment. The Type B Notes are

expected to be distributed and paid through the DTC. Under the so-called

"liquidity clause" of Option B, the Lupatech Group will attempt to pay down the

Type B Notes in advance by using the proceeds of certain potential asset sales.

c.  Option C allows a 3% Noteholder to exchange 100% of the value of the 3% Notes

for newly issued capital stock of Lupatech S.A. in the form of American

Depositary Shares ("ADSs") representing Shares (as defined in the Doebeli

Declaration).  The conversion shall be effected on the basis of 3.14 Brazilian reais

to each ADS and the exchange rate shall be in accordance with the PTAX800 in

effect on the date of the exchange.  Option C is also expected to be carried out

through the DTC but will require electing 3% Noteholders to execute and deliver

a Power of Attorney.

24.     In March 2015, the 3% Noteholders submitted their election through DTC.

There were 499 electing 3% Noteholders who elected as follows: (i) 225 elected Option A, (ii)

124 elected Option B, and (iii) 150 elected Option C.  After the Lupatech Brazilian Plan is

approved and the decision is recognized in the United States, the 3% Notes will be annulled and

exchanged for Type A Notes, Type B Notes or ADSs.  The issuance of the New Notes and/or

ADSs will be conducted in compliance with applicable securities laws in the United States and

Brazil.

25.     The Debtors have taken appropriate steps to ensure that the 3%

Noteholders and the 3% Trustee were informed of their rights and obligations under the

Lupatech Brazilian Plan in connection with the Foreign Proceeding and were given the

opportunity to vote on the Lupatech Brazilian Plan.  The 3% Trustee nominated its attorney in

Brazilian Court on August 18, 2015 and has been made aware of all actions related to the judicial

proceeding since that time.  In addition, three public notices have been published in the Official

Gazette to provide notice of the General Meeting and to present the list of creditors.

26.     The Debtors determined, in consultation with the 3% Notes Trustee, that

because the 3% Notes were issued in the United States pursuant to New York law to non-

Brazilian persons, these chapter 15 cases are necessary to obtain the cooperation of the 3% Notes

Trustee, DTC and certain other securities intermediaries in effecting the terms of the Lupatech

Brazilian Plan in the United States.  Section 11.4 of the Lupatech Brazilian Plan, therefore,

provides that, following entry of the Homologation Order, the Debtors will pursue relief under

chapter 15 of the Bankruptcy Code in order to bind U.S. creditors, including the 3% Noteholders,

to the terms of the Lupatech Brazilian Plan.  By commencing these chapter 15 cases, the Foreign

Representative seeks to consummate the Lupatech Brazilian Plan by obtaining an order (i)

recognizing the Foreign Proceeding as a foreign main proceeding, (ii) recognizing and enforcing

the Lupatech Brazilian Plan and the Homologation Order in the United States, (iii) authorizing

and directing the 3% Notes Trustee, the DTC, and any other necessary party to take certain

administrative actions necessary to implement the terms of the Lupatech Brazilian Plan

(including the exchange of the 3% Notes, New Notes, Shares or ADSs), and (iv) granting the 3%

Notes Trustee and the DTC certain protections in the exercise of their duties under the 3% Notes

Indenture and in accordance with the terms set forth in the proposed order approving the

Recognition and Relief Motion.

### Requests for Recognition and Related Relief[13]

27.    In connection with the filing of these chapter 15 cases, the Debtors have

submitted the Joint Administration Motion, the Notice Procedures Motion, and the Recognition

and Relief Motion.  In addition to the facts set forth above, factual bases for relief under each of

these motions is set forth below.  I believe, after consultation with counsel, that the relief

requested by each of the motions is necessary to maximize value for all of the Debtors' creditors

through the Foreign Proceeding and to properly administer these chapter 15 cases.

**A.    Joint Administration Motion**

28.    Concurrently herewith, the Foreign Representative filed the Joint

---

[13]    Capitalized terms used but not otherwise defined in this section have the meanings ascribed to them in the relevant Motion.

Administration Motion seeking entry of an order directing joint administration of these chapter 15 cases for procedural purposes only, and providing that parties in interest shall use a consolidated caption to indicate that any pleading filed relates to the jointly administered chapter 15 cases.

29.     I believe that joint administration of these chapter 15 cases is warranted because the Debtors' financial affairs and business operations are closely related and because it will ease the administrative burden of these cases on the Court and interested parties.  Based upon consultations with counsel, I expect that the various notices, motions, hearings, orders, and other pleadings in these cases will affect all of the Debtors.  There are four affiliated debtors, each of whom either issued or guaranteed the 3% Notes, the result of which is that the Bondholders have similar claims against all of the Debtors under the 3% Indenture and related transaction documents.  If the four affiliated Debtors were each to have its own docket, I believe that it would result in numerous duplicative pleadings filed for each issue and served upon separate service lists.  Accordingly, I believe that the failure to order the joint administration of these cases would lead to the duplication and filing of substantially identical documents, which would be wasteful and would unnecessarily burden the Clerk of the Court (the "**Clerk**").

30.     Moreover, I have been advised that joint administration will permit the Clerk to use a single docket for all of the Debtors' cases and to combine notices to creditors and other parties in interest.  I have further been advised that joint administration will protect parties in interest by ensuring that they will be apprised of the various matters before the Court.  I believe that the proposed caption set forth in the Joint Administration Motion should be approved as the modified caption for these chapter 15 cases.

31.     I believe that the rights of the respective creditors of each of the Debtors

17

will not be adversely affected by joint administration of these cases inasmuch as the relief sought

in the Joint Administration Motion is purely procedural and not intended to affect substantive

rights.  I have been advised that each creditor and party in interest will maintain whatever rights

it has against the particular Debtor against which it allegedly has a claim or right.[14]  I also have

been told by my counsel that the rights of all creditors will be enhanced by the reduction in costs

resulting from joint administration.  Finally, I have been advised that if the requested relief is

granted, the Court and the Clerk will be relieved of the burden of entering duplicative orders and

keeping duplicative files, and supervision of the administrative aspects of these cases by the

Office of the United States Trustee for the Southern District of New York will be simplified.

Therefore, I believe that the relief requested in the Joint Administration Motion is necessary and

appropriate and is in the best interests of the Court, the Debtors, their creditors, and other parties

in interest.

**B.      Notice Procedures Motion**

32.      Concurrently herewith, the Foreign Representative has also filed the

Notice Procedures Motion seeking the entry of an order approving (a) the form of notice of the

chapter 15 Petitions, the deadline to object to the proposed Final Order (defined below), and the

Recognition Hearing, (b) the manner of service of the Recognition Hearing Notice, (c) the

manner of service on the Master Service List of any pleadings in these chapter 15 cases and (d)

granting certain related relief.

33.      The Debtors have many creditors, potential creditors, and other parties in

interest that received actual notice or notice by publication of the Foreign Proceeding.  I believe

---

[14]      It should also be noted that, because each of the Debtors either issued or guaranteed the 3% Notes, all of
the Bondholders have similar claims against all of the Debtors under the 3% Indenture and related
transaction documents.

that many of those parties will need to be provided with notice of the proposed Final Order, the

Recognition Objection Deadline, the Recognition Hearing, or other papers filed in these chapter

15 cases.  Under the facts and circumstances of the Debtors' chapter 15 cases, I submit that

service of the Recognition Hearing Notice and other papers in the manner proposed in the Notice

Procedures Motion will provide parties in interest due and sufficient notice of the relief requested

in the Recognition Motion, the associated objection deadline and hearing dates, and of any other

papers that may be filed in these chapter 15 cases.

34.    Furthermore, I believe that the Recognition Hearing Notice provides an

efficient way for any party receiving such notice to obtain copies of pleadings filed in these

chapter 15 cases, as it provides an email address that can be used to obtain critical documents

including the Recognition Motion and the proposed Final Order.  Additionally, I believe that

service by the Foreign Representative of all pleadings that it files in these cases by United States

Mail (or, if necessary or expeditious, its foreign equivalent) first class postage prepaid, on the

Master Service List is an efficient and effective way to provide notice to such key parties in these

cases.  At the same time, I believe that such proposed procedures will not overburden the Foreign

Representative with the significant costs associated with copying and mailing all the various

documents filed in these cases to the entire matrix of putative creditors and other parties.

35.    Accordingly, I believe that the relief requested in the Notice Procedures

Motion is necessary and appropriate and is in the best interests of the Court, the Debtors, their

creditors, and other parties in interest.

## C.    Recognition and Relief Motion

36.    Concurrently herewith, the Foreign Representative has filed the

Recognition and Relief Motion seeking entry of the Final Order:  (i) granting the Petitions for

recognition in these chapter 15 cases and recognizing the Foreign Proceeding as a foreign main

19

proceeding pursuant to Section 1517 of the Bankruptcy Code, (ii) permanently enjoining all

parties from commencing or taking any action in the United States to obtain possession of,

exercise control over, or assert claims against the Debtors or their property, (iii) recognizing and

enforcing the Lupatech Brazilian Plan and the Homologation Order within the territorial

jurisdiction of the United States and (iv) granting such other and further relief as the Court deems

just and proper (the "**Final Order**").

   37. As detailed in the Recognition and Relief Motion, I believe that there is a

compelling case for recognition of the Foreign Proceeding as a foreign main proceeding.  I have

been advised by my counsel that the Foreign Proceeding is a "foreign proceeding" and that I am

a proper "foreign representative," as those terms are defined in the Bankruptcy Code.  I further

have been advised that these cases were duly and properly commenced by filing the Petitions for

Recognition accompanied by all fees, documents, and information required by the Bankruptcy

Code and the Bankruptcy Rules, including:  (a) corporate ownership statements; (b) a list

containing (i) the names and addresses of all persons or bodies authorized to administer the

Foreign Proceedings of the Debtors and (ii) all parties to litigation pending in the United States

in which the Debtors are a party at the time of the filing of the Petitions for Recognition; (c) a

statement identifying all foreign proceedings with respect to the Debtors that are known to the

Foreign Representative; and (d) certified copies of the Commencement Order, the Publication

Notice and the Authorizing Resolution.

   38. My counsel has also advised me that the automatic stay is one of the most

fundamental protections provided by the Bankruptcy Code.  I have been advised that it halts all

collection efforts, harassment, and foreclosure actions against debtors and provides them with the

necessary breathing room to step back from and attempt to resolve the financial pressures that

caused a bankruptcy filing.

39.    I believe that the Debtors could suffer irreparable harm if a stay of actions by the 3% Notes Trustee or recalcitrant 3% Noteholders in the United States is not granted by the Court following its recognition of the Foreign Proceeding.  I believe that an involuntary filing against any of the Debtors or their affiliates in the United States would cause significant disruption to the Debtors and their management at this stage of their restructuring process, and ultimately would have the potential to result in the collapse of the Lupatech Brazilian Plan and failure of the Foreign Proceeding.  Preventing any such filing or any other enforcement action that could disrupt the Foreign Proceeding or threaten the Debtors' foreign estates is necessary to ensure the success of the Foreign Proceeding, which the Debtors anticipate will result in their successful reorganization and a fair distribution to the Bondholders and other creditors, pursuant to orders of the Brazilian Court.

40.    I can attest that the Foreign Proceeding is pending in Brazil before the Brazilian Court.  I can further attest that, as set forth in detail in the Recognition and Relief Motion, Brazil is the center of each of the Debtors' main interests.  Among other things, the Debtors maintain the majority of their operations, hold the majority of their assets, carry out the majority of their management functions, and have the majority in number of their creditors in Brazil.  Therefore, Brazil is clearly ascertainable by third parties as the Debtors' center of main interests.

41.    Finally, as described in the Recognition and Relief Motion, and as discussed with counsel, I understand and believe that recognizing the Foreign Proceeding and granting the relief requested therein is consistent with the purpose of chapter 15 of the Bankruptcy Code and the public policy of the United States.

42.     Therefore, I believe that the final relief requested in the Recognition and

Relief Motion is necessary and appropriate and is in the best interests of the Debtors, their

creditors, and other parties in interest.

## **Conclusion**

43.     Based on the foregoing, I believe that the relief being requested at the

outset of these chapter 15 cases is well-justified, necessary under the circumstances, in the best

interests of the Debtors and their creditors, and should be granted.

I certify pursuant to 28 U.S.C. § 1746 under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief, and that, (a) the copy of the Lupatech Press Release attached hereto as Exhibit A is a true and correct copy, (b) the copy of the Commencement Order attached hereto as Exhibit B is a true and correct copy of the same as entered by the Brazilian Court, (c) the copy of the September Notice attached hereto as Exhibit C is a true and correct copy, (d) the copy of the Publication Notice attached hereto as Exhibit D is a true and correct copy, (e) the copy of the Lupatech Brazilian Plan attached hereto as Exhibit E is a true and correct copy, (f) the copy of the minutes of the General Meeting attached hereto as Exhibit F is a true and correct copy, (g) the copy of the Homologation Order attached hereto as Exhibit G is a true and correct copy of the same as entered by the Brazilian Court, and (h) the copy of the Authorizing Resolution is attached hereto as Exhibit H is a true and correct copy of the same as adopted by Lupatech S.A.'s Board of Directors.  Translations of the Portuguese language documents attached hereto have been individually certified by the person responsible for such translations as provided in the Translation Certificates attached hereto as Exhibit I.

São Paulo, Brazil
Dated: April 27, 2016

/s/ Ricardo Doebeli
Ricardo Doebeli
Authorized Foreign Representative of the Debtors

23

**Exhibit A**

**Lupatech Press Release**



**LUPATECH S.A.**
CNPJ/MF N° 89.463.822/0001-12
NIRE 35.3.0045756-1
Companhia Aberta de Capital Autorizado - BM&FBOVESPA Novo Mercado

## FATO RELEVANTE

### PEDIDO DE RECUPERAÇÃO JUDICIAL

**Nova Odessa, 25 de maio de 2015** – A Lupatech S.A. (BM&FBOVESPA: **LUPA3**) (OTCQX: **LUPAY**) (Lupatech Finance Limited Notes: **ISIN US550436AB54** e **ISIN USG57058AC66** "Notes") ("Lupatech" ou "Companhia"), comunica aos seus acionistas e ao mercado em geral que, na data de hoje, ajuizou, em conjunto com outras empresas do Grupo Lupatech perante a Comarca de São Paulo, Estado de São Paulo, pedido de recuperação judicial, nos termos do artigo 51 e seguintes da Lei nº 11.101/05. Informa, ainda, que o referido pedido de recuperação judicial foi ajuizado em caráter de urgência, com base no artigo 122, parágrafo único, da Lei nº 6.404/76, e que foi convocada Assembleia Geral Extraordinária para ratificação da decisão tomada por seu Conselho de Administração.

A Administração vem empreendendo esforços na negociação com credores, na desmobilização de ativos *non-core* e na busca por potenciais investidores no sentido de equilibrar as demandas de capital de giro e de *capex* da Companhia para retomar com maior vigor suas atividades operacionais. No entanto, o cenário foi agravado com a adversa conjuntura do setor de óleo e gás criada a partir da drástica redução do preço do barril do petróleo no mercado internacional e do significativo aumento da percepção de risco na cadeia de produtos e serviços para a segmento no Brasil, com efeitos negativos sobre toda a cadeia de suprimentos do setor, o que contribuiu para frustrar algumas expectativas e levar a Companhia a apresentar o pedido de recuperação judicial nesta data.

A decisão de ajuizar o pedido de recuperação judicial tem por objetivo preservar o valor da Companhia, sua função social e o estímulo à atividade econômica, atendendo de forma organizada aos interesses de seus credores e acionistas e contingenciando de maneira responsável os ativos da Companhia.

O departamento de Relações com Investidores permanece à disposição para maiores esclarecimentos.

Nova Odessa, 25 de maio de 2015

**Ricardo Doebeli**
Diretor Presidente e de Relações com Investidores
**Lupatech S.A.**

CONTATOS:

Relações com Investidores
Telefone: + 55 (11) 2134-7000 ou + 55 (11) 2134-7089
E-mail: ri@lupatech.com.br

## **Exhibit B**

**Commencement Order**

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Sala 1608, Centro - CEP 01501-900, Fone: (11)
2171-6505, São Paulo-SP - E-mail: sp1falencias@tj.sp.gov.br
**Horário de Atendimento ao Público: das 12h30min às19h00min**

| DECISÃO |
|---|

Processo Digital nº:      **1050924-67.2015.8.26.0100**
Classe - Assunto       **Recuperação Judicial - Recuperação judicial e Falência**
Requerente:        **Lupatech - Equipamentos e Serviços para Petróleo Ltda. e outros**
Requerido:        **Lupatech S/A e outros**

CONCLUSÃO
Em **22 de junho de 2015**, faço estes autos conclusos ao MM. Juiz
de Direito. Eu, Márcio Antonio de Oliveira,  mat. nº 815.745-9.

Juiz(a) de Direito: Dr(a). **Daniel Carnio Costa**


Vistos.


**LUPATECH - EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA.,
CNPJ 03.141.023/0001-04, LUPATECH S/A, CNPJ 89.463.822/0001-12, MIPEL INDÚSTRIA
E COMÉRCIO DE VÁLVULAS LTDA., CNPJ 07.743.815/0001-00, AMPER AMAZONAS
PERFURAÇÕES LTDA., CNPJ 05.488.549/0001-90, ITACAU AGENCIAMENTOS
MARÍTIMOS LTDA., CNPJ 29.416.666/0001-07, LOCHNESS PARTICIPAÇÕES S/A,
CNPJ 09.443.937/0001-06, MATEP S/A MÁQUINAS E EQUIPAMENTOS, CNPJ
33.311.788/0001-06, PREST PERFURAÇÕES LTDA., CNPJ 05.836.901/0001-31,
LUPATECH PERFURAÇÃO E COMPLETAÇÃO LTDA., CNPJ 15.676.893/0003-29,
SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S.A, CNPJ 15.129.646/0001-40 E
LUPATECH FINANCE LTD.**, denominadas "Grupo Lupatech" requereram a recuperação
judicial em 25/05/2015**.**

Os documentos juntados aos autos, comprovam que as requerentes preenchem os
requisitos legais para requerimento da recuperação judicial, conforme art. 48 da Lei nº 11.101/05.
A petição inicial foi adequadamente instruída, nos exatos termos exigidos pelo art. 51 da Lei nº
11.101/05. Em síntese, o pedido está em termos para ter o seu procarimento deferido, já que
presentes os requisitos legais (artigos 47, 48 e 51 da Lei 11.101/2005), verificando-se a
possibilidade de superação da "crise econômico-financeira" da devedora[1].

Em que pese ainda pendente de julgamento o conflito de competência suscitado
pelo juízo da 1ª Vara Judicial de Nova Odessa, muito embora o juízo prevento seja o da 2ª Vara

---

[1] A Recuperação Judicial prevista pela Lei 11.101/05 é nítida manifestação da tendência mundial de mitigação do caráter
potestativo dos direitos dos credores em prol da preservação da empresa, como meio da satisfação do direito universal ao
desenvolvimento dos povos, declarado pela ONU em 1988 e, no âmbito nacional, consagrado como objetivo fundamental
de nossa República, no art. 3º, II, da CF. A economia e a propriedade não são senhores e, sim, instrumentos do fim
constitucional de assegurar a todos existência digna conforme os ditames da justiça social, na forma do art. 170, da CF. O
art. 1º, IV, da CF, reconhece expressamente como princípio fundamental de nosso Estado Democrático de Direito os
valores sociais da livre iniciativa. O espírito do instituto da Recuperação Judicial e a sua conformidade constitucional
estão em linha com o que sustentam Ricardo Sayeg e Wagner Balera, ao exporem que: *"O neoliberalismo econômico,
sem os freios e a calibragem humanistas, é tanto incapaz de corrigir as externalidades negativas como de harmonizar
adequadamente as externalidades, especialmente as privadas, não equivalentes e reciprocamente consideradas. Tal
calibragem é necessária e deve incidir sobre a universalidade do exercício dos direitos subjetivos naturais de
propriedade, relativizando-os, ao invés de seguir o viés do neoliberal, em que esse exercício tende ao absoluto."* (O
Capitalismo Humanista, Kbr: SP, 2011, p. 178)

Este documento foi liberado nos autos em 22/06/2015 às 17:41, por Márcio Antonio de Oliveira, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 128B7A8.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Sala 1608, Centro - CEP 01501-900, Fone: (11)
2171-6505, São Paulo-SP - E-mail: sp1falencias@tj.sp.gov.br
**Horário de Atendimento ao Público: das 12h30min às19h00min**

Judicial daquela Comarca, por conta da homologação do plano de recuperação extrajudicial, a demora no deferimento do processamento da recuperação judicial pode ser prejudicial à continuidade dos negócios das requerentes.

Nesse sentido, considerando que o E. TJSP determinou que esse juízo decida sobre as questões urgentes até a definição da competência, o deferimento do processamento da recuperação judicial é medida que se faz urgente, sem prejuízo de posterior remessa dos autos ao juízo competente.

Assim, nos termos do art. 52 da Lei 11.101/2005, **DEFIRO** o processamento da recuperação judicial das empresas **Lupatech - Equipamentos e Serviços para Petróleo Ltda., CNPJ 03.141.023/0001-04, Lupatech S/A, CNPJ 89.463.822/0001-12, Mipel Indústria e Comércio de Válvulas Ltda., CNPJ 07.743.815/0001-00, Amper Amazonas Perfurações Ltda., CNPJ 05.488.549/0001-90, Itacau Agenciamentos Marítimos Ltda., CNPJ 29.416.666/0001-07, Lochness Participações S/A, CNPJ 09.443.937/0001-06, Matep S/A Máquinas e Equipamentos, CNPJ 33.311.788/0001-06, Prest Perfurações Ltda., CNPJ 05.836.901/0001-31, Lupatech Perfuração e Completação Ltda., CNPJ 15.676.893/0003-29, Sotep Sociedade Técnica de Perfuração S.a, CNPJ 15.129.646/0001-40 e Lupatech Finance Ltd.**.

Portanto:

1) Como administrador judicial (art. 52, I, e art. 64) nomeio **Alta Administração Judicial Ltda.,** CNPJ n. 20.282.418/0001-46, representada por Afonso Rodeguer Neto, OAB/SP 60.583, com endereço à Avenida Paulista, n. 1439, cj. 132, CEP 01311-926, Cerqueira Cesar, São Paulo/SP, para os fins do art. 22, III, devendo ser intimado, para que em 48 (quarenta e oito) horas assine o termo de compromisso, pena de substituição (arts. 33 e 34), nos termos do art. 21, parágrafo único, da Lei 11.101/05, fica<u>ndo autorizada a intimação via e-mail institucional;</u>

1.1) Deve o administrador judicial informar o juízo a situação da empresa em 10 dias, para fins do art. 22, II, "a" (primeira parte) e "c", da Lei n. 11.101/05.

1.2) Caso seja necessário a contratação de auxiliares (contador, advogados etc.) deverá apresentar o contrato, no prazo de 10 dias.

1.3) <u>Caberá ao administrador judicial fiscalizar a regularidade do processo e o cumprimento dos prazos pelas recuperandas.</u>

1.4) <u>No mesmo prazo assinalado no item 1.1, deverá o administrador judicial apresentar sua proposta de honorários.</u>

1.5) <u>Quanto aos relatórios mensais, que não se confundem com o relatório determinado no item 1.1, supra, deverá o administrador judicial protocolar o primeiro relatório como incidente à recuperação judicial, ao passo que não deverão ser juntados nos autos principais, sendo que os relatórios mensais subsequentes deverão ser, sempre, direcionados ao incidente já instaurado.</u>

2) Nos termos do art. 52, II, da Lei 11.101/2005, determino a "dispensa da apresentação de certidões negativas para que os devedores exerçam suas atividades, exceto para contratação com o Poder Público ou para recebimento de benefícios ou incentivos fiscais ou creditícios", no caso, a devedora, observando-se o art. 69 da LRF, ou seja, que o nome empresarial

Este documento foi liberado nos autos em 22/06/2015 às 17:41, por Márcio Antonio de Oliveira, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 128B7A8.

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Sala 1608, Centro - CEP 01501-900, Fone: (11)
2171-6505, São Paulo-SP - E-mail: sp1falencias@tj.sp.gov.br
**Horário de Atendimento ao Público: das 12h30min às19h00min**

seja seguido da expressão "em Recuperação Judicial", oficiando-se, inclusive, à JUCESP para as devidas anotações, providenciando as recuperandas o encaminhamento.

3) Determino, nos termos do art. 52, III, da Lei 11.101/2005, "**a suspensão de todas as ações ou execuções contra os devedores**", na forma do art. 6º da LRF, devendo permanecer "os respectivos autos no juízo onde se processam, ressalvadas as ações previstas nos §§ 1º, 2º e 7º do art. 6º dessa Lei e as relativas a créditos excetuados na forma dos §§ 3º e 4º do art. 49 dessa mesma Lei", providenciando as **devedoras** as comunicações competentes (art. 52, § 3º).

4) Determino, nos termos do art. 52, IV, da Lei 11.101/2005, às devedoras a "apresentação de contas demonstrativas **mensais** enquanto perdurar a recuperação judicial, sob pena de destituição de seus administradores", sendo que o primeiro demonstrativo mensal deverá ser protocolado como incidente à recuperação judicial, ao passo que não deverão ser juntados nos autos principais, sendo que os demonstrativos mensais subsequentes deverão ser, sempre, direcionados ao incidente já instaurado.

5) Expeça-se comunicação, **por carta**, às Fazendas Públicas Federal e de todos os Estados e Municípios em que a devedora tiver estabelecimentos e filiais (LRF, art. 52, V), providenciando as recuperandas o encaminhamento.

6) O prazo para **habilitações ou divergências aos créditos relacionados** (pela devedora) é de 15 (quinze) dias a contar da publicação do respectivo edital (LRF, art. 7º, § 1º).

Dessa maneira, expeça-se o edital a que se refere o art. 52, § 1º, da LRF, onde, para conhecimento de todos os interessados, deverá constar, também, o passivo fiscal, com advertência dos prazos dos art. 7º, § 1º, e art. 55, da LRF.

Considerando que as recuperandas apresentaram minuta da relação de credores elencada na inicial, nos moldes do artigo 41 da Lei n. 11.101/05, deverá a serventia complementar a referida minuta com os termos desta decisão, bem com intimar as recuperandas, por telefone ou e-mail institucional, certificando-se nos autos, para que procedam ao recolhimento do valor das despesas de publicação do edital no Diário Oficial Eletrônico do Tribunal de Justiça de São Paulo, de acordo com o número de caracteres, no prazo de 24 horas, sob pena de revogação.

Deverão também as recuperandas providenciar a publicação do edital em jornal de grande circulação no prazo de 05 dias.

7) Eventuais habilitações ou divergências quanto aos créditos relacionados pela devedora (art. 7º, § 2º), que são dirigidas ao administrador judicial, **deverão ser digitalizadas e encaminhadas diretamente ao administrador judicial**, **SOMENTE através do e-mail altaadmjudicial@uol.com.br**, criado especificamente para este fim e informado no edital a ser publicado, conforme item 6, supra.

Observo, neste tópico, em especial quanto aos créditos trabalhistas, que para eventual divergência ou habilitação é necessário que exista sentença trabalhista líquida e exigível (com trânsito em julgado), competindo ao MM. Juiz do Trabalho eventual fixação do valor a ser reservado.

8) O plano de recuperação judicial deve ser apresentado no prazo de 60 dias, na forma do art. 53, sob pena de convolação da recuperação judicial em falência.

Este documento foi liberado nos autos em 22/06/2015 às 17,41, por Márcio Antonio de Oliveira, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 12BB7A8.

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Sala 1608, Centro - CEP 01501-900, Fone: (11) 2171-6505, São Paulo-SP - E-mail: sp1falencias@tj.sp.gov.br
**Horário de Atendimento ao Público: das 12h30min às19h00min**

Com a apresentação do plano, expeça-se o edital contendo o aviso do art. 53, parágrafo único, da Lei n. 11.101/05, com prazo de 30 dias para as objeções, devendo a recuperanda providenciar, no ato da apresentação do plano, a minuta do edital, inclusive em meio eletrônico, bem como o recolhimento das custas para publicação.

9) Caso ainda não tenha sido publicada a lista de credores pelo administrador judicial, a legitimidade para apresentar tal objeção será daqueles que já constam do edital das devedoras e que tenham postulado a habilitação de crédito.

10) Publicada a relação de credores apresentada pelo administrador judicial (art. 7º, § 2º), eventuais impugnações (art. 8º) deverão ser protocoladas como incidente à recuperação judicial, ao passo que não deverão ser juntados nos autos principais (art. 8º, parágrafo único).

11) Por fim, muito embora a petição inicial esteja suficientemente instruída para fins de deferimento do processamento do pedido de recuperação judicial, observo a necessidade de que as recuperandas complementem a documentação inicial, a fim de providenciar, no prazo de 10 dias, os documentos apontados no laudo da perícia prévia acostada às fls. 413/442, bem como sanar as divergências também apontadas no referido laudo.

12) Intimem-se, inclusive o Ministério Público.

Intime-se.

São Paulo, **22 de junho de 2015**.

<div style="border:1px solid black; padding:10px; text-align:center">

**DOCUMENTO ASSINADO DIGITALMENTE NOS TERMOS DA LEI 11.419/2006, CONFORME IMPRESSÃO À MARGEM DIREITA**

</div>

Este documento foi liberado nos autos em 22/06/2015 às 17:41, por Márcio Antonio de Oliveira, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 128B7A8.

## **Exhibit C**

**September Notice**

afixado e publicado na forma da lei. NADA MAIS. Dado e passado nesta cidade de São Paulo, aos 19 de agosto de 2015.

## UPJ 41ª a 45ª VARAS CÍVEIS

EDITAL DE CITAÇÃO - PRAZO DE 20DIAS.PROCESSO Nº 1080176-52.2014.8.26.0100O(A) MM. Juiz(a) de Direito da 43ª Vara Cível, do Foro Central Cível, Estado de São Paulo, Dr(a). Rodolfo César Milano, na forma da Lei, etc.FAZ SABER a(o) Frutos da Moda LTDA. - EPP, Joao Teodoro, 1614, Bras - CEP 03009-000, São Paulo-SP, CNPJ 12.011.397/0001-04, na pessoa de sua representante legal Maria do Carmo de Aguiar Alves, CPF 301.715.122-0 que Têxtil MN Comércio de Tecidos e Confecções Ltda, lhe ajuizou a ação Execução, para cobrança da quantia de R$ 18.141,11. Estando a executada em lugar ignorado, foi deferida a sua citação e intimação por edital, para que em 03 dias, após o prazo supra, pague o débito atualizado e acrescido das cominações legais, sob pena de ser convertido automaticamente em penhora o arresto procedido sobre o valor de R$ 1.427,29 do Banco do Brasil Ag. 1897 . 072014000012895622 em 28/11/2014. Convertido, terá a executada o prazo de 15 dias, independente de nova intimação, para oferecer embargos à execução, sob as penas da Lei e prosseguimento do feito nos ulteriores termos. Será o presente edital, afixado e publicado na forma da lei. NADA MAIS. Dado e passado nesta cidade de São Paulo, aos 03 de setembro de 2015.

# Varas de Falências

## 1ª Vara de Falência e Recuperações Judiciais

5btmw.000 (18/09/2015)
1ª Vara de Falências e Recuperações Judiciais
1º Ofício de Falências e Recuperações Judiciais

EDITAL ART. 53, PARÁGRAFO ÚNICO, DA LEI 11.101/2005
Edital expedido nos autos da Recuperação Judicial de LUPATECH S.A., LUPATECH EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA., MIPEL INDÚSTRIA E OMÉRCIO DE VÁLVULAS LTDA., AMPER AMAZONAS PERFURAÇÕES LTDA., ITACAU AGENCIAMENTOS MARÍTIMOS LTDA., LOCHNESS PARTICIPAÇÕES S/A, MATEP S/A MÁQUINAS E EQUIPAMENTOS, PREST PERFURAÇÕES LTDA., LUPATECH - PERFURAÇÃO E COMPLETAÇÃO LTDA., SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S/A, e LUPATECH FINANCE LIMITED, com prazo de 30 dias, proc. nº 1050924-67.2015.8.26.0100 (artigo 53, parágrafo único, da Lei 11.101/2005). O Doutor Daniel Carnio Costa, Juiz de Direito da 1ª Vara de Falências, Recuperações Judiciais e Conflitos Relacionados à Arbitragem da Capital, na forma da Lei, etc... FAZ SABER que, em atendimento ao disposto no art. 53, parágrafo único, da Lei 11.101/05, foi apresentado pelas Recuperandas o plano de recuperação judicial, devidamente acompanhado da análise de viabilidade econômico-financeira e dos laudos de avaliação de seus bens, os quais se encontram juntados às fls. 6.936 a 8.356 dos autos digitais, sendo fixado o prazo de 30 dias para objeção, a contar da data da publicação deste edital. Caso ainda não tenha sido publicada a lista de credores pelo Administrador Judicial, a legitimidade para apresentar tal objeção será daqueles que já constam do edital do devedor e que tenham postulado a habilitação de crédito, observado o art. 55 da Lei 11.101/2005 (parágrafo único do art. 55 da Lei 11.101/2005). O plano de recuperação judicial completo, na forma do art. 53 da Lei 11.101/05, pode ser consultado nos autos da Recuperação Judicial e por meio de consulta ao site das recuperandas: http://www.lupatech.com.br e ao site do Administrador Judicial: http://www.altaadmjudicial.com. E, para que produza seus efeitos de direito, será o presente edital, por extrato, afixado e publicado na forma da Lei. São Paulo, 10 de setembro de 2015.

5btmw.001 (18/09/2015)
1ª Vara de Falências e Recuperações Judiciais
1º Ofício de Falências e Recuperações Judiciais

Edital de convocação para a Assembléia Geral de Credores, expedido nos autos da Recuperação Judicial - Administração judicial da empresa AQUARIUS SBC EDITORA GRÁFICA LTDA, PROCESSO Nº 0026467-56.2013.8.26.0100 O(A) Doutor(a) Daniel Carnio Costa, MM. Juiz(a) de Direito da 1ª Vara de Falências e Recuperações Judiciais, do Estado de São Paulo, na forma da Lei, etc. Faz Saber que pelo presente edital ficam convocados todos os credores de Aquarius SBC Editora Gráfica Ltda, CNPJ 00.618.809/0001-81, para comparecerem e se reunirem em Assembléia a ser realizada à Rua Riga, nº 100 - Sacomã, São Paulo/SP, CEP: 04249-070, no próximo dia 08.10.2015, às 09:00 horas em primeira convocação, ocasião em que se realizará a assembleia com a presença dos credores titulares de mais de metade dos créditos de cada classe, computados pelo valor e, caso não haja quorum nesta ocasião ficam desde já convocados os Senhores credores para a realização, em 2ª Convocação desta Assembléia Geral, para o dia 15.10.2015, às 09:00 horas, quando a mesma será realizada com a presença de qualquer número de credores presentes. A presente Assembléia é convocada para que os credores deliberem sobre as seguintes ordens do dia: a) aprovação, rejeição ou modificação do Plano de Recuperação Judicial apresentado pelo devedor; b) a constituição do Comitê de Credores, a escolha de seus membros e sua substituição; e c) outras assuntos de interesse dos credores e da Recuperanda. Os Senhores credores poderão obter cópia do plano de recuperação judicial a ser submetido à deliberação de assembléia, no 1º Ofício de Falência e Recuperação Judicial da Comarca da Capital do Estado de São Paulo, localizado na Praça João Mendes Jr. s/nº, 16º andar, sala 1610, Centro, São Paulo, SP e no escritório do administrador judicial, sito no Largo São Bento, nº 64, 8º andar, Centro, São Paulo, de 2ª a 6ª, no horário comercial. A presente Convocação será publicada e afixada na sede da empresa e suas filiais na forma de lei (art. 36 da lei 11.101/2005), ficando estabelecido ainda que a Assembléia Geral será procedida conforme determina a Lei nº 11.101/2005. Para que produza seus regulares efeitos de direito, é expedido o presente edital, por extrato, afixado e publicado na forma da lei. São Paulo, 18 de setembro de 2015.

Este documento foi protocolado em 22/09/2015 às 11:34, é cópia do original assinado digitalmente por VANCLER PAULINO DE SOUZA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 15AAACA.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Sala 1608, Centro - CEP 01501-900, Fone: (11)
2171-6505, São Paulo-SP - E-mail: sp1falencias@tj.sp.gov.br
**Horário de Atendimento ao Público: das 12h30min às19h00min**

| CERTIDÃO |
|:---:|

| | |
|---|---|
| Processo Digital n°: | **1050924-67.2015.8.26.0100** |
| Classe – Assunto: | **Recuperação Judicial - Recuperação judicial e Falência** |
| Requerente: | **Lupatech S/A e outros** |
| Requerido: | **Lupatech S/A e outros** |

# C E R T I D Ã O

Certifico e dou fé que o edital do art. 53, § único da lei 11.101/2005 retro, foi disponibilizado no DJE em 21/09/2015. Considera-se data da publicação o primeiro dia útil à data subsequente da disponibilização. Nada Mais. São Paulo, 22 de setembro de 2015. Eu, ___, Vancler Paulino de Souza, Escrevente Técnico Judiciário.

Este documento foi liberado nos autos em 22/09/2015 às 11:47, é cópia do original assinado digitalmente por VANCLER PAULINO DE SOUZA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 15AAE4D.

## Exhibit D

**Publication Notice**





# LUPATECH S.A.
CNPJ/MF N° 89.463.822/0001-12
NIRE 35.3.0045756-1
Companhia Aberta de Capital Autorizado - BM&FBOVESPA Novo Mercado

**FATO RELEVANTE**

## ASSEMBLEIA GERAL DE CREDORES

**Nova Odessa, 27 de outubro de 2015** – A Lupatech S.A. (BM&FBOVESPA: **LUPA3**) (OTCQX: **LUPAY**) (Lupatech Finance Limited Notes: **ISIN US550436AB54** e **ISIN USG57058AC66** "Notes") ("Lupatech" ou "Companhia"), comunica aos seus acionistas e ao mercado em geral que o Juiz de Direito da 1ª Vara de Falências, Recuperações Judiciais e Conflitos Relacionados à Arbitragem de Capital, Doutor Daniel Carnio Costa, convocou todos os credores do Grupo Lupatech a comparecerem à Assembleia Geral de Credores a ser realizada, em primeira chamada, no dia 11 de novembro de 2015, às 15:00 horas, com credenciamento a partir das 12:00, ocasião em que se realizará a assembleia com a presença dos credores titulares de mais da metade dos créditos de cada classe, computados pelo valor, e, caso não haja quórum nesta ocasião, em segunda chamada, no mesmo horário no dia 18 de novembro de 2015, no endereço do Centro de Convenções do Centro Empresarial de São Paulo – CENESP, localizado na Avenida Maria Coelho Aguiar, 215 – Jardim São Luis, São Paulo – SP – CEP 05804-900, para deliberarem sobre a seguinte ordem do dia:

a) aprovação, rejeição ou modificação do Plano de Recuperação Judicial apresentado pelas Recuperandas;

b) constituição do Comitê de Credores, a escolha de seus membros e sua substituição;

c) outros assuntos de competência da Assembleia, nos termos do artigo 35 da Lei 11.101/05.

A Assembleia será presidida pelo representante da Administradora Judicial nomeada por este Juízo, a Alta Administração Judicial Ltda. Os credores legitimados a votar que desejarem se fazer representar por procurador, conforme disposto no art. 37, §4º, da Lei 11.101/05, deverão entregar, com antecedência mínima de 24 (vinte e quatro) horas do início da Assembleia, à Administradora Judicial, Alta Administração Judicial Ltda., em seu endereço, Avenida Paulista, nº 1439, 13º andar, Bela Vista, São Paulo-SP, CEP 01311-926, documento hábil que comprove seus poderes ou a indicação das folhas dos autos do processo de Recuperação Judicial em que se encontrem tais documentos. Em se tratando de pessoa jurídica, deverão ser apresentados os documentos societários que comprovem os poderes do(s) representante(s) signatário(s) da procuração e demais documentos hábeis que comprovem a outorga de poderes, ou a indicação das folhas dos autos do processo em que se encontrem os mencionados documentos societários. Para que os Sindicatos dos Trabalhadores possam representar seus associados, deverão observar o procedimento previsto no art. 37, §§5º e 6º, inciso I da Lei 11.101/05. Os credores poderão obter cópia do Plano de Recuperação Judicial a ser submetido à deliberação da Assembleia pelo sítio eletrônico do Grupo Lupatech (http://www.lupatech.com.br/ri), pelo sítio eletrônico da Administradora Judicial (http://www.altaadmjudicial.com/), ou por meio de consulta aos autos do processo eletrônico nº 1050924-67.2015.8.26.0100 (fls. 6938/7001) no site do Tribunal de Justiça do Estado de São Paulo (http://www.tjsp.jus.br/).

**Ricardo Doebeli**
Diretor de Relações com Investidores





**LUPATECH S.A.**
CNPJ/MF n° 89.463.822/0001-12

<u>C**ONTATOS** – R**ELAÇÕES COM** I**NVESTIDORES**</u>

**Telefone: + 55 (11) 2134-7000 ou + 55 (11) 2134-7089        Email: ri@lupatech.com.br**

**SOBRE A LUPATECH -** Somos um dos **maiores fornecedores brasileiros de produtos e serviços de alto valor agregado com foco no setor de petróleo e gás**. Nossos negócios estão organizados em dois segmentos: **Produtos e Serviços**. O segmento **Produtos** oferece, principalmente para o setor de petróleo e gás, cabos para ancoragem de plataformas de produção, válvulas, equipamentos para completação de poços e compressores para gás natural veicular. O segmento **Serviços** oferece serviços de *workover*, perfuração, intervenção em poços, revestimento e inspeção de tubulações.

*Nós fazemos declarações sobre eventos futuros que estão sujeitas a riscos e incertezas. Tais declarações têm como base estimativas e suposições de nossa Administração e informações a que a Companhia atualmente tem acesso. Declarações sobre eventos futuros incluem informações sobre nossas intenções, estimativas ou expectativas atuais, assim como aquelas dos membros do Conselho de Administração e Diretores da Companhia. As ressalvas com relação a declarações e informações acerca do futuro também incluem informações sobre resultados operacionais possíveis ou presumidos, bem como declarações que são precedidas, seguidas ou que incluem as palavras "acredita", "poderá", "irá", "continua", "espera", "prevê", "pretende", "planeja", "estima" ou expressões semelhantes. As declarações e informações sobre o futuro não são garantias de desempenho. Elas envolvem riscos, incertezas e suposições porque se referem a eventos futuros, dependendo, portanto, de circunstâncias que poderão ocorrer ou não. Os resultados futuros e a criação de valor para os Acionistas poderão diferir de maneira significativa daqueles expressos ou estimados pelas declarações com relação ao futuro. Muitos dos fatores que irão determinar estes resultados e valores estão além da capacidade de controle ou previsão da Lupatech.*

*Esse documento não é uma oferta de venda de valores mobiliários nos Estados Unidos da América. Os valores mobiliários não podem ser ofertados ou vendidos nos Estados Unidos da América sem registro ou dispensa de registro no âmbito da U.S. Securities Act de 1933, conforme alterada. A Companhia não pretende registrar qualquer parte de qualquer oferta ou realizar uma oferta pública de valores mobiliários nos Estados Unidos da América.*

**<u>Exhibit E</u>**

**Lupatech Brazilian Plan**

# PLANO DE RECUPERAÇÃO JUDICIAL
## DO GRUPO LUPATECH

**LUPATECH S.A. – EM RECUPERAÇÃO JUDICIAL**

**LUPATECH – EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA. – EM RECUPERAÇÃO JUDICIAL**

**MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA. – EM RECUPERAÇÃO JUDICIAL**

**AMPER AMAZONAS PERFURAÇÕES LTDA. – EM RECUPERAÇÃO JUDICIAL**

**ITACAU AGENCIAMENTOS MARÍTIMOS LTDA. – EM RECUPERAÇÃO JUDICIAL**

**LOCHNESS PARTICIPAÇÕES S/A – EM RECUPERAÇÃO JUDICIAL**

**MATEP S/A MÁQUINAS E EQUIPAMENTOS – EM RECUPERAÇÃO JUDICIAL**

**PREST PERFURAÇÕES LTDA. – EM RECUPERAÇÃO JUDICIAL**

**LUPATECH - PERFURAÇÃO E COMPLETAÇÃO LTDA. – EM RECUPERAÇÃO JUDICIAL**

**SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S/A – EM RECUPERAÇÃO JUDICIAL**

**LUPATECH FINANCE LIMITED – EM RECUPERAÇÃO JUDICIAL**

São Paulo, 24 de agosto de 2015.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

**Lupatech S.A. – Em Recuperação Judicial**, sociedade anônima de capital aberto constituída e organizada segundo as leis do Brasil, inscrita no CNPJ/MF sob o nº 89.463.822/0001-12, com sede estatutária em Nova Odessa, Estado de São Paulo, Brasil, na Rodovia Anhanguera, KM 119, sentido interior/capital, prédio C, Distrito Industrial, CEP 13460-000; **Lupatech – Equipamentos e Serviços para Petróleo Ltda. – Em Recuperação Judicial**, sociedade empresária limitada constituída e organizada segundo as leis do Brasil, inscrita no CNPJ/MF sob o nº 03.141.023/0001-04, com sede estatutária em Macaé, Estado do Rio de Janeiro, na Estrada da Pedreira Jundia, n. 50, Imboassica, CEP 29925-530; **Mipel Indústria e Comércio de Válvulas Ltda. – Em Recuperação Judicial**, sociedade limitada constituída e organizada segundo as leis do Brasil, inscrita no CNPJ/MF sob o nº 07.743.815/0001-00, com sede estatutária em Veranópolis, Estado do Rio Grande do Sul, na Rua Casemiro Ecco, n. 417, CEP 95330-000; **Amper Amazonas Perfurações Ltda. – Em Recuperação Judicial**, sociedade limitada constituída e organizada segundo as leis do Brasil, inscrita no CNPJ/MF sob o nº 05.488.549/0001-90, com endereço em Catu, Estado da Bahia, na Rua José Visco, s/n, Bairro Pioneiro, CEP 48110-000; **Itacau Agenciamentos Marítimos Ltda. – Em Recuperação Judicial**, sociedade limitada constituída e organizada segundo as leis do Brasil, inscrita no CNPJ/MF sob o nº 29.416.666/0001-07, com endereço em Maruim, Estado de Sergipe, na Rodovia BR 101, Km 06, s/n, Bairro Boa Hora, CEP 29135-000; **Lochness Participações S/A – Em Recuperação Judicial**, sociedade anônima constituída e organizada segundo as leis do Brasil, inscrita no CNPJ/MF sob o nº 09.443.937/0001-06, com endereço nesta cidade de São Paulo, Estado de São Paulo, Brasil, na Avenida Maria Coelho Aguiar, 215 Bloco B, 5º andar, Jardim São Luis, CEP 05804-900; **Matep S/A Máquinas e Equipamentos – Em Recuperação Judicial**, sociedade anônima constituída e organizada segundo as leis do Brasil, inscrita no CNPJ/MF sob o nº 33.311.788/0001-06, com endereço em Catu, Estado da Bahia, na Rua José Visco, s/n, Bairro Pioneiro, CEP 48110-000; **Prest Perfurações Ltda. – Em Recuperação Judicial**, sociedade limitada constituída e organizada segundo as leis do Brasil, inscrita no CNPJ/MF sob o nº 05.836.901/0001-31, com endereço em Mossoró, Estado do Rio Grande do Norte, na Rua Ranieri Barbosa, nº 297, Parte A, Bairro Dom Jaime Câmara, CEP 59.628-803; **Lupatech - Perfuração e Completação Ltda. – Em Recuperação Judicial,** sociedade limitada constituída e organizada segundo as leis do Brasil, inscrita no CNPJ/MF sob o nº 15.676.893/0003-29, com endereço em Macaé, Estado do Rio de Janeiro, na Estrada da Pedreira Jundiá, nº 50, Galpão 3, Bairro Imboassica, CEP 27925-530; **Sotep Sociedade Técnica de Perfuração S/A – Em Recuperação Judicial**, sociedade anônima constituída e organizada segundo as leis do Brasil, inscrita no CNPJ/MF sob o nº 15.129.646/0001-40, com endereço em Catu, Estado da Bahia, na Rua José Visco, s/n, Bairro Pioneiro, CEP 48110-000; e **Lupatech Finance Limited – Em Recuperação Judicial**, sociedade limitada constituída e organizada segundo as leis das Ilhas Cayman, com endereço em George Town, Grand Cayman, em South Church Street, Ugland

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

House, PO Box, 309GT; todas componentes de um mesmo grupo societário, o **Grupo Lupatech**, com principal estabelecimento na cidade de São Paulo, Estado de São Paulo, Brasil, na Avenida Maria Coelho Aguiar, 215, Bloco B, 5º andar, Jardim São Luis, CEP 05804-900, propõem o seguinte plano de recuperação judicial, nos termos da Lei de Falências.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

### PREÂMBULO

Considerando que:

A)      O Grupo Lupatech é um grupo econômico de fato atuante no mercado brasileiro de produtos e serviços relacionados ao setor de óleo e gás;

B)      Conforme apontado pela Análise de Viabilidade Econômico-Financeira, o principal setor econômico de atuação do Grupo Lupatech – o mercado de óleo e gás – atravessa crise sem precedentes na história econômica nacional e mundial, o que vem prejudicando fortemente o desempenho das empresas do Grupo Lupatech;

C)      Em razão dessas dificuldades econômicas e financeiras, o Grupo Lupatech ajuizou a Recuperação Judicial, cujo processamento foi deferido pelo Juízo da Recuperação, que determinou, dentre outras medidas, a apresentação de um plano de recuperação judicial;

D)      O Grupo Lupatech busca superar sua crise econômico-financeira e reestruturar seus negócios, com o objetivo de (i) preservar a sua atividade empresarial, mantendo sua posição de destaque como um dos mais relevantes grupos econômicos do Brasil relacionados ao setor de óleo e gás; (ii) manter-se como fonte de geração de riquezas, tributos e empregos; e (iii) estabelecer a forma de pagamento de seus credores, sempre com vistas a atender aos seus melhores interesses;

E)      Para tanto, o Grupo Lupatech apresenta o Plano, que atende aos requisitos do art. 53 da Lei de Falências, por (i) pormenorizar os meios de recuperação do Grupo Lupatech; (ii) ser viável; (iii) ser acompanhado de laudo que demonstre a viabilidade econômica das empresas do Grupo Lupatech e de laudo de avaliação de seus bens e ativos; e (iv) conter proposta clara e específica para pagamento dos credores sujeitos à Recuperação Judicial;

O Grupo Lupatech submete o Plano ao Juízo da Recuperação e aos Credores Sujeitos ao Plano, para análise e aprovação da Assembleia-Geral de Credores, nos termos seguintes.

### CAPÍTULO I
### DEFINIÇÕES E INTERPRETAÇÃO

**1.1. Regras de interpretação**. O Plano deve ser lido e interpretado de acordo com as regras estabelecidas neste Capítulo I.

**1.2. Significados**. Os termos e expressões utilizados em letras maiúsculas, sempre que mencionados no Plano, tem os significados que lhes são atribuídos no Anexo 1.2. Esses termos e expressões são utilizados, conforme for apropriado, na sua forma singular ou plural, no gênero masculino ou feminino, sem que, com isso, percam o significado que lhes é atribuído no Anexo 1.2. Os termos e expressões em letras maiúsculas que não

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

tenham seu significado atribuído pelo Anexo 1.2 devem ser lidos e interpretados conforme seu uso comum.

**1.3. Títulos**. Os títulos das Cláusulas do Plano foram incluídos exclusivamente para referência e conveniência, e não devem afetar o conteúdo de suas previsões.

**1.4. Preâmbulo**. O preâmbulo do Plano foi incluído exclusivamente para apresentar e esclarecer, em linhas gerais, o contexto econômico e jurídico em que o Plano é proposto, e não deve afetar o conteúdo ou a interpretação das Cláusulas do Plano. Os termos utilizados em letras maiúsculas no preâmbulo têm os significados que lhes são atribuídos no Anexo 1.2.

**1.5. Conflito entre Cláusulas**. Na hipótese de haver conflito entre Cláusulas, a Cláusula que contiver disposição específica prevalecerá sobre a que contiver disposição genérica.

**1.6. Conflito com Anexos**. Na hipótese de haver conflito entre qualquer disposição do Plano e qualquer dos Anexos, inclusive a Análise de Viabilidade Econômico-Financeira, e com exceção do Anexo 1.2, prevalecerá o disposto no Plano. Os Anexos, com exceção do Anexo 1.2, não têm conteúdo vinculativo, senão quando expresso de forma diversa no Plano.

**1.7. Conflito com Contratos Existentes**. Na hipótese de haver conflito entre qualquer disposição do Plano e as disposições que estabeleçam obrigações para o Grupo Lupatech que constem de contratos celebrados com Credores Sujeitos ao Plano antes da Data do Pedido, o disposto no Plano prevalecerá.

**1.8. O Grupo Lupatech enquanto grupo econômico de fato**. Como se observa da exposição feita na petição inicial da Recuperação Judicial, o Grupo Lupatech é um grupo econômico de fato. As Recuperandas estão financeira e operacionalmente interligadas de forma indissociável, embora cada uma desempenhe funções especializadas dentro do seu ramo específico de atividades. Como forma de proporcionar tratamento jurídico adequado a essa realidade econômica, o Plano trata o Grupo Lupatech como uma única entidade econômica. Tal medida faz-se necessária diante da indissociável integração econômica e operacional existente entre as Recuperandas. Não obstante, cada Recuperanda mantém a sua personalidade jurídica, a sua identidade própria, os seus direitos e as suas obrigações e recursos próprios, inclusive para fins de cumprimento do Plano, exceto quando disposto de forma diversa no Plano para efeito do cumprimento de determinadas obrigações.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## CAPÍTULO II

## REESTRUTURAÇÃO DOS CRÉDITOS SUJEITOS AO PLANO

### 2.1. Disposições gerais

2.1.1. <u>Reestruturação de Créditos</u>. O Plano, observado o disposto no artigo 61 da Lei de Falências, nova todos os Créditos Sujeitos ao Plano, que serão pagos pelo Grupo Lupatech nos prazos e formas estabelecidos no Plano, para cada classe de Credores Sujeitos ao Plano, ainda que os contratos que deram origem aos Créditos Sujeitos ao Plano disponham de maneira diferente. Com a referida novação, todas as obrigações, *covenants*, índices financeiros, hipóteses de vencimento antecipado, multas, bem como quaisquer outras obrigações e garantias que sejam incompatíveis com as condições deste Plano deixam de ser aplicáveis.

2.1.2. <u>Reestruturação dos Créditos Não Sujeitos ao Plano</u>. Os Créditos Não Sujeitos ao Plano serão pagos na forma originalmente contratada ou na forma que for acordada entre o Grupo Lupatech e o respectivo Credor Não Sujeito ao Plano, inclusive, se aplicável, mediante a implantação de medidas previstas no Plano.

2.1.3. <u>Assunção de dívidas pela Lupatech S.A</u>. Com a finalidade de viabilizar a realização de determinadas operações de reestruturação do Grupo Lupatech previstas no Plano, inclusive a conversão de Créditos Sujeitos ao Plano em Ações, conforme previsto pelas Cláusulas 4.1.3, 5.1.4 e 5.1.5, para todos os efeitos, todos os Créditos Sujeitos ao Plano terão, a partir da Homologação Judicial do Plano, como única devedora, a Lupatech S.A., exceto no caso das *Notes* Tipo A e das *Notes* Tipo B, que terão como devedora principal a Lupatech Finance Limited, e como garantidora a Lupatech S.A. Os créditos decorrentes da referida assunção de dívida entre a Lupatech S.A. e as demais sociedades Recuperandas poderão ser compensados, capitalizados, quitados, cedidos ou perdoados.

2.1.4. <u>Desconsideração de frações de Créditos a converter em Ações</u>. Em todas as hipóteses previstas pelo Plano que envolvam a conversão de Créditos Sujeitos ao Plano em Ações, caso o valor detido pelo respectivo Credor Sujeito ao Plano seja insuficiente para a integralização de um número inteiro de Ações, as frações excedentes serão desconsideradas.

2.1.5. <u>Opções de Pagamento à escolha do Credor</u>. O Plano confere a determinados Credores Sujeitos ao Plano o direito de escolher, dentre um determinado número de opções oferecidas, a alternativa de recebimento de seus Créditos Sujeitos ao Plano que lhes pareça mais atraente e que melhor atenda a seus interesses creditórios.

> 2.1.5.1. <u>Isonomia entre Credores</u>. A conferência da possibilidade de escolher entre as várias opções de recebimento dos Créditos Sujeitos ao Plano é uma medida que está em conformidade com a isonomia de tratamento entre os Credores Sujeitos ao Plano. A eventual

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

impossibilidade ou impedimento de escolher determinada opção não implica tratamento diferenciado ou discriminatório de um Credor Sujeito ao Plano em relação aos demais Credores Sujeitos ao Plano pertencentes à mesma classe.

2.1.5.2. Vinculação da opção do Credor. A escolha da opção pelo Credor Sujeito ao Plano é final, definitiva, vinculante, irrevogável e irretratável, e somente será possível a retratação posterior ou a mudança de opção com a concordância do Grupo Lupatech.

2.1.6. Forma de pagamento. Salvo disposição contrária deste Plano, os pagamentos em dinheiro previstos pelo Plano a Credores Sujeitos ao Plano devem ser pagos por meio da transferência direta de recursos à conta bancária do respectivo Credor, por meio de documento de ordem de crédito (DOC) ou de Transferência Eletrônica Disponível (TED), conforme o caso, ou por qualquer outra forma específica que for acordada entre o Grupo Lupatech e o respectivo Credor Sujeito ao Plano.

2.1.7. Informação das contas bancárias. Os Credores Sujeitos ao Plano devem informar ao Grupo Lupatech suas respectivas contas bancárias para a finalidade da realização de pagamentos, nas hipóteses previstas no Plano, no prazo máximo de 10 (dez) dias da Homologação Judicial do Plano, por meio de comunicação por escrito endereçada ao Grupo Lupatech na forma da Cláusula 11.3. Os pagamentos que não forem realizados em razão de os Credores não terem informado suas contas bancárias no prazo estabelecido não serão considerados como evento de descumprimento do Plano. Não haverá a incidência de juros ou encargos moratórios se os pagamentos não tiverem sido realizados em razão de os Credores não terem informado suas contas bancárias dentro do prazo estabelecido nesta Cláusula.

2.1.8. Agente de pagamentos. O Grupo Lupatech poderá contratar instituições financeiras, às suas expensas, para atuarem como agentes de pagamentos, as quais, neste caso, ficarão encarregadas da efetivação dos pagamentos aos Credores Sujeitos ao Plano, nas hipóteses previstas no Plano.

2.1.9. Início dos prazos para pagamento. Salvo se houver disposição legal ou previsão contrária pelo Plano, os prazos previstos para pagamento dos Créditos Sujeitos ao Plano, bem como eventuais períodos de carência previstos no Plano, somente terão início a partir da Homologação Judicial do Plano.

2.1.10. Data do pagamento. Os pagamentos deverão ser realizados nas datas dos seus respectivos vencimentos. Na hipótese de qualquer pagamento ou obrigação prevista no Plano ou em qualquer Valor Mobiliário estar prevista para ser realizada ou satisfeita em um dia que não seja considerado um Dia Útil, o referido pagamento ou obrigação deverá ser realizado ou satisfeito, conforme o caso, no Dia Útil seguinte.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

2.1.11. <u>Antecipação de pagamentos</u>. Além das demais hipóteses específicas previstas no Plano, o Grupo Lupatech poderá antecipar o pagamento de quaisquer Credores Sujeitos ao Plano, com abatimento proporcional dos juros e encargos incidentes, desde que tais antecipações de pagamento sejam feitas ou oferecidas de forma proporcional dentro de cada classe, a todos os Créditos Sujeitos ao Plano componentes de cada classe de Credores Sujeitos ao Plano cujo pagamento for antecipado.

2.1.12. <u>Valor mínimo da parcela</u>. Com o objetivo de reduzir os custos na administração dos pagamentos, o valor mínimo de cada parcela de pagamento aos Credores Sujeitos ao Plano será de R$ 50,00 (cinquenta reais), respeitado o valor dos respectivos Créditos Sujeitos ao Plano e as formas específicas de pagamento previstas para cada classe de Credores Sujeitos ao Plano.

2.1.13. <u>Limitação dos pagamentos ao valor dos Créditos Sujeitos ao Plano</u>. Todos os pagamentos e distribuições previstas no Plano serão feitos até o limite do valor do saldo em aberto do respectivo Crédito Sujeito ao Plano. Em nenhuma hipótese qualquer Credor Sujeito ao Plano receberá valor superior ao valor de seu Crédito Sujeito ao Plano.

2.1.14. <u>Compensação</u>. O Grupo Lupatech poderá compensar, a seu critério, quaisquer Créditos Sujeitos ao Plano com outros créditos, em dinheiro detidos por quaisquer das Recuperandas frente aos respectivos Credores Sujeitos ao Plano, quando tais créditos se tornarem líquidos, e até o valor de referidos Créditos Sujeitos ao Plano, ficando eventual saldo sujeito às disposições do presente Plano.

> 2.1.14.1. <u>Restrição a créditos em dinheiro</u>. A compensação referida na Cláusula 2.1.14 é restrita a créditos cujo pagamento deva ser realizado em dinheiro, não podendo atingir créditos detidos por quaisquer das Recuperandas frente aos respectivos Credores Sujeitos ao Plano cujo pagamento deva ser feito em bens ou serviços.

> 2.1.14.2.<u>Retenção de Créditos a compensar</u>. O Grupo Lupatech poderá reter o pagamento de Créditos Sujeitos ao Plano na hipótese de qualquer das Recuperandas também ser credora dos respectivos Credores Sujeitos ao Plano, desde que os créditos detidos pela(s) Recuperanda(s) contra os respectivos Credores Sujeitos ao Plano sejam objeto de litígio, com o objetivo de que tais créditos sejam compensados quando se tornarem líquidos, nos termos da Cláusula 2.1.14.

2.1.15. <u>Inclusão de novos Créditos Sujeitos ao Plano</u>. Na hipótese de novos Créditos Sujeitos ao Plano, não constantes da Lista de Credores, serem reconhecidos por decisão judicial transitada em julgado ou por acordo entre as partes homologado judicialmente, tais Créditos Sujeitos ao Plano serão pagos na forma prevista no Plano, fazendo jus a um percentual do valor total a ser pago ou distribuído, conforme

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

o caso, entre os Credores Sujeitos ao Plano da mesma classe, que terão seus percentuais de pagamento ou distribuição, conforme o caso, ajustados para comportar o pagamento ou distribuição, conforme o caso, proporcional do novo Crédito Sujeito ao Plano. Tais Créditos Sujeitos ao Plano serão pagos a partir da data em que forem reconhecidos ou se tornarem líquidos, conforme o caso, e seus titulares não terão direito aos pagamentos ou às distribuições, conforme o caso, que já tiverem sido realizadas em data anterior.

2.1.16. Créditos Sujeitos ao Plano sujeitos a litígio. Créditos Sujeitos ao Plano constantes da Lista de Credores e que sejam objeto de discussão em litígio judicial ou arbitral apenas serão pagos a partir da data do seu reconhecimento e liquidez, mediante o trânsito em julgado de decisão judicial ou arbitral ou acordo entre as partes homologado judicialmente, e seus titulares não terão direito às distribuições que já tiverem sido realizadas em data anterior.

2.1.17. Majoração de Créditos Sujeitos ao Plano. Na hipótese de Créditos Sujeitos ao Plano constantes da Lista de Credores terem seu valor majorado, seja por decisão judicial transitada em julgado ou por acordo entre as partes homologado judicialmente, tais Créditos Sujeitos ao Plano continuarão a ser tratados na forma prevista neste Plano, alterando-se, porém, o percentual de pagamento dos demais Credores Sujeitos ao Plano da mesma classe para comportar o pagamento do valor adicional. O valor adicional do Crédito Sujeito ao Plano majorado será pago a partir da data em que for reconhecido ou se tornar líquido, e o seu titular não terá direito às distribuições que já tiverem sido realizadas em data anterior.

2.1.18. Reclassificação de Créditos Sujeitos ao Plano. Na hipótese da reclassificação de Créditos Sujeitos ao Plano constantes da Lista de Credores, as parcelas dos valores previstos no Plano para o pagamento de tais Créditos Sujeitos ao Plano serão realocadas e farão parte do valor total a ser distribuído para a classe de Credores em que tais Créditos Sujeitos ao Plano vierem a se enquadrar. Os Credores Sujeitos ao Plano da classe para a qual os Créditos Sujeitos ao Plano forem reclassificados continuarão a ser pagos na forma prevista neste Plano, alterando-se, porém, o seu percentual e cronograma de pagamento para levar em consideração (i) a alteração do valor a ser distribuído; e (ii) o pagamento do valor do Crédito Sujeito ao Plano reclassificado. O Credor Sujeito ao Plano cujo Crédito Sujeito ao Plano tenha sido reclassificado não fará jus às distribuições que já tiverem sido realizados em data anterior à sua reclassificação.

2.1.19. Tratamento dos Créditos Não Sujeitos ao Plano. Os titulares de Créditos Não Sujeitos ao Plano poderão optar por receber seus Créditos Não Sujeitos ao Plano na forma estabelecida no Plano para pagamento dos Credores com Garantia Real ou dos Credores Quirografários.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

2.1.20. <u>Créditos Intragrupo</u>. A critério do Grupo Lupatech, os Créditos Intragrupo poderão ser pagos, quitados, assumidos por outra sociedade do Grupo Lupatech, ou compensados.

<div align="center">

**CAPÍTULO III**

**REESTRUTURAÇÃO DOS CRÉDITOS TRABALHISTAS**

</div>

**3.1. <u>Créditos Trabalhistas</u>**. As disposições deste Capítulo são aplicáveis apenas aos Créditos Trabalhistas.

3.1.1. <u>Pagamento dos Créditos Trabalhistas</u>. Os Créditos Trabalhistas serão pagos a cada Credor Trabalhista dentro do prazo de 1 (um) ano a contar da Homologação Judicial do Plano, na forma das Cláusulas 3.1.1.1 a 3.1.1.3.

> 3.1.1.1. <u>Pagamento inicial</u>. O valor correspondente a até 5 (cinco) salários mínimos, relativos a créditos de natureza estritamente salarial e vencidos nos 3 (três) meses anteriores à Data do Pedido, quando houver, será pago no prazo de até 30 (trinta) dias a contar da Homologação Judicial do Plano; e

> 3.1.1.2. <u>Fluxo de pagamentos</u>. O saldo do valor dos Créditos Trabalhistas, abatidos os valores pagos de acordo com a Cláusula 3.1.1.1, será pago aos respectivos Credores Trabalhistas no prazo de até 1 (um) ano a contar da Homologação Judicial do Plano.

> 3.1.1.3. <u>Forma de pagamento</u>. Os pagamentos referidos na Cláusula 3.1.1.2 serão feitos em dinheiro, podendo o Grupo Lupatech valer-se da forma de pagamento prevista no artigo 50, inciso XVI, da Lei de Falências.

3.1.2. <u>Pagamento dos Créditos Trabalhistas Controvertidos</u>. Os Créditos Trabalhistas Controvertidos devem ser pagos na forma estabelecida nas Cláusulas 3.1.1.1 a 3.1.1.3, após os valores serem fixados nas sentenças condenatórias definitivas ou homologatórias de acordo, conforme o caso. Em qualquer caso, os prazos para pagamento dos Créditos Trabalhistas Controvertidos terão início somente quando do trânsito em julgado das respectivas sentenças condenatórias definitivas ou homologatórias de acordo. O Grupo Lupatech envidará esforços para buscar, no menor prazo possível, a obtenção de acordos razoáveis com os Credores Trabalhistas no âmbito de tais processos judiciais. Em nenhuma hipótese os Créditos Trabalhistas Controvertidos receberão tratamento mais benéfico do que os Créditos Trabalhistas Incontroversos. A eventual majoração ou inclusão de qualquer Crédito Trabalhista na Lista de Credores durante o prazo de pagamento não gerará ao Credor Trabalhista cujos créditos forem majorados qualquer direito ao recebimento retroativo ou

proporcional de valores já pagos aos demais Credores Trabalhistas.

3.1.3. <u>Antecipação de pagamento dos Créditos Trabalhistas</u>. O Grupo Lupatech pode antecipar os pagamentos dos Créditos Trabalhistas, desde que de forma proporcional e abrangendo todos os credores da respectiva classe, com exceção dos Créditos Trabalhistas que sejam, quando da antecipação de pagamentos, Créditos Trabalhistas Controvertidos, os quais serão pagos nos termos da Cláusula 3.1.2.

3.1.4. <u>Contestações de classificação</u>. Créditos Trabalhistas que tenham a sua classificação contestada por qualquer parte interessada, nos termos da Lei de Falência, serão considerados Créditos Trabalhistas Controvertidos e somente podem ser pagos depois de transitada em julgado a sentença que determinar a qualificação do crédito controvertido, ou mediante caução, respeitados os termos da Lei de Falências.

## CAPÍTULO IV

## <u>REESTRUTURAÇÃO DOS CRÉDITOS COM GARANTIA REAL</u>

**4.1.** <u>Créditos com Garantia Real</u>. As disposições deste Capítulo são aplicáveis apenas aos Créditos com Garantia Real, independentemente de seu valor, de sua natureza ou do valor de sua garantia.

4.1.1.  <u>Pagamento dos Créditos com Garantia Real</u>. Os Créditos com Garantia Real serão pagos por meio de qualquer das seguintes opções, à escolha de cada Credor com Garantia Real, conforme as Cláusulas 4.1.2 e 4.1.3 abaixo.

4.1.2. ***Opção A* de pagamento do Crédito com Garantia Real (Pagamento em parcelas)** – Pagamento de 100% (cem por cento) do valor do respectivo Crédito com Garantia Real, que será feito em 72 (setenta e duas) parcelas trimestrais sucessivas, de acordo com o fluxo de pagamentos previsto no <u>Anexo 4.1.2</u>, vencendo-se a primeira 63 (sessenta e três) meses após a Homologação Judicial do Plano. O valor dos Créditos com Garantia Real a ser pago nos termos desta Opção A sofrerá a incidência de juros e de correção monetária equivalentes a uma taxa fixa de 3% (três por cento) ao ano, conforme o fluxo de pagamentos previsto no <u>Anexo 4.1.2</u>.

4.1.3. ***Opção B* de pagamento do Crédito com Garantia Real (Capitalização de Créditos)** – Pagamento do valor do Crédito com Garantia Real, observado o disposto na Cláusula 4.1.3.1, por meio da subscrição de Ações mediante a capitalização dos respectivos Créditos com Garantia Real, na forma do art. 171, §2º, da Lei das Sociedades por Ações. As Ações serão emitidas pelo Preço de Emissão, sendo que as Ações deverão ser integralizadas com seus respectivos Créditos com Garantia Real, nos termos do <u>Anexo 4.1.3</u>;

4.1.3.1.  <u>Restrição da capitalização ao valor principal</u>. Na hipótese de o

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

Crédito com Garantia Real do Credor com Garantia Real que optar pelo recebimento por meio da Opção B ser composto de valor principal e de juros ou outros encargos legais ou contratuais, a capitalização prevista na Cláusula 4.1.3 se restringirá necessariamente ao valor do saldo devedor do principal. O valor correspondente aos juros, correção monetária e demais encargos contratuais ou legais incidirá sobre o valor principal até a Data do Pedido, e deverá ser pago ao Credor com Garantia Real na forma da Opção A prevista pela Cláusula 4.1.2.

4.1.3.2. Respeito a limitações estatutárias ou regulamentares. Na hipótese de o Credor com Garantia Real que tiver optado pela conversão total ou parcial de seu Crédito com Garantia Real em Ações comprovar, no ato do exercício da Opção de que trata a Cláusula 4.1.6, a existência de qualquer restrição estatutária ou regulamentar à conversão integral ou parcial de seu Crédito, tal restrição será respeitada, e o saldo adicional será pago ao respectivo Credor com Garantia Real na forma da Opção A prevista pela Cláusula 4.1.2.

4.1.3.3. Liberação proporcional de garantias reais. Na hipótese de a conversão do Crédito com Garantia Real em Ações prevista na Cláusula 4.1.3 ocorrer apenas de forma parcial, o respectivo Credor com Garantia Real deverá liberar proporcionalmente Garantias Reais em favor do Grupo Lupatech, de modo a restarem ativos dados em Garantia Real em montante equivalente ao saldo restante dos Créditos com Garantia Real.

4.1.4. Possibilidade de escolha simultânea de opções. Cada Credor com Garantia Real poderá optar, a sua livre escolha, pela distribuição de seus Créditos com Garantia Real na Opção A e na Opção B, previstas respectivamente pelas Cláusulas 4.1.2 e 4.1.3. A indicação do percentual dos Créditos com Garantia Real a ser aplicado à Opção A e à Opção B deverá ser feita no ato do envio do formulário de escolha da opção, contido no Anexo 4.1.6.

4.1.5. Pagamento alternativo. Além das opções de pagamento previstas nas Cláusulas 4.1.2 e 4.1.3, o Grupo Lupatech poderá, a qualquer tempo e mediante anuência por parte do respectivo Credor com Garantia Real, realizar o pagamento total ou parcial do saldo do respectivo Crédito com Garantia Real por meio da dação em pagamento: (i) quaisquer dos ativos dados em Garantia Real em favor do Credor com Garantia Real; (ii) de quaisquer ativos listados no Anexo 9.4; e (iii) de créditos detidos pelo Grupo Lupatech, em valor suficiente à cobertura do saldo do respectivo Crédito com Garantia Real; ou por meio da entrega dos recursos provenientes da alienação de quaisquer dos ativos dados em Garantia Real em favor do Credor com Garantia Real, seja nos termos do Plano, mediante autorização judicial, ou nos termos do Artigo 60 da Lei de Falências.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

4.1.5.1. <u>Liberação proporcional de Garantias Reais</u>. Na hipótese de o pagamento alternativo previsto na Cláusula 4.1.5 ocorrer apenas de forma parcial, o respectivo Credor com Garantia Real deverá liberar proporcionalmente Garantias Reais em favor do Grupo Lupatech, de modo a restarem ativos dados em Garantia Real em montante equivalente ao saldo restante dos Créditos com Garantia Real.

4.1.6. <u>Forma de exercício da opção de pagamento</u>. A opção por cada Credor com Garantia Real pelo pagamento de seu crédito por meio das Opções A ou B, previstas, respectivamente, nas Cláusulas 4.1.2 e 4.1.3, deverá se dar mediante o preenchimento e envio ao Grupo Lupatech do formulário contido no <u>Anexo 4.1.6</u>, no prazo de até 30 (trinta) dias após a Homologação Judicial do Plano.

4.1.7. <u>Opção padrão de pagamento em caso de não formalização da opção</u>. Os Credores com Garantia Real que não formalizarem a escolha da opção de recebimento de seus Créditos com Garantia Real na forma e no prazo estabelecido na Cláusula 4.1.6, ou que formalizarem a escolha de opção em desconformidade com as instruções constantes da Cláusula 4.1.6, serão considerados, para todos os efeitos, como tendo escolhido a Opção A prevista na Cláusula 4.1.2.

4.1.8. <u>Opção padrão em caso de inclusão ou majoração de Créditos com Garantia Real</u>. Na hipótese de haver a inclusão ou majoração de qualquer Crédito com Garantia Real após o prazo da opção prevista na Cláusula 4.1.6, os Credores com Garantia Real detentores de Créditos incluídos ou majorados serão pagos, em relação à parcela de Créditos incluída ou majorada, de acordo com a Opção A prevista na Cláusula 4.1.2.

4.1.9. <u>Majoração ou inclusão de Créditos com Garantia Real</u>. Somente serão pagos Créditos com Garantia Real que sejam incontroversos, inclusive à luz da Lista de Credores. Na hipótese de majoração de qualquer Crédito com Garantia Real, ou de inclusão de novo Crédito com Garantia Real, em decorrência de eventual impugnação de crédito ou do julgamento de qualquer ação judicial, o respectivo valor adicional será pago nos termos da Opção A prevista pela Cláusula 4.1.2, por meio de sua distribuição proporcional no valor das parcelas restantes.

4.1.10. <u>Contestações de classificação</u>. Créditos com Garantia Real que tenham a sua classificação contestada pelo Grupo Lupatech ou por qualquer parte interessada, nos termos da Lei de Falências, somente podem ser pagos depois de transitada em julgado a sentença que determinar a qualificação do crédito controvertido, respeitados os termos da Lei de Falências, iniciando-se os prazos para pagamento apenas após o trânsito em julgado da respectiva sentença.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## CAPÍTULO V

## REESTRUTURAÇÃO DOS CRÉDITOS QUIROGRAFÁRIOS

**5.1. Créditos Quirografários**. As disposições deste Capítulo são aplicáveis apenas aos Créditos Quirografários, independentemente de seu valor.

5.1.1. Pagamento dos Créditos Quirografários. Os Créditos Quirografários serão pagos por meio de uma das seguintes opções, à escolha de cada Credor Quirografário, conforme as Cláusulas 5.1.2 a 5.1.3 abaixo.

5.1.2. ***Opção A* de pagamento do Crédito Quirografário (Pagamento em parcelas)** – Pagamento de 100% (cem por cento) do valor do respectivo Crédito Quirografário devida e individualmente habilitado na Lista de Credores, da seguinte forma: (i) 1 (uma) parcela inicial no valor fixo de R$ 500,00 (quinhentos reais) para cada Credor Quirografário, a ser paga em até 12 (doze) meses contados da Homologação Judicial do Plano; (ii) 4 (quatro) parcelas anuais no valor fixo de R$ 1.000,00 (mil reais) cada para cada Credor Quirografário, vencendo-se a primeira 24 (vinte e quatro) meses após a Homologação Judicial do Plano; (iii) 72 (setenta e duas) parcelas trimestrais sucessivas, calculadas a partir do saldo devedor em aberto no 60º (sexagésimo) mês após a Homologação Judicial do Plano, de acordo com o fluxo de pagamentos previsto no Anexo 5.1.2, vencendo-se a primeira de tais parcelas 63 (sessenta e três) meses após a Homologação Judicial do Plano. O valor dos Créditos Quirografários a ser pago nos termos da Opção A sofrerá a incidência de juros e de correção monetária equivalentes a uma taxa fixa de 3% (três por cento) ao ano, conforme o fluxo de pagamentos previsto no Anexo 5.1.2.

5.1.3. ***Opção B* de pagamento do Crédito Quirografário (Pagamento em parcelas com evento de liquidez)** – Pagamento de 100% (cem por cento) do valor do respectivo Crédito Quirografário devida e individualmente habilitado na Lista de Credores, observado o disposto na Cláusula 5.1.3.1, da seguinte forma: (i) 1 (uma) parcela inicial no valor fixo de R$ 500,00 (quinhentos reais) para cada Credor Quirografário, a ser paga em até 12 (doze) meses contados da Homologação Judicial do Plano; (ii) 4 (quatro) parcelas anuais no valor fixo de R$ 1.000,00 (mil reais) cada para cada Credor Quirografário, vencendo-se a primeira 24 (vinte e quatro) meses após a Homologação Judicial do Plano; (iii) 80 (oitenta) parcelas trimestrais sucessivas, calculadas em função do saldo devedor em aberto no 60º (sexagésimo) mês após a Homologação Judicial do Plano, de acordo com o fluxo de pagamentos previsto no Anexo 5.1.3, vencendo-se a primeira de tais parcelas 63 (sessenta e três) meses após a Homologação Judicial do Plano. Nessa hipótese, o valor dos Créditos Quirografários a ser pago nos termos da Opção B sofrerá a incidência de juros e de correção monetária equivalentes a uma taxa fixa de 3% (três por cento) ao ano, já incorporados ao fluxo de pagamentos previsto no Anexo 5.1.3.

5.1.3.1. Obtenção de recursos líquidos para pagamento da Opção B.

- 14 -

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

Durante todo o prazo de pagamento previsto para a Opção B para Credores Quirografários, o Grupo Lupatech envidará esforços para realizar a alienação de ativos, bem como para obter recursos líquidos advindos de outras fontes. O Grupo Lupatech poderá utilizar o valor obtido pela alienação de ativos, bem como qualquer outro recurso, advindo de qualquer outra fonte, para, a qualquer tempo, antecipar o pagamento das parcelas devidas aos Credores Quirografários que tiverem optado pela Opção B de pagamento, na forma da Cláusula 5.1.3. Os pagamentos realizados a título de antecipação nos termos desta Cláusula amortizarão um determinado número de parcelas vincendas do fluxo de pagamentos do Anexo 5.1.3, da mais próxima para a mais distante, e levarão ao reescalonamento do vencimento das parcelas remanescentes, conforme Cláusula 5.1.3.2 abaixo.

5.1.3.2. Forma de reescalonamento. Na hipótese de vir a ser realizada qualquer antecipação de parcelas nos termos da Cláusula 5.1.3.1 acima durante os 5 (cinco) primeiros anos após a Homologação Judicial do Plano, um determinado número de parcelas remanescentes, da mais próxima para a mais distante, terá seu vencimento prorrogado para coincidir com o vencimento da última parcela da dívida a ser paga nos termos da Opção B. O número de parcelas futuras cujo vencimento será prorrogado será calculado de acordo com o quadro seguinte:

| Período de realização da antecipação | Número de parcelas prorrogadas para a data de vencimento da última parcela |
|---|---|
| Durante o 1º ou 2º ano após a Homologação Judicial do Plano | 3x (três vezes) o número de parcelas antecipadas |
| Durante o 3º ano após a Homologação Judicial do Plano | 2,5x (duas vezes e meia) o número de parcelas antecipadas |
| Durante o 4º ano após a Homologação Judicial do Plano | 2x (duas vezes) o número de parcelas antecipadas |
| Durante o 5º ano após a Homologação Judicial do Plano | 1,5x (uma vez e meia) o número de parcelas antecipadas |

5.1.3.3. Incidência de encargos em parcelas prorrogadas. Os valores das parcelas cujo vencimento tiver sido prorrogado em razão da realização de antecipações de pagamentos nos termos da Cláusula 5.1.3.1 não sofrerão a incidência de juros e correção monetária entre a data de seu vencimento

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

original e a data para a qual o vencimento foi prorrogado. Os juros e correção monetária que tiverem incidido até a data do vencimento original serão preservados, sendo o vencimento de tais juros e correção monetária, também, prorrogado para a data de vencimento da última parcela.

5.1.3.4. Quitação condicional de parcelas. Na hipótese de o Grupo Lupatech haver quitado todas as parcelas previstas na Cláusula 5.1.3 neste Plano, com exceção das parcelas cujo vencimento tiver sido prorrogado nos termos da Cláusula 5.1.3.1, tais parcelas cujo vencimento tiver sido prorrogado, incluindo seu valor principal, juros e correção monetária, serão perdoadas, na data em que for paga (seja por antecipação ou pelo fluxo estabelecido na Cláusula 5.1.3) a última parcela não reescalonada nos termos da Cláusula 5.1.3, operando-se a Quitação relativamente aos Créditos Quirografários cujos titulares tiverem optado pela Opção B, nada mais podendo os Credores Quirografários que tiverem optado pela Opção B reclamar do Grupo Lupatech a qualquer título, nos termos da Cláusula 11.2.

5.1.4. *Opção C de pagamento do Crédito Quirografário (Capitalização dos Créditos)* – Pagamento de 100% (cem por cento) do valor do Crédito Quirografário, observado o disposto na Cláusula 5.1.4.1, por meio da subscrição de Ações mediante a capitalização dos respectivos Créditos Quirografários, na forma do art. 171, §2º, da Lei das Sociedades por Ações. As Ações serão emitidas pelo Preço de Emissão, sendo que as Ações deverão ser integralizadas com seus respectivos Créditos Quirografários, nos termos do Anexo 4.1.3;

5.1.4.1. Restrição da capitalização ao valor principal. Na hipótese de o Crédito Quirografário do Credor Quirografário que optar pelo recebimento por meio da Opção C ser composto de valor principal e de juros ou outros encargos legais ou contratuais, a capitalização prevista na Cláusula 5.1.4 se restringirá necessariamente ao valor do saldo devedor do principal. O valor correspondente aos juros, correção monetária e demais encargos contratuais ou legais incidirá sobre o valor principal até a Data do Pedido, e deverá ser pago ao Credor Quirografário na forma da Opção A prevista pela Cláusula 5.1.2.

5.1.4.2. Respeito a limitações estatutárias ou regulamentares. Na hipótese de o Credor Quirografário que tiver optado pela conversão de seu Crédito Quirografário em Ações comprovar, no ato do exercício da Opção de que trata a Cláusula 5.1.6, a existência de qualquer restrição estatutária ou regulamentar à conversão integral ou parcial de seu Crédito, tal restrição será respeitada, e o saldo será pago ao respectivo

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

Credor Quirografário na forma da Opção A prevista pela Cláusula 5.1.2.

5.1.5. **Opção D de pagamento do Crédito Quirografário (Pagamento de valores decorrentes da venda em bolsa das Ações resultantes da capitalização dos Créditos)** – Recebimento em dinheiro dos montantes oriundos da alienação, na BM&FBOVESPA, das Ações subscritas conforme a Cláusula 5.1.4. A alienação das Ações prevista nesta Cláusula será realizada pelo Comissário, nos termos do Anexo 5.1.5, em até 24 (vinte e quatro) meses da emissão das Ações.

5.1.5.1. Mandato e comissão para implementação da Opção D. Os Credores Quirografários que receberem seus Créditos Quirografários por meio da Opção D, nos termos da Cláusula 5.1.5, autorizam o Comissário, em caráter irrevogável e irretratável, a atuar como seu mandatário e comissário. A nomeação e atuação do Comissário se dará nos termos do Anexo 5.1.5, exclusivamente com relação à Opção D prevista na Cláusula 5.1.5.

5.1.5.2. Contratação do Comissário. Os Credores Quirografários que receberem seus Créditos Quirografários por meio da Opção D, nos termos da Cláusula 5.1.5, concedem mandato ao Grupo Lupatech, por meio de qualquer das Recuperandas, para, em seu nome, indicar o Comissário, negociar os termos do contrato de comissão, bem como para quaisquer outros fins necessários à implementação da Opção D, nos termos da Cláusula 5.1.5.

5.1.5.3. Isenção de responsabilidade do Comissário. O Comissário e o Grupo Lupatech, inclusive seus acionistas e administradores, são isentos de toda e qualquer responsabilidade derivada da adoção das medidas necessárias para fins de implementação do Plano. Neste sentido, os Credores que escolherem a Opção D prevista na Cláusula 5.1.5 renunciarão aos direitos previstos nos arts. 696, 697 e 698 do Código Civil, tendo em vista que o Comissário deverá envidar os melhores esforços para realizar a alienação das Ações com o único e exclusivo objetivo de entregar os recursos financeiros ao Credor, sem qualquer obrigação de resultado e de buscar a maximização do preço de venda das Ações, não podendo lhe ser imputado, ou ao Grupo Lupatech, ou aos seus acionistas e administradores, qualquer suposto prejuízo derivado do momento, forma e/ou valores apurados com a alienação das Ações, incluindo prejuízo advindo de eventual inadimplência do adquirente das Ações, com o qual não se responsabilizará solidariamente.

5.1.5.4. Opção subsidiária. Caso, por qualquer razão e a qualquer tempo, o Comissário ou o Grupo Lupatech verifiquem que a implementação da Opção D prevista na Cláusula 5.1.5 se tornou inviável em razão de

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1060924-67.2015.8.26.0100 e código 17C7EA3.

qualquer vedação ou impedimento, inclusive de natureza operacional, os Credores Quirografários que tiverem escolhido a Opção D receberão seus Créditos Quirografários de acordo com a Opção A prevista na Cláusula 5.1.2.

5.1.6. <u>Forma de exercício da opção de pagamento</u>. Os Credores Quirografários poderão optar pelo pagamento de seu crédito por meio das Opção A, B, C ou D, previstas, respectivamente, nas Cláusulas 5.1.2, 5.1.3, 5.1.4 e 5.1.5 e respectivas subcláusulas. A opção por cada Credor Quirografário deverá se dar mediante o preenchimento e envio ao Grupo Lupatech do formulário contido no <u>Anexo 5.1.6</u>, no prazo de até 30 (trinta) dias após a Homologação Judicial do Plano.

5.1.7. <u>Opção padrão de pagamento em caso de não formalização da opção</u>. Os Credores Quirografários que não formalizarem a escolha da opção de recebimento de seus Créditos Quirografários na forma e no prazo estabelecidos na Cláusula 5.1.6, ou que formalizarem a escolha de opção em desconformidade com as instruções constantes da Cláusula 5.1.6, serão considerados, para todos os efeitos, como tendo escolhido a Opção D prevista na Cláusula 5.1.5.

5.1.8. <u>Opção padrão em caso de inclusão ou majoração de Créditos Quirografários</u>. Na hipótese de haver a inclusão ou majoração de qualquer Crédito Quirografário após o prazo da opção prevista na Cláusula 5.1.6, os Credores Quirografários detentores dos Créditos incluídos ou majorados serão pagos, em relação à parcela de Créditos incluída ou majorada, de acordo com a Opção A prevista na Cláusula 5.1.2.

5.1.9. <u>Pagamento dos Créditos Quirografários dos *Noteholders*</u>. É assegurado aos *Noteholders* o direito de exercício da opção prevista na Cláusula 5.1.6, podendo os *Noteholders* optar por qualquer das quatro formas de recebimento asseguradas aos demais Credores Quirografários, respeitada a forma de recebimento estabelecida pelas Cláusulas 5.1.9.1 a 5.1.9.6 abaixo.

5.1.9.1. <u>Cancelamento das *Notes* atuais</u>. Após a Homologação Judicial do Plano, e após a obtenção de decisão judicial no *Chapter 15* reconhecendo a eficácia do Plano em território norte-americano, considerar-se-ão canceladas de pleno direito as *Notes* atualmente detidas pelos *Noteholders*, as quais serão substituídas pelas *Notes* Tipo A, *Notes* Tipo B, ADRs, ou direito ao resultado econômico da alienação das Ações, conforme a opção escolhida por cada *Noteholder*.

5.1.9.2. <u>Regras aplicáveis aos *Noteholders* que optarem pela Opção A</u>. O pagamento dos Créditos Quirografários dos *Noteholders* que optarem pelo recebimento de seus créditos nos termos da Opção A prevista na Cláusula 5.1.2 será feito por meio da entrega das *Notes* Tipo A, a serem emitidas em até 180 (cento e oitenta) dias contados da obtenção de decisão judicial no *Chapter 15* reconhecendo a eficácia do Plano em

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

território norte-americano, que serão emitidas em reais pela taxa de câmbio PTAX800 vigente na Data do Pedido, a serem convertidas para dólares norte-americanos na data de cada pagamento..

5.1.9.3.  Regras aplicáveis aos *Noteholders* que optarem pela Opção B. O pagamento dos Créditos Quirografários dos *Noteholders* que optarem pelo recebimento de seus créditos nos termos da Opção B prevista na Cláusula 5.1.3 será feito por meio da entrega das *Notes* Tipo B, a serem emitidas em até 180 (cento e oitenta) dias contados da obtenção de decisão judicial no *Chapter 15* reconhecendo a eficácia do Plano em território norte-americano, que serão emitidas em reais pela taxa de câmbio PTAX800 vigente na Data do Pedido, a serem convertidas para dólares norte-americanos na data de cada pagamento. Aplicam-se aos *Noteholders* detentores de *Notes* Tipo B todos os direitos e obrigações previstos nas Cláusulas 5.1.3.1 a 5.1.3.4.

5.1.9.4.  Regras aplicáveis aos *Noteholders* que optarem pela Opção C. O pagamento dos Créditos Quirografários dos *Noteholders* que optarem pelo recebimento de seus créditos nos termos da Opção C prevista na Cláusula 5.1.4 será feito por meio da entrega de ADRs representativos das Ações, a serem emitidos pelo Depositário. Para fins de apuração da quantidade de Ações e ADRs a serem emitidos, o Crédito Quirografário do *Noteholder*, ressalvada a limitação contida na Cláusula 5.1.4.1, será convertido para o Real utilizando-se a taxa de conversão do dia da emissão das respectivas Ações e ADRs.

5.1.9.5.  Regras aplicáveis aos *Noteholders* que optarem pela Opção D. O pagamento dos Créditos Quirografários dos *Noteholders* que optarem pelo recebimento de seus créditos nos termos da Opção D prevista na Cláusula 5.1.5 será feito por meio da entrega ao *Trustee* do valor decorrente da venda das Ações correspondentes a tal *Noteholder*. Para fins de apuração da quantidade de Ações a serem emitidas, o Crédito Quirografário do *Noteholder*, será convertido para o Real utilizando-se a taxa de conversão do dia da emissão das respectivas Ações.

5.1.9.6.  Forma de pagamento dos *Notes* Tipo A e *Notes* Tipo B. O crédito decorrente das *Notes* Tipo A e *Notes* Tipo B será pago na forma estabelecida pelas respectivas escrituras de emissão e demais documentos que regerão as *Notes* Tipo A e *Notes* Tipo B. Independentemente da participação, de forma direta e individual, dos *Noteholders* na Assembleia Geral de Credores, quaisquer pagamentos referentes às *Notes* Tipo A ou *Notes* Tipo B deverá ser realizado diretamente ao *Trustee*, que providenciará a distribuição dos valores devidos a cada um dos

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

*Noteholders* detentores de *Notes* Tipo A e *Notes* Tipo B, conforme o caso.

5.1.10. <u>Créditos em moeda estrangeira</u>. Caso todo ou parte dos Créditos Quirografários dos Credores Quirografários que optarem pela Opção A ou pela Opção B de pagamento previstas pelas Cláusulas 5.1.2 e 5.1.3 seja denominado originalmente em moeda estrangeira, a taxa a ser aplicada para fins de conversão final do seu Crédito Quirografário em Reais, e posterior pagamento de acordo com o Plano, será a taxa de conversão de referência do Banco Central do Brasil de fechamento vigente para a venda da respectiva moeda estrangeira na Data do Pedido, afastando-se qualquer outra taxa de conversão, vigente em qualquer outra data.

5.1.11. <u>Majoração ou inclusão de Créditos Quirografários</u>. Na hipótese de majoração de qualquer Crédito Quirografário, ou inclusão de novo Crédito Quirografário, em decorrência de eventual impugnação de crédito ou do julgamento de qualquer ação judicial, o respectivo valor (em caso de inclusão) ou valor adicional (em caso de majoração) será pago nos termos da Opção B prevista na Cláusula 5.1.3.

5.1.12. <u>Contestações de classificação</u>. Créditos Quirografários que tenham a sua classificação contestada por qualquer parte interessada somente podem ser pagos depois de transitada em julgado a sentença que determinar a qualificação do crédito controvertido, ou mediante caução, respeitados os termos da Lei de Falências.

## CAPÍTULO VI

### REESTRUTURAÇÃO DOS CRÉDITOS DE ME E EPP

**6.1.    Créditos de ME e EPP**. As disposições deste Capítulo são aplicáveis apenas aos Créditos de ME e EPP, independentemente de seu valor.

6.1.1. <u>Pagamento dos Créditos de ME e EPP</u>. O pagamento de 100% (cem por cento) do valor do respectivo Crédito de ME e EPP será pago para cada Credor de ME e EPP da seguinte forma: (i) 1 (uma) parcela inicial no valor fixo de R$ 500,00 (quinhentos reais), a ser paga em até 12 (doze) meses contados da Homologação Judicial do Plano; (ii) 4 (quatro) parcelas anuais no valor fixo de R$ 1.000,00 (mil reais) cada, vencendo-se a primeira 24 (vinte e quatro) meses após a Homologação Judicial do Plano; (iii) 40 (quarenta) parcelas trimestrais iguais e sucessivas, calculadas em função do saldo devedor em aberto no 60º (sexagésimo) mês após a Homologação Judicial do Plano, de acordo com o fluxo de pagamentos previsto no <u>Anexo 6.1.1</u>, vencendo-se a primeira 63 (sessenta e três) meses após a Homologação Judicial do Plano. O valor dos Créditos de ME e EPP sofrerá a incidência de juros e de correção monetária equivalentes a uma taxa fixa de 3% (três por cento) ao ano, já incorporados ao fluxo de pagamentos previsto no <u>Anexo 6.1.1</u>.

6.1.2. <u>Majoração ou inclusão de Créditos de ME e EPP</u>. Na hipótese de majoração de

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

qualquer Crédito de ME e EPP, ou inclusão de novo Crédito de ME e EPP, em decorrência de eventual impugnação de crédito ou do julgamento de qualquer ação judicial, o respectivo valor (em caso de inclusão) ou valor adicional (em caso de majoração) será pago nos termos da Cláusula 6.1.1, por meio da distribuição proporcional do valor nas parcelas futuras. A eventual majoração ou inclusão de qualquer Crédito de ME e EPP na Lista de Credores durante o prazo de pagamento não gerará ao Credor de ME e EPP cujos créditos forem majorados qualquer direito ao recebimento retroativo ou proporcional de parcelas já pagas.

6.1.3. Opções adicionais. Cada Credor de ME e EPP poderá, a sua livre escolha, e dentro do prazo previsto na Cláusula 5.1.6, optar pelo recebimento de seu Crédito de ME e EPP por qualquer das opções A, B, C ou D previstas para os Credores Quirografários nas Cláusulas 5.1.2 a 5.1.5 e respectivas subcláusulas. A opção realizada nesses termos pelo Credor de ME e EPP deverá ser formalizada no prazo e na forma prevista pela Cláusula 5.1.6.

6.1.4. Contestações de classificação. Créditos de ME e EPP que tenham a sua classificação contestada por qualquer parte interessada, somente podem ser pagos depois de transitada em julgado a sentença que determinar a qualificação do crédito controvertido, ou mediante caução, respeitados os termos da Lei de Falências.

## CAPÍTULO VII
## REORGANIZAÇÃO SOCIETÁRIA

**7.1.   Operações de Reorganização Societária**. As operações de reorganização societária envolvendo as sociedades do Grupo Lupatech são regidas por este Capítulo.

7.1.1. O Grupo Lupatech poderá, a seu exclusivo critério e com a finalidade de obter benefício econômico-financeiro e/ou operacional na condução de suas atividades, realizar quaisquer operações de cisão, fusão, incorporação, transformação de sociedades, cessão de quotas ou ações, alteração de controle societário, *drop down* de ativos, aumento de capital social, constituição de SPEs, ou qualquer outra operação de natureza societária.

7.1.2. Em nenhuma hipótese as operações societárias que venham a ser realizadas com base na Cláusula 7.1.1 prejudicarão o pagamento dos Créditos Sujeitos ao Plano.

## CAPÍTULO VIII

## MEDIDAS GERAIS DE RECUPERAÇÃO DO GRUPO LUPATECH

**8.1. Visão geral das medidas de recuperação**. O Plano utiliza, dentre outros, os seguintes meio de recuperação, a fim de realizar a Reorganização da Estrutura de

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

Crédito e demais obrigações do Plano: concessão de prazos e condições especiais para pagamento das obrigações do Grupo Lupatech, reorganização societária do Grupo Lupatech, venda parcial de ativos do Grupo Lupatech, inclusive participações societárias, dação em pagamento, locação de ativos e emissão de valores mobiliários.

**8.2. <u>Novos Recursos</u>**. O Grupo Lupatech poderá obter Novos Recursos aos quais será dada a destinação prevista na Cláusula 8.2.2.

8.2.1. <u>Forma de obtenção dos Novos Recursos</u>. Os Novos Recursos podem ser obtidos por qualquer meio que o Grupo Lupatech julgar conveniente, inclusive, por meio (i) da realização de emissão de ações representativas do capital de qualquer das sociedades do Grupo Lupatech; (ii) da emissão de debêntures, inclusive conversíveis em ações representativas do capital de qualquer das sociedades do Grupo Lupatech; (iii) da emissão de bônus de subscrição por qualquer das sociedades do Grupo Lupatech; (iv) da emissão de títulos representativos de dívidas no exterior, seja por qualquer das sociedades do Grupo Lupatech ou por qualquer sociedade, no Brasil ou no exterior, inclusive controlada de qualquer das sociedades do Grupo Lupatech, e que podem ser conversíveis em capital da sociedade emissora; (v) da alienação de ativos, inclusive UPIs e participações societárias, do Grupo Lupatech; (vi) da locação ou arrendamento de ativos; (vii) da contratação de mútuos ou outras formas de financiamento; (viii) da realização de operações de cisão, fusão, incorporação, transformação de sociedades, cessão de quotas ou ações, alteração de controle societário, *drop down* de ativos, aumento de capital social, constituição de SPEs, ou qualquer outra operação de natureza societária. A captação de Novos Recursos poderá ser garantida por ativos do Grupo Lupatech, na forma da Cláusula 8.3.

8.2.2. <u>Destinação dos Novos Recursos</u>. Após a Homologação Judicial do Plano, o Grupo Lupatech poderá utilizar os Novos Recursos para (a) a recomposição do capital de giro; (b) a realização do seu plano de negócios; (c) o pagamento das despesas da Recuperação Judicial; (d) o pagamento dos Credores Sujeitos ao Plano; e (e) antecipações de pagamentos de Credores Sujeitos ao Plano.

**8.3. <u>Garantias</u>**. O Grupo Lupatech poderá constituir garantias reais e fiduciárias sobre quaisquer bens do seu ativo permanente ou circulante, exceto sobre aqueles bens já onerados aos Credores com Garantia Real, além de outorgar garantias pessoais, para garantir a captação de Novos Recursos, preservados os direitos dos Credores com Garantia Real.

## CAPÍTULO IX

### ALIENAÇÃO DE ATIVOS E DE UPIs

**9.1. <u>Alienação de ativos e de UPIs</u>**. A alienação de ativos e de UPIs do Grupo Lupatech será regida por este Capítulo, sem prejuízo de outras alienações de bens

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

aprovadas ou submetidas à aprovação do Juízo da Recuperação, que serão regidas pelas respectivas decisões judiciais, conforme o disposto na Cláusula 9.3.

**9.2.    Alienação de ativos**. O Grupo Lupatech poderá, a partir da Homologação Judicial do Plano gravar, substituir ou alienar os seguintes bens do seu ativo permanente, sem a necessidade de prévia autorização judicial ou da Assembleia-Geral de Credores, sem prejuízo das demais alienações de bens ou outras transações previstas pelo Plano, respeitando-se os direitos contratuais, gravames e demais restrições que sejam aplicáveis a tais ativos:

(i)     Bens gravados com Garantia Real ou com garantia fiduciária, desde que haja a autorização do respectivo Credor com Garantia Real detentor da respectiva Garantia Real, ou do respectivo Credor Não Sujeito ao Plano detentor da respectiva garantia fiduciária, conforme o caso;

(ii)    Bens a serem oferecidos em garantia para a captação de Novos Recursos, desde que tais bens estejam livres de qualquer ônus ou haja a concordância dos Credores com Garantia Real ou dos Credores Não Sujeitos ao Plano titulares de garantias sobre tais bens;

(iii)   Bens que tenham sofrido o desgaste natural decorrente da sua atividade regular ou que, por qualquer motivo, tenham se tornado inservíveis para o uso a que se destinam;

(iv)    Bens que tenham se tornados obsoletos ou desnecessários ao exercício das atividades do Grupo Lupatech;

(v)     Bens cujo valor, individual ou em conjunto, não ultrapasse a soma de R$20.000.000,00 (vinte milhões de reais) por ano; e

(vi)    Bens que não sejam essenciais para a realização do núcleo das atividades do Grupo Lupatech, conforme previsão de desmobilização de ativos constante da Análise de Viabilidade Econômico-Financeira.

**9.3.    Aprovação para alienação de ativos**. Sem prejuízo das hipóteses da Cláusula 9.2, será permitida qualquer outra modalidade de alienação, substituição ou oneração de bens, nos termos do Plano, ou mediante autorização do Juízo da Recuperação ou aprovação pela Assembleia-Geral de Credores, respeitados os termos das legislações e dos contratos aplicáveis a tais ativos. Decorrido o prazo de 2 (dois) anos após a Homologação Judicial do Plano, o Grupo Lupatech poderá alienar livremente quaisquer bens de seu ativo circulante ou permanente que não se encontrem gravados, não sendo aplicáveis as restrições previstas neste Plano ou no art. 66 da Lei de Falências, estando, porém, sujeitas às restrições usuais constantes dos contratos sociais e estatutos das sociedades do Grupo Lupatech e de novos instrumentos de dívida, conforme o caso.

**9.4.    Alienação de UPIs**. O Grupo Lupatech poderá alienar quaisquer de suas UPIs, inclusive as listadas no Anexo 9.4, por meio de Procedimento Competitivo, sem

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

prejuízo da possibilidade de tais alienações serem efetuadas por outras modalidades, resguardados quaisquer direitos de preferência eventualmente vigentes à época da alienação.

9.4.1. Inexistência de sucessão de dívidas. As UPIs alienadas nos termos da Cláusula 9.4 estarão livres de quaisquer ônus e os seus respectivos adquirentes não responderão por nenhuma dívida ou contingência do Grupo Lupatech, inclusive as de caráter tributário e trabalhista, nos termos do art. 60 e 141 da Lei de Falências.

9.4.2. Procedimento de alienação de UPI. Quaisquer alienações de UPIs serão realizadas por meio de Procedimento Competitivo ou por outras modalidades, na forma da lei. Em qualquer caso, a alienação será feita ao proponente que ofertar as melhores condições para o cumprimento do Plano, respeitado o disposto nos respectivos editais, nos termos da Lei de Falências, atendidas as demais condições previstas neste Plano. Fica a critério do Grupo Lupatech optar por quaisquer modalidades de Procedimento Competitivo ou por outras modalidades, na forma da lei.

## CAPÍTULO X

### EFEITOS DO PLANO

**10.1. Vinculação do Plano**. As disposições do Plano vinculam o Grupo Lupatech e os Credores Sujeitos ao Plano, bem como os seus respectivos cessionários e sucessores a qualquer título, a partir da Homologação Judicial do Plano.

**10.2. Equivalência econômica no cumprimento do Plano**. Na hipótese de qualquer das operações previstas no Plano, que não envolva pagamento em dinheiro aos Credores Sujeitos ao Plano, não ser possível ou conveniente de ser implementada, inclusive nos prazos previstos para que tais operações sejam implementadas, inclusive por razões regulamentares ou tributárias, o Grupo Lupatech adotará as medidas necessárias com o objetivo de assegurar um resultado econômico equivalente para os Credores Sujeitos ao Plano, em prazo que não exceda mais de 180 (cento e oitenta) dias do prazo de cumprimento da obrigação original prevista no Plano.

**10.3. Extinção de processos judiciais**. Com a Aprovação do Plano, todas as execuções judiciais em curso contra o Grupo Lupatech, seus controladores, suas controladas, coligadas, afiliadas e outras sociedades pertencentes ao mesmo grupo societário ou econômico, serão extintas, e as penhoras e constrições existentes serão liberadas.

**10.4. Continuidade de ações envolvendo quantia ilíquida**. Os processos judiciais e arbitrais de conhecimento ajuizados por Credores Sujeitos ao Plano que tiverem por objeto a condenação em quantia ilíquida, ou a liquidação de condenação já proferida, poderão prosseguir em seus respectivos foros, até que haja a fixação do valor do Crédito Sujeito ao Plano, ocasião em que o Credor Sujeito ao Plano deverá providenciar a

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

habilitação da referida quantia na Lista de Credores, para recebimento nos termos do Plano. Em hipótese alguma haverá pagamento de Credores Sujeitos ao Plano de forma diversa da estabelecida no Plano, inclusive em processos judiciais ou arbitrais ajuizados que estiverem em curso quando da Homologação Judicial do Plano ou que forem ajuizados após a Homologação Judicial do Plano.

**10.5. Modificação do Plano na Assembleia-Geral de Credores**. Aditamentos, alterações ou modificações ao Plano podem ser propostos pelo Grupo Lupatech a qualquer tempo após a Homologação Judicial do Plano e enquanto não encerrada a Recuperação Judicial, havendo ou não descumprimento do Plano, vinculando o Grupo Lupatech e todos os Credores Sujeitos ao Plano, desde que tais aditamentos, alterações ou modificações sejam aprovados pelo Grupo Lupatech e sejam submetidos à votação na Assembleia-Geral de Credores, e que seja atingido o quórum requerido pelo art. 45 e 58, *caput* ou §1º, da Lei de Falências.

**10.6. Cessões de créditos**. Após a Aprovação do Plano, os Credores Sujeitos ao Plano poderão ceder seus Créditos Sujeitos ao Plano a outros Credores ou a terceiros, e a respectiva cessão produzirá efeitos a partir da notificação do Grupo Lupatech, nos termos do Código Civil. O cessionário que receber o Crédito Sujeito ao Plano cedido será considerado, para todos os fins e efeitos, Credor Sujeito ao Plano.

10.6.1. Cessões de créditos anteriores ao Plano. Todos os créditos oriundos de cessões anteriores ao Plano, independentemente de sua classificação, serão tratados como Credores Quirografários.

**10.7. Sub-rogações**. Créditos relativos ao direito de regresso contra o Grupo Lupatech, e que sejam decorrentes do pagamento, a qualquer tempo, por terceiros, de Créditos Sujeitos ao Plano, serão pagos nos termos estabelecidos no Plano. O credor por sub-rogação será considerado, para todos os fins e efeitos, Credor Sujeito ao Plano.

## CAPÍTULO XI

## DISPOSIÇÕES GERAIS

**11.1. Divisibilidade das previsões do Plano**. Na hipótese de qualquer termo ou disposição do Plano ser considerado inválido, nulo ou ineficaz pelo Juízo da Recuperação, o restante dos termos e disposições do Plano devem permanecer válidos e eficazes, desde que as premissas que o embasaram, sejam mantidas.

**11.2. Quitação**. Com a realização do pagamento dos Créditos Sujeitos ao Plano, os respectivos Credores Sujeitos ao Plano outorgarão a mais ampla, geral, irrevogável e irretratável quitação em favor do Grupo Lupatech, abrangendo inclusive multas, encargos financeiros, ou quaisquer outras despesas incorridas pelo Credor Sujeito ao Plano, para nada mais pretender ou reclamar, a qualquer tempo, sob qualquer título.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

**11.3. <u>Encerramento da Recuperação Judicial</u>**. A Recuperação Judicial será encerrada a qualquer tempo após a Homologação Judicial do Plano, a requerimento do Grupo Lupatech, desde que todas as obrigações do Plano que se vencerem até 2 (dois) anos após a Homologação do Plano sejam cumpridas.

**11.4. *<u>Chapter 15</u>***. Após a Homologação Judicial do Plano, o Grupo Lupatech ajuizará o *Chapter 15*, com o objetivo de conferir efeitos ao Plano em território norte-americano, vinculando os *Noteholders*, o *Trustee*, e todo e qualquer outro Credor Sujeito ao Plano ali residente, domiciliado ou estabelecido. O *Chapter 15* não poderá, de forma alguma, alterar as condições de pagamento e demais regras previstas neste Plano.

**11.5. <u>Comunicações</u>**. Todas as notificações, requerimentos, pedidos e outras comunicações ao Grupo Lupatech requeridas ou permitidas por este Plano, para serem eficazes, devem ser feitas por escrito e serão consideradas realizadas quando (i) enviadas por correspondência registrada, com aviso de recebimento, ou por courier, e efetivamente entregues; ou (ii) enviadas por e-mail. Todas as comunicações devem ser endereçadas da seguinte forma, ou de outra forma que vier a ser indicada pelo Grupo Lupatech nos autos da Recuperação Judicial:

Grupo Lupatech:
Endereço: Avenida Maria Coelho Aguiar, 215, Bloco B, 5º andar, Jardim São Luis, CEP 05804-900
A/C: Ricardo Doebeli
A/C: João Marcos Cavichioli Feiteiro
Telefone: +55 11 2134 7000
E-mail: <u>rj_lupatech@felsberg.com.br</u>

Com cópia para:
Felsberg Advogados
Endereço: Avenida Cidade Jardim 803, 5º andar, Jardim Paulistano, São Paulo, SP, Brasil
Telefone: +55 11 3141 9138
Fax: + 55 11 3141 9150
E-mail: <u>rj_lupatech@felsberg.com.br</u>

**11.6. <u>Lei aplicável</u>**. Este Plano deve ser regido, interpretado e executado de acordo com as leis vigentes na República Federativa do Brasil.

**11.7. <u>Eleição de foro</u>**. Todas as controvérsias ou disputas que surgirem ou que estiverem relacionadas a este Plano ou aos Créditos Sujeitos à Recuperação Judicial serão resolvidas:

11.7.1. Pelo Juízo da Recuperação até a prolação da decisão de encerramento da Recuperação Judicial, e desde que não esteja pendente recurso com efeito suspensivo contra a referida decisão;

11.7.2. Pelos juízos competentes, conforme estabelecidos nos contratos originais firmados entre o Grupo Lupatech e os respectivos Credores Sujeitos ao Plano, ou

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

conforme estabelecido pela lei.

O Plano é firmado pelos representantes legais devidamente constituídos do Grupo Lupatech.


São Paulo, 24 de agosto de 2015.


(*Segue página de assinaturas do Plano de Recuperação Judicial de Lupatech S.A. – Em Recuperação Judicial, Lupatech – Equipamentos e Serviços para Petróleo Ltda. – Em Recuperação Judicial, Mipel Indústria e Comércio de Válvulas Ltda. – Em Recuperação Judicial, Amper Amazonas Perfurações Ltda. – Em Recuperação Judicial, Itacau Agenciamentos Marítimos Ltda. – Em Recuperação Judicial, Lochness Participações S/A – Em Recuperação Judicial, Matep S/A Máquinas e Equipamentos – Em Recuperação Judicial, Prest Perfurações Ltda. – Em Recuperação Judicial, Lupatech – Perfuração e Completação Ltda. – Em Recuperação Judicial, Sotep Sociedade Técnica de Perfuração S/A – Em Recuperação Judicial, Lupatech Finance Limited – Em Recuperação Judicial*).

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

(*Página de assinaturas do Plano de Recuperação Judicial de Lupatech S.A. – Em Recuperação Judicial, Lupatech – Equipamentos e Serviços para Petróleo Ltda. – Em Recuperação Judicial, Mipel Indústria e Comércio de Válvulas Ltda. – Em Recuperação Judicial, Amper Amazonas Perfurações Ltda. – Em Recuperação Judicial, Itacau Agenciamentos Marítimos Ltda. – Em Recuperação Judicial, Lochness Participações S/A – Em Recuperação Judicial, Matep S/A Máquinas e Equipamentos – Em Recuperação Judicial, Prest Perfurações Ltda. – Em Recuperação Judicial, Lupatech – Perfuração e Completação Ltda. – Em Recuperação Judicial, Sotep Sociedade Técnica de Perfuração S/A – Em Recuperação Judicial, Lupatech Finance Limited – Em Recuperação Judicial*)

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## ANEXO 1.2

### Definições

**Ações:** ações ordinárias de emissão da Lupatech S.A., que poderão ser subscritas nos termos do Plano pelos Credores com Garantia Real, pelos Credores Quirografários e pelos Credores Não Sujeitos ao Plano, conforme o caso, e que serão integralizadas com seus respectivos Créditos Sujeitos ao Plano e Créditos Não Sujeitos ao Plano, conforme o caso.

**Administrador Judicial:** Alta Administração Judicial Ltda., pessoa jurídica de direito privado, com endereço à com endereço na Avenida Paulista, nº 1439, 13º andar, CEP 01311-926, São Paulo-SP, representada por Afonso Rodeguer Neto, inscrito na OAB/SP sob o nº 60.583, nomeada como administradora judicial pelo Juízo da Recuperação, nos termos do Capítulo II, Seção III, da Lei de Falências, ou quem vier a substituí-la.

**ADRs:** *American Depositary Receipts*, recibos representativos das Ações, a serem emitidos pelo Depositário, nos termos deste Plano, não listados em nenhuma bolsa de valores ou mercado de balcão norte-americano, nem registrados na *Securities and Exchange Commission* dos Estados Unidos da América.

**Análise de Viabilidade Econômico-Financeira**: Plano de Reestruturação e Análise de Viabilidade Econômico-Financeira elaborada pela BR Partners, assessor financeiro do Grupo Lupatech, datado de agosto de 2015, que integra o Plano como Anexo A. As projeções da Análise de Viabilidade Econômico-Financeira se baseiam em diversas premissas de natureza econômica ou mercadológica que podem se alterar de forma imprevista, e modificar as conclusões da Análise de Viabilidade Econômico-Financeira. Nesse sentido, entre os principais riscos a que o Plano está sujeito, destacam-se os seguintes: (i) atrasos e dificuldades na implementação do plano; (ii) variações substanciais nos preços de insumos; (iii) condenações judiciais ou arbitrais; (iv) greves e perdas de mão de obra qualificada; (v) cancelamento de contratos ou inadimplemento de clientes; (vi) dificuldades técnicas e operacionais na execução de projetos; e (vii) alterações do cenário macroeconômico, com mudança nas taxas de juros e câmbio.

**Anexo:** cada um dos documentos anexados ao Plano. A numeração de cada um dos Anexos refere-se à Cláusula do Plano em que tal Anexo tiver sido mencionado pela primeira vez.

**Aprovação do Plano:** Aprovação do Plano pela Assembleia-Geral de Credores, que se considera ocorrida na data da Assembleia-Geral de Credores que deliberar sobre o Plano.

**Assembleia-Geral de Credores**: a assembleia-geral de credores do Grupo Lupatech, devidamente convocada e instalada, nos termos do Capítulo II, Seção II, da Lei de Falências.

29

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

**Aprovação do Plano**: aprovação, pela Assembleia-Geral de Credores, do Plano.

**Chapter 15:** Processo auxiliar de falência a ser ajuizado pelo Grupo Lupatech nos Estados Unidos da América, perante o juízo de falências (*Bankruptcy Court*) competente, de acordo com o *Chapter 15* do *Title 11* do *United States Code*, com o objetivo de conferir eficácia ao Plano no território dos Estados Unidos da América.

**Cláusula:** cada um dos itens identificados por números cardinais e romanos no Plano.

**Código Civil**: Lei nº 10.406/2002, que regula de forma sistemática as relações civis e comerciais de ordem privada no Brasil, e suas alterações subsequentes.

**Comissário**: Terceiro indicado pelo Grupo Lupatech, que, nos termos dos art. 693 e seguintes do Código Civil, atuará em nome próprio e em benefício dos Credores Quirografários que escolherem a Opção D descrita na Cláusula 5.1.5, exclusivamente para a adoção das medidas necessárias ao pagamento dos respectivos Créditos Quirografários, conforme previsto neste Plano.

**Crédito com Garantia Real**: cada um dos Créditos Sujeitos ao Plano pertencente a Credor classificado pela Lista de Credores ou por decisão proferida em Impugnação de Crédito como pertencente à Classe mencionada no inciso II do art. 41 da Lei de Falências.

**Crédito de ME e EPP**: cada um dos Créditos Sujeitos ao Plano pertencente a Credor Sujeito ao Plano classificado pela Lista de Credores ou por decisão proferida em Impugnação de Crédito como pertencente à Classe mencionada no inciso IV do art. 41 da Lei de Falências.

**Crédito Intragrupo ou Dívida Intragrupo**: cada um dos Créditos Sujeitos ao Plano que tenha como Credor qualquer das Recuperandas.

**Crédito Não Sujeito ao Plano:** cada um dos créditos e obrigações do Grupo Lupatech que não se sujeitam aos efeitos da Recuperação Judicial e que não são, em razão disso, afetados pelo Plano, por força do disposto no art. 49, *caput* e §§3º e 4º, e art. 194, ambos da Lei de Falências. São considerados Créditos Não Sujeitos ao Plano, dentre outros: (i) os Créditos constituídos após a Data do Pedido, inclusive os decorrentes dos Novos Recursos; (ii) os Créditos garantidos por alienação ou cessão fiduciária em garantia, até o limite de valor do bem dado em garantia, nos termos do art. 49, §3º, da Lei de Falências, desde que a referida alienação ou cessão fiduciária em garantia tenha sido devida e regularmente constituída e formalizada em data anterior à Data do Pedido; (iii) os Créditos decorrentes de contratos de arrendamento mercantil, nos termos do art. 49, §3º, da Lei de Falências; e (iv) os Créditos decorrentes de tributos.

**Crédito Quirografário**: cada um dos Créditos Sujeitos ao Plano pertencente a Credor Sujeito ao Plano classificado na Lista de Credores ou por decisão proferida em Impugnação de Crédito como pertencente à Classe mencionada no inciso III do art. 41 da Lei de Falências, ou qualquer outro Crédito Sujeito ao Plano que não se enquadre

30

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

como Crédito Trabalhista ou como Crédito com Garantia Real.

**Crédito Sujeito ao Plano**: cada um dos créditos e obrigações do Grupo Lupatech existentes na Data do Pedido, sejam vencidos ou vincendos, materializados ou contingentes, líquidos ou ilíquidos, estejam ou não constantes da Lista de Credores, tenham ou não participado da Assembleia-Geral de Credores, e que não estejam excetuados pelo art. 49, §§3º e 4º, e art. 194, ambos da Lei de Falências. Os Créditos Sujeitos ao Plano se sujeitam aos efeitos da Recuperação Judicial e, em razão disso, são passíveis de serem novados pelo Plano. São Créditos Sujeitos ao Plano, dentre outros: (i) os valores dos Créditos que superarem o valor dos bens dados em alienação fiduciária em garantia ou dos créditos dados em cessão fiduciária em garantia, conforme o caso; (ii) os valores dos Créditos decorrentes de sentenças e decisões judiciais e arbitrais, inclusive multas de qualquer tipo, proferidas em processos judiciais e arbitrais ajuizados antes ou depois da Data do Pedido, e relativos a eventos ocorridos anteriormente à Data do Pedido; (iii) os valores dos Créditos decorrentes de avais, fianças ou outras garantias pessoais prestadas, anteriormente à Data do Pedido, por sociedades do Grupo Lupatech para assegurar o pagamento de dívidas de outras sociedades do Grupo Lupatech ou de terceiros; e (iv) obrigações pecuniárias e não pecuniárias relativas a fatos geradores ocorridos anteriormente à Data do Pedido.

**Crédito Trabalhista Controvertido:** Crédito Trabalhista que for objeto de reclamação trabalhista, de impugnação de crédito ou de qualquer outro processo judicial que esteja pendente de julgamento ou de trânsito em julgado.

**Crédito Trabalhista Incontroverso:** Crédito Trabalhista líquido, certo e incontroverso.

**Crédito Trabalhista**: cada um dos Créditos Sujeitos ao Plano decorrente da legislação do trabalho ou de acidente de trabalho, independentemente de estarem assim classificados na Lista de Credores.

**Crédito**: cada um dos Créditos Sujeitos ao Plano e dos Créditos Não Sujeitos ao Plano.

**Credor Não Sujeito ao Plano:** qualquer Credor detentor de Crédito Não Sujeito ao Plano.

**Credor Sujeito ao Plano:** qualquer Credor detentor de Crédito Sujeito ao Plano.

**Credor:** qualquer titular de Crédito, seja Credor Sujeito ao Plano ou Credor Não Sujeito ao Plano.

**Credor com Garantia Real:** qualquer Credor detentor de Crédito com Garantia Real.

**Data do Pedido**: dia 25 de maio de 2015, data em que o Grupo Lupatech protocolou em juízo o pedido de Recuperação Judicial.

**Depositário**: JPMorgan Chase, depositário relacionado aos ADRs.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

31

**Dia Útil**: qualquer dia que não um sábado, domingo ou um dia em que os bancos comerciais estão obrigados ou autorizados por lei a permanecer fechados nas cidades de São Paulo e de Araraquara, ambas no Estado de São Paulo.

**Garantia Real:** cada um dos direitos reais de garantia, inclusive penhores e hipotecas, que tenham sido constituídos para assegurar o pagamento dos Créditos com Garantia Real. Para os efeitos deste Plano, serão consideradas Garantias Reais somente os direitos reais de garantia que, na Data do Pedido, estiverem devida e regularmente constituídos e formalizados, nos termos das respectivas leis que os disciplinam.

**Grupo Lupatech**: o grupo societário de fato constituído exclusivamente pelas sociedades Lupatech S.A. – Em Recuperação Judicial, Lupatech – Equipamentos e Serviços para Petróleo Ltda. – Em Recuperação Judicial, Mipel Indústria e Comércio de Válvulas Ltda. – Em Recuperação Judicial, Amper Amazonas Perfurações Ltda. – Em Recuperação Judicial, Itacau Agenciamentos Marítimos Ltda. – Em Recuperação Judicial, Lochness Participações S/A – Em Recuperação Judicial, Matep S/A Máquinas e Equipamentos – Em Recuperação Judicial, Prest Perfurações Ltda. – Em Recuperação Judicial, Lupatech – Perfuração e Completação Ltda. – Em Recuperação Judicial, Sotep Sociedade Técnica de Perfuração S/A – Em Recuperação Judicial, Lupatech Finance Limited – Em Recuperação Judicial.

**Homologação Judicial do Plano:** a decisão judicial, proferida pelo Juízo da Recuperação ou pelo Tribunal de Justiça do Estado de São Paulo ou outro que seja competente, que concede a recuperação judicial ao Grupo Lupatech, nos termos do art. 58, *caput,* ou do art. 58, §1º, da Lei de Falências. Para todos os efeitos deste Plano, considera-se que a Homologação Judicial do Plano ocorre na data da publicação, no Diário de Justiça Eletrônico (DJE), da decisão judicial que conceder a recuperação judicial ao Grupo Lupatech.

**Juízo da Recuperação**: Juízo da 1ª Vara de Falências e Recuperações Judiciais da Comarca de São Paulo, no Estado de São Paulo, ou qualquer outro juízo que seja declarado competente para o processamento e o julgamento da Recuperação Judicial.

**Lei de Falências**: Lei nº 11.101, de 9 de fevereiro de 2005, que regula os processos de falência e de recuperação judicial e extrajudicial no Brasil, e suas alterações subsequentes.

**Lei das Sociedades por Ações**: Lei nº 6.404, de 15 de dezembro de 1976, que regula a constituição e funcionamento das sociedades por ações no Brasil, e suas alterações subsequentes.

**Lista de Credores**: qualquer lista contendo a relação de Credores Sujeitos ao Plano, elaborada pelas Recuperandas ou pelo Administrador Judicial, nos termos dos arts. 7º, II, 18, e 51, III, da Lei de Falências. Para os efeitos do Plano, será considerada Lista de

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

32

Credores aquela que, na data da análise, tiver sido apresentada por último nos autos da Recuperação Judicial.

*Notes*: Notas representativas de dívida, regidas pelo direito do Estado de Nova Iorque, emitidas no exterior pela Lupatech Finance Limited e garantidas pela Lupatech S.A., existentes na Data do Pedido.

*Notes* **Tipo A**: Notas representativas de dívida, regidas pelo direito do Estado de Nova Iorque, a serem emitidas no exterior pela Lupatech Finance Limited, que conterão as seguintes características, que corresponderão à forma de pagamento prevista na Opção A de recebimento dos Créditos Quirografários: (i) uma parcela inicial no valor fixo de R$ 500,00 (quinhentos reais), a ser paga em até 12 (doze) meses contados da Homologação Judicial do Plano; (ii) 4 (quatro) parcelas anuais no valor fixo de R$ 1.000,00 (mil reais) cada, vencendo-se a primeira 24 (vinte e quatro) meses após a Homologação Judicial do Plano; (iii) 72 (setenta e duas) parcelas trimestrais sucessivas, calculadas a partir do saldo devedor em aberto no 60º (sexagésimo) mês após a Homologação Judicial do Plano, de acordo com o fluxo de pagamentos previsto no Anexo 5.1.2, vencendo-se a primeira de tais parcelas 63 (sessenta e três) meses após a Homologação Judicial do Plano. O valor a ser pago sofrerá a incidência de juros e de correção monetária equivalentes a uma taxa fixa de 3% (três por cento) ao ano, já incorporados ao fluxo de pagamentos previsto no Anexo 5.1.2.

*Notes* **Tipo B:** Notas representativas de dívida, regidas pelo direito do Estado de Nova Iorque, a serem emitidas no exterior pela Lupatech Finance Limited, que conterão as seguintes características, que corresponderão à forma de pagamento prevista na Opção B de recebimento dos Créditos Quirografários: (i) uma parcela inicial no valor fixo de R$ 500,00 (quinhentos reais), a ser paga em até 12 (doze) meses contados da Homologação Judicial do Plano; (ii) 4 (quatro) parcelas anuais no valor fixo de R$ 1.000,00 (mil reais) cada, vencendo-se a primeira 24 (vinte e quatro) meses após a Homologação Judicial do Plano; (iii) 80 (oitenta) parcelas trimestrais sucessivas, calculadas em função do saldo devedor em aberto no 60º (sexagésimo) mês após a Homologação Judicial do Plano, de acordo com o fluxo de pagamentos previsto no Anexo 5.1.3, vencendo-se a primeira 63 (sessenta e três) meses após a Homologação Judicial do Plano. Nessa hipótese, o valor a ser pago sofrerá a incidência de juros e de correção monetária equivalentes a uma taxa fixa de 3% (três por cento) ao ano, já incorporados ao fluxo de pagamentos previsto no Anexo 5.1.3; e (iv) as *Notes* Tipo B poderão ter seu pagamento antecipado nas hipóteses previstas para a Opção B de pagamento dos Créditos Quirografários.

*Noteholders***:** Credores titulares das *Notes* existentes na Data do Pedido.

**Novos Recursos**: valores extraconcursais a serem obtidos pelo Grupo Lupatech após a Homologação Judicial do Plano, e que terão a destinação prevista na Cláusula 8.2.2.

**Plano:** este plano de recuperação judicial conjunto do Grupo Lupatech, conforme

33

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

submetido ao Juízo da Recuperação.

**Preço de Emissão**: preço de emissão das Ações a serem emitidas em atendimento às Cláusulas 4.1.3, 5.1.4 e 5.1.5, calculado segundo a média ponderada do preço de fechamento das ações da Lupatech S.A. nos pregões da Bolsa de Valores de São Paulo – BOVESPA realizados entre 13 de agosto de 2015 e 20 de agosto de 2015, que equivale a R$ 3,14 (três reais e quatorze centavos).

**Procedimento Competitivo**: Qualquer dos procedimentos judiciais previstos ou autorizados pela Lei nº 11.101/2005 para a alienação de bens de massas falidas ou empresas em recuperação judicial.

**Quitação:** quitação plena, irrevogável e irretratável, de todos os Créditos Sujeitos ao Plano, inclusive juros, correção monetária, penalidades, multas e indenizações, que ocorre no momento da subscrição de Ações, ou pagamento em dinheiro do respectivo Crédito, nos termos do Plano.

**Recuperação Judicial:** o processo de recuperação judicial do Grupo Lupatech, autuado sob o nº 1050924-67.2015.8.26.0100, e em curso perante o Juízo da Recuperação.

**Recuperanda**: qualquer das sociedades que constituem o Grupo Lupatech, considerada individualmente.

***Trustee***: The Bank of New York Mellon, *trustee* das *Notes*, e a ser constituído agente fiduciário das *Notes* Tipo A e *Notes* Tipo B, ou qualquer outro que venha a substituí-lo.

**UPI**: filial ou unidade produtiva isolada, assim caracterizada nos termos do art. 60 da Lei de Falências.

**Valor Mobiliário**: Ação ou *Note* Tipo A ou *Note* Tipo B.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

34

## ANEXO 4.1.2

### Fluxo de pagamentos para a Opção A de pagamento dos Créditos com Garantia Real

| MÊS<br>*a Contar da<br>Homologação<br>do Plano* | TRIMESTRE<br>*a Contar da<br>Homologação<br>do Plano* | Saldo<br>Devedor | Parcela | Principal | Juros e<br>Correção<br>Monetária | FATOR<br>*multiplicador do<br>saldo devedor ao<br>fim do mês 60* |
|---|---|---|---|---|---|---|
| 60 | 20 | 100,000 | - | - | - | |
| 63 | 21 | 100,077 | 0,665 | 0,510 | 0,155 | 0,66513% |
| 66 | 22 | 100,154 | 0,665 | 0,514 | 0,152 | 0,66513% |
| 69 | 23 | 100,231 | 0,665 | 0,517 | 0,148 | 0,66513% |
| 72 | 24 | 100,310 | 0,665 | 0,521 | 0,144 | 0,66513% |
| 75 | 25 | 100,389 | 0,665 | 0,525 | 0,140 | 0,66513% |
| 78 | 26 | 100,468 | 0,665 | 0,529 | 0,136 | 0,66513% |
| 81 | 27 | 100,548 | 0,665 | 0,533 | 0,132 | 0,66513% |
| 84 | 28 | 100,629 | 0,665 | 0,537 | 0,128 | 0,66513% |
| 87 | 29 | 100,710 | 0,665 | 0,541 | 0,124 | 0,66513% |
| 90 | 30 | 100,792 | 0,665 | 0,545 | 0,120 | 0,66513% |
| 93 | 31 | 100,874 | 0,665 | 0,549 | 0,116 | 0,66513% |
| 96 | 32 | 100,957 | 0,665 | 0,553 | 0,112 | 0,66513% |
| 99 | 33 | 101,041 | 0,665 | 0,557 | 0,108 | 0,66513% |
| 102 | 34 | 101,125 | 0,665 | 0,561 | 0,104 | 0,66513% |
| 105 | 35 | 101,210 | 0,665 | 0,565 | 0,100 | 0,66513% |
| 108 | 36 | 101,296 | 0,665 | 0,570 | 0,096 | 0,66513% |
| 111 | 37 | 100,763 | 1,284 | 0,824 | 0,460 | 1,28418% |
| 114 | 38 | 100,226 | 1,284 | 0,830 | 0,454 | 1,28418% |
| 117 | 39 | 99,685 | 1,284 | 0,837 | 0,448 | 1,28418% |
| 120 | 40 | 99,141 | 1,284 | 0,843 | 0,441 | 1,28418% |
| 123 | 41 | 98,592 | 1,284 | 0,849 | 0,435 | 1,28418% |
| 126 | 42 | 98,039 | 1,284 | 0,855 | 0,429 | 1,28418% |
| 129 | 43 | 97,482 | 1,284 | 0,862 | 0,423 | 1,28418% |
| 132 | 44 | 96,921 | 1,284 | 0,868 | 0,416 | 1,28418% |
| 135 | 45 | 96,355 | 1,284 | 0,874 | 0,410 | 1,28418% |
| 138 | 46 | 95,786 | 1,284 | 0,881 | 0,403 | 1,28418% |
| 141 | 47 | 95,212 | 1,284 | 0,887 | 0,397 | 1,28418% |
| 144 | 48 | 94,634 | 1,284 | 0,894 | 0,390 | 1,28418% |
| 147 | 49 | 94,052 | 1,284 | 0,901 | 0,383 | 1,28418% |
| 150 | 50 | 93,465 | 1,284 | 0,907 | 0,377 | 1,28418% |
| 153 | 51 | 92,874 | 1,284 | 0,914 | 0,370 | 1,28418% |
| 156 | 52 | 92,279 | 1,284 | 0,921 | 0,363 | 1,28418% |
| 159 | 53 | 91,679 | 1,284 | 0,928 | 0,356 | 1,28418% |
| 162 | 54 | 91,075 | 1,284 | 0,935 | 0,350 | 1,28418% |
| 165 | 55 | 90,466 | 1,284 | 0,942 | 0,343 | 1,28418% |
| 168 | 56 | 89,853 | 1,284 | 0,949 | 0,336 | 1,28418% |
| 171 | 57 | 89,235 | 1,284 | 0,956 | 0,329 | 1,28418% |
| 174 | 58 | 88,613 | 1,284 | 0,963 | 0,322 | 1,28418% |
| 177 | 59 | 87,986 | 1,284 | 0,970 | 0,314 | 1,28418% |
| 180 | 60 | 87,355 | 1,284 | 0,977 | 0,307 | 1,28418% |

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1060924-67.2015.8.26.0100 e código 17C7EA3.

| MÊS | TRIMESTRE | Saldo Devedor | Parcela | Principal | Juros e Correção Monetária | FATOR |
|---|---|---|---|---|---|---|
| a Contar da Homologação do Plano | a Contar da Homologação do Plano | | | | | multiplicador do saldo devedor ao fim do mês 60 |
| 183 | 61 | 84,926 | 3,077 | 1,559 | 1,518 | 3,07665% |
| 186 | 62 | 82,479 | 3,077 | 1,570 | 1,506 | 3,07665% |
| 189 | 63 | 80,014 | 3,077 | 1,582 | 1,495 | 3,07665% |
| 192 | 64 | 77,531 | 3,077 | 1,594 | 1,483 | 3,07665% |
| 195 | 65 | 75,029 | 3,077 | 1,606 | 1,471 | 3,07665% |
| 198 | 66 | 72,509 | 3,077 | 1,618 | 1,459 | 3,07665% |
| 201 | 67 | 69,970 | 3,077 | 1,630 | 1,447 | 3,07665% |
| 204 | 68 | 67,413 | 3,077 | 1,642 | 1,435 | 3,07665% |
| 207 | 69 | 64,836 | 3,077 | 1,654 | 1,423 | 3,07665% |
| 210 | 70 | 62,240 | 3,077 | 1,666 | 1,411 | 3,07665% |
| 213 | 71 | 59,625 | 3,077 | 1,678 | 1,398 | 3,07665% |
| 216 | 72 | 56,991 | 3,077 | 1,691 | 1,386 | 3,07665% |
| 219 | 73 | 54,337 | 3,077 | 1,703 | 1,373 | 3,07665% |
| 222 | 74 | 51,663 | 3,077 | 1,716 | 1,361 | 3,07665% |
| 225 | 75 | 48,970 | 3,077 | 1,729 | 1,348 | 3,07665% |
| 228 | 76 | 46,256 | 3,077 | 1,742 | 1,335 | 3,07665% |
| 231 | 77 | 43,523 | 3,077 | 1,755 | 1,322 | 3,07665% |
| 234 | 78 | 40,769 | 3,077 | 1,768 | 1,309 | 3,07665% |
| 237 | 79 | 37,995 | 3,077 | 1,781 | 1,296 | 3,07665% |
| 240 | 80 | 35,200 | 3,077 | 1,794 | 1,283 | 3,07665% |
| 243 | 81 | 32,384 | 3,077 | 1,807 | 1,269 | 3,07665% |
| 246 | 82 | 29,548 | 3,077 | 1,821 | 1,256 | 3,07665% |
| 249 | 83 | 26,690 | 3,077 | 1,834 | 1,243 | 3,07665% |
| 252 | 84 | 23,812 | 3,077 | 1,848 | 1,229 | 3,07665% |
| 255 | 85 | 20,912 | 3,077 | 1,861 | 1,215 | 3,07665% |
| 258 | 86 | 17,990 | 3,077 | 1,875 | 1,201 | 3,07665% |
| 261 | 87 | 15,047 | 3,077 | 1,889 | 1,188 | 3,07665% |
| 264 | 88 | 12,082 | 3,077 | 1,903 | 1,174 | 3,07665% |
| 267 | 89 | 9,095 | 3,077 | 1,917 | 1,159 | 3,07665% |
| 270 | 90 | 6,086 | 3,077 | 1,931 | 1,145 | 3,07665% |
| 273 | 91 | 3,054 | 3,077 | 1,946 | 1,131 | 3,07665% |
| 276 | 92 | 0,000 | 3,077 | 1,960 | 1,116 | 3,07665% |

Notas:

- O valor da parcela a ser pago ao Credor será obtido pela multiplicação do FATOR na tabela acima pelo respectivo saldo devedor ao fim do 60º mês.

- O saldo devedor no 60º mês será apurado pelo valor do crédito em Reais à Data do Pedido, acrescido dos juros e correção monetária de 3% ao ano.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## ANEXO 4.1.3

## Procedimento para aumento do capital da Lupatech S.A. por meio de capitalização dos Créditos em aumento de capital da Lupatech S.A.

**(A)**　No prazo de 180 (cento e oitenta) dias contados do transcurso do prazo previsto nas Cláusulas 4.1.6 e 5.1.6 do Plano, será publicado o 1º edital de convocação da assembleia geral extraordinária da Lupatech S.A., para aprovar o aumento do capital social da Lupatech S.A., na forma do art. 171, §2º, da Lei das Sociedades por Ações e demais disposições legais aplicáveis, com a emissão de novas Ações, por meio da capitalização de créditos detidos pelos Credores Quirografários que escolherem as Opções C e D previstas nas Cláusulas 5.1.4 e 5.1.5, e Credores com Garantia Real que escolherem a Opção B prevista na Cláusula 4.1.3 do Plano.

**(B)**　A assembleia geral extraordinária cuja ordem do dia contenha a aprovação do aumento de capital por meio da capitalização de crédito será convocada na forma da legislação aplicável.

**(C)**　Caso haja aumento de capital autorizado, este poderá ser utilizado pela Lupatech S.A. para possibilitar a emissão das novas Ações aos Credores Quirografários que escolherem as Opções C e D previstas nas Cláusulas 5.1.4 e 5.1.5, e aos Credores com Garantia Real que escolherem a Opção B prevista na Cláusula 4.1.3 do Plano.

**(D)**　O valor do aumento de capital mediante capitalização de crédito será igual ao valor da soma: (i) da totalidade dos Créditos Quirografários detidos pelos Credores Quirografários que tenham escolhido as opções C e D previstas nas Cláusulas 5.1.4 e 5.1.5 do Plano, conforme indicado na manifestação prevista no Anexo 5.1.6; (ii) da totalidade dos Créditos Quirografários detidos pelos Credores Quirografários que não formalizarem tal opção, nos termos da Cláusula 5.1.7 do Plano; e (iii) do valor dos Créditos com Garantia Real indicado pelos Credores com Garantia Real que tenham escolhido total ou parcialmente a opção B prevista na Cláusula 4.1.3 do Plano, conforme indicado na manifestação prevista no Anexo 4.1.6.

**(E)**　As Ações emitidas pela Lupatech S.A. no âmbito do aumento de capital por meio da capitalização de crédito e subscritas pelos Credores serão livres e desembaraçadas de quaisquer ônus e conferirão aos seus titulares os mesmos direitos atribuídos às demais Ações, sem que haja qualquer desembolso de recursos ou pagamento de preço por parte dos Credores tendo em vista sua condição de detentores dos créditos objeto da capitalização.

**(F)**　O aumento de capital da Lupatech S.A. por meio da capitalização de crédito ocorrerá de forma privada, conferindo aos demais acionistas da Lupatech S.A. o direito de preferência, na forma da Lei das Sociedades por Ações. As Recuperandas comprometem-se a, no prazo de 30 (trinta) dias contados da publicação da ata de

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

37

assembleia geral extraordinária que deliberar sobre o aumento de capital ou do aviso aos acionistas referente à deliberação tomada em referida na assembleia geral extraordinária, renunciar ao seu respectivo direito de preferência, obter a renúncia ao direito de preferência das sociedades controladas pelas Recuperandas, e tomar todas as medidas necessárias para este fim, permitindo, portanto, que os Créditos Quirografários cujos titulares tenham escolhido as opções C e D previstas nas Cláusulas 5.1.4 e 5.1.5, e os Créditos com Garantia Real cujos titulares tenham escolhido total ou parcialmente a opção B prevista na Cláusula 4.1.3 do Plano, sejam capitalizados em Ações, na forma e em cumprimento a este Plano.

**(G)**     Nos termos das manifestações previstas nos <u>Anexos 4.1.6 e 5.1.6</u> para escolha das opções de recebimento dos Créditos com Garantia Real e Créditos Quirografários, todas as providências necessárias para a implementação do Plano, observadas todas as autorizações societárias, regulatórias e legais aplicáveis, inclusive para assinar os boletins de subscrição, poderão ser tomadas pelos Credores, em nome próprio, ou pelo Mandatário, nos termos do mandato previsto na Cláusula 5.1.5.1 do Plano. Neste último caso, a Lupatech S.A., ou terceiro por ela indicado, conforme aplicável, ficam desde já mandatados e autorizados, em caráter irrevogável e irretratável, por força do Plano, a representar os Credores na assinatura de todos os documentos que sejam necessários para viabilizar a entrega das Ações, incluindo, sem limitação, o boletim de subscrição perante a instituição escrituradora das Ações.

**(H)**     O número de Ações a serem entregues em cumprimento a este Plano será simultânea e proporcionalmente ajustado aos aumentos de capital por bonificação, desdobramentos ou grupamentos de ações que vierem a ocorrer a partir desta data, sem qualquer ônus para o Credor e na mesma proporção estabelecida para tais eventos. Assim, por exemplo, (i) em caso de grupamento de ações, o número de Ações a serem entregues deverá ser dividido pela mesma razão referente ao grupamento das ações; e (ii) em caso de desdobramento de ações ou bonificações, o número de Ações a serem entregues deverá ser multiplicado pela mesma razão referente ao desdobramento das ações ou pela mesma razão utilizada para a bonificação.

**(I)**     As ações correspondentes ao valor proporcional do Crédito serão registradas nos livros da Lupatech S.A. em nome de cada Credor, pelo agente escriturador das ações da Lupatech S.A.

**(J)**     Os demais prazos e procedimentos relacionados ao aumento de capital mediante capitalização de crédito, além dos já fornecidos por meio deste Anexo, serão oportunamente divulgados na forma da Lei das Sociedades por Ações e da Lei de Falências, conforme aplicável e se necessário.

**(K)**     A efetiva entrega das Ações derivadas do aumento de capital por meio da capitalização de crédito aos respectivos Credores Quirografários e Credores com Garantia Real, nos termos previstos no Plano, livres e desembaraçadas de quaisquer

38

ônus, representa o pagamento integral dos Credores Quirografários e Credores com Garantia Real que tiverem realizado essa opção, desobrigando as Recuperandas em relação aos Créditos Quirografários e Créditos com Garantia Real, inclusive por créditos decorrentes de garantias por ela prestadas, subrogando-a perante todos os devedores solidários e obrigados por direito de regresso.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## ANEXO 4.1.6

## Modelo de formulário para escolha da opção de recebimento dos Créditos com Garantia Real

Ao
**Grupo Lupatech**
Avenida Maria Coelho Aguiar, 215, Bloco B, 5º andar
Jardim São Luis, São Paulo-SP
CEP 05804-900
A/C: **Ricardo Doebeli, João Marcos Cavichioli Feiteiro**


C/C
**Alta Administração Judicial Ltda.**
Avenida Paulista, nº 1439, 13º andar
São Paulo-SP
CEP 01311-926
A/C: **Afonso Rodeguer Neto**

C/C
**Felsberg Advogados**
Avenida Cidade Jardim, 803, 5º andar
Jardim Paulistano, São Paulo-SP
CEP 01453-000
A/C: **Thomas Benes Felsberg, Paulo Fernando Campana Filho, Thiago Dias Costa**


Ref.: **Credor com Garantia Real – Comunicação de escolha da forma de recebimento dos Créditos – Plano de Recuperação Judicial do Grupo Lupatech**


Prezados Srs.,


_____, inscrito no (  ) CPF/MF ou no (  )
CNPJ/MF sob o nº _____, residente e domiciliado em
_____ ("**Credor**"),
na qualidade de **Credor com Garantia Real** devidamente habilitado nos autos do
processo de recuperação judicial do Grupo Lupatech, vem, por meio da presente, em
atendimento ao quanto exposto na Cláusula 4.1.6 do plano de recuperação judicial do
Grupo Lupatech ("**Plano**"), **declarar**, para todos os fins e efeitos de direito e nos termos
definidos no Plano, que elege receber seus Créditos com Garantia Real nos termos das
Opções A e B previstas pelas Cláusulas 4.1.2 e 4.1.3 do Plano, distribuídos conforme os
percentuais indicados abaixo:

40

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.



_____ % (_____ **por cento) do Crédito com Garantia Real pela Cláusula 4.1.2 – *Opção A* de pagamento do Crédito com Garantia Real (Pagamento em parcelas)**:

> *"Pagamento de 100% (cem por cento) do valor do respectivo Crédito com Garantia Real, que será feito em 72 (setenta e duas) parcelas trimestrais sucessivas, de acordo com o fluxo de pagamentos previsto no <u>Anexo 4.1.2</u>, vencendo-se a primeira 63 (sessenta e três) meses após a Homologação Judicial do Plano. O valor dos Créditos com Garantia Real a ser pago nos termos desta Opção A sofrerá a incidência de juros e de correção monetária equivalentes a uma taxa fixa de 3% (três por cento) ao ano, conforme o fluxo de pagamentos previsto no <u>Anexo 4.1.2</u>"*

_____ % (_____ **por cento) do Crédito com Garantia Real pela Cláusula 4.1.3 – *Opção B* de pagamento do Crédito com Garantia Real (Capitalização de Créditos)**:

> *"Pagamento do valor do Crédito com Garantia Real, observado o disposto na Cláusula 4.1.3.1, por meio da subscrição de Ações mediante a capitalização dos respectivos Créditos com Garantia Real, na forma do art. 171, §2º, da Lei das Sociedades por Ações. As Ações serão emitidas pelo Preço de Emissão, sendo que as Ações deverão ser integralizadas com seus respectivos Créditos com Garantia Real, nos termos do <u>Anexo 4.1.3</u>;*
>
> *Na hipótese de o Crédito com Garantia Real do Credor com Garantia Real que optar pelo recebimento por meio da Opção B ser composto de valor principal e de juros ou outros encargos legais ou contratuais, a capitalização prevista na Cláusula 4.1.3 se restringirá necessariamente ao valor do saldo devedor do principal. O valor correspondente aos juros, correção monetária e demais encargos contratuais ou legais incidirá sobre o valor principal até a Data do Pedido, e deverá ser pago ao Credor com Garantia Real na forma da Opção A prevista pela Cláusula 4.1.2.*
>
> *Na hipótese de o Credor com Garantia Real que tiver optado pela conversão total ou parcial de seu Crédito com Garantia Real em Ações comprovar a existência de qualquer restrição estatutária ou regulamentar à conversão integral ou parcial de seu Crédito, tal restrição será respeitada, e o saldo adicional será pago ao respectivo*

41

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

> *Credor com Garantia Real na forma da Opção A prevista pela Cláusula 4.1.2.*
>
> *Na hipótese de a conversão do Crédito com Garantia Real em Ações prevista na Cláusula 4.1.3 ocorrer apenas de forma parcial, o respectivo Credor com Garantia Real deverá liberar proporcionalmente Garantias Reais em favor do Grupo Lupatech, de modo a restarem ativos dados em Garantia Real em montante equivalente ao saldo restante dos Créditos com Garantia Real."*

O Credor com Garantia Real declara expressamente ter lido e compreendido todas as disposições do Plano, reconhecendo que são aplicáveis às formas de pagamento por ele eleitas todas as demais disposições do Plano, especialmente aquelas previstas no Capítulo IV, que disciplina o pagamento dos Créditos com Garantia Real.

Por fim, o Credor declara-se ciente de que a opção feita neste ato é irrevogável, irretratável, final, definitiva e vinculante, nos termos da Cláusula 2.1.4.2 do Plano.

Atenciosamente,

_____

**Credor:**

Por seu representante legal:

RG:

CPF:

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## ANEXO 5.1.2

## Fluxo de pagamentos para a Opção A de pagamento dos Créditos Quirografários

| MÊS a Contar da Homologação do Plano | TRIMESTRE a Contar da Homologação do Plano | Saldo Devedor | Parcela | Principal | Juros e Correção Monetária | FATOR multiplicador do saldo devedor ao fim do mês 60 |
|---|---|---|---|---|---|---|
| 60 | 20 | 100,000 | - | - | - | |
| 63 | 21 | 100,077 | 0,665 | 0,510 | 0,155 | 0,66513% |
| 66 | 22 | 100,154 | 0,665 | 0,514 | 0,152 | 0,66513% |
| 69 | 23 | 100,231 | 0,665 | 0,517 | 0,148 | 0,66513% |
| 72 | 24 | 100,310 | 0,665 | 0,521 | 0,144 | 0,66513% |
| 75 | 25 | 100,389 | 0,665 | 0,525 | 0,140 | 0,66513% |
| 78 | 26 | 100,468 | 0,665 | 0,529 | 0,136 | 0,66513% |
| 81 | 27 | 100,548 | 0,665 | 0,533 | 0,132 | 0,66513% |
| 84 | 28 | 100,629 | 0,665 | 0,537 | 0,128 | 0,66513% |
| 87 | 29 | 100,710 | 0,665 | 0,541 | 0,124 | 0,66513% |
| 90 | 30 | 100,792 | 0,665 | 0,545 | 0,120 | 0,66513% |
| 93 | 31 | 100,874 | 0,665 | 0,549 | 0,116 | 0,66513% |
| 96 | 32 | 100,957 | 0,665 | 0,553 | 0,112 | 0,66513% |
| 99 | 33 | 101,041 | 0,665 | 0,557 | 0,108 | 0,66513% |
| 102 | 34 | 101,125 | 0,665 | 0,561 | 0,104 | 0,66513% |
| 105 | 35 | 101,210 | 0,665 | 0,565 | 0,100 | 0,66513% |
| 108 | 36 | 101,296 | 0,665 | 0,570 | 0,096 | 0,66513% |
| 111 | 37 | 100,763 | 1,284 | 0,824 | 0,460 | 1,28418% |
| 114 | 38 | 100,226 | 1,284 | 0,830 | 0,454 | 1,28418% |
| 117 | 39 | 99,685 | 1,284 | 0,837 | 0,448 | 1,28418% |
| 120 | 40 | 99,141 | 1,284 | 0,843 | 0,441 | 1,28418% |
| 123 | 41 | 98,592 | 1,284 | 0,849 | 0,435 | 1,28418% |
| 126 | 42 | 98,039 | 1,284 | 0,855 | 0,429 | 1,28418% |
| 129 | 43 | 97,482 | 1,284 | 0,862 | 0,423 | 1,28418% |
| 132 | 44 | 96,921 | 1,284 | 0,868 | 0,416 | 1,28418% |
| 135 | 45 | 96,355 | 1,284 | 0,874 | 0,410 | 1,28418% |
| 138 | 46 | 95,786 | 1,284 | 0,881 | 0,403 | 1,28418% |
| 141 | 47 | 95,212 | 1,284 | 0,887 | 0,397 | 1,28418% |
| 144 | 48 | 94,634 | 1,284 | 0,894 | 0,390 | 1,28418% |
| 147 | 49 | 94,052 | 1,284 | 0,901 | 0,383 | 1,28418% |
| 150 | 50 | 93,465 | 1,284 | 0,907 | 0,377 | 1,28418% |
| 153 | 51 | 92,874 | 1,284 | 0,914 | 0,370 | 1,28418% |
| 156 | 52 | 92,279 | 1,284 | 0,921 | 0,363 | 1,28418% |
| 159 | 53 | 91,679 | 1,284 | 0,928 | 0,356 | 1,28418% |
| 162 | 54 | 91,075 | 1,284 | 0,935 | 0,350 | 1,28418% |
| 165 | 55 | 90,466 | 1,284 | 0,942 | 0,343 | 1,28418% |
| 168 | 56 | 89,853 | 1,284 | 0,949 | 0,336 | 1,28418% |
| 171 | 57 | 89,235 | 1,284 | 0,956 | 0,329 | 1,28418% |
| 174 | 58 | 88,613 | 1,284 | 0,963 | 0,322 | 1,28418% |
| 177 | 59 | 87,986 | 1,284 | 0,970 | 0,314 | 1,28418% |
| 180 | 60 | 87,355 | 1,284 | 0,977 | 0,307 | 1,28418% |

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

| MÊS | TRIMESTRE | Saldo Devedor | Parcela | Principal | Juros e Correção Monetária | FATOR |
|---|---|---|---|---|---|---|
| a Contar da Homologação do Plano | a Contar da Homologação do Plano | | | | | multiplicador do saldo devedor ao fim do mês 60 |
| 183 | 61 | 84,926 | 3,077 | 1,559 | 1,518 | 3,07665% |
| 186 | 62 | 82,479 | 3,077 | 1,570 | 1,506 | 3,07665% |
| 189 | 63 | 80,014 | 3,077 | 1,582 | 1,495 | 3,07665% |
| 192 | 64 | 77,531 | 3,077 | 1,594 | 1,483 | 3,07665% |
| 195 | 65 | 75,029 | 3,077 | 1,606 | 1,471 | 3,07665% |
| 198 | 66 | 72,509 | 3,077 | 1,618 | 1,459 | 3,07665% |
| 201 | 67 | 69,970 | 3,077 | 1,630 | 1,447 | 3,07665% |
| 204 | 68 | 67,413 | 3,077 | 1,642 | 1,435 | 3,07665% |
| 207 | 69 | 64,836 | 3,077 | 1,654 | 1,423 | 3,07665% |
| 210 | 70 | 62,240 | 3,077 | 1,666 | 1,411 | 3,07665% |
| 213 | 71 | 59,625 | 3,077 | 1,678 | 1,398 | 3,07665% |
| 216 | 72 | 56,991 | 3,077 | 1,691 | 1,386 | 3,07665% |
| 219 | 73 | 54,337 | 3,077 | 1,703 | 1,373 | 3,07665% |
| 222 | 74 | 51,663 | 3,077 | 1,716 | 1,361 | 3,07665% |
| 225 | 75 | 48,970 | 3,077 | 1,729 | 1,348 | 3,07665% |
| 228 | 76 | 46,256 | 3,077 | 1,742 | 1,335 | 3,07665% |
| 231 | 77 | 43,523 | 3,077 | 1,755 | 1,322 | 3,07665% |
| 234 | 78 | 40,769 | 3,077 | 1,768 | 1,309 | 3,07665% |
| 237 | 79 | 37,995 | 3,077 | 1,781 | 1,296 | 3,07665% |
| 240 | 80 | 35,200 | 3,077 | 1,794 | 1,283 | 3,07665% |
| 243 | 81 | 32,384 | 3,077 | 1,807 | 1,269 | 3,07665% |
| 246 | 82 | 29,548 | 3,077 | 1,821 | 1,256 | 3,07665% |
| 249 | 83 | 26,690 | 3,077 | 1,834 | 1,243 | 3,07665% |
| 252 | 84 | 23,812 | 3,077 | 1,848 | 1,229 | 3,07665% |
| 255 | 85 | 20,912 | 3,077 | 1,861 | 1,215 | 3,07665% |
| 258 | 86 | 17,990 | 3,077 | 1,875 | 1,201 | 3,07665% |
| 261 | 87 | 15,047 | 3,077 | 1,889 | 1,188 | 3,07665% |
| 264 | 88 | 12,082 | 3,077 | 1,903 | 1,174 | 3,07665% |
| 267 | 89 | 9,095 | 3,077 | 1,917 | 1,159 | 3,07665% |
| 270 | 90 | 6,086 | 3,077 | 1,931 | 1,145 | 3,07665% |
| 273 | 91 | 3,054 | 3,077 | 1,946 | 1,131 | 3,07665% |
| 276 | 92 | 0,000 | 3,077 | 1,960 | 1,116 | 3,07665% |

Notas:

- O valor da parcela a ser pago ao Credor será obtido pela multiplicação do FATOR na tabela acima pelo respectivo saldo devedor ao fim do 60º mês.

- O saldo devedor no 60º mês será apurado pelo valor do crédito em Reais à Data do Pedido, acrescido dos juros e correção monetária de 3% ao ano, deduzidas a parcela única de R$ 500,00 a ser paga nos primeiros 12 meses após a

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

44

Homologação Judicial do Plano e as 4 parcelas anuais de R$ 1.000,00 pagas entre o 2º e o 5º ano após a Homologação Judicial do Plano.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## ANEXO 5.1.3

## Fluxo de pagamentos para a Opção B de pagamento dos Créditos Quirografários

| MÊS<br>a Contar da<br>Homologação<br>do Plano | TRIMESTRE<br>a Contar da<br>Homologação<br>do Plano | Saldo<br>Devedor | Parcela | Principal | Juros e<br>Correção<br>Monetária | FATOR<br>multiplicador do<br>saldo devedor ao<br>fim do mês 60 |
|---|---|---|---|---|---|---|
| 60 | 20 | 100,000 | - | - | - | |
| 63 | 21 | 99,080 | 1,662 | 0,794 | 0,868 | 1,66181% |
| 66 | 22 | 98,153 | 1,662 | 0,800 | 0,862 | 1,66181% |
| 69 | 23 | 97,219 | 1,662 | 0,806 | 0,856 | 1,66181% |
| 72 | 24 | 96,278 | 1,662 | 0,811 | 0,850 | 1,66181% |
| 75 | 25 | 95,331 | 1,662 | 0,818 | 0,844 | 1,66181% |
| 78 | 26 | 94,376 | 1,662 | 0,824 | 0,838 | 1,66181% |
| 81 | 27 | 93,414 | 1,662 | 0,830 | 0,832 | 1,66181% |
| 84 | 28 | 92,445 | 1,662 | 0,836 | 0,826 | 1,66181% |
| 87 | 29 | 91,469 | 1,662 | 0,842 | 0,820 | 1,66181% |
| 90 | 30 | 90,486 | 1,662 | 0,848 | 0,814 | 1,66181% |
| 93 | 31 | 89,495 | 1,662 | 0,855 | 0,807 | 1,66181% |
| 96 | 32 | 88,497 | 1,662 | 0,861 | 0,801 | 1,66181% |
| 99 | 33 | 87,492 | 1,662 | 0,867 | 0,795 | 1,66181% |
| 102 | 34 | 86,479 | 1,662 | 0,874 | 0,788 | 1,66181% |
| 105 | 35 | 85,458 | 1,662 | 0,880 | 0,782 | 1,66181% |
| 108 | 36 | 84,430 | 1,662 | 0,887 | 0,775 | 1,66181% |
| 111 | 37 | 83,395 | 1,662 | 0,893 | 0,769 | 1,66181% |
| 114 | 38 | 82,351 | 1,662 | 0,900 | 0,762 | 1,66181% |
| 117 | 39 | 81,300 | 1,662 | 0,907 | 0,755 | 1,66181% |
| 120 | 40 | 80,242 | 1,662 | 0,913 | 0,748 | 1,66181% |
| 123 | 41 | 79,175 | 1,662 | 0,920 | 0,742 | 1,66181% |
| 126 | 42 | 78,100 | 1,662 | 0,927 | 0,735 | 1,66181% |
| 129 | 43 | 77,018 | 1,662 | 0,934 | 0,728 | 1,66181% |
| 132 | 44 | 75,927 | 1,662 | 0,941 | 0,721 | 1,66181% |
| 135 | 45 | 74,829 | 1,662 | 0,948 | 0,714 | 1,66181% |
| 138 | 46 | 73,722 | 1,662 | 0,955 | 0,707 | 1,66181% |
| 141 | 47 | 72,607 | 1,662 | 0,962 | 0,700 | 1,66181% |
| 144 | 48 | 71,484 | 1,662 | 0,969 | 0,693 | 1,66181% |
| 147 | 49 | 70,352 | 1,662 | 0,976 | 0,686 | 1,66181% |
| 150 | 50 | 69,212 | 1,662 | 0,983 | 0,678 | 1,66181% |
| 153 | 51 | 68,064 | 1,662 | 0,991 | 0,671 | 1,66181% |
| 156 | 52 | 66,907 | 1,662 | 0,998 | 0,664 | 1,66181% |
| 159 | 53 | 65,741 | 1,662 | 1,005 | 0,656 | 1,66181% |
| 162 | 54 | 64,567 | 1,662 | 1,013 | 0,649 | 1,66181% |
| 165 | 55 | 63,384 | 1,662 | 1,020 | 0,641 | 1,66181% |
| 168 | 56 | 62,192 | 1,662 | 1,028 | 0,634 | 1,66181% |
| 171 | 57 | 60,992 | 1,662 | 1,036 | 0,626 | 1,66181% |
| 174 | 58 | 59,782 | 1,662 | 1,043 | 0,619 | 1,66181% |
| 177 | 59 | 58,564 | 1,662 | 1,051 | 0,611 | 1,66181% |
| 180 | 60 | 57,336 | 1,662 | 1,059 | 0,603 | 1,66181% |

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

46

| MÊS | TRIMESTRE | Saldo Devedor | Parcela | Principal | Juros e Correção Monetária | FATOR |
|---|---|---|---|---|---|---|
| *a Contar da Homologação do Plano* | *a Contar da Homologação do Plano* | | | | | *multiplicador do saldo devedor ao fim do mês 60* |
| 183 | 61 | 56,100 | 1,662 | 1,067 | 0,595 | 1,66181% |
| 186 | 62 | 54,854 | 1,662 | 1,075 | 0,587 | 1,66181% |
| 189 | 63 | 53,599 | 1,662 | 1,083 | 0,579 | 1,66181% |
| 192 | 64 | 52,335 | 1,662 | 1,091 | 0,571 | 1,66181% |
| 195 | 65 | 51,061 | 1,662 | 1,099 | 0,563 | 1,66181% |
| 198 | 66 | 49,778 | 1,662 | 1,107 | 0,555 | 1,66181% |
| 201 | 67 | 48,486 | 1,662 | 1,115 | 0,547 | 1,66181% |
| 204 | 68 | 47,183 | 1,662 | 1,123 | 0,539 | 1,66181% |
| 207 | 69 | 45,872 | 1,662 | 1,132 | 0,530 | 1,66181% |
| 210 | 70 | 44,550 | 1,662 | 1,140 | 0,522 | 1,66181% |
| 213 | 71 | 43,219 | 1,662 | 1,148 | 0,513 | 1,66181% |
| 216 | 72 | 41,877 | 1,662 | 1,157 | 0,505 | 1,66181% |
| 219 | 73 | 40,526 | 1,662 | 1,166 | 0,496 | 1,66181% |
| 222 | 74 | 39,165 | 1,662 | 1,174 | 0,488 | 1,66181% |
| 225 | 75 | 37,794 | 1,662 | 1,183 | 0,479 | 1,66181% |
| 228 | 76 | 36,412 | 1,662 | 1,192 | 0,470 | 1,66181% |
| 231 | 77 | 35,020 | 1,662 | 1,201 | 0,461 | 1,66181% |
| 234 | 78 | 33,618 | 1,662 | 1,209 | 0,452 | 1,66181% |
| 237 | 79 | 32,206 | 1,662 | 1,218 | 0,443 | 1,66181% |
| 240 | 80 | 30,783 | 1,662 | 1,227 | 0,434 | 1,66181% |
| 243 | 81 | 29,349 | 1,662 | 1,237 | 0,425 | 1,66181% |
| 246 | 82 | 27,905 | 1,662 | 1,246 | 0,416 | 1,66181% |
| 249 | 83 | 26,450 | 1,662 | 1,255 | 0,407 | 1,66181% |
| 252 | 84 | 24,985 | 1,662 | 1,264 | 0,398 | 1,66181% |
| 255 | 85 | 23,508 | 1,662 | 1,274 | 0,388 | 1,66181% |
| 258 | 86 | 22,021 | 1,662 | 1,283 | 0,379 | 1,66181% |
| 261 | 87 | 20,522 | 1,662 | 1,293 | 0,369 | 1,66181% |
| 264 | 88 | 19,013 | 1,662 | 1,302 | 0,360 | 1,66181% |
| 267 | 89 | 17,492 | 1,662 | 1,312 | 0,350 | 1,66181% |
| 270 | 90 | 15,960 | 1,662 | 1,322 | 0,340 | 1,66181% |
| 273 | 91 | 14,416 | 1,662 | 1,331 | 0,330 | 1,66181% |
| 276 | 92 | 12,862 | 1,662 | 1,341 | 0,321 | 1,66181% |
| 279 | 93 | 11,295 | 1,662 | 1,351 | 0,311 | 1,66181% |
| 282 | 94 | 9,717 | 1,662 | 1,361 | 0,301 | 1,66181% |
| 285 | 95 | 8,127 | 1,662 | 1,371 | 0,290 | 1,66181% |
| 288 | 96 | 6,526 | 1,662 | 1,381 | 0,280 | 1,66181% |
| 291 | 97 | 4,912 | 1,662 | 1,392 | 0,270 | 1,66181% |
| 294 | 98 | 3,287 | 1,662 | 1,402 | 0,260 | 1,66181% |
| 297 | 99 | 1,650 | 1,662 | 1,412 | 0,249 | 1,66181% |
| 300 | 100 | 0,000 | 1,662 | 1,423 | 0,239 | 1,66181% |

Notas:

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

47

- O valor da parcela a ser pago ao Credor será obtido pela multiplicação do FATOR na tabela acima pelo respectivo saldo devedor ao fim do 60º mês.

- O saldo devedor no 60º mês será apurado pelo valor do crédito em Reais à Data do Pedido, acrescido dos juros e correção monetária de 3% ao ano, deduzidas a parcela única de R$ 500,00 a ser paga nos primeiros 12 meses após a Homologação Judicial do Plano e as 4 parcelas anuais de R$ 1.000,00 pagas entre o 2º e o 5º ano após a Homologação Judicial do Plano.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## ANEXO 5.1.5

### Procedimento para Nomeação e Atuação do Comissário

**(A)**    Os Credores Quirografários que escolherem a Opção D prevista na Cláusula 5.1.5 do Plano nomearão o Comissário, de forma irrevogável e irretratável, para fins e efeitos dos arts. 693 e seguintes do Código Civil, outorgando-lhe mandato e todos os poderes necessários para *(i)* subscrever as Ações em nome próprio, mas em beneficio do Credor; *(ii)* alienar as Ações na BM&FBOVESPA, em qualquer data; e *(iii)* a exclusivo critério do Comissário, tomar toda e qualquer providência necessária ou razoável, inclusive a remessa dos recursos líquidos provenientes da alienação das Ações para a conta bancária indicada pelo Credor na manifestação prevista na Cláusula 2.1.6, líquido de todos e quaisquer custos e taxas operacionais e tributos, em até 10 (dez) Dias Úteis após a realização da alienação das Ações.

**(B)**    O Comissário é isento de toda e qualquer responsabilidade derivada da alienação das Ações para fins de implementação do Plano. Neste sentido, os Credores Quirografários que escolherem a Opção D prevista Cláusula 5.1.5 renunciarão aos direitos previstos nos arts. 696, 697 e 698 do Código Civil, tendo em vista que o Comissário deverá envidar os melhores esforços para realizar a alienação das Ações com o único e exclusivo objetivo de entregar os recursos financeiros ao Credor, sem qualquer obrigação de resultado e de buscar a maximização do preço de venda das Ações, não podendo lhe ser imputado qualquer suposto prejuízo derivado do momento, forma e/ou valores apurados com a alienação das Ações, incluindo prejuízo advindo de eventual insolvência do adquirente das Ações, com o qual não se responsabilizará solidariamente.

**(C)**    Os Credores Quirografários que escolherem o pagamento na forma prevista na Cláusula 5.1.5 e neste Anexo, declaram que a emissão das Ações em nome do Comissário representa o pagamento integral dos Credores Quirografários que tiverem escolhido essa opção, momento em que passarão a deter o direito de crédito relativo à alienação das Ações, desobrigando a Lupatech S.A. em relação a seus respectivos Créditos Quirografários.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## ANEXO 5.1.6

### Modelo de formulário para escolha da opção de recebimento dos Créditos Quirografários

Ao
**Grupo Lupatech**
Avenida Maria Coelho Aguiar, 215, Bloco B, 5º andar
Jardim São Luis, São Paulo-SP
CEP 05804-900
A/C: **Ricardo Doebeli, João Marcos Cavichioli Feiteiro**

C/C
**Alta Administração Judicial Ltda.**
Avenida Paulista, nº 1439, 13º andar
São Paulo-SP
CEP 01311-926
A/C: **Afonso Rodeguer Neto**

C/C
**Felsberg Advogados**
Avenida Cidade Jardim, 803, 5º andar
Jardim Paulistano, São Paulo-SP
CEP 01453-000
A/C: **Thomas Benes Felsberg, Paulo Fernando Campana Filho, Thiago Dias Costa**

Ref.: **Credor Quirografário – Comunicação de escolha da forma de recebimento dos Créditos – Plano de Recuperação Judicial do Grupo Lupatech**

Prezados Srs.,

_____, inscrito no ( ) CPF/MF ou no ( ) CNPJ/MF sob o nº _____, residente e domiciliado em _____ ("**Credor**"), na qualidade de **credor quirografário** devidamente habilitado nos autos do processo de recuperação judicial do Grupo Lupatech, vem, por meio da presente, em atendimento ao quanto exposto na Cláusula 5.1.6 do plano de recuperação judicial do Grupo Lupatech ("**Plano**"), **declarar**, para todos os fins e efeitos de direito e nos termos definidos no Plano, que elege receber seu Crédito Quirografário de acordo com a forma prevista para a opção que assinala com um "X" abaixo:

50

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

( ) **Cláusula 5.1.2 –** *Opção A* **de pagamento do Crédito Quirografário (Pagamento em parcelas)**:

> "*Pagamento de 100% (cem por cento) do valor do respectivo Crédito Quirografário devida e individualmente habilitado na Lista de Credores, da seguinte forma: (i) 1 (uma) parcela inicial no valor fixo de R$ 500,00 (quinhentos reais) para cada Credor Quirografário, a ser paga em até 12 (doze) meses contados da Homologação Judicial do Plano; (ii) 4 (quatro) parcelas anuais no valor fixo de R$ 1.000,00 (mil reais) cada para cada Credor Quirografário, vencendo-se a primeira 24 (vinte e quatro) meses após a Homologação Judicial do Plano; (iii) 72 (setenta e duas) parcelas trimestrais sucessivas, calculadas a partir do saldo devedor em aberto no 60º (sexagésimo) mês após a Homologação Judicial do Plano, de acordo com o fluxo de pagamentos previsto no* Anexo 5.1.2, *vencendo-se a primeira de tais parcelas 63 (sessenta e três) meses após a Homologação Judicial do Plano. O valor dos Créditos Quirografários a ser pago nos termos da Opção A sofrerá a incidência de juros e de correção monetária equivalentes a uma taxa fixa de 3% (três por cento) ao ano, conforme o fluxo de pagamentos previsto no* Anexo 5.1.2."

**Para os fins do artigo 50, § 2º, da Lei nº 11.101/2005, nos termos da Cláusula 5.1.10 do Plano, o Credor Quirografário que optou pela Opção A de pagamento declara-se neste ato expressamente ciente e de acordo com a circunstância de que, caso todo ou parte de seu crédito seja denominado originalmente em moeda estrangeira, a taxa a ser aplicada para fins de conversão final do seu Crédito em Reais, e posterior pagamento de acordo com o Plano, será a taxa de conversão de referência do Banco Central do Brasil de fechamento vigente para a venda da respectiva moeda estrangeira na Data do Pedido (25 de maio de 2015), afastando-se qualquer outra taxa de conversão, vigente em qualquer outra data.**

( ) **Cláusula 5.1.3 –** *Opção B* **de pagamento do Crédito Quirografário (Pagamento em parcelas com evento de liquidez)**:

> "*Pagamento de 100% (cem por cento) do valor do respectivo Crédito Quirografário devida e individualmente habilitado na Lista de Credores, observado o disposto na Cláusula 5.1.3.1, da seguinte forma: (i) 1 (uma) parcela inicial no valor fixo de R$ 500,00 (quinhentos reais) para cada Credor Quirografário, a ser paga em até 12 (doze) meses contados da Homologação Judicial do Plano; (ii) 4 (quatro) parcelas*

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

51

anuais no valor fixo de R$ 1.000,00 (mil reais) cada para cada Credor Quirografário, vencendo-se a primeira 24 (vinte e quatro) meses após a Homologação Judicial do Plano; (iii) 80 (oitenta) parcelas trimestrais sucessivas, calculadas em função do saldo devedor em aberto no 60º (sexagésimo) mês após a Homologação Judicial do Plano, de acordo com o fluxo de pagamentos previsto no *Anexo 5.1.3*, vencendo-se a primeira de tais parcelas 63 (sessenta e três) meses após a Homologação Judicial do Plano. Nessa hipótese, o valor dos Créditos Quirografários a ser pago nos termos da Opção B sofrerá a incidência de juros e de correção monetária equivalentes a uma taxa fixa de 3% (três por cento) ao ano, já incorporados ao fluxo de pagamentos previsto no *Anexo 5.1.3*.

Durante todo o prazo de pagamento previsto para a Opção B para Credores Quirografários, o Grupo Lupatech envidará esforços para realizar a alienação de ativos, bem como para obter recursos líquidos advindos de outras fontes. O Grupo Lupatech poderá utilizar o valor obtido pela alienação de ativos, bem como qualquer outro recurso, advindo de qualquer outra fonte, para, a qualquer tempo, antecipar o pagamento das parcelas devidas aos Credores Quirografários que tiverem optado pela Opção B de pagamento, na forma da Cláusula 5.1.3. Os pagamentos realizados a título de antecipação nos termos desta Cláusula amortizarão um determinado número de parcelas vincendas do fluxo de pagamentos do *Anexo 5.1.3*, da mais próxima para a mais distante, e levarão ao reescalonamento do vencimento das parcelas remanescentes, conforme Cláusula 5.1.3.2 abaixo.

5.1.3.5. Na hipótese de vir a ser realizada qualquer antecipação de parcelas nos termos da Cláusula 5.1.3.1 acima durante os 5 (cinco) primeiros anos após a Homologação Judicial do Plano, um determinado número de parcelas remanescentes, da mais próxima para a mais distante, terá seu vencimento prorrogado para coincidir com o vencimento da última parcela da dívida a ser paga nos termos da Opção B. O número de parcelas futuras cujo vencimento será prorrogado será calculado de acordo com o quadro seguinte:

| Período de realização da antecipação | Número de parcelas prorrogadas para a data de vencimento da última parcela |
|---|---|
| Durante o 1º ou 2º ano após a Homologação Judicial do Plano | 3x (três vezes) o número de parcelas antecipadas |
| Durante o 3º ano após a | 2,5x (duas vezes e meia) o número |

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça São Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

| Homologação Judicial do Plano | de parcelas antecipadas |
|---|---|
| Durante o 4º ano após a Homologação Judicial do Plano | 2x (duas vezes) o número de parcelas antecipadas |
| Durante o 5º ano após a Homologação Judicial do Plano | 1,5x (uma vez e meia) o número de parcelas antecipadas |

Os valores das parcelas cujo vencimento tiver sido prorrogado em razão da realização de antecipações de pagamentos nos termos da Cláusula 5.1.3.1 não sofrerão a incidência de juros e correção monetária entre a data de seu vencimento original e a data para a qual o vencimento foi prorrogado. Os juros e correção monetária que tiverem incidido até a data do vencimento original serão preservados, sendo o vencimento de tais juros e correção monetária, também, prorrogado para a data de vencimento da última parcela.

Na hipótese de o Grupo Lupatech haver quitado todas as parcelas previstas na Cláusula 5.1.3 neste Plano, com exceção das parcelas cujo vencimento tiver sido prorrogado nos termos da Cláusula 5.1.3.1, tais parcelas cujo vencimento tiver sido prorrogado, incluindo seu valor principal, juros e correção monetária, serão perdoadas, na data em que for paga (seja por antecipação ou pelo fluxo estabelecido na Cláusula 5.1.3) a última parcela não reescalonada nos termos da Cláusula 5.1.3, operando-se a Quitação relativamente aos Créditos Quirografários cujos titulares tiverem optado pela Opção B, nada mais podendo os Credores Quirografários que tiverem optado pela Opção B reclamar do Grupo Lupatech a qualquer título, nos termos da Cláusula 11.2."

Para os fins do artigo 50, § 2º, da Lei nº 11.101/2005, nos termos da Cláusula 5.1.10 do Plano, o Credor Quirografário que optou pela Opção B de pagamento declara-se neste ato expressamente ciente e de acordo com a circunstância de que, caso todo ou parte de seu crédito seja denominado originalmente em moeda estrangeira, a taxa a ser aplicada para fins de conversão final do seu Crédito em Reais, e posterior pagamento de acordo com o Plano, será a será a taxa de conversão de referência do Banco Central do Brasil de fechamento vigente para a venda da respectiva moeda estrangeira na Data do Pedido (25 de maio de 2015), afastando-se qualquer outra taxa de conversão, vigente em qualquer outra data.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

( ) **Cláusula 5.1.4 – *Opção C* de pagamento do Crédito Quirografário (Capitalização dos Créditos)***:**

*"Pagamento de 100% (cem por cento) do valor do Crédito Quirografário, observado o disposto na Cláusula 5.1.4.1, por meio da subscrição de Ações mediante a capitalização dos respectivos Créditos Quirografários, na forma do art. 171, §2º, da Lei das Sociedades por Ações. As Ações serão emitidas pelo Preço de Emissão, sendo que as Ações deverão ser integralizadas com seus respectivos Créditos Quirografários, nos termos do Anexo 4.1.3.*

*Na hipótese de o Crédito Quirografário do Credor Quirografário que optar pelo recebimento por meio da Opção C ser composto de valor principal e de juros ou outros encargos legais ou contratuais, a capitalização prevista na Cláusula 5.1.4 se restringirá necessariamente ao valor do saldo devedor do principal. O valor correspondente aos juros, correção monetária e demais encargos contratuais ou legais incidirá sobre o valor principal até a Data do Pedido, e deverá ser pago ao Credor Quirografário na forma da Opção A prevista pela Cláusula 5.1.2.*

*Na hipótese de o Credor Quirografário que tiver optado pela conversão de seu Crédito Quirografário em Ações comprovar a existência de qualquer restrição estatutária ou regulamentar à conversão integral ou parcial de seu Crédito, tal restrição será respeitada, e o saldo será pago ao respectivo Credor Quirografário na forma da Opção A prevista pela Cláusula 5.1.2."*

( ) **Cláusula 5.1.5 – *Opção D* de pagamento do Crédito Quirografário (Pagamento de valores decorrentes da venda em bolsa das Ações resultantes da capitalização dos Créditos)***:**

*"Recebimento em dinheiro dos montantes oriundos da alienação, na BM&FBOVESPA, das Ações subscritas conforme a Cláusula 5.1.4. A alienação das Ações prevista nesta Cláusula será realizada pelo Comissário, nos termos do Anexo 5.1.5, em até 24 (vinte e quatro) meses da emissão das Ações.*

*Os Credores Quirografários que receberem seus Créditos Quirografários por meio da Opção D, nos termos da Cláusula 5.1.5, autorizam o Comissário, em caráter irrevogável e irretratável, a atuar como seu mandatário e comissário. A nomeação e atuação do*

54

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

Comissário se dará nos termos do <u>Anexo 5.1.5</u>, exclusivamente com relação à Opção D prevista na Cláusula 5.1.5.

Os Credores Quirografários que receberem seus Créditos Quirografários por meio da Opção D, nos termos da Cláusula 5.1.5, concedem mandato ao Grupo Lupatech, por meio de qualquer das Recuperandas, para, em seu nome, indicar o Comissário, negociar os termos do contrato de comissão, bem como para quaisquer outros fins necessários à implementação da Opção D, nos termos da Cláusula 5.1.5.

O Comissário e o Grupo Lupatech, inclusive seus acionistas e administradores, são isentos de toda e qualquer responsabilidade derivada da adoção das medidas necessárias para fins de implementação do Plano. Neste sentido, os Credores que escolherem a Opção D prevista na Cláusula 5.1.5 renunciarão aos direitos previstos nos arts. 696, 697 e 698 do Código Civil, tendo em vista que o Comissário deverá envidar os melhores esforços para realizar a alienação das Ações com o único e exclusivo objetivo de entregar os recursos financeiros ao Credor, sem qualquer obrigação de resultado e de buscar a maximização do preço de venda das Ações, não podendo lhe ser imputado, ou ao Grupo Lupatech, ou aos seus acionistas e administradores, qualquer suposto prejuízo derivado do momento, forma e/ou valores apurados com a alienação das Ações, incluindo prejuízo advindo de eventual inadimplência do adquirente das Ações, com o qual não se responsabilizará solidariamente.

Caso, por qualquer razão e a qualquer tempo, o Comissário ou o Grupo Lupatech verifiquem que a implementação da Opção D prevista na Cláusula 5.1.5 se tornou inviável em razão de qualquer vedação ou impedimento, inclusive de natureza operacional, os Credores Quirografários que tiverem escolhido a Opção D receberão seus Créditos Quirografários de acordo com a Opção A prevista na Cláusula 5.1.2."

O Credor Quirografário neste ato instrui o Comissário a depositar o produto da venda das Ações, líquido de qualquer tributo ou custos incorridos na implementação do Plano, na conta bancária de titularidade do Credor Quirografário indicada ao Grupo Lupatech nos termos da Cláusula 2.1.6 do Plano.

Ademais, o Credor Quirografário, vem, por meio da presente, em atendimento ao quanto exposto na Cláusula 5.1.5.1 do Plano, **declarar**, para todos os fins e efeitos de direito e nos termos definidos no Plano, que as medidas necessárias ao pagamento dos

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

respectivos Créditos nos termos da Opção D acima, serão adotadas pelo Comissário, o qual é nomeado neste ato expressamente pelo Credor Quirografário como seu mandatário e comissário, recebendo neste ato todos os poderes necessários para agir em nome e em benefício do Credor Quirografário, na forma dos arts. 653 e seguintes do Código Civil, e para os fins da execução da Opção D de pagamento prevista pela Cláusula 5.1.5 do Plano.

O Credor Quirografário declara expressamente ter lido e compreendido todas as disposições do Plano, reconhecendo que são aplicáveis às formas de pagamento por ele eleitas todas as demais disposições do Plano, especialmente aquelas previstas no Capítulo V, que disciplina o pagamento dos Créditos Quirografários.

Por fim, o Credor declara-se ciente de que a opção feita neste ato é irrevogável, irretratável, final, definitiva e vinculante, nos termos da Cláusula 2.1.4.2 do Plano.

**(   ) O Credor declara tratar-se de Credor de ME e EPP no exercício das opções concedidas aos Credores Quirografários, nos termos da Cláusula 6.1.3 do Plano.**

Atenciosamente,

_____

**Credor:**

Por seu representante legal:

RG:

CPF:

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## ANEXO 6.1.1

### Fluxo de pagamentos dos Créditos de ME e EPP

| MÊS a Contar da Homologação do Plano | TRIMESTRE a Contar da Homologação do Plano | Saldo Devedor | Parcela | Principal | Juros e Correção Monetária | FATOR multiplicador do saldo devedor ao fim do mês 60 |
|---|---|---|---|---|---|---|
| 60 | 20 | 100,000 | - | - | - | |
| 63 | 21 | 97,843 | 2,898 | 1,860 | 1,038 | 2,89836% |
| 66 | 22 | 95,671 | 2,898 | 1,874 | 1,024 | 2,89836% |
| 69 | 23 | 93,482 | 2,898 | 1,888 | 1,010 | 2,89836% |
| 72 | 24 | 91,277 | 2,898 | 1,902 | 0,996 | 2,89836% |
| 75 | 25 | 89,056 | 2,898 | 1,916 | 0,982 | 2,89836% |
| 78 | 26 | 86,818 | 2,898 | 1,930 | 0,968 | 2,89836% |
| 81 | 27 | 84,563 | 2,898 | 1,945 | 0,954 | 2,89836% |
| 84 | 28 | 82,292 | 2,898 | 1,959 | 0,939 | 2,89836% |
| 87 | 29 | 80,004 | 2,898 | 1,974 | 0,925 | 2,89836% |
| 90 | 30 | 77,699 | 2,898 | 1,988 | 0,910 | 2,89836% |
| 93 | 31 | 75,377 | 2,898 | 2,003 | 0,895 | 2,89836% |
| 96 | 32 | 73,038 | 2,898 | 2,018 | 0,880 | 2,89836% |
| 99 | 33 | 70,681 | 2,898 | 2,033 | 0,866 | 2,89836% |
| 102 | 34 | 68,307 | 2,898 | 2,048 | 0,850 | 2,89836% |
| 105 | 35 | 65,915 | 2,898 | 2,063 | 0,835 | 2,89836% |
| 108 | 36 | 63,506 | 2,898 | 2,078 | 0,820 | 2,89836% |
| 111 | 37 | 61,079 | 2,898 | 2,094 | 0,805 | 2,89836% |
| 114 | 38 | 58,633 | 2,898 | 2,109 | 0,789 | 2,89836% |
| 117 | 39 | 56,170 | 2,898 | 2,125 | 0,773 | 2,89836% |
| 120 | 40 | 53,688 | 2,898 | 2,141 | 0,758 | 2,89836% |
| 123 | 41 | 51,188 | 2,898 | 2,157 | 0,742 | 2,89836% |
| 126 | 42 | 48,669 | 2,898 | 2,173 | 0,726 | 2,89836% |
| 129 | 43 | 46,132 | 2,898 | 2,189 | 0,710 | 2,89836% |
| 132 | 44 | 43,576 | 2,898 | 2,205 | 0,693 | 2,89836% |
| 135 | 45 | 41,001 | 2,898 | 2,221 | 0,677 | 2,89836% |
| 138 | 46 | 38,406 | 2,898 | 2,238 | 0,661 | 2,89836% |
| 141 | 47 | 35,793 | 2,898 | 2,254 | 0,644 | 2,89836% |
| 144 | 48 | 33,160 | 2,898 | 2,271 | 0,627 | 2,89836% |
| 147 | 49 | 30,508 | 2,898 | 2,288 | 0,610 | 2,89836% |
| 150 | 50 | 27,835 | 2,898 | 2,305 | 0,593 | 2,89836% |
| 153 | 51 | 25,144 | 2,898 | 2,322 | 0,576 | 2,89836% |
| 156 | 52 | 22,432 | 2,898 | 2,339 | 0,559 | 2,89836% |
| 159 | 53 | 19,700 | 2,898 | 2,357 | 0,542 | 2,89836% |
| 162 | 54 | 16,947 | 2,898 | 2,374 | 0,524 | 2,89836% |
| 165 | 55 | 14,175 | 2,898 | 2,392 | 0,507 | 2,89836% |
| 168 | 56 | 11,382 | 2,898 | 2,409 | 0,489 | 2,89836% |
| 171 | 57 | 8,568 | 2,898 | 2,427 | 0,471 | 2,89836% |
| 174 | 58 | 5,733 | 2,898 | 2,445 | 0,453 | 2,89836% |
| 177 | 59 | 2,877 | 2,898 | 2,463 | 0,435 | 2,89836% |
| 180 | 60 | - 0,000 | 2,898 | 2,482 | 0,417 | 2,89836% |

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

Notas:

- O valor da parcela a ser pago ao Credor será obtido pela multiplicação do FATOR na tabela acima pelo respectivo saldo devedor ao fim do 60º mês.

- O saldo devedor no 60º mês será apurado pelo valor do crédito em Reais à Data do Pedido, acrescido dos juros e correção monetária de 3% ao ano, deduzidas a parcela única de R$ 500,00 a ser paga nos primeiros 12 meses após a Homologação Judicial do Plano e as 4 parcelas anuais de R$ 1.000,00 pagas entre o 2º e o 5º ano após a Homologação Judicial do Plano.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## ANEXO 9.4

### Lista de UPIs

**(A)**    UPI CSL - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados à fabricação e comercialização de cabos de poliéster para ancoragem de plataformas e demais unidades flutuantes;

**(B)**    UPI Colômbia - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais localizados na Colômbia, e voltados à execução de serviços integrados de intervenção de poços para a indústria de petróleo e gás;

**(C)**    UPI MNA + TECVAL - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a fabricação e comercialização de válvulas para a indústria de petróleo e gás;

**(D)**    UPI MNA + TECVAL + MIPEL + VALMICRO - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a fabricação e comercialização de válvulas industriais e para a indústria de petróleo e gás;

**(E)**    UPI FIBER LINERS - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a fabricação de tubos de poliéster com revestimento especial;

**(F)**    UPI FIBERWARE - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a atividade de encamisamento interno de tubos;

**(G)**    UPI TUBULAR SERVICES - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados a serviços de limpeza por hidrojato automatizado, inspeção convencional e automatizada, manutenção, preservação, revestimento e reparo de tubulares e acessórios;

**(H)**    UPI OIL TOOLS - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a fabricação de produtos e ferramentas para a indústria de petróleo e gás;

**(I)**    UPI ASPRO - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para o fornecimento de equipamentos e sistemas para compressão de gás;

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

**(J)**    UPI UNAP - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais localizados em Cayman, composta por equipamentos voltados para a indústria de petróleo e gás;

**(K)**    UPI HOLANDA - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais localizados na Holanda, composta por equipamentos voltados para a indústria de petróleo e gás;

**(L)**    UPI SOTEP - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais pertencentes à sociedade Sotep Sociedade Técnica de Perfuração S.A., voltados para o fornecimento especializado de serviços e soluções no mercado petrolífero;

**(M)**    UPI PREST - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais pertencentes à sociedade Prest Perfurações Ltda., voltados para o fornecimento especializado de serviços e soluções no mercado petrolífero;

**(N)**    UPI LUPATECH PERFURAÇÃO - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais pertencentes à sociedade Lupatech Perfuração e Completação Ltda., voltados para o fornecimento especializado de serviços e soluções no mercado petrolífero;

**(O)**    UPI IMÓVEL NOVA ODESSA - unidade produtiva isolada composta pelo imóvel localizado na cidade de Nova Odessa, São Paulo;

**(P)**    UPI IMÓVEL FELIZ - unidade produtiva isolada composta pelo imóvel localizado na cidade de Feliz, Rio Grande do Sul;

**(Q)**    UPI IMÓVEL CAXIAS DO SUL - unidade produtiva isolada composta pelo imóvel localizado na cidade de Caxias do Sul, Rio Grande do Sul;

**(R)**    UPI IMÓVEL MACAÉ - unidade produtiva isolada composta pelo imóvel localizado na cidade de Macaé, Rio de Janeiro;

**(S)**    UPI IMÓVEL CATU - unidade produtiva isolada composta pelo imóvel localizado na cidade de Catu, Bahia;

**(T)**    UPI SLICKLINE - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a prestação de serviços de operações com arame ("slickline") em poços de petróleo e/ou gás, poços de água ou outros, bem como a locação de equipamentos, acessórios e ferramentas;

**(U)**    UPI LIFTING FRAMES - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a prestação de serviços de operações com Lifting Frame em poços de petróleo, e/ou gás, poços de água ou outros, bem como a locação de equipamentos, acessórios e ferramentas;

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

60

**(V)**   UPI CHAVES HIDRÁULICAS - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a prestação de serviços de conexão e desconexão de tubos bem como a locação de equipamentos;

**(W)**   UPI NITROGENIO E FLEXITUBO - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados a operações com flexitubo e acessórios em poços de petróleo, gás ou água e serviços de bombeio e gaseificação de nitrogênio;

**(X)**   UPI MICROFUSAO - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a fabricação e comercialização de componentes para a indústria de válvulas;

**(Y)**   UPI OFICINAS - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a prestação de serviços de preservação e reparo geral de equipamentos, ferramentas e materiais destinados às operações de completação, de arame de avaliação, de perfuração e para serviços especiais;

**(Z)**   UPI CAIXAS E CESTAS - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a locação de contentores de carga tipo cestas metálicas e skids;

**(AA)**   UPI LUEP - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais pertencentes à sociedade Lupatech Equipamentos e Serviços para Petróleo Ltda., voltados para o fornecimento especializado de serviços e soluções no mercado de petróleo e gás;

**(BB)**   UPI UGN - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a prestação de serviços com unidades de geração, compressão e bombeio de nitrogênio atmosférico;

**(CC)**   UPI WIRELINE - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais voltados para a prestação de serviços de intervenção em poços com unidades de wireline;

**(DD)**   UPI SPT's (CATU) - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais localizados na cidade de Catu, Bahia, composta por equipamentos voltados para serviços de perfuração/produção terrestre, completação simples e múltipla e outras intervenções em poços de petróleo, gás e água, e seus auxiliares;

**(EE)**   UPI SPT's (SEAL) - unidade produtiva isolada composta por ativos e/ou direitos e obrigações e/ou recursos humanos e/ou materiais localizados nos Estados de Sergipe e Alagoas, composta por equipamentos voltados para serviços de perfuração/produção

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

terrestre, completação simples e múltipla e outras intervenções em poços de petróleo, gás e água, e seus auxiliares.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## ANEXO A

### Análise de Viabilidade Econômico-Financeira

(*Segue Análise de Viabilidade Econômico-Financeira de Lupatech S.A. – Em Recuperação Judicial, Lupatech – Equipamentos e Serviços para Petróleo Ltda. – Em Recuperação Judicial, Mipel Indústria e Comércio de Válvulas Ltda. – Em Recuperação Judicial, Amper Amazonas Perfurações Ltda. – Em Recuperação Judicial, Itacau Agenciamentos Marítimos Ltda. – Em Recuperação Judicial, Lochness Participações S/A – Em Recuperação Judicial, Matep S/A Máquinas e Equipamentos – Em Recuperação Judicial, Prest Perfurações Ltda. – Em Recuperação Judicial, Lupatech – Perfuração e Completação Ltda. – Em Recuperação Judicial, Sotep Sociedade Técnica de Perfuração S/A – Em Recuperação Judicial, Lupatech Finance Limited – Em Recuperação Judicial*).

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA3.

## **Exhibit F**

### **Minutes of the General Meeting**



**EXMO. SR. DR. JUIZ DE DIREITO DA 1ª VARA DE FALÊNCIAS, RECUPERAÇÕES JUDICIAIS E CONFLITOS RELACIONADOS À ARBITRAGEM DA COMARCA DE SÃO PAULO/SP**

**PROCESSO AUTOS Nº  1050924-67.2015.8.26.0100**
**RECUPERAÇÃO JUDICIAL DO "GRUPO LUPATECH"**

        **ALTA ADMINISTRAÇÃO JUDICIAL LTDA**., Administradora Judicial nomeada nos autos da recuperação judicial de *LUPATECH S/A e Outras ("Grupo Lupatech")*, vem, respeitosamente, em cumprimento ao disposto no art. 37, §2º, da Lei nº. 11.101/05, requerer a juntada da Ata da Assembleia Geral de Credores realizada em 18 de novembro de 2015, em segunda convocação (**Doc. 01**), e da respectiva lista de presenças (**Doc. 02**).

        Na Assembleia, as recuperandas apresentaram ajustes ao Plano de Recuperação Judicial originariamente apresentado às fls. 6938/7001. Tais ajustes podem ser verificados nas seguintes disposições: Capítulo IV, Cláusula 4.1.5; Capítulo VIII, Cláusula 8.1 e Cláusula 8.2.1; Capítulo VIII, Cláusula 9.3 e Cláusula 9.4.2; e Análise de Viabilidade Econômico-Financeira, conforme versão final do Plano de Recuperação judicial, ora anexo (**Doc. 03**).

Avenida Paulista, nº 1439, 13º andar . Bela Vista. CEP: 01311-926 . São Paulo/SP
Fone: +55 (11) 3465-4700 . Fax: +55 (11) 3465-4744
Site: www.altaadmjudicial.com . E-mail: altaadmjudicial@uol.com.br

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7E9F.

Estavam presentes, na Assembleia em segunda convocação, 922 credores, que totalizaram o montante de créditos equivalentes a R$ 471.348.756,55 (**Doc. 04**).

Importante salientar que o único credor da Classe II constante na Relação de Credores de fls. 10.863/10.888 (BANCO NACIONAL DE DESENVOLVIMENTO ECONÔMICO E SOCIAL) não foi considerado para fins de verificação dos quóruns de instalação e de deliberação, nos termos do art. 43 da Lei nº. 11.101/05.

Ademais, para fins de cômputo dos votos dos credores, aqueles que se abstiveram no momento da votação e que se encontram relacionados na Lista anexa (**Doc. 05**) não foram considerados para fins de cálculo dos percentuais finais das votações.

Na Assembleia em segunda convocação, tendo em vista a manifestação de credores pela suspensão dos trabalhos da Assembleia por uma semana, foi aberta a votação aos credores presentes. **A suspensão dos trabalhos assembleares não foi aprovada**, conforme quórum consignado em ata (**Doc. 01**) e constante no Relatório anexo (**Doc. 06**), bem como no quadro e gráfico a seguir:

| Pauta: Suspensão da AGC por uma semana | | | |
|---|---|---|---|
| | Total em R$ de credores presentes com direito a voto | SIM | NÃO | ABSTENÇÃO |
| Classe I | 5.830.295,13 | - | 5.727.289,38 | 103.005,75 |
| Classe III | 458.752.466,74 | 58.896.689,64 | 213.332.421,55 | 186.523.355,55 |
| Classe IV | 6.765.994,68 | - | 6.696.530,11 | 69.464,57 |
| TOTAL | 471.348.756,55 | 58.896.689,64 | 225.756.241,04 | 186.695.825,87 |
| PERCENTUAL | 100,00% | 20,69% | 79,31% | - |



Avenida Paulista, nº 1439, 13º andar . CEP: 01311-926 . São Paulo/SP
Fone: +55 (11) 3465-4700 . Fax: +55 (11) 3465-4744
Site: www.altaadmjudicial.com . E-mail: altaadmjudicial@uol.com.br

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7E9F.

**ALTA**
Administração Judicial

Em seguida, após os questionamentos e esclarecimentos relatados em ata, **a Assembleia Geral de Credores aprovou, por maioria de votos, o Plano de Recuperação Judicial e seus ajustes**, conforme quórum consignado em ata (**Doc. 01**) e constante no Relatório anexo (**Doc. 07**), bem como nos quadros e gráficos a seguir:

| Pauta: Aprovação do PRJ (valor) | | | | | | |
|---|---|---|---|---|---|---|
| | Total em R$ de credores presentes com direito a voto | SIM | SIM % | NÃO | NÃO % | ABSTENÇÃO |
| Classe III | 458.752.466,74 | 160.550.435,07 | 73,98% | 56.482.588,70 | 26,02% | 241.719.442,97 |



| Pauta: Aprovação do PRJ (cabeça) | | | | | | |
|---|---|---|---|---|---|---|
| | Total de credores presentes com direito a voto, por cabeça | SIM | SIM % | NÃO | NÃO % | ABSTENÇÃO |
| Classe I | 759 | 757 | 99,87% | 1 | 0,13% | 1 |
| Classe III | 68 | 43 | 68,25% | 20 | 31,75% | 5 |
| Classe IV | 95 | 79 | 84,04% | 15 | 15,96% | 1 |
| TOTAL | 922 | 879 | - | 36 | - | 7 |







Avenida Paulista, n° 1439, 13° andar . CEP: 01311-926 . São Paulo/SP
Fone: +55 (11) 3465-4700 . Fax: +55 (11) 3465-4744
Site: www.altaadmjudicial.com . E-mail: altaadmjudicial@uol.com.br

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7E9F.



Por fim, requer, respeitosamente, junte-se esta petição aos autos.

Termos em que,

pede deferimento.

São Paulo, 23 de novembro de 2015.

**ALTA ADMINISTRAÇÃO JUDICIAL LTDA.**

Afonso Rodeguer Neto

OAB/SP nº. 60.583

Eliza Fazan

CRC 1SP194878/0

Lilian Maria de Freitas Souza Marques

OAB/SP nº. 319.455

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7E9F.

Avenida Paulista, nº 1439, 13º andar . CEP: 01311-926 . São Paulo/SP
Fone: +55 (11) 3465-4700 . Fax: +55 (11) 3465-4744
Site: www.altaadmjudicial.com . E-mail: altaadmjudicial@uol.com.br

**ATA DA ASSEMBLEIA-GERAL DE CREDORES, INSTALADA EM SEGUNDA CONVOCAÇÃO, CONVOCADA PELO MERITÍSSIMO JUÍZO DA 1ª VARA DE FALÊNCIAS, RECUPERAÇÕES JUDICIAIS E CONFLITOS RELACIONADOS À ARBITRAGEM DA COMARCA DE SÃO PAULO/SP NOS AUTOS DA RECUPERAÇÃO JUDICIAL DE LUPATECH S/A; LUPATECH - EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA.; MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA.; AMPER AMAZONAS PERFURAÇÕES LTDA.; ITACAU AGENCIAMENTOS MARÍTIMOS LTDA.; LOCHNESS PARTICIPAÇÕES S/A; MATEP S/A MÁQUINAS E EQUIPAMENTOS; PREST PERFURAÇÕES LTDA.; LUPATECH PERFURAÇÃO E COMPLETAÇÃO LTDA.; SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S/A E LUPATECH FINANCE LIMITED. Processo nº. 1050924-67.2015.8.26.0100**

Aos 18 de novembro de 2015, às 15h10, no Centro de Convenções do Centro Empresarial de São Paulo CENESP, na Avenida Maria Coelho Aguiar, 215, Bloco G, Jardim São Luis, São Paulo/SP, CEP 05804-900, sob a Presidência da Administradora Judicial, Alta Administração Judicial Ltda., representada por Afonso Rodeguer Neto, inscrito na OAB/SP sob o nº. 60.583, e nomeada pelo MM. Juízo da 1ª Vara de Falências, Recuperações Judiciais e Conflitos Relacionados à Arbitragem da Comarca de São Paulo/SP, no processo referido no cabeçalho, foram abertos os trabalhos da Assembleia Geral de Credores, em segunda convocação, do Grupo Lupatech, integrado pelas sociedades indicadas no cabeçalho, ora Recuperandas.

Encerrada a lista de presença, encontravam-se presentes os representantes e os advogados das Recuperandas e os credores relacionados na lista de presença por todos assinada e que acompanha a presente ata.

O representante da Administradora Judicial declarou instalada a Assembleia Geral de Credores em segunda convocação, na forma do art. 37, §2º, *in fine*, da Lei nº 11.101/05, ou seja, independentemente da existência de quórum mínimo de credores. De qualquer forma, o quórum foi projetado no telão, de acordo com a lista de presença anexa, para ciência dos presentes.

Em seguida, o representante da Administradora Judicial convidou, como secretário, o representante do credor Shearman e Sterling LLP Consultores em Direito Estrangeiro/Direito Norte-Americano, Dr. Matheus Henrique Sucupira Traballe, advogado inscrito na OAB sob o nº. 301.223, que aceitou o encargo e procedeu à leitura do edital de convocação.

O representante da Administradora Judicial esclareceu, então, acerca da ordem do dia, conforme os termos do edital. O representante da Administradora Judicial indagou aos presentes acerca do interesse de os credores constituírem o Comitê de Credores. Não houve manifestação por qualquer dos presentes, razão pela qual os trabalhos foram conduzidos conforme a ordem do dia.

Requerida a palavra pelo representante das Recuperandas, Sr. Ricardo Doebeli, foi-lhe concedida pela Presidência da Assembleia, tendo sido realizada apresentação em formato power point, projetada no telão, visível a todos os presentes. Foi realizada a apresentação acerca da gestão, atividades das Recuperandas, contexto da crise das Recuperandas, histórico recente da companhia e próximos passos

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA1.

para a recuperação das sociedades. Por fim, foi realizada a explanação e resumo do Plano de recuperação judicial proposto pelas Recuperandas. O plano foi detalhadamente exposto aos presentes pelo representante das Recuperandas, inclusive no que se refere a pontuais ajustes relativos ao plano originariamente apresentado, cujo inteiro teor acompanha a presente ata.

Na sequência, foi requerida a palavra pelo advogado das Recuperandas, Dr. Paulo Fernando Campana Filho, que esclareceu que os ativos que serão efetivamente alienados não terão nenhuma das outras destinações previstas no plano (tal como serem dados em pagamento a credores ou oferecidos em garantia).

O representante da Administradora Judicial passou a palavra aos credores presentes, a fim de que solicitassem eventuais esclarecimentos sobre o plano de recuperação judicial.

O Banco Bradesco S/A, representado pelo Dr. Carlos Augusto Nascimento, questionou se o valor da alienação dos bens dados em garantia real será suficiente para liquidar o crédito com garantia real após a demanda de capital de giro e ainda pagar credores; se o eventual valor remanescente da alienação será destinado ao pagamento dos credores; se seria possível prever para qual classe de credores serão destinados os recursos remanescentes; se existe avaliação dos bens dados em garantia real.

O representante das Recuperandas, Sr. Ricardo Doebeli, esclareceu que: o saldo que exceder o montante da garantia real será destinado ao pagamento dos credores bem como ao capital de giro das recuperandas; o pagamento aos credores será realizado conforme o plano de recuperação judicial, observando o prazo respectivamente previsto para cada classe e que a destinação dos valores remanescentes estará contida nas prestações de contas das Recuperandas; todos os bens das Recuperandas possuem avaliações, cujos laudos foram juntados nos autos com o plano de recuperação judicial.

O credor Financiadora de Estudos e Projetos – FINEP manifestou-se por seu procurador, Dr. Marcos Moura de Souza, e propôs que, em razão dos ajustes ao Plano apresentadas pelas Recuperandas, fosse colocada em votação proposta de suspensão da Assembleia, para que os credores pudessem analisar os ajustes.

O representante das Recuperandas, Sr. Ricardo Doebeli, esclareceu que os ajustes ao plano não são substanciais e favorecem a execução do plano. Salientou a importância da celeridade de viabilizar a votação do plano de recuperação judicial, para que as Recuperandas possam se concentrar na execução do plano, o que beneficia diretamente os credores.

Em vista a atender aos interesses dos credores e das Recuperandas, o representante da Administradora Judicial determinou a suspensão dos trabalhos assembleares por 30 minutos, a fim de que os presentes pudessem analisar os ajustes ao plano apresentados nesta Assembleia pelas Recuperandas.

Os trabalhos foram suspensos por trinta minutos.

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA1.

Reiniciados os trabalhos às 17h10, foi dada a palavra ao credor FINEP que reiterou o interesse em que fossem suspensos os trabalhos assembleares por uma semana.

A seguir, o representante da Administradora Judicial colocou em votação a matéria referente ao pedido de suspensão da Assembleia pelo prazo de uma semana, ou seja, para que os trabalhos tenham continuidade no dia 25 de novembro de 2015, no mesmo horário e local.

Colhidos os votos daqueles credores com direito a voto, nos termos da Lei nº. 11.101/05, 20,69% dos créditos presentes votaram pela suspensão da assembleia, de modo que a proposta de suspensão da assembleia foi rejeitada. Os documentos relativos às votações e abstenções dos credores presentes seguem anexos e acompanham a presente ata.

O representante da Administradora Judicial passou novamente a palavra aos credores presentes, a fim de que se manifestassem sobre eventuais dúvidas acerca do plano de recuperação judicial e demais assuntos de interesse dos credores.

O credor Banco Bradesco S/A, por seu representante, questionou se a venda dos ativos será embasada em algum valor mínimo pautado em avaliação. O representante das Recuperandas, Sr. Ricardo Doebeli, esclareceu que a avaliação dos bens já foi realizada e que o laudo será referência em toda a venda de ativos, nos termos da lei. Ressaltou ainda que o plano traz previsões de realização de ativos, que serão respeitadas.

Após os esclarecimentos, a Assembleia manifestou que estava em condições de deliberar e votar o plano de recuperação judicial.

Em observância à ordem do dia, o representante da Administração Judicial colocou em votação o plano apresentado pelas Recuperandas, com os ajustes por elas apresentados, cujo inteiro teor do plano ajustado acompanha a presente ata e será juntado aos autos da Recuperação Judicial. Colhidos os votos daqueles credores com direito a voto, nos termos da Lei nº. 11.101/05, o plano foi aprovado integralmente na seguinte proporção de votos:

(a) Contagem por Cabeça:
a.1.) Classe I: 99,87%
a.2.) Classe III: 68,25%
a.3.) Classe IV: 84,04%

(b) Contagem por Valor: Classe III: 73,98%

Os documentos relativos às votações e abstenções dos credores presentes seguem anexos e acompanham a presente ata.

Este documento foi protocolado em 23/11/2015 às 17:16. É cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA1.

Concedida a palavra ao advogado das Recuperandas, Dr. Thomas Benes Felsberg, salientou que o Plano foi aprovado em 5 meses e que isso somente foi possível em razão da eficiência do Juiz de Direito do caso, Dr. Daniel Carnio Costa, da administração judicial, da equipe da Lupatech, dos advogados do escritório Felsberg Advogados e da colaboração da BR Partners.

Requerida a palavra pelo credor Banco BMG S/A, por seu procurador, Andre da Silva Sacramento, foi-lhe concedida pela Presidência da Assembleia. O credor fez as seguintes ressalvas: que não abre mão de suas garantias, que não concorda com a suspensão ou extinção de quaisquer execuções em curso e reitera os termos de sua impugnação de crédito pendente de julgamento.

O representante da Administradora Judicial franqueou a palavra aos presentes e por não haver nada mais a tratar, a Assembleia foi suspensa pelo tempo necessário à lavratura da presente ata. Em seguida, o Secretário procedeu à leitura da ata, a qual foi aprovada pela unanimidade dos credores presentes, em conformidade com o art. 37, §7º, da Lei nº. 11.101/05.

São Paulo, 18 de novembro de 2015.

**ALTA ADMINISTRAÇÃO JUDICIAL LTDA.**
**ADMINISTRADORA JUDICIAL**
Afonso Rodeguer Neto  *OAB-60.583*

Secretário
**SHEARMAN E STERLING LLP CONSULTORES EM DIREITO ESTRANGEIRO/DIREITO NORTE-AMERICANO**
p.p. Matheus Henrique Sucupira Traballe, OAB nº. 301.223

**Credor Classe I:**
**MACHADO MEYER, SENDACZ E OPICE ADVOG**
p.p. Carolina Mascarenhas, OAB/SP nº. 303.851

**ALEX ARMISTRONG DE SOUSA**
RG: 1972844 – SSP/RN

**Credor Classe II:**
**BANCO NACIONAL DE DESENVOLVIMENTO ECONÔMICO E SOCIAL**
p.p. EDUARDO PONTIERI, OAB/SP nº. 234.635

**Credor Classe III:**
**BBTUR VIAGENS E TURISMO LTDA**
p.p. Mauricio Lourenço Cantagallo, OAB/SP nº. 253.122

Este documento foi protocolado em/assinado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justica Sao Paulo e AFONSO RODEGUER NETO. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA1.

(ESTA FOLHA DE ASSINATURA FAZ PARTE INTEGRANTE DA ATA DA ASSEMBLEIA GERAL DE CREDORES DO GRUPO LUPATECH, INSTALADA EM SEGUNDA CONVOCAÇÃO, DESIGNADA PELO MERITÍSSIMO JUÍZO DA 1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS DA CAPITAL DO ESTADO DE SÃO PAULO, NOS AUTOS DA RECUPERAÇÃO JUDICIAL Nº 1050924-67.2015.8.26.0100, REALIZADA NO DIA 18 DE NOVEMBRO DE 2015).

**GPCM LLC**
p.p. Jose Eduardo Tavanti Junior, OAB/SP nº. 299.907

**Credor Classe IV:**
**L.A. FERNANDES REPRESENTAÇÕES - EPP**
Luiz Antonio Fernandes, CPF nº. 013.170.058-80

**RENOBAN INDUSTRIA COMERCIO SERVICOS**
p.p. Tuanny Thaís de Oliveira Fonseca, OAB/PE nº. 34.821

**Representantes das Recuperandas** (LUPATECH S/A; LUPATECH - EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA.; MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA.; AMPER AMAZONAS PERFURAÇÕES LTDA.; ITACAU AGENCIAMENTOS MARÍTIMOS LTDA.; LOCHNESS PARTICIPAÇÕES S/A; MATEP S/A MÁQUINAS E EQUIPAMENTOS; PREST PERFURAÇÕES LTDA.; LUPATECH PERFURAÇÃO E COMPLETAÇÃO LTDA.; SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S/A E LUPATECH FINANCE LIMITED):
Thiago Dias Costa, OAB/SP nº. 292.344
Ricardo Doebeli

Este documento foi protocolado em 23/11/2015 às 17:16, é cópia do original assinado digitalmente por Tribunal de Justiça São Paulo e AFONSO RODEGUER NETO.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 17C7EA1.

## Exhibit G

**Homologation Order**

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Sala 1608, Centro - CEP 01501-900, Fone: (11)
2171-6505, São Paulo-SP - E-mail: sp1falencias@tj.sp.gov.br
**Horário de Atendimento ao Público: das 12h30min às19h00min**

| DECISÃO |
|---|

Processo Digital nº: **1050924-67.2015.8.26.0100**
Classe - Assunto **Recuperação Judicial - Recuperação judicial e Falência**
Requerente: **Lupatech - Equipamentos e Serviços para Petróleo Ltda. e outros**
Requerido: **Lupatech S/A e outros**

CONCLUSÃO
Em **22 de junho de 2015**, faço estes autos conclusos ao MM. Juiz
de Direito. Eu, Márcio Antonio de Oliveira,  mat. nº 815.745-9.

Juiz(a) de Direito: Dr(a). **Daniel Carnio Costa**


Vistos.


      **LUPATECH - EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA.,
CNPJ 03.141.023/0001-04, LUPATECH S/A, CNPJ 89.463.822/0001-12, MIPEL INDÚSTRIA
E COMÉRCIO DE VÁLVULAS LTDA., CNPJ 07.743.815/0001-00, AMPER AMAZONAS
PERFURAÇÕES LTDA., CNPJ 05.488.549/0001-90, ITACAU AGENCIAMENTOS
MARÍTIMOS LTDA., CNPJ 29.416.666/0001-07, LOCHNESS PARTICIPAÇÕES S/A,
CNPJ 09.443.937/0001-06, MATEP S/A MÁQUINAS E EQUIPAMENTOS, CNPJ
33.311.788/0001-06, PREST PERFURAÇÕES LTDA., CNPJ 05.836.901/0001-31,
LUPATECH PERFURAÇÃO E COMPLETAÇÃO LTDA., CNPJ 15.676.893/0003-29,
SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S.A, CNPJ 15.129.646/0001-40 E
LUPATECH FINANCE LTD.**, denominadas "Grupo Lupatech" requereram a recuperação
judicial em 25/05/2015**.**

      Os documentos juntados aos autos, comprovam que as requerentes preenchem os
requisitos legais para requerimento da recuperação judicial, conforme art. 48 da Lei nº 11.101/05.
A petição inicial foi adequadamente instruída, nos exatos termos exigidos pelo art. 51 da Lei nº
11.101/05. Em síntese, o pedido está em termos para ter o seu procedimento deferido, já que
presentes os requisitos legais (artigos 47, 48 e 51 da Lei 11.101/2005), verificando-se a
possibilidade de superação da "crise econômico-financeira" da devedora[1].

      Em que pese ainda pendente de julgamento o conflito de competência suscitado
pelo juízo da 1ª Vara Judicial de Nova Odessa, muito embora o juízo prevento seja o da 2ª Vara

---

[1] A Recuperação Judicial prevista pela Lei 11.101/05 é nítida manifestação da tendência mundial de mitigação do caráter
potestativo dos direitos dos credores em prol da preservação da empresa, como meio da satisfação do direito universal ao
desenvolvimento dos povos, declarado pela ONU em 1988 e, no âmbito nacional, consagrado como objetivo fundamental
de nossa República, no art. 3º, II, da CF. A economia e a propriedade não são senhores e, sim, instrumentos do fim
constitucional de assegurar a todos existência digna conforme os ditames da justiça social, na forma do art. 170, da CF. O
art. 1º, IV, da CF, reconhece expressamente como princípio fundamental de nosso Estado Democrático de Direito os
valores sociais da livre iniciativa. O espírito do instituto da Recuperação Judicial e a sua conformidade constitucional
estão em linha com o que sustentam Ricardo Sayeg e Wagner Balera, ao exporem que: "*O neoliberalismo econômico,
sem os freios e a calibragem humanistas, é tanto incapaz de corrigir as externalidades negativas como de harmonizar
adequadamente as externalidades, especialmente as privadas, não equivalentes e reciprocamente consideradas. Tal
calibragem é necessária e deve incidir sobre a universalidade do exercício dos direitos subjetivos naturais de
propriedade, relativizando-os, ao invés de seguir o viés do neoliberal, em que esse exercício tende ao absoluto.*" (O
Capitalismo Humanista, Kbr: SP, 2011, p. 178)

Este documento foi liberado nos autos em 22/06/2015 às 17:41, por Márcio Antonio de Oliveira, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 128B7A8.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Sala 1608, Centro - CEP 01501-900, Fone: (11)
2171-6505, São Paulo-SP - E-mail: sp1falencias@tj.sp.gov.br
**Horário de Atendimento ao Público: das 12h30min às19h00min**

Judicial daquela Comarca, por conta da homologação do plano de recuperação extrajudicial, a demora no deferimento do processamento da recuperação judicial pode ser prejudicial à continuidade dos negócios das requerentes.

Nesse sentido, considerando que o E. TJSP determinou que esse juízo decida sobre as questões urgentes até a definição da competência, o deferimento do processamento da recuperação judicial é medida que se faz urgente, sem prejuízo de posterior remessa dos autos ao juízo competente.

Assim, nos termos do art. 52 da Lei 11.101/2005, **DEFIRO** o processamento da recuperação judicial das empresas **Lupatech - Equipamentos e Serviços para Petróleo Ltda., CNPJ 03.141.023/0001-04, Lupatech S/A, CNPJ 89.463.822/0001-12, Mipel Indústria e Comércio de Válvulas Ltda., CNPJ 07.743.815/0001-00, Amper Amazonas Perfurações Ltda., CNPJ 05.488.549/0001-90, Itacau Agenciamentos Marítimos Ltda., CNPJ 29.416.666/0001-07, Lochness Participações S/A, CNPJ 09.443.937/0001-06, Matep S/A Máquinas e Equipamentos, CNPJ 33.311.788/0001-06, Prest Perfurações Ltda., CNPJ 05.836.901/0001-31, Lupatech Perfuração e Completação Ltda., CNPJ 15.676.893/0003-29, Sotep Sociedade Técnica de Perfuração S.a, CNPJ 15.129.646/0001-40 e Lupatech Finance Ltd.**.

Portanto:

1) Como administrador judicial (art. 52, I, e art. 64) nomeio **Alta Administração Judicial Ltda.,** CNPJ n. 20.282.418/0001-46, representada por Afonso Rodeguer Neto, OAB/SP 60.583, com endereço à Avenida Paulista, n. 1439, cj. 132, CEP 01311-926, Cerqueira Cesar, São Paulo/SP, para os fins do art. 22, III, devendo ser intimado, para que em 48 (quarenta e oito) horas assine o termo de compromisso, pena de substituição (arts. 33 e 34), nos termos do art. 21, parágrafo único, da Lei 11.101/05, ficando autorizada a intimação via e-mail institucional;

1.1) Deve o administrador judicial informar o juízo a situação da empresa em 10 dias, para fins do art. 22, II, "a" (primeira parte) e "c", da Lei n. 11.101/05.

1.2) Caso seja necessário a contratação de auxiliares (contador, advogados etc.) deverá apresentar o contrato, no prazo de 10 dias.

1.3) Caberá ao administrador judicial fiscalizar a regularidade do processo e o cumprimento dos prazos pelas recuperandas.

1.4) No mesmo prazo assinalado no item 1.1, deverá o administrador judicial apresentar sua proposta de honorários.

1.5) Quanto aos relatórios mensais, que não se confundem com o relatório determinado no item 1.1, supra, deverá o administrador judicial protocolar o primeiro relatório como incidente à recuperação judicial, ao passo que não deverão ser juntados nos autos principais, sendo que os relatórios mensais subsequentes deverão ser, sempre, direcionados ao incidente já instaurado.

2) Nos termos do art. 52, II, da Lei 11.101/2005, determino a "dispensa da apresentação de certidões negativas para que os devedores exerçam suas atividades, exceto para contratação com o Poder Público ou para recebimento de benefícios ou incentivos fiscais ou creditícios", no caso, a devedora, observando-se o art. 69 da LRF, ou seja, que o nome empresarial

Este documento foi liberado nos autos em 22/06/2015 às 17:41, por Márcio Antonio de Oliveira, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 128B7A8.

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Sala 1608, Centro - CEP 01501-900, Fone: (11)
2171-6505, São Paulo-SP - E-mail: sp1falencias@tj.sp.gov.br
**Horário de Atendimento ao Público: das 12h30min às19h00min**

seja seguido da expressão "em Recuperação Judicial", oficiando-se, inclusive, à JUCESP para as devidas anotações, providenciando as recuperandas o encaminhamento.

3) Determino, nos termos do art. 52, III, da Lei 11.101/2005, "**a suspensão de todas as ações ou execuções contra os devedores**", na forma do art. 6º da LRF, devendo permanecer "os respectivos autos no juízo onde se processam, ressalvadas as ações previstas nos §§ 1º, 2º e 7º do art. 6º dessa Lei e as relativas a créditos excetuados na forma dos §§ 3º e 4º do art. 49 dessa mesma Lei", providenciando as **devedoras** as comunicações competentes (art. 52, § 3º).

4) Determino, nos termos do art. 52, IV, da Lei 11.101/2005, às devedoras a "apresentação de contas demonstrativas **mensais** enquanto perdurar a recuperação judicial, sob pena de destituição de seus administradores", sendo que o primeiro demonstrativo mensal deverá ser protocolado como incidente à recuperação judicial, ao passo que não deverão ser juntados nos autos principais, sendo que os demonstrativos mensais subsequentes deverão ser, sempre, direcionados ao incidente já instaurado.

5) Expeça-se comunicação, **por carta**, às Fazendas Públicas Federal e de todos os Estados e Municípios em que a devedora tiver estabelecimentos e filiais (LRF, art. 52, V), providenciando as recuperandas o encaminhamento.

6) O prazo para **habilitações ou divergências aos créditos relacionados** (pela devedora) é de 15 (quinze) dias a contar da publicação do respectivo edital (LRF, art. 7º, § 1º).

Dessa maneira, expeça-se o edital a que se refere o art. 52, § 1º, da LRF, onde, para conhecimento de todos os interessados, deverá constar, também, o passivo fiscal, com advertência dos prazos dos art. 7º, § 1º, e art. 55, da LRF.

Considerando que as recuperandas apresentaram minuta da relação de credores elencada na inicial, nos moldes do artigo 41 da Lei n. 11.101/05, deverá a serventia complementar a referida minuta com os termos desta decisão, bem com intimar as recuperandas, por telefone ou e-mail institucional, certificando-se nos autos, para que procedam ao recolhimento do valor das despesas de publicação do edital no Diário Oficial Eletrônico do Tribunal de Justiça de São Paulo, de acordo com o número de caracteres, no prazo de 24 horas, sob pena de revogação.

Deverão também as recuperandas providenciar a publicação do edital em jornal de grande circulação no prazo de 05 dias.

7) Eventuais habilitações ou divergências quanto aos créditos relacionados pela devedora (art. 7º, § 2º), que são dirigidas ao administrador judicial, **deverão ser digitalizadas e encaminhadas diretamente ao administrador judicial**, **SOMENTE através do e-mail altaadmjudicial@uol.com.br**, criado especificamente para este fim e informado no edital a ser publicado, conforme item 6, supra.

Observo, neste tópico, em especial quanto aos créditos trabalhistas, que para eventual divergência ou habilitação é necessário que exista sentença trabalhista líquida e exigível (com trânsito em julgado), competindo ao MM. Juiz do Trabalho eventual fixação do valor a ser reservado.

8) O plano de recuperação judicial deve ser apresentado no prazo de 60 dias, na forma do art. 53, sob pena de convolação da recuperação judicial em falência.

Este documento foi liberado nos autos em 22/06/2015 às 17:41, por Márcio Antonio de Oliveira, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 12BB7A8.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
Praça João Mendes s/nº, Sala 1608, Centro - CEP 01501-900, Fone: (11)
2171-6505, São Paulo-SP - E-mail: sp1falencias@tj.sp.gov.br
**Horário de Atendimento ao Público: das 12h30min às19h00min**

Com a apresentação do plano, expeça-se o edital contendo o aviso do art. 53, parágrafo único, da Lei n. 11.101/05, com prazo de 30 dias para as objeções, devendo a recuperanda providenciar, no ato da apresentação do plano, a minuta do edital, inclusive em meio eletrônico, bem como o recolhimento das custas para publicação.

9) Caso ainda não tenha sido publicada a lista de credores pelo administrador judicial, a legitimidade para apresentar tal objeção será daqueles que já constam do edital das devedoras e que tenham postulado a habilitação de crédito.

10) Publicada a relação de credores apresentada pelo administrador judicial (art. 7º, § 2º), eventuais impugnações (art. 8º) deverão ser protocoladas como incidente à recuperação judicial, ao passo que não deverão ser juntados nos autos principais (art. 8º, parágrafo único).

11) Por fim, muito embora a petição inicial esteja suficientemente instruída para fins de deferimento do processamento do pedido de recuperação judicial, observo a necessidade de que as recuperandas complementem a documentação inicial, a fim de providenciar, no prazo de 10 dias, os documentos apontados no laudo da perícia prévia acostada às fls. 413/442, bem como sanar as divergências também apontadas no referido laudo.

12) Intimem-se, inclusive o Ministério Público.

Intime-se.

São Paulo, **22 de junho de 2015**.

<div style="border: 1px solid black; padding: 10px; text-align: center;">

**DOCUMENTO ASSINADO DIGITALMENTE NOS TERMOS DA LEI 11.419/2006,
CONFORME IMPRESSÃO À MARGEM DIREITA**

</div>

Este documento foi liberado nos autos em 22/06/2015 às 17:41, por Márcio Antonio de Oliveira, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 128B7A8.



**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
PRAÇA JOÃO MENDES S/Nº, São Paulo - SP - CEP 01501-900
**Horário de Atendimento ao Público: das 12h30min às19h00min**

---

**SENTENÇA**

---

Processo Digital nº:     **1050924-67.2015.8.26.0100**
Classe - Assunto         **Recuperação Judicial - Recuperação judicial e Falência**
Requerente:              **Lupatech S/A e outros**
Requerido:               **Lupatech S/A e outros**

CONCLUSÃO
Em **11 de dezembro de 2015**., faço estes autos conclusos ao MM.
Juiz de Direito. Eu, Márcio Antonio de Oliveira,  mat. nº 815.745-9.

Juiz(a) de Direito: Dr(a). **Daniel Carnio Costa**

Vistos.

1. Fls. 13948/13951: trata-se de pedido de recuperação judicial requerido em 25/05/2015 por LUPATECH - EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA., CNPJ 03.141.023/0001-04, LUPATECH S/A, CNPJ 89.463.822/0001-12, MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA., CNPJ 07.743.815/0001-00, AMPER AMAZONAS PERFURAÇÕES LTDA., CNPJ 05.488.549/0001-90, ITACAU AGENCIAMENTOS MARÍTIMOS LTDA., CNPJ 29.416.666/0001-07, LOCHNESS PARTICIPAÇÕES S/A, CNPJ 09.443.937/0001-06, MATEP S/A MÁQUINAS E EQUIPAMENTOS, CNPJ 33.311.788/0001-06, PREST PERFURAÇÕES LTDA., CNPJ 05.836.901/0001-31, LUPATECH PERFURAÇÃO E COMPLETAÇÃO LTDA., CNPJ 15.676.893/0003-29, SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S.A, CNPJ 15.129.646/0001-40 E LUPATECH FINANCE LTD., denominadas "Grupo Lupatech".

O processamento do pedido foi deferido em 22/06/2015.

Realizada Assembleia Geral de Credores, o plano de recuperação judicial apresentado pelas recuperandas foi aprovado, com modificações, nas três classes de credores, com observância do quórum legal.  (Fls.13952/14271)

É o breve relatório.

Fundamento e decido.

O plano de recuperação judicial deve ser homologado, ao passo que foi aprovado pela Assembleia Geral de Credores conforme os critérios estabelecidos pelo art. 45 da Lei nº 11.101/05.

Os credores, pelo quórum legal, deliberaram sobre o plano originalmente apresentado, bem como sobre as modificações propostas em AGC e se afirmaram suficientemente esclarecidos e convencidos para sua aprovação.

O mérito do plano de recuperação judicial deve ser analisado pelos credores em AGC, não cabendo ao juízo interferir em aspectos do plano referentes aos meios de recuperação, formas de pagamento, prazos, deságios, dentre outros.

**1115526-04.2014.8.26.0100 - lauda 1**

Este documento foi liberado nos autos em 11/12/2015 às 18:15, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 18738F7.

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
PRAÇA JOÃO MENDES S/Nº, São Paulo - SP - CEP 01501-900
**Horário de Atendimento ao Público: das 12h30min às19h00min**

Observa-se que o plano, com alterações, foi aprovado por maioria dos pertencentes às classes I, III e IV, únicas votantes.

Nesse sentido, sobre o mérito do plano e sua forma de aprovação, a manifestação da AGC é soberana e deve ser homologada judicialmente, vez que a decisão dos credores foi tomada de forma livre e regular, com ciência inequívoca de todos os aspectos do plano de recuperação judicial e com observância do quórum legal de aprovação, inexistindo quaisquer indícios de vício de consentimento ou de qualquer outro elemento que pudesse infirmar a legalidade do negócio jurídico (erro, dolo, coação, simulação ou fraude).

Não vislumbro a existência de cláusula ilegal ou abusiva.

O prazo de carência diz respeito ao mérito do plano, estando os credores cientes de que o descumprimento de obrigações posteriores ao biênio de fiscalização judicial não importará na convolação automática da recuperação judicial em falência.

Nesses termos, o plano de recuperação judicial aprovado pelos credores deve ser homologado.

É certo que a devedora não juntou aos autos as certidões negativas de débitos tributários, conforme exige o art. 57 da LRF. Contudo, essa exigência não pode levar, automaticamente, à decretação da falência.

Isso porque, segundo o sistema vigente, o devedor em recuperação judicial deveria apresentar certidões negativas de débitos fiscais ou comprovar o parcelamento dos débitos tributários, nos termos de lei específica a ser editada conforme art. 68 da LRF, como condição para a concessão da recuperação judicial.

É certo que a Lei nº 13.043/14, que entrou em vigor em novembro de 2014, criou parcelamento próprio para empresas em recuperação judicial, mas apenas relacionado aos tributos federais.

Todavia, ainda não existe legislação própria relacionada aos tributos estaduais e municipais.

Nesse sentido, enquanto não houver um sistema completo de equalização do passivo fiscal das empresas em recuperação judicial, não será possível exigir a apresentação da certidão referida no art. 57 da LRF como condição de deferimento do pedido recuperacional.

Nesses termos, diante da relevante finalidade social da lei de preservação da empresa, dos empregos e da atividade econômica, deve-se dispensar a apresentação de certidões negativas de débitos fiscais para o caso em questão.

Destaque-se que tal dispensa não causa prejuízo ao fisco, tendo em vista que o crédito tributário não se sujeita ao plano de recuperação e as execuções fiscais não estão sobrestadas pelo processamento da recuperação judicial.

Observo, ainda, que a opção de parcelamento de tributos federais adequada às empresas em recuperação judicial foi trazido pela Lei nº 13.043/14 que, atualmente, está em vigor e já se encontra regulamentada. Assim, embora não possa ser considerada pré-requisito para a

Este documento foi liberado nos autos em 11/12/2015 às 18:15, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 18738F7.

**1115526-04.2014.8.26.0100 - lauda 2**

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
PRAÇA JOÃO MENDES S/Nº, São Paulo - SP - CEP 01501-900
**Horário de Atendimento ao Público: das 12h30min às19h00min**

concessão da recuperação judicial, trata-se de lei que cria parcelamento próprio para empresas em recuperação judicial ao qual poderá aderir a recuperanda.

Destaque-se, por fim, que o deferimento do processamento da recuperação judicial não cria prejuízo ao fisco, vez que os débitos fiscais não estão sujeitos ao concurso de credores.

Posto isso, com fundamento no art. 58 da Lei n. 11.101/05, concedo a recuperação judicial à LUPATECH - EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA., CNPJ 03.141.023/0001-04, LUPATECH S/A, CNPJ 89.463.822/0001-12, MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA., CNPJ 07.743.815/0001-00, AMPER AMAZONAS PERFURAÇÕES LTDA., CNPJ 05.488.549/0001-90, ITACAU AGENCIAMENTOS MARÍTIMOS LTDA., CNPJ 29.416.666/0001-07, LOCHNESS PARTICIPAÇÕES S/A, CNPJ 09.443.937/0001-06, MATEP S/A MÁQUINAS E EQUIPAMENTOS, CNPJ 33.311.788/0001-06, PREST PERFURAÇÕES LTDA., CNPJ 05.836.901/0001-31, LUPATECH PERFURAÇÃO E COMPLETAÇÃO LTDA., CNPJ 15.676.893/0003-29, SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S.A, CNPJ 15.129.646/0001-40 E LUPATECH FINANCE LTD., destacando-se o seu cumprimento nos termos dos artigos 59 a 61 da mesma lei.

Os pagamentos deverão ser efetuados diretamente aos credores, que deverão informar seus dados bancários diretamente às recuperandas, ficando vedado, desde já, quaisquer depósitos nos autos.

2. Fls. 14340/14345: deverá o interessado promover sua habilitação de crédito como incidente processual, nos termos da Lei n. 11.101/05.

3. Fls. 14351 e 14453/14454: considerando que não houve impugnações, bem como as vantagens que o negócio trará a todas as partes, conforme demonstrado pela administradora judicial às fls. 10974/10983, e considerando ainda a manifestações do MP (fls. 14351) e do Banco Votorantim (fls. 14453/14454), autorizo que a recuperanda proceda à alienação das 3.600.000 ações ordinárias que detém do capital social da UNIFIT – Unidade de Fios Industriais de Timbaúba S.A para a empresa Gulf Capital Américas e Participações Ltda, conforme requerimento de fls. 9411/9427.

4. Em relação à prestação de contas apresentada pela recuperanda (fls. 10536/10537), ante o parecer favorável da administradora judicial (fls. 10974/10973) e do MP (fls. 14351), dou-as por aprovadas.

5. Fls. 14352/14366 (manifestação da recuperanda sobre as alegações da Petrobrás – fls. 13924/13936) e fls. 14499/14665 (manifestação da administradora judicial): é dos autos que a recuperanda loca os referidos equipamentos à Petrobrás que, por sua vez, não vem efetuando os pagamentos devidos. As alegações da Petrobrás, como justificativa para o bloqueio dos valores devidos inequivocamente à recuperanda, não merecem guarida. Ficou demonstrado nos autos que não há razão para a Petrobrás condicionar os pagamentos devidos em razão da locação dos equipamentos à apresentação das DIs desembaraçadas. Isso porque, a operação de importação das máquinas (realizada pela recuperanda) não tem relação com o contrato de locação dos bens à Petrobrás. Os pagamentos devidos pela Petrobrás em favor da recuperanda tem origem na locação e não na importação dos bens. Daí que a forma como se procedeu a importação dos bens (regime de admissão temporária) não interfere na relação de locação, não havendo sentido em se condicionar o pagamento da locação à apresentação das DIs ou da ROF (registro de operações

Este documento foi liberado nos autos em 11/12/2015 às 18:15, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA.
Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 18738F7.

**1115526-04.2014.8.26.0100 - lauda 3**

**TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO**
COMARCA DE SÃO PAULO
FORO CENTRAL CÍVEL
1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS
PRAÇA JOÃO MENDES S/Nº, São Paulo - SP - CEP 01501-900
**Horário de Atendimento ao Público: das 12h30min às19h00min**

financeiras). Diante do exposto, acolho o pedido das recuperandas, nos termos da manifestação da administradora judicial. Oficie-se à Petrobrás determinando a liberação dos pagamentos devidos, no prazo de 24 horas, em atenção à premente necessidade de caixa das devedoras, principalmente em função da aprovação do Plano de Recuperação Judicial e da obrigação de pagamento das verbas trabalhistas em curso prazo.

6. Fls. 14367/14371: anote-se.

7. Fls. 14372/14441: anote-se.

8. Fls. 14442/14452: anote-se.

9. Fls. 14455/14468: deverá o interessado promover sua habilitação de crédito como incidente processual, nos termos da Lei n. 11.101/05.

10. Fls. 14469/14495: deverá o interessado promover sua habilitação de crédito como incidente processual, nos termos da Lei n. 11.101/05.

P.R.I.

São Paulo, **11 de dezembro de 2015**.

<div style="border:1px solid">

**DOCUMENTO ASSINADO DIGITALMENTE NOS TERMOS DA LEI 11.419/2006, CONFORME IMPRESSÃO À MARGEM DIREITA**

</div>

Este documento foi liberado nos autos em 11/12/2015 às 18:15, é cópia do original assinado digitalmente por DANIEL CARNIO COSTA. Para conferir o original, acesse o site https://esaj.tjsp.jus.br/esaj, informe o processo 1050924-67.2015.8.26.0100 e código 18738F7.

**1115526-04.2014.8.26.0100 - lauda 4**

## **Exhibit H**

**Authorizing Resolution**



# LUPATECH S.A.
CNPJ/MF nº 89.463.822/0001-12

NIRE 35.3.0045756-1

Companhia Aberta de Capital Autorizado – BMF&BOVESPA Novo Mercado

## ATA DA REUNIÃO DO CONSELHO DE ADMINISTRAÇÃO 008/2015

1. **DATA, HORA E LOCAL:** Realizada aos 25 dias do mês de maio de 2015, às 09 horas, no escritório da Companhia, em São Paulo, no Estado de São Paulo, na Avenida Maria Coelho Aguiar, nº 215, Bloco B, 5º andar, Jardim São Luís, CEP 05804-900.

2. **CONVOCAÇÃO E PRESENÇAS:** Dispensada a convocação em razão da presença da totalidade dos membros do Conselho de Administração, foi instalada a reunião tendo em vista o atendimento ao quórum para a instalação e deliberações, conforme disposto no artigo 22, parágrafo terceiro, do Estatuto Social da Companhia..

3. **MESA:** Presidente: Celso Fernando Lucchesi; Secretário: Ricardo Doebeli.

4. **ORDEM DO DIA E DELIBERAÇÕES:** Nos termos do Estatuto Social da Companhia, e após a análise dos documentos pertinentes e discussão dos assuntos em pauta, os Conselheiros presentes, por unanimidade e sem qualquer ressalva ou restrição, deliberaram:

    (a) em decorrência da adversa conjuntura do setor de óleo e gás, criada a partir da drástica redução do preço do barril do petróleo no mercado internacional, aliada à crise na Petrobras, principal cliente da Companhia, com efeitos negativos sobre toda a cadeia de suprimentos do setor, e a despeito dos esforços da Administração na negociação com credores e na busca por potenciais investidores no sentido de equilibrar as demandas de capital de giro e de CAPEX para retomar com maior vigor as atividades operacionais, os Conselheiros decidem aprovar, em medida de urgência, pedido de recuperação judicial da Companhia, nos termos do artigo 122, parágrafo único, da Lei 6.404/76. O pedido de recuperação judicial visa preservar o valor da Companhia, sua função social e o estímulo à atividade econômica, atendendo de forma organizada aos interesses de seus credores e acionistas e contingenciando de maneira responsável os ativos. A presente deliberação engloba, além da Companhia, as seguintes controladas, diretas ou indiretas:

    - Lupatech Finance Limited;
    - Amper Amazonas Perfurações Ltda.;
    - Itacau Agenciamentos Marítimos Ltda.;
    - Lochness Participações S.A.
    - Lupatech - Equipamentos e Serviços para Petróleo Ltda.;
    - Lupatech – Perfuração e Completação Ltda.;
    - Matep S.A. Máquinas e Equipamentos;
    - Mipel Indústria e Comércio de Válvulas Ltda.;
    - Prest Perfurações Ltda.;
    - Sotep Sociedade Técnica de Perfuração S.A.;





**(b)** aceitar o pedido de renúncia ao cargo de Conselheiro de Administração do Sr. **Luiz Augusto Marciano da Fonseca**, Conselheiro Independente, apresentado no dia de 15 de maio de 2015, retroagindo, portanto, a renúncia à referida data;

Diante da deliberação acima, o Conselho de Administração passa a ser composto pelos seguintes membros, a partir de 15 de maio de 2015: (1) Sr. Celso Fernando Lucchesi, exercendo o cargo de Presidente do Conselho; (2) Sr. Caio Marcelo de Medeiros Melo, exercendo o cargo de Conselheiro Efetivo; (3) Sr. Cesar Guillermo Gonzalez Neuman, exercendo o cargo de Conselheiro Efetivo; (4) Sr. Ricardo Doebeli, exercendo o cargo de Conselheiro Efetivo e (5) Sra. Simone Anhaia Melo, exercendo o cargo de Conselheira Efetiva.

**(c)** em decorrência da deliberação constante do item (i), e em atenção ao Estatuto Social da Companhia, bem como do artigo 122, parágrafo único, da Lei 6.404/76, aprovar a convocação de assembleia geral extraordinária para ratificar o pedido de recuperação judicial da Companhia e suas controladas, diretas ou indiretas, anteriormente listadas.

**(d)** autorizar os Diretores da Companhia a tomar as providências e praticar os atos necessários com relação à efetivação das matérias aprovadas, bem como ratificar eventuais atos já realizados, até a presente data.

**5. ENCERRAMENTO:** Nada mais havendo a ser tratado, foi encerrada a reunião, da qual se lavrou a presente ata que, lida e achada conforme, foi por todos assinada. São Paulo (SP), 25 de maio de 2015. Celso Fernando Lucchesi, Presidente. Ricardo Doebeli, Secretário. Conselheiros Presentes: Celso Fernando Lucchesi, Caio Marcelo de Medeiros Melo, Ricardo Doebeli, Cesar Guillermo Gonzalez Neuman, e Simone Anhaia Melo.

_____
Ricardo Doebeli
Secretário



## Exhibit I

**Translation Certificates**

## DECLARATION CERTIFYING ACCURACY OF TRANSLATION

Robert E. Sette, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America, as follows:

1.    That he is thoroughly familiar with both the Portuguese and English languages, holding certification from the American Translators Association in Portuguese to English translation.

2.    That from February 19, 2016, through February 22, 2016, he translated into English from Portuguese the following documents:

      i.    The "Material Fact - Summoning of the Creditors Meeting", dated October 27, 2015, with the English translation identified as Exhibit "D";

      iv.    The "Material Fact - Filing of the reorganization proceeding", dated May 25, 2015, with the English translation identified as Exhibit "A";

3.    That the attached documents that he translated are, to the best of his knowledge and belief, true and accurate English versions of what was drafted in Portuguese.

4.    That he resides at 3260 Ivanhoe St., Denver, CO 80207.

Robert E. Sette declares under penalty of perjury under the laws of the United States of America that, based upon his knowledge, information, and belief as set forth herein, the foregoing is true and correct.

Dated:  April 22, 2016                                Respectfully submitted,

                                                    Robert E. Sette

## **DECLARATION CERTIFYING ACCURACY OF TRANSLATION**

Juliana Kurasawa, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America, as follows:

1.      That she is thoroughly familiar with both the Portuguese and English languages, having completed the Translation Course – Alumni Association (São Paulo, Brazil) in 2001.

2.      That from April 20, 2016 to April 22, 2016, she translated into English from Portuguese the following documents:

    i.   The Public Notice, dated September 21, 2015, with the English translation identified as Exhibit "C";

    ii.  The Resolutions of the Board Directors, dated May 25, 2015, with the English translation identified as "H";

3.      That the attached documents that she translated are, to the best of her knowledge and belief, true and accurate English versions of what was drafted in Portuguese.

4.      That she resides at Rua Arruda Alvim, 423 – apto. 74, Pinheiros, 05410-020, São Paulo, SP, Brazil.

Juliana Kurasawa declares under penalty of perjury under the laws of the United States of America that, based upon her knowledge, information, and belief as set forth herein, the foregoing is true and correct.

Dated:  April 22, 2016                          Respectfully submitted,

_____
Juliana Kurasawa

## DECLARATION CERTIFYING ACCURACY OF TRANSLATION

Melissa Ryan, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America, as follows:

1.      That she is thoroughly familiar with both the Portuguese and English languages and certified by the American Translators Association for Portuguese to English translation.

2.      That from February 19, 2016, through February 22, 2016, she translated into English from Portuguese the following documents:

   i.   The Commencement Order, dated June 22, 2015, with the English translation identified as Exhibit "B";

   ii.  The Homologation Order, dated June 22, 2015, with the English translation identified as Exhibit "G";

3.      That the attached documents that she translated are, to the best of her knowledge and belief, true and accurate English versions of what was drafted in Portuguese.

4.      That she resides at 509 Cypress Court, Bridgeville, PA 15017.

Melissa Ryan declares under penalty of perjury under the laws of the United States of America that, based upon her knowledge, information, and belief as set forth herein, the foregoing is true and correct.

Dated:  April 22, 2016

Respectfully submitted,

Melissa Ryan, CT

## DECLARATION CERTIFYING ACCURACY OF TRANSLATION

Susan C. Rials, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America, as follows:

1.    That she is thoroughly familiar with both the Portuguese and English languages, and has been a professional translator of Portuguese into English over thirty years.

2.    That from February 19, 2016, through February 22, 2016, she translated into English from Portuguese the following documents:

   i.    The Minutes of Creditors' Meeting, dated November 18, 2015, with the English translation identified as Exhibit "F".

3.    That the attached documents that she translated are, to the best of her knowledge and belief, true and accurate English versions of what was drafted in Portuguese.

4.    That he resides at 4309 Oldfield Drive, Arlington, TX 76016.

Susan C. Rials declares under penalty of perjury under the laws of the United States of America that, based upon her knowledge, information, and belief as set forth herein, the foregoing is true and correct.

Dated:  April 22, 2016                    Respectfully submitted,

                                         *Susan C. Rials*
                                         Susan C. Rials

NYDOCS01/1653682.1

## DECLARATION CERTIFYING ACCURACY OF TRANSLATION

Michael Ford, pursuant to 28 U.S.C. § 1746, hereby declares under penalty of perjury under the laws of the United States of America, as follows:

1.      That he is thoroughly familiar with both the Portuguese and English languages, having English as his native language, having obtained a bachelor's degree in Romance Linguistics, having worked and studied in both Brazil and Portugal, and having worked for over 20 years as a professional translator between those two languages.

2.      That from February 17, 2016, through February 20, 2016 he translated into English the Portuguese the Plan of Reorganization, dated August 24, 2015, with the English translation identified as Exhibit "E."

3.      That the attached documents that he translated and reviewed are, to the best of his knowledge and belief, true and accurate English versions of what was drafted in Portuguese.

4.      That he resides at 392 Rhine View Place SE, Salem, OR 97317.

Michael Ford declares under penalty of perjury under the laws of the United States of America that, based upon his knowledge, information, and belief as set forth herein, the foregoing is true and correct.

Dated: April 22, 2016                    Respectfully submitted,

Michael Ford

**Exhibit "A"**

[Logo: Lupatech]

Lupatech S.A.                                                          www.lupatech.com.br
National Register of Legal Entities of the Ministry of Finance (CNPJ/MF) No. 89,463,822/0001-12

<div align="center">

**LUPATECH S.A.**
CNPJ/MF No. 89,463,822/0001-12
Company Register I.D. (NIRE) No. 35.3.0045756-1
Open Company with Authorized Share Capital – BM&FBOVESPA New Market

**MATERIAL FACT**

**MEETING OF CREDITORS**

</div>

**Nova Odessa, May 25, 2015 –** Lupatech S.A. (BM&FBOVESPA: **LUPA3**) (OTCQX: **LUPAY**) (Lupatech Finance Limited Notes: **ISIN US550436AB54** and **ISIN USG57058AC66** "Notes") ("Lupatech" or the "Company"), informs its shareholders and the market in general that today, together with other companies of the Lupatech Group, it filed reorganization proceedings in the Judicial District of São Paulo, State of São Paulo, pursuant to the provisions of Article 51 and following of Law No. 11,101/05. It also reports that the referenced court-supervised reorganization proceedings were filed on an emergency basis, pursuant to Article 122, Paragraph One, of Law No. 6,404/76, and that a Special Meeting of Shareholders was called to confirm the decision made by its Board of Directors.

The Administration has been making efforts to negotiate with creditors, to demobilize non-core assets and to seek out potential investors to balance the Company's demands for operating capital and Capex to more vigorously resume its operating activities. Nevertheless, its outlook was worsened with the adverse situation of the oil and gas sector created by the drastic reduction in the price per barrel of oil on the international market and the significant increase in the perceived risk in the chain of products and services for this market segment in Brazil, with negative effects on the entire supply chain of the sector, which contributed to frustrating some expectations, and led the Company to file for court-supervised reorganization on this date.

The decision to file the petition for court-supervised reorganization is intended to preserve the value of the Company, its social duties and to stimulate commercial activity, while attending to the interests of its creditors and shareholders in an organized manner, and responsibly protecting the assets of the Company.

The Department of Investor Relations is available to provide any further clarification.

<div align="center">

Nova Odessa, May 25, 2015

**Ricardo Doebeli**
Chairman and VP of Investor Relations
**Lupatech S.A.**

</div>

<u>**CONTACT INFORMATION:**</u>
Investor Relations

Tel.: _55 (11) 2134-7000 or +55 (11) 2134-7089

Email: ri@lupatech.com.br

**Exhibit "B"**

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**
DISTRICT OF SÃO PAULO
CENTRAL CIVIL COURT
1ST BANKRUPTCY AND REORGANIZATION COURT
Praça João Mendes s/no., Sala 1608, Centro – CEP 01501-900, Telephone: (11)
2171-6505, São Paulo-SP – E-mail: sp1falencias@tj.sp.gov.br
**Public Service Hours: 12:30-7:00**

Pg. 3140

| DECISION |
|---|

| | |
|---|---|
| Electronic Proceeding No.: | **1050924-67.2015.8.26.0100** |
| Type – Matter: | **Reorganization - Reorganization and Bankruptcy** |
| Petitioner: | **Lupatech – Equipamentos e Serviços para Petróleo Ltda. et al.** |
| Defendant: | **Lupatech S/A et al.** |

CONCLUSION

On **June 22, 2015**, I make these records under advisement to the Honorable Judge. I, Márcio Antonio de Oliveira, Registration No. 815.745-9.

Judge: **Daniel Carnio Costa**

Examined.

**LUPATECH – EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA., CNPJ [national register of legal entities] 03.141.023/0001-04, LUPATECH S/A, CNPJ 89.463.822/0001-12, MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA., CNPJ 07.743.815/0001-00, AMPER AMAZONAS PERFURAÇÕES LTDA., CNPJ 05.488.549/0001-90, ITACAU AGENCIAMENTOS MARÍTIMOS LTDA., CNPJ 29.416.666/0001-07, LOCHNESS PARTICIPAÇÕES S/A, CNPJ 33.311.788/0001-06, MATEP S/A MÁQUINAS E EQUIPMAMENTS, CNPJ 33.311.788/0001-06, PREST PERFURAÇÕES LTDA. CNPJ 05.836.901/0001-31, LUPATECH PERFURAÇÃO E COMPLETAÇÃO LTDA., CNPJ 15.676.893/0003-29, SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S.A., CNPJ 15.129.646/0001-40 AND LUPATECH FINANCE LTD.**, called the "Lupatech Group" request reorganization on May 25, 2015.

The documents attached to the records prove that the petitioners satisfy the legal requirements to request reorganization, in accordance with Art. 48 of Law No. 11.101/05. The initial petition was adequately prepared, pursuant to the exact terms required by Art. 51 of Law No. 11.101/05. In summary, the petition is acceptable for its processing to be granted since the legal requirements (Articles 47, 48 and 51 of Law 11.101/2005) are present, and the debtor's ability to overcome the "economic-financial crisis" has been confirmed.[1]

Still pending judgment is the conflict of venue raised by the court of the 1st Court of Nova Odessa, even though the court obtaining jurisdiction is from the 2nd Court

---

[1] The reorganization set forth by Law 11.101/05 is a clear manifestation of the global tendency to mitigate the powerful nature of the rights of creditors in favor of the preservation of the company, as a way of satisfying the universal right of development of people, declared by the UN in 1988, and on the national level, consecrated as a fundamental objective of our Republic, in Art. 3, II of the FC. The economy and ownership are not the masters, and yes, instruments of the constitutional purpose of ensuring for all a dignified existence according to the principles of social justice, pursuant to Art. 170 of the FC. Art. 1, IV of the FC expressly recognizes as a fundamental principle of our Democratic State of Law the social values of free enterprise. The spirit of the institution of Reorganization and its compliance with the constitution are consistent with what Ricardo Sayeg and Wagner Balera maintain: "*Economic neoliberalism, with no humanist checks and calibration, is not capable of correcting negative externalities such as adequately harmonizing the externalities, especially those that are wanting, unequal and considered reciprocally. Such calibration is necessary and must affect the universal nature of the exercise of the natural subjective rights of ownership, making them relative, contrary to following the bias of the neoliberal, in which this exercise leans toward absolute.*" (O Capitalismo Humanist, Kbr: SP, 2011, p. 178)

[right margin:] This document was released in the records on June 22, 2015 at 5:41 p.m. by Márcio Antonio de Oliveira. It is a copy of the original signed digitally by DANIEL CARNIO COSTA. For access to the original, go to https://esaj.tjsp.jus.br/esaj, enter proceeding 1050924-67.2015.8.26.0100 and code 128B7A8.

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**

DISTRICT OF SÃO PAULO

CENTRAL CIVIL COURT

1ST BANKRUPTCY AND REORGANIZATION COURT

Praça João Mendes s/no., Sala 1608, Centro – CEP 01501-900, Telephone: (11) 2171-6505, São Paulo-SP – E-mail: sp1falencias@tj.sp.gov.br

**Public Service Hours: 12:30-7:00**

Pg. 3141

of that district due to the confirmation of the extrajudicial reorganization plan, the delay in granting the reorganization proceeding may be prejudicial to the continuation of the petitioners' businesses.

In that vein, considering that the Honorable Court of São Paulo determined that this court decides on urgent matters until the competence is defined, granting the reorganization proceeding is a measure that is carried out urgently without prejudice to the subsequent delivery of the records to the competent court.

Therefore, in accordance with Art. 52 of Law 11.101/2005, I GRANT the reorganization of the companies **Lupatech – Equipamentos e Serviços para Petróleo Ltda., CNPJ 03.141.023/0001-04, Lupatech S/A, CNPJ 89.463.822/0001-12, Mipel Indústria E Comércio de Válvulas Ltda., CNPJ 07.743.815/0001-00, Amper Amazonas Perfurações Ltda., CNPJ 05.488.549/0001-90, Itacau Agenciamentos Marítimos Ltda., CNPJ 29.416.666/0001-07, Lochness Participações S/A, CNPJ 09.443.937/0001-06, Matep S/A Máquina e Equipamentos, CNPJ 33.311.788/0001-06, Prest Perfurações Ltda. CNPJ 05.836.901/0001-31, Lupatech Perfuração e Completação Ltda., CNPJ 15.676.893/0003-29, Sotep Sociedade Técnica de Perfuração S.A., CNPJ 15.129.646/0001-40 and Lupatech Finance Ltd.**

Therefore,

1) As the bankruptcy trustee (Art. 52, I, and Art. 64) I appoint **Alta Administração Judicial Ltda.**, CNPJ No. 20.282.418/ 0001-46, represented by Afonso Rodeguer Neto, OAB/SP 60.583, address: Avenida Paulista, No. 1439, cj. 132, CEP 01311-926, Cerqueira Cesar, São Paulo/SP, for the purposes of Art. 22, III, and it must be notified so that the agreement is signed within 48 (forty-eight) hours under penalty of replacement (Articles 33 and 34) pursuant to Art. 21, sole paragraph, of Law 11.101/05, with notification via institutional e-mail authorized:

1.1) The bankruptcy trustee must inform the court of the company's situation within 10 days, for the purposes of Art. 22, II, "a" (first part) and "c", of Law No. 11.101/05.

1.2) If it is necessary to hire assistants, (accountant, attorneys, etc.), it must present the contract within 10 days.

1.3) The bankruptcy trustee is responsible for observing the regularity of the case and compliance with the periods by the parties under reorganization.

1.4) Within the same period indicated in Item 1.1, the bankruptcy trustee must submit his offer of fees.

1.5) With respect to the monthly reports, which should not be confused with the report ordered above in Item 1.1, the bankruptcy trustee must record the first report as corresponding to reorganization, while they must not be attached in the main records, since the subsequent monthly reports must always be directed to the incident already established.

2) In accordance with Art. 52, II of Law 11.101/2005, I order the "exemption from presentation of certificates of no overdue tax liability so that the debtors can exercise their activities, except for hiring with the government or receiving tax or public credit incentives or benefits," in the event the debtor, in accordance with Art. 69 of the LRF [tax responsibility law], that is to say the business name,

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**

DISTRICT OF SÃO PAULO

CENTRAL CIVIL COURT

1ST BANKRUPTCY AND REORGANIZATION COURT

Praça João Mendes s/no., Sala 1608, Centro – CEP 01501-900, Telephone: (11) 2171-6505, São Paulo-SP – E-mail: sp1falencias@tj.sp.gov.br

**Public Service Hours: 12:30-7:00**

Pg. 3142

is followed by the expression "In Reorganization," also notifying the São Paulo Board of Trade [JUCESP] for the due annotations, with the parties under reorganization arranging the routing.

3) I order, in accordance with Art. 52, III of Law 11.101/2005, "**the suspension of all actions or executions against the debtors**" in accordance with Art. 6 of the LRF and "the respective records" must remain "in the court where they are processed, with the exception of those actions set forth in §§ 1, 2 and 7 of Art. 6 of that Law and those relative to credits executed in accordance with §§ 3 and 4 of Art. 49 of that same Law," with the **debtors** arranging competent communications (Art. 52, § 3).

4) I order, in accordance with Art. 52, IV of Law 11.101/2005, the debtors to submit **monthly** financial statements while the reorganization is under way, under penalty of dismissal of their bankruptcy trustees," and the first monthly financial statement must be recorded as corresponding to the reorganization, whereas they must not be attached to the main records, as the subsequent monthly financial statements must always be directed to the incident already established.

5) Send a communication, **by letter**, to the Federal Treasury and the treasuries of all states and municipalities where the debtor has facilities and offices (LRF, Art. 52, V), with the parties under reorganization arranging the routing.

6) The period for **proof of claims or divergences from the credit listed** (by the debtor) is 15 (fifteen) days from publication of the respective notice (LRF, Art. 7, § 1).

In this way, the notice referenced in Art. 52, § 1 of the LRF is sent, where, for the knowledge of all interested parties the tax liability must appear as well, with a warning of the periods of Art. 7, § 1 and Art. 55 of the LRF.

Considering that the parties under reorganization presented a draft of the list of creditors listed in the early stage, consistent with model in Art. 41 of Law No. 11.101/05, it must be useful to add the referenced draft with the terms of this decision, and notify the parties under reorganization by telephone or institutional e-mail, which is certified in the records, so that they can collect the amount of the publication expenses in the Diário Oficial Eletrônico [official electronic gazette] of the São Paulo Court of Justice, according to the number of characters, within 24 hours, under penalty of revocation.

The parties under reorganization must also arrange for publication of the notice in a newspaper with wide circulation within five days.

7) Any proof of claims or divergences from the credits listed by the debtor (Art. 7, § 2), that are sent to the bankruptcy trustee **must be digitized and sent directly to the bankruptcy trustee via e-mail ONLY at the address:** altaadmjudicical@uol.com.br created specifically for this purpose and reported in the notice to be published in accordance with Item 6 above.

I observe in this topic in particular with respect to the labor credits, that for any divergence or proof of claim, it is necessary for there to be a liquidated and enforceable labor judgment (circulated in the judicial district), with the Labor Court responsible for establishment of any amount to be reserved.

8) The reorganization plan must be presented within a period of 60 days, in accordance with Art. 53, under penalty of transformation of the reorganization case into bankruptcy.

[right margin:] This document was released in the records on June 22, 2015 at 5:41 p.m. by Márcio Antonio de Oliveira. It is a copy of the original signed digitally by DANIEL CARNIO COSTA. For access to the original, go to https://esaj.tjsp.jus.br/esaj, enter proceeding 1050924-67.2015.8.26.0100 and code 128B7A8.

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**

DISTRICT OF SÃO PAULO

CENTRAL CIVIL COURT

1ST BANKRUPTCY AND REORGANIZATION COURT

Praça João Mendes s/no., Sala 1608, Centro – CEP 01501-900, Telephone: (11) 2171-6505, São Paulo-SP – E-mail: sp1falencias@tj.sp.gov.br

**Public Service Hours: 12:30-7:00**

Pg. 3143

With the presentation of the plan, a notice is issued containing the notice in Art. 53, sole paragraph, of Law No. 11.101/05, with a period of 30 days for objections, <u>and the parties under reorganization must provide, in the action of presenting the plan, a draft of the notice, including in electronic format, as well as the collection of the costs for publication.</u>

9) If the list of creditors has still not been published by the bankruptcy trustee, such objections may be legitimately presented by those reported in the debtors' notice and who have claimed a proof of claim.

10) Once the list of creditors is presented by the bankruptcy trustee (Art. 7, § 2), any objections (Art. 8) <u>must be recorded as corresponding to the reorganization, while they must not be attached in the main records (Art. 8, sole paragraph)</u>.

11) Finally, even though the initial petition is sufficiently prepared for the purpose of granting the reorganization request, I observe the need for the parties under reorganization to complement the initial documentation in order to provide within 10 days the documents pointed out in the previous expert opinion entered on pages 413/442, and remedy the divergences also pointed out in the specified expert opinion.

12) Let this be notified, including to the Public Prosecutor's Office.

It is notified.

São Paulo, **June 22, 2015**

---

**DOCUMENT SIGNED DIGITALLY IN ACCORDANCE WITH LAW 11.419/2009
AS PER THE PRINT IN THE RIGHT MARGIN**

---

[right margin:] This document was released in the records on June 22, 2015 at 5:41 p.m. by Márcio Antonio de Oliveira. It is a copy of the original signed digitally by DANIEL CARNIO COSTA. For access to the original, go to https://esaj.tjsp.jus.br/esaj, enter proceeding 1050924-67.2015.8.26.0100 and code 128B7A8.

**Exhibit "C"**

16-11078-mg    Doc 6    Filed 04/27/16    Entered 04/27/16 14:13:35    Main Document
Pg 137 of 229

Available on: Monday, September 2ⁿᵈ 2015    Electronic Court Gazette – Notices and Auctions (*Diário da Justiça Eletrônico – Caderno Editais & Leilões*)    São Paulo, Year VIII – Edition 1971    4    Page 9350

affixed and published pursuant to applicable law. NOTHING FURTHER. São Paulo, August 19, 2015.

## UPJ 41ª a 45ª VARAS CÍVEIS

EDITAL DE CITAÇÃO - PRAZO DE 20 DIAS. PROCESSO Nº 1080176-52.2014.8.26.0100. O(A) MM. Juiz(a) de Direito da 43ª Vara Cível, do Foro Central Cível, Estado de São Paulo, Dr(a). Rodolfo César Milano, na forma da Lei, etc. FAZ SABER a(o) Frutos da Moda LTDA. - EPP, Joao Teodoro, 1614, Bras - CEP 03009-000, São Paulo-SP, CNPJ 12.011.397/0001-04, na pessoa de sua representante legal Maria do Carmo de Aguiar Alves, CPF 301.715.122-0 que Têxtil MN Comércio de Tecidos e Confecções Ltda, lhe ajuizou a ação Execução, para cobrança da quantia de R$ 18.141,11. Estando a executada em lugar ignorado, foi deferida a sua citação e intimação por edital, para que em 03 dias, após o prazo supra, pague o débito atualizado e acrescido das cominações legais, sob pena de ser convertido automaticamente em penhora o arresto procedido sobre o valor de R$ 1.427,29 do Banco do Brasil Ag. 1897 . 072014000012895622 em 28/11/2014. Convertido, terá a executada o prazo de 15 dias, independente de nova intimação, para oferecer embargos à execução, sob as penas da Lei e prosseguimento do feito nos ulteriores termos. Será o presente edital, afixado e publicado na forma da lei. NADA MAIS. Dado e passado nesta cidade de São Paulo, aos 03 de setembro de 2015.

# Bankruptcy Courts

## 1st Court of Bankruptcy and Court-Supervised Reorganizations

5btmw.000 (September 18, 2015)
1st Court of Bankruptcy and Court-Supervised Reorganizations (*1ª Vara de Falências e Recuperações Judiciais*)
1st Public Office of Bankruptcy and Court-Supervised Reorganizations (*1º Ofício de Falências e Recuperações Judiciais*)

NOTICE – ARTICLE 53, SOLE PARAGRAPH, OF LAW NO. 11.101/2005

Notice issued in the court files of the Court-supervised Reorganization of LUPATECH S.A., LUPATECH EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA., MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA., AMPER AMAZONAS PERFURAÇÕES LTDA., ITACAU AGENCIAMENTOS MARÍTIMOS LTDA., LOCHNESS PARTICIPAÇÕES S/A, MATEP S/A MÁQUINAS E EQUIPAMENTOS, PREST PERFURAÇÕES LTDA., LUPATECH – PERFURAÇÃO E COMPLETAÇÃO LTDA., SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S/A, and LUPATECH FINANCE LIMITED; time period: 30 days, docket No. 1050924-67.2015.8.26.0100 (Article 53, sole paragraph, of Law No. 11.101/2005). Daniel Carnio Costa, Honorable Judge of the 1st Court of Bankruptcy, Court-Supervised Reorganizations, and Conflicts related to Arbitration of the Capital (*1ª Vara de Falências, Recuperações Judiciais e Conflitos Relacionados à Arbitragem da Capital*), pursuant to applicable law, INFORMS that, in accordance with Article 53, sole paragraph, of Law No. 11.101/05, the debtors (*Recuperandas*) filed their reorganization plan, together with the economic and financial feasibility study and the appraisal report of their assets, at pages 6.936 to 8.356 of the digital files. Any challenges may be filed within 30 days as of the date of publication of this notice. In the event the trustee has not yet published the list of creditors, those who have already been included in the debtor's notice and that filed proof of claim have standing to file such challenges, pursuant to Article 55 of Law No. 11.101/2005 (sole paragraph of Article 55 of Law No. 11.101/2005). The full reorganization plan, pursuant to Article 53 of Law No. 11.101/05, is available in the records of the Court-supervised Reorganization and at the websites of the debtors (http://www.lupatech.com.br) and of the Trustee (http://www.altaadmjudicial.com). An excerpt of this notice will be affixed and published, pursuant to applicable law, to produce all legal effects. São Paulo, September 10, 2015.

5btmw.001 (18/09/2015)
1ª Vara de Falências e Recuperações Judiciais
1º Ofício de Falências e Recuperações Judiciais

Edital de convocação para a Assembléia Geral de Credores, expedido nos autos da Recuperação Judicial - Administração judicial da empresa AQUARIUS SBC EDITORA GRÁFICA LTDA, PROCESSO Nº 0026467-56.2013.8.26.0100 O(A) Doutor(a) Daniel Carnio Costa, MM. Juiz(a) de Direito da 1ª Vara de Falências e Recuperações Judiciais, do Estado de São Paulo, na forma da Lei, etc. Faz Saber que pelo presente edital ficam convocados todos os credores de Aquarius SBC Editora Gráfica Ltda, CNPJ 00.618.809/0001-81, para comparecerem e se reunirem em Assembléia a ser realizada à Rua Riga, nº 100 - Sacomã, São Paulo/SP, CEP: 04249-070, no próximo dia 08.10.2015, às 09:00 horas em primeira convocação, ocasião em que se realizará a assembléia com a presença dos credores titulares de mais de metade dos créditos de cada classe, computados pelo valor e, caso não haja quorum nesta ocasião ficam desde já convocados os Senhores credores para a realização, em 2ª Convocação desta Assembléia Geral, para o dia 15.10.2015, às 09:00 horas, quando a mesma será realizada com a presença de qualquer número de credores presentes. A presente Assembléia é convocada para que os credores deliberem sobre as seguintes ordens do dia: a) aprovação, rejeição ou modificação do Plano de Recuperação Judicial apresentado pelo devedor; b) a constituição do Comitê de Credores, a escolha de seus membros e sua substituição; e c) outras assuntos de interesse dos credores e da Recuperanda. Os Senhores credores poderão obter cópia do plano de recuperação judicial a ser submetido à deliberação de assembléia, no 1º Ofício de Falência e Recuperação Judicial da Comarca da Capital do Estado de São Paulo, localizado na Praça João Mendes Jr. s/nº, 16º andar, sala 1610, Centro, São Paulo, SP e no escritório do administrador judicial, sito no Largo São Bento, nº 64, 8º andar, Centro, São Paulo, de 2ª à 6ª, no horário comercial. A presente Convocação será publicada e afixada na sede da empresa e suas filiais na forma de lei (art. 36 da lei 11.101/2005), ficando estabelecido ainda que a Assembléia Geral será procedida conforme determina a Lei nº 11.101/2005. Para que produza seus regulares efeitos de direito, é expedido o presente edital, por extrato, afixado e publicado na forma da lei. São Paulo, 18 de setembro de 2015.

This document was filed on September 22, 2015, at 11:34 a.m., and it is a copy of the original digitally signed by VANCLER PAULINO DE SOUZA
To verify the original document, access https://esaj.tjsp.jus.br/esaj, inform the file No. 1050924-67.2015.8.26.0100 and the code 15AAACA.

**COURT OF JUSTICE OF THE STATE OF SÃO PUALO**
(*TRIBUNAL DE JUSTIÇA DO ESTADO DE SÃO PAULO*)
DISTRICT OF SÃO PAULO (*COMARCA DE SÃO PAULO*)
CIVIL CENTRAL DISTRICT (FORO CENTRAL CÍVEL)
1ˢᵗ BANKUPTCY AND COURT-SUPERVISED REORGANIZATIONS COURT
(*1ª VARA DE FALÊNCIAS E RECUPERAÇÕES JUDICIAIS*)
Praça João Mendes s/nº, Sala 1608, Centro – CEP 01501-900,
Phone: (11) 2171-6505, São Paulo-SP – E-mail: sp1falencias@tj.sp.gov.br
**Hours: 12:30 p.m. to 7:00 p.m.**

| CERTIFICATE |
|---|

Digital File No.:      **1050924-67.2015.8.26.0100**

Class – Matter:      **Court-supervised Reorganization - Court-supervised Reorganization and Bankruptcy**

Plaintiff:      **Lupatech S/A and others**

Defendant:      **Lupatech S/A and others**

### C E R T I F I C A T E

I hereby certify that the above notice, issued pursuant to Article 53, sole paragraph, of Law No. 11.101/2005, was made available at the Electronic Court Gazette (*Diário da Justiça Eletrônico – DJE*) on September 21, 2015. The publication date is the first business day following the date it is made available. Nothing further. São Paulo, September 22, 2015. I, ____, Vancler Paulino de Souza, Clerk of Court (*Escrevente Técnico Judiciário*).

This document was filed on September 22, 2015, at 11:34 a.m., and it is a copy of the original digitally signed by VANCLER PAULINO DE SOUZA
To verify the original document, access https://esaj.tjsp.jus.br/esaj, inform the file No. 1050924-67.2015.8.26.0100 and the code 15AAACA.

**Exhibit "D"**

[Logo: Lupatech]

Lupatech S.A.                                                                    www.lupatech.com.br
National Register of Legal Entities of the Ministry of Finance (CNPJ/MF) No. 89,463,822/0001-12

<div align="center">

**LUPATECH S.A.**
CNPJ/MF No. 89,463,822/0001-12
Company Register I.D. (NIRE) No. 35.3.0045756-1
Open Company with Authorized Share Capital – BM&FBOVESPA New Market

**MATERIAL FACT**

**MEETING OF CREDITORS**

</div>

**Nova Odessa, October 27, 2015 –** Lupatech S.A. (BM&FBOVESPA: **LUPA3**) (OTCQX: **LUPAY**) (Lupatech Finance Limited Notes: **ISIN US550436AB54** and **ISIN USG57058AC66** "Notes") ("Lupatech" or the "Company"), informs its shareholders and the market in general that the Judge of the 1st Judicial District for Bankruptcy, Court-supervised Reorganization and Disagreements related to Capital Arbitration, Dr. Daniel Carnio Costa, has called all the creditors of the Lupatech Group to appear at the Meeting of Creditors to be held, on the first announcement, on November 11, 2015, at 3:00 p.m., with credentialing starting at 12:00 noon, at which time the meeting will be held in the presence of creditors holding more than one-half of the credits for each class, calculated based on the amount, and if the quorum is not reached at this time, on the second announcement, at the same time on November 18, 2015, at the Convention Center of the São Paulo Corporate Center (CENESP), located at Avenida María Coelho Aguiar, 215, Jardim São Luis, São Paulo, SP – CEP 05804-900, to vote on the following agenda:

a) approval, rejection or amendment of the Court-ordered Reorganization Plan submitted by the entities under reorganization;
b) establishment of the Creditors Committee, selection of its members and alternates;
c) other matters within the purview of the Meeting of Creditors, pursuant to Article 35 of Law No. 11,101/05.

The Meeting shall be chaired by the representative of the Administrator appointed by this Court, Alta Administração Judicial Ltda. The creditors authorized to vote who wished to be represented by an agent, per the provisions of Article 37, §4 of Law No. 11,101/05, must submit to the Administrator, Alta Administração Judicial Ltda., at its address of Avenida Paulista, No. 1439, 13th floor, Bela Vista, Sp, SP, CEP 01311-926, at least 24 (twenty-four) hours prior to the start of the Meeting, an authorizing document verifying its authority or indicating the pages of the Court-supervised Reorganization case file where such documents may be found. In the case of a legal entity, the corporate documents verifying the authority of the signatory representative(s) specified in the power of attorney and other documents verifying the granting of authority, or indicating the pages of the Court-supervised Reorganization case file where the corporate documents may be found. In order for Labor Unions to be able to represent their members, the procedure specified by Art. 37, §§5-6, Clause I, of Law No. 11,101/05 must be respected. The creditors may obtain a copy of the Court-supervised Reorganization Plan to be submitted for a resolution by the Meeting from the website of the Lupatech Group (http://www.lupatech.com.br/ri), from the website of the Court-appointed Administrator (http://www.altaadmjudicial.com/), or by consultation of the electronic case documents, No. 1050924-67.2015.8.26.0100 (pp. 6938/7001) on the website of the Court of Justice of the State of São Paulo (http://www.tjspjus.br).

<div align="center">

**Ricardo Doebeli**
Director of Investor Relations

</div>

[Logo: Lupatech]

Lupatech S.A.                                                                    www.lupatech.com.br
National Register of Legal Entities of the Ministry of Finance (CNPJ/MF) No. 89,463,822/0001-12

## Contact information – Investor Relations

**Tel.: _55 (11) 2134-7000 or +55 (11) 2134-7089**                    **Email: ri@lupatech.com.br**

ABOUT LUPATECH – We are one of the **largest Brazilian providers of high value-added products and services focused on the oil and gas sector.** Our business is organized into two segments: **Products** and **Services.** The **Products** segment offers production platform anchor cables, valves, well finishing equipment and natural gas compressors for vehicles, primarily to the oil and gas sector. The **Services** segment offers workover, drilling, well intervention, lining and pipe inspection services.

*We have made statements regarding future events that are subject to risks and uncertainties. These statements are based on estimates and presumptions by our Administration, and on information to which the Company currently has access. Statements regarding future events include information regarding our intentions, current expectations or estimates, as well as those of the members of the Board of Directors and Directors of the Company. Exceptions related to statements and information about the future also include information regarding possible or presumed operating results, as well as statements that are preceded or followed by or that include the words "believes", "may", "is going to", "continues", "expects", "anticipates", "intends", "plans", "deems" or similar expressions. Statements and information regarding the future are not guarantees of performance. They involve risks, uncertainties and presumptions because they relate to future events, depending, however, on circumstances that may or may not occur. Future results and the creation of value for Shareholders may significantly differ from those stated or estimated by statements related to the future. Many of the factors that will determine these results and values are beyond the ability of Lupatech to control or forecast.*

*This document is not an offer to sell securities in the United States of America. Securities may not be offered or sold in the United States of America without registration or waiver of registration with regard to the U.S. Securities Act of 1933, as amended. The Company does not intend to register any portion of any offering or to make a public offering of securities in the United States of America.*

**Exhibit "E"**

[header, upper right corner: sequential page numbering starting with p. 14133]

[vertical text in right margins:]

This document was certified [*protocolado*] on 11/23/2015 at 5:16 p.m.; it is a copy of the original digitally signed by the São Paulo Court of Justice and AFONSO RODEGUER NETO.
To compare against the original, go to the website https://esaj.tjsp.jus.br/esaj, and enter case No. 1050924-67.2015.8.26.0100 and code 17C7EA3.

# LUPATECH GROUP
# RECEIVERSHIP PLAN

### LUPATECH S.A. – IN RECEIVERSHIP

### LUPATECH – EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA. – IN RECEIVERSHIP

### MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA. – IN RECEIVERSHIP

### AMPER AMAZONAS PERFURAÇÕES LTDA. – IN RECEIVERSHIP

### ITACAU AGENCIAMENTOS MARÍTIMOS LTDA. – IN RECEIVERSHIP

### LOCHNESS PARTICIPAÇÕES S/A – IN RECEIVERSHIP

### MATEP S/A MÁQUINAS E EQUIPMENTOS – IN RECEIVERSHIP

### PREST PERFURAÇÕES LTDA. – IN RECEIVERSHIP

### LUPATECH – PERFURAÇÃO E COMPLETAÇÃO LTDA. – IN RECEIVERSHIP

### SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S/A – IN RECEIVERSHIP

### LUPATECH FINANCE LIMITED - – IN RECEIVERSHIP

São Paulo, August 24, 2015

**Lupatech S.A. – In Receivership**, a publicly traded corporation [*sociedade anônima de capital aberto*] founded and organized in accordance with the laws of Brazil, registered with the CNPJ/MF [Ministry of Finance Corporate Tax Roll] under No. 89.463.822/0001-12, with corporate headquarters in Nova Odessa, State of São Paulo, Brazil, at Rodovia Anhanguera, Km 119, sentido interior/capital, prédio C, Distrito Industrial, CEP 134600-000; **Lupatech – Equipamentos e Serviços para Petróleo Ltda. – In Receivership**, a limited-liability business corporation [*sociedade empresária limitada*] founded and organized in accordance with the laws of Brazil, registered with the CNPJ/MF under No. 03.141.023/0001-04, with corporate headquarters at Macaé, State of Rio de Janeiro, at Estrada da Pedreira Jundia, No. 50, Imboassica, CEP 29925-530; **Mipel Indústria e Comércio de Válvulas Ltda. – In Receivership**, a limited-liability corporation [*sociedad limitada*] founded and organized in accordance with the laws of Brazil, registered with the CNPJ/MF under No. 07.743.815/0001-00, with corporate headquarters at Veranópolis, State of Rio Grande do Sul, at Rua Casemiro Ecco, No. 417, CEP 95330-000; **Amper Amazonas Perfurações Ltda. – In Receivership**, a limited-liability corporation founded and organized in accordance with the laws of Brazil, registered with the CNPJ/MF under No. 05.488.549/0001-90, with address in Catu, State of Bahia, at Rua José Visco, s/n, Bairro Pioneiro, CEP 48110-000; **Itacau Agenciamentos Marítimos Ltda. – In Receivership**, a limited-liability corporation founded and organized in accordance with the laws of Brazil, registered with the CNPJ/MF under No. 29.416.666/0001-07, with address in Maruim, State of Sergipe, at Rodovia BR 101, Km 06, s/n, Bairro Boa Hora, CEP 29135-000; **Lochness Participações S/A – In Receivership**, a corporation [*sociedade anônima*] founded and organized in accordance with the laws of Brazil, registered with the CNPJ/MF under No. 09.443.937/0001-06, with address at this city of São Polo, State of São Paulo, Brazil, at Avenida Maria Coelho Aguiar, 215 Bloco B, 5º Andar, Jardim São Luis, CEP 05804-900; **Matep S/A Máquinas e Equipamentos – In Receivership**, a corporation founded and organized in accordance with the laws of Brazil, registered with the CNPJ/MF under No. 33.311.788/0001-06, with address in Catu, State of Bahia, at Rua José Visco, s/n, Bairro Pioneiro, CEP 48110-000; **Preset Perfurações Ltda. – In Receivership**, a corporation founded and organized in accordance with the laws of Brazil, registered with the CNPJ/MF under No. 05.836.901/0001-31, with address in Mossoró, State of Rio Grande do Norte, at Rua Ranieri Barbosa, No. 297, Parte A, Bairro Dom Jaime Câmara, CEP 59.628-802; **Lupatech – Perfuração e Completação Ltda. – In Receivership**, a limited-liability corporation founded and organized in accordance with the laws of Brazil, registered with the CNPJ/MF under No. 15.676.893/0003-29, with address in Macaé, State of Rio de Janeiro, at Estrada da Pedreira Jundiá, No. 50, Calpão 3, Bairro Imboassica, CEP 27925-530; **Sotep Sociedade Técnica de Perfuração S/A – In Receivership**, a corporation founded and organized in accordance with the laws of Brazil, registered with the CNPJ/MF under No. 15.129.646/0001-40, with address in Catu, State of Bahia, at Rua José Visco, s/n, Bairro Pioneiro, CEP 48110-000; and **Lupatech Finance Limited – In Receivership**, a limited-

liability corporation founded and organized in accordance with the laws of the Cayman Islands, with address in Georgetown, Grand Cayman, at South Church Street, Ugland House, PO Box 309GT; all of them components of a single corporate group, the **Lupatech Group**, with main headquarters in the city of São Paulo, State of São Paulo, Brazil, at Avenida Maria Coelho Aguiar, 215, Bloco B, 5º andar, Jardim São Luis, CEP 05804-900, propose the following receivership plan pursuant to the Brazilian Bankruptcy Act [*Lei de Falências*].

# INTRODUCTION

Whereas:

A)      The Lupatech Group is a *de facto* economic group operating in the Brazilian market for products and services related to the oil and gas sector;

B)      As noted in the Economic-Financial Feasibility Analysis, the primary economic sector of the Lupatech Group's activity – the oil and gas market – is experiencing a crisis unprecedented in national and global economic history, severely harming the performance of the Lupatech Group companies;

C)      Because of these economic and financial difficulties, the Lupatech Group filed for Receivership [*Recuperação Judicial*], the processing of which was approved by the Bankruptcy Court [*Juízo da Recuperação*] which required, among other measures, submission of a receivership plan;

D)      The Lupatech Group seeks to overcome its economic-financial crisis and restructure its businesses, with a view to (i) preserving its business activity, maintaining its leading position as one of Brazil's largest economic groups involved in the oil and gas sector; (ii) remaining a source for the generation of wealth, taxes and jobs; and (iii) establishing the means of paying its creditors, at all times with a view to addressing its [or "their"—source is ambiguous] best interests;

E)      To that end, the Lupatech Group presents the Plan, which satisfies the requirements of Art. 53 of the Bankruptcy Act, by (i) breaking out the means for the recovery of the Lupatech Group; (ii) being viable; (iii) being accompanied by an opinion that demonstrates the economic viability of the Lupatech Group companies and an opinion on the valuation of its goods and assets; and (iv) containing a clear and specific proposal for paying creditors subject to the Receivership [Plan];

The Lupatech Group submits the Plan to the Bankruptcy Court and to the Creditors Subject to the Plan, for analysis and approval by the General Meeting of Creditors, in accordance with the following terms.

# CHAPTER I

## DEFINITIONS AND INTERPRETATION

**1.1. <u>Rules of interpretation</u>**. The Plan must be read and interpreted in accordance with the rules set forth in this Chapter I.

**1.2. <u>Meanings</u>**. The terms and expressions used in upper-case letters, whenever mentioned in the Plan, have the meanings given them in <u>Appendix 1.2</u>. These terms and expressions are used, when appropriate, in the singular or plural, in the masculine or feminine form, without thereby losing the meaning given to them in <u>Appendix 1.2</u>. Terms and expressions in upper case without

their meaning given by Appendix 1.2 must be read and interpreted in accordance with their common use.

**1.3. Titles**. The titles of the Plan's Clauses were included solely for reference and convenience, and must not affect the content of its [or "their"—source is ambiguous] projections.

**1.4.  Introduction**. The Plan's introduction was included solely to present and clarify the overall economic and legal context in which the Plan is proposed, and must not affect the content or interpretation of the Plan's Clauses. Terms used in upper case in the introduction have the meanings attributed to them in Appendix 1.2.

**1.5. Discrepancies between Clauses**. In the event of a discrepancy between Clauses, a Clause containing a specific provision shall prevail over one containing a generic provision.

**1.6. Conflicts with Appendices**. In the event of a conflict between any provision of the Plan and any of the Appendices, including the Economic-Financial Feasibility Analysis, and with the exception of Appendix 1.2, the provision of the Plan shall prevail. The Appendices, with the exception of Appendix 1.2, have no binding content, unless stated otherwise in the Plan.

**1.7. Conflict with Existing Agreements**. In the event of a conflict between any provision of the Plan and the provisions establishing obligations of the Lupatech Group consisting of agreements entered into with Creditors Subject to the Plan before the Request Date, the provision of the Plan shall prevail.

**1.8. The Lupatech Group as a *de facto* economic group**. As noted in the explanation provided in the initial petition for Receivership, the Lupatech Group is a *de facto* economic group. The Companies under Reorganization [*Recuperanda*] are, indivisibly, financially and operationally linked, although each one serves specialized functions within its specific branch of activity. As a means of providing proper legal treatment to that economic reality, the Plan treats the Lupatech Group as a single economic entity. This measure is made necessary due to the indivisible economic and operational integration existing between the Companies under Reorganization. Nevertheless, each Company under Reorganization maintains its own legal capacity, identity, rights, obligations and resources, including for purposes of fulfillment of the Plan, unless stipulated otherwise in the Plan for purposes of the fulfillment of certain obligations.

# CHAPTER II

## RESTRUCTURING OF THE CREDITS SUBJECT TO THE PLAN

### 2.1. General provisions

2.1.1. Restructuring of Credits. Pursuant to Article 61 of the Bankruptcy Act, the Plan substitutes [*nova*] all Credits Subject to the Plan, which shall be paid by the Lupatech Group in accordance with the terms and forms set forth in the Plan, for each class of Creditors Subject to the Plan, even if the agreements that gave rise to the Credits Subject to the Plan provide otherwise. Under the aforementioned substitution, all obligations, covenants, financial indices, cases of early maturity, fines, as well as any other obligations and guarantees incompatible with the conditions of this Plan cease to be applicable.

2.1.2. Restructuring of Credits Not Subject to the Plan. Credits Not Subject to the Plan shall be paid in the form originally agreed to or in the form agreed to between the Lupatech Group and the respective Creditor Not Subject to the Plan, including by means of the application of measures provided for in the Plan, if applicable.

2.1.3. Assumption of debt by Lupatech S.A. With a view to rendering feasible the execution of certain restructuring activities of the Lupatech Group as provided for in the Plan, including the conversion of Credits Subject to the Plan into Shares, pursuant to Clauses 4.1.3, 5.1.4 and 5.1.5, as of Court Approval of the Plan, and for all purposes, all Credits Subject to the Plan shall have Lupatech S.A. as sole debtor, except in the case of Type A and Type B Notes, the principal debtor of which shall be Lupatech Finance Limited, with Lupatech S.A. as guarantor. Credits resulting from the aforementioned assumption of debt between Lupatech S.A. and the other Companies under Reorganization may be offset, compounded, discharged, assigned or forgiven.

2.1.4. Disregarding of fractions of Credits to be converted to Shares. In all cases stipulated by the Plan involving the conversion of Credits Subject to the Plan into Shares, in the event the amount held by the respective Creditor Subject to the Plan is insufficient as to comprise a whole number of Shares, the excess fractions shall be disregarded.

2.1.5. Payment Options at the Creditor's choice. The Plan gives certain Creditors Subject to the Plan the right to choose, from among a specified number of options offered, the alternative of receiving Credits Subject to the Plan that seems the most attractive and that best meets their creditor interests.

    2.1.5.1. Equality between Creditors. Comparison of the opportunities to choose from among various options for receiving Credits Subject to the Plan is a measure consistent with equal treatment between Creditors Subject to the Plan. No

impossibility or impediment from choosing a specific option shall imply differential or discriminatory treatment of a Creditor Subject to the Plan in relation to other Creditors Subject to the Plan belonging to the same class.

2.1.5.2. <u>Binding option of the Creditor</u>. The choice of option by a Creditor Subject to the Plan is final, definitive, binding, irrevocable and irreversible, and subsequent reversal or change of option shall only be possible with the approval of the Lupatech Group.

2.1.6. <u>Form of payment</u>. Unless stipulated otherwise in this Plan, cash payments provided for in the Plan to Creditors Subject to the Plan must be paid by means of direct funds transfer to the bank account of the respective Creditor, a credit order document (COD) or Electronic Funds Transfer (EFD), as the case may be, or any other specific form agreed to between the Lupatech Group and the respective Creditor Subject to the Plan.

2.1.7. <u>Information on bank accounts</u>. Creditors Subject to the Plan must inform the Lupatech Group of their respective bank accounts for purposes of making payments, in the cases provided for in the Plan, within a maximum of 10 (ten) days from Court Approval of the Plan, by means of written notification sent to the Lupatech Group pursuant to Clause 11.3. Payments not made because Creditors failed to declare their bank accounts within the established deadline will not be considered a violation of the Plan. There shall be no assessment of interest or delinquency fees if payments were not made because Creditors failed to declare their bank accounts within the period stipulated in this Clause.

2.1.8. <u>Payment agent</u>. The Lupatech Group may engage financial institutions, at its expense, to act as payment agents, which in this event shall be responsible for making payments to the Creditors Subject to the Plan, in the cases provided for in the Plan.

2.1.9. <u>Start of payment periods</u>. Unless legally stipulated or provided for otherwise by the Plan, the timeframes set forth for paying Credits Subject to the Plan shall only be counted as of Court Approval of the Plan.

2.1.10. <u>Payment date</u>. Payments must be made on their respective due dates. In the event that any payment or obligation provided for in the Plan or in any Security is scheduled to be made or satisfied on a day not considered a Business Day, the aforementioned payment or obligation must be made or satisfied, as applicable, on the next Business Day.

2.1.11. <u>Advancing of payments</u>. In addition to other specific assumptions provided for in the Plan, the Lupatech Group may advance payment to any Creditors Subject to the Plan, with a proportional reduction in the applicable interest and fees, provided that said advance payments are made or offered proportionally within each class for all Credits Subject to the Plan comprising each class of Creditors Subject to the Plan to which payment is advanced.

2.1.12. <u>Minimum installment amount</u>. With a view to reducing payment administration costs, the minimum amount of each payment installment to Creditors Subject to the Plan shall be R$ 50.00 (fifty Brazilian *reais*), consistent with the value of the respective Credits Subject to the Plan and the specific forms of payment stipulated for each class of Creditors Subject to the Plan.

2.1.13. <u>Limitation of payments to the value of Credits Subject to the Plan</u>. All payments and distributions provided for in the Plan shall be made up to the maximum outstanding balance of the respective Credit Subject to the Plan. Under no circumstances may any Creditor Subject to the Plan receive an amount greater than the value of its Credit Subject to the Plan.

2.1.14. <u>Offset</u>. At its discretion, the Lupatech Group may offset any Credits Subject to the Plan by other credits, in funds held by any of the Companies under Reorganization vis-à-vis the respective Creditors Subject to the Plan, when said credits become due, up to the value of the aforementioned Credits Subject to the Plan, with any balance to be subject to the provisions of this Plan.

2.1.14.1. <u>Restriction to cash credits</u>. The offset mentioned in Clause 2.1.14 is restricted to credits for which payment must be made in cash, and may not affect credits held by any of the Companies under Reorganization vis-à-vis the respective Creditors Subject to the Plan for which payment must be made in goods or services.

2.1.14.2. <u>Withholding of Credits to be offset</u>. The Lupatech Group may withhold payment of Credits Subject to the Plan in the event that any of the Companies under Reorganization are also creditors of the respective Creditors Subject to the Plan, provided that the credits held by the Company(ies) under Reorganization against the respective Creditors Subject to the Plan are the object of litigation, with a view to such credits' being offset when they become due, pursuant to Clause 2.1.14.

2.1.15. <u>Inclusion of new Credits Subject to the Plan</u>. In the event that new Credits Subject to the Plan, which do not appear on the List of Creditors, are recognized by a court ruling handed down in judgment or by settlement between the parties and approved by the court, said Credits Subject to the Plan shall be paid in the form provided for in the Plan, applying a percentage of the total value to be paid or distributed, as the

case may be, among Creditors Subject to the Plan of the same class, who shall have their percentages of payment or distribution, as the case may be, adjusted to render the payment or distribution, as the case may be, proportional to the new Credit Subject to the Plan. Said Credits Subject to the Plan shall be paid as of the date they became known or due, as the case may be, and their holders shall not be entitled to payments or distributions, as the case may be, which had already been made on an earlier date.

2.1.16. <u>Credits Subject to the Plan subject to litigation</u>. Credits Subject to the Plan appearing on the List of Creditors and which are the object of dispute in judicial or arbitral litigation shall only be paid as of the date of their recognition and upon coming due, with the handing down in judgment of a judicial or arbitral ruling or settlement between the parties approved by the court, and their holders shall not be entitled to distributions already made on a previous date.

2.1.17. <u>Increase in Credits Subject to the Plan</u>. In the event that Credits Subject to the Plan as shown on the List of Creditors have seen their value increase, whether due to court decision handed down in judgment or by settlement between the parties and approved by the court, said Credits Subject to the Plan shall continue to be treated in the form provided for in this Plan, while changing the percentage payment of the other Creditors Subject to the Plan of the same class to include payment of the additional amount. The additional amount of the increased Credit Subject to the Plan shall be paid as of the date it becomes recognized or due, and its holder shall not be entitled to distributions already made on a previous date.

2.1.18. <u>Reclassification of Credits Subject to the Plan</u>. In the event of the reclassification of Credits Subject to the Plan appearing on the List of Creditors, installment payments of the amounts provided for in the Plan for paying said Credits Subject to the Plan shall be reallocated and shall form part of the total amount to be distributed to the class of Creditors in which said Credits Subject to the Plan are structured. Creditors Subject to the Plan of the class to which the Credits Subject to the Plan are classified shall continue to be paid in the form stipulated in this Plan, although with the payment percentage and schedule altered to take into consideration (i) the change in the amount to be distributed; and (ii) payment of the value of the reclassified Credit Subject to the Plan. A Creditor Subject to the Plan whose Credit Subject to the Plan had been reclassified shall not be entitled to distributions already made on a date prior to its reclassification.

2.1.19. <u>Treatment of Credits Not Subject to the Plan</u>. The holders of Credits Not Subject to the Plan may elect to receive their Credits Not Subject to the Plan in the form set forth in the Plan for payment of Creditors with Collateral or Unsecured [*Quirografários*] Creditors.

2.1.20. Intra-Group Credits. At the Lupatech Group's discretion, Intra-Group Credits may be paid, discharged, assumed by another Lupatech Group company, or offset.

## CHAPTER III

## RESTRUCTURING OF LABOR CREDITS

**3.1. Labor Credits**. The provisions of this Chapter apply only to Labor Credits.

3.1.1. Payment of Labor Credits. Labor Credits shall be paid to each Labor Creditor within 1 (one) year after Court Approval of the Plan, pursuant to Clauses 3.1.1.1 to 3.1.1.3.

3.1.1.1. Initial payment. The amount corresponding to up to 5 (five) minimum wages, covering strictly employee credits and due within 3 (three) months before the Request Date, if any, shall be paid within 30 (thirty) days after Court Approval of the Plan; and

3.1.1.2. Payments schedule. The balance of the value of Labor Credits, less amounts paid in accordance with Clause 3.1.1.1, shall be paid to the respective Labor Creditors within 1 (one) year after Court Approval of the Plan.

3.1.1.3. Form of payment. The payments referenced in Clause 3.1.1.2 shall be made in cash, and the Lupatech Group may benefit from the form of payment provided for in Article 50, Part XVI of the Bankruptcy Act.

3.1.2. Payment of Disputed Labor Credits. Disputed Labor Credits must be paid in the form set forth in Clauses 3.1.1.1 to 3.1.1.3, after setting the amounts of the final sentencing or approved settlements, as the case may be. In any event, the periods for payment of Disputed Labor Credits shall start only upon the handing down in judgment of the respective final sentences or approved settlements. The Lupatech Group shall make its best efforts to seek, within the shortest possible period of time, the acquisition of reasonable settlements with Labor Creditors within the scope of said judicial proceedings. Under no circumstances shall Disputed Labor Credits receive more beneficial treatment than Non-Disputed Labor Credits. No increase or inclusion of any Labor Credit on the List of Creditors during the payment period shall generate for the Labor Creditor for which credits were increased any right to retroactive or proportional receipt

of amounts already paid to other Labor Creditors.

3.1.3. <u>Advance in payment of Labor Credits</u>. The Lupatech Group may advance payments of Labor Credits, provided they are proportional and cover all creditors of the respective class, with the exception of Labor Credits which, for advances in payments, are Disputed Labor Credits, to be paid in accordance with Clause 3.1.2.

3.1.4. <u>Classification disputes</u>. Under the Bankruptcy Act, Labor Credits for which classification is disputed by any interested party shall be considered Disputed Labor Credits and may only be paid after the handing down in judgment of a ruling that provides for classification of the disputed credit, or [renders it] subject to surety, in accordance with the terms of the Bankruptcy Act.

## CHAPTER V

## <u>RESTRUCTURING OF CREDITS WITH COLLATERAL</u>

**4.1.** **<u>Credits with Collateral</u>**. The provisions of this Chapter apply only to Credits with Collateral, regardless of the amount, type or the value of the guarantee.

4.1.1. <u>Payment of Credits with Collateral</u>. Credits with Collateral shall be paid by means of any of the following options, at the discretion of each Creditor with Collateral, pursuant to Clauses 4.1.2 and 4.1.3 below.

4.1.2. ***Option A*** **Payment of Credit with Collateral (Payment in installments)** – Payment of 100% (one hundred percent) of the value of the respective Credit with Collateral, to be made in 72 (seventy-two) successive quarterly installments, in accordance with the payments schedule provided for in <u>Appendix 4.1.2</u>, with the first coming due 63 (sixty-three) months after Court Approval of the Plan. The value of Credits with Collateral to be paid under this Option A will incur interest and inflation adjustment equivalent to a fixed rate of 3% (three percent) per year, in accordance with the payments schedule provided for in <u>Appendix 4.1.2</u>.

4.1.3. ***Option B*** **Payment of Credit with Collateral (Capitalization of Credits)** – Under the provisions of Clause 4.1.3.1, payment of the value of a Credit with Collateral by means of the subscription of Shares through capitalization of the respective Credits with Collateral, pursuant to Art. 171, § 2 of the Brazilian Companies Act [*Lei das Sociedades por Ações*]. Shares shall be issued at the Issuance Price, and be incorporated into the respective Credits with Collateral, pursuant to <u>Appendix 4.1.3</u>;

4.1.3.1. <u>Restriction on capitalization of principal value</u>. In the event that a

Credit with Collateral of a Creditor with Collateral that elects receipt through Option B consists of the principal value and interest or other legal or contractual charges, the capitalization provided for in Clause 4.1.3 shall necessarily be restricted to the value of the debit balance of the principal. The amount corresponding to interest, inflation adjustment and other contractual or legal charges shall apply to the principal value up to the Request Date, and must be paid to the Creditor with Collateral in the form of Option A as provided for in Clause 4.1.2.

4.1.3.2. Compliance with statutory or regulatory limits. In the event that a Creditor with Collateral that has opted for complete or partial conversion of its Credit with Collateral into Shares, upon exercising the Option discussed in Clause 4.1.6, identifies the existence of any statutory or regulatory restriction on complete or partial conversion of its Credit, said restriction shall be applied, and the additional balance shall be paid to the respective Creditor with Collateral in the form of Option A as provided for in Clause 4.1.2.

4.1.3.3. Proportional release of Collateral. In the event that conversion of the Credit with Collateral into Shares as provided for in Clause 4.1.3. occurs only partially, the respective Creditor with Collateral must proportionally release said Collateral in favor of the Lupatech Group, releasing assets given in Collateral in an amount equivalent to the remaining balance of the Credits with Collateral.

4.1.4. Possibility of simultaneous choice of options. Each Creditor with Collateral may opt, at its discretion, for distribution of its Credits with Collateral under Option A and Option B, as provided for in Clauses 4.1.2 and 4.1.3, respectively. The indication of the percentage of Credits with Collateral to be applied to Option A and Option B must be made upon submitting the option choice form contained in Appendix 4.1.6.

4.1.5. Alternative payment. In addition to the payment options provided for in Clauses 4.1.2 and 4.1.3, the Lupatech Group may at any time and by consent of the respective Creditor with Collateral make total or partial payment of the respective Credit with Collateral by means of payment in kind (i) [of] any assets given in Collateral in favor of the Creditor with Collateral; (ii) of any assets listed in Appendix 9.4; and (iii) of credits held by the Lupatech Group, in an amount sufficient as to cover the balance of the respective Credit with Collateral; or by means of the issuance of funds from the disposal of any assets given in Collateral in favor of the Creditor with Collateral, whether according to the Plan, or by court authorization, or pursuant to Article 60 of the Bankruptcy Act.

4.1.5.1. <u>Proportional release of Collateral</u>. In the event that the alternative payment provided for in Clause 4.1.5 occurs only in partial form, the respective Creditor with Collateral must proportionally release Collateral in favor of the Lupatech Group, in order for the assets given in Collateral to remain equivalent to the remaining balance of the Credits with Collateral.

4.1.6. <u>Form of exercise of the payment option</u>. The option for each Creditor with Collateral for payment of its credit through Options A or B, as set forth in Clauses 4.1.2 and 4.1.3, respectively, must be communicated by completing and sending to the Lupatech Group the form contained in <u>Appendix 4.1.6</u>, within 30 (thirty) days after Court Approval of the Plan.

4.1.7. <u>Default payment option in case of failure to select an option</u>. Creditors with Collateral who fail to choose an option for receipt of their Credits with Collateral in the form and within the period set forth in Clause 4.1.6, or who choose an option in violation of the instructions contained in Clause 4.1.6, shall, for all purposes, be considered as having chosen Option A under Clause 4.1.2.

4.1.8. <u>Default option in case of inclusion or increase in Credits with Collateral</u>. In the event of the inclusion or increase of any Credit with Collateral after the option period stipulated in Clause 4.1.6, Creditors with Collateral who hold included or increased Credits shall, in relation to the portion of Credits included or increased, be paid in accordance with Option A under Clause 4.1.2.

4.1.9. <u>Increase or inclusion of Credits with Collateral</u>. Only Credits with Collateral that are not disputed, including in light of the List of Creditors, will be paid. In the event of an increase in any Credit with Collateral, or of inclusion of a new Credit with Collateral, as a result of any dispute of a credit or a judgment in any legal action, the respective additional amount shall be paid in accordance with Option A under Clause 4.1.2, by proportional distribution of the value of the remaining installments.

4.1.10. <u>Classification disputes</u>. Credits with Collateral for which classification is disputed by the Lupatech Group or any interested party pursuant to the Bankruptcy Act may only be paid after the handing down of a decision that provides for classification of the disputed credit, consistent with the terms of the Bankruptcy Act, with payment periods starting only after the respective decision has been handed down in judgment.

# CHAPTER V

## RESTRUCTURING OF UNSECURED CREDITS

**5.1.** <u>Unsecured Credits</u>. The provisions of this Chapter apply only to Unsecured Credits, regardless of amount.

5.1.1. <u>Payment of Unsecured Credits</u>. Unsecured Credits shall be paid by means of one of the following options, at the choice of each Unsecured Creditor, pursuant to Clauses 5.1.2 to 5.1.3 below.

5.1.2. *Option A* **Payment of Unsecured Credit (Payment in installments)** – Payment of 100% (one hundred percent) of the value of the respective Unsecured Credit owed and individually authorized on the List of Creditors, as follows: (i) 1 (one) initial installment of a sum set at R$ 500.00 (five hundred reais) for each Unsecured Creditor, to be paid within 12 (twelve) months after Court Approval of the Plan; (ii) 4 (four) annual installments of a sum set at R$ 1,000.00 (one thousand reais) each for each Unsecured Creditor, with the first coming due 24 (twenty-four) months after Court Approval of the Plan; (iii) 72 (seventy-two) successive quarterly installments, calculated based on the outstanding debit balance in the 60th (sixtieth) month after Court Approval of the Plan, in accordance with the payments schedule provided for in <u>Appendix 5.1.2</u>, with the first of said installments due 63 (sixty-three) months after Court Approval of the Plan. The value of the Unsecured Credits to be paid under Option A shall be subject to interest and inflation adjustment equivalent to a fixed rate of 3% (three percent) per year, in accordance with the payments schedule provided for in <u>Appendix 5.1.2</u>.

5.1.3. *Option B* **Payment of Unsecured Credit (Payment in installments with payment due event)** – Payment of 100% (one hundred percent) of the value of the respective Unsecured Credit due and individually authorized on the List of Creditors, in accordance with the provisions of Clause 5.1.3.1, as follows: (i) 1 (one) initial installment of a sum set at R$ 500.00 (five hundred reais) for each Unsecured Creditor, to be paid within 12 (twelve) months after Court Approval of the Plan; (ii) 4 (four) annual installments of a sum set at R$ 1,000.00 (one thousand reais) each for each Unsecured Creditor, with the first coming due 24 (twenty-four) months after Court Approval of the Plan; (iii) 80 (eighty) successive quarterly installments, calculated as a function of the outstanding debit balance on the 60th (sixtieth) month after Court Approval of the Plan, in accordance with the payments schedule provided for in <u>Appendix 5.1.3</u>, with the first of said installments due 63 (sixty-three) months after Court Approval of the Plan. In that case, the value of the Unsecured Credits to be paid under Option B shall be subject to interest and inflation adjustment equivalent to a fixed rate of 3% (three percent) per year, in accordance with the payments schedule provided for in <u>Appendix 5.1.3</u>.

5.1.3.1. <u>Obtaining liquid funds for payment of Option B</u>.

During the entire payment period provided for in Option B for Unsecured Creditors, the Lupatech Group will make efforts to undertake the disposal of assets, as well as to obtain liquid funds from other sources. The Lupatech Group may use the amount obtained from the disposal of assets, as well as any other funds from any other source, at any time, to advance payment of the installments owed to Unsecured Creditors that have opted for Payment Option B, in accordance with Clause 5.1.3. Payments made in advance under this Clause will amortize a certain number of installments due from the payments schedule of Appendix 5.1.3, from earliest to latest, and will result in a rescheduling of the due dates of the remaining installments, pursuant to Clause 5.1.3.2 below.

5.1.3.2. Form of rescheduling. In the event that any advancing of installments is made pursuant to Clause 5.1.3.1 above during the first 5 (five) years after Court Approval of the Plan, a specified number of remaining installments, from earliest to latest, shall see their due dates extended to coincide with the due date of the final installment of the debt to be paid under Option B. The number of future installments for which due dates will be extended will be calculated in accordance with the following table:

| Period of execution of the advance | Number of installments extended to the due date of the final installment |
| --- | --- |
| During the 1st or 2nd year after Court Approval of the Plan | 3x (three times) the number of advance installments |
| During the 3rd year after Court Approval of the Plan | 2.5x (two and a half times) the number of advance installments |
| During the 4th year after Court Approval of the Plan | 2x (two times) the number of advance installments |
| During the 5th year after Court Approval of the Plan | 1.5x (one and a half times) the number of advance installments |

5.1.3.3. Application of charges to extended installments. The values of installments for which the due date has been extended due to the execution of payment advances pursuant to Clause 5.1.3.1 shall not be subject to the application of interest and inflation adjustment between the original date they become due

and the date to which the due date was extended. Interest and inflation adjustment that had applied up to the original due date shall be preserved, with the due date for said interest and inflation adjustment to also be extended to the due date of the final installment.

5.1.3.4. <u>Conditional discharge of installments</u>. In the event that the Lupatech Group has discharged all installments provided for in Clause 5.1.3 of this Plan, with the exception of installments for which the due date had been extended pursuant to Clause 5.1.3.1, said installments for which the due date had been extended, including the value of their principal, interest and inflation adjustment, shall be forgiven, on the date of payment (whether in advance or according to the schedule set in Clause 5.1.3) of the final installment not rescheduled pursuant to Clause 5.1.3, with the Discharge applying to Unsecured Credits for which holders chose Option B, and Unsecured Creditors that chose Option B may no longer file claim of any kind against the Lupatech Group, pursuant to Clause 11.2.

5.1.4. ***Option C*** **Payment of Unsecured Credit (Capitalization of Credits)** – Payment of 100% (one hundred percent) of the value of the Unsecured Credit, pursuant to Clause 5.1.4.1., by means of the subscription of Shares through capitalization of the respective Unsecured Credits, pursuant to Art. 171, § 2 of the Companies Act. Shares shall be issued at their Issuance Price, and be incorporated into their respective Unsecured Credits, pursuant to <u>Appendix 4.1.3</u>:

5.1.4.1. <u>Restriction of capitalization to the value of the principal</u>. In the event that the Unsecured Credit of an Unsecured Creditor that elects to receive through Option C consists of the principal value and interest or other legal or contractual charges, the capitalization stipulated in Clause 5.1.4 shall necessarily be restricted to the value of the debit balance of the principal. The amount corresponding to interest, inflation adjustment and other contractual or legal charges shall apply to the value of principal up to the Request Date, and must be paid to the Unsecured Creditor in the form of Option A pursuant to Clause 5.1.2.

5.1.4.2. <u>Compliance with statutory or regulatory restrictions</u>. In the event that during exercise of the Option discussed in Clause 5.1.6, an Unsecured Creditor that has opted for conversion of its Unsecured Credit to Shares identifies the existence of any statutory or regulatory restriction to complete or partial conversion of its credit, said restriction shall be complied with, and the balance shall be paid to the respective

Unsecured Creditor under Option A pursuant to Clause 5.1.2.

5.1.5. ***Option D*** **Payment of Unsecured Credit (Payment of sums resulting from sale on the exchange of Shares resulting from the capitalization of Credits)** – Receipt of cash from the disposal, on the BM&F BOVESPA, of Shares subscribed pursuant to Clause 5.1.4. Disposal of the Shares as provided for in this Clause shall be undertaken by the Creditors' Trustee [*Comissário*], pursuant to Appendix 5.1.5, within 24 (twenty-four) months after issuance of the Shares.

5.1.5.1. Legal representation and receivership for implementation of Option D. Unsecured Creditors that receive their Unsecured Credits through Option D, pursuant to Clause 5.1.5, irrevocably and irreversibly authorize the Creditors' Trustee to act as legal representative and receiver. The Creditors' Trustee shall be appointed and named pursuant to Appendix 5.1.5, solely with respect to Option D pursuant to Clause 5.1.5.

5.1.5.2. Engagement of the Creditors' Trustee. Unsecured Creditors that receive their Unsecured Credits through Option D, pursuant to Clause 5.1.5, shall grant power of attorney to the Lupatech Group, through any of the Companies under Reorganization, to, on their behalf, name the Creditors' Trustee, negotiate the terms of the receivership agreement, and any other purposes necessary for implementation of Option D, pursuant to Clause 5.1.5.

5.1.5.3. Exemption of the Creditors' Trustee from liability. The Creditors' Trustee and the Lupatech Group, including its shareholders and directors, are exempt from any and all liability deriving from adoption of the necessary measures for implementing the Plan. In that regard, Creditors that chose Option D pursuant to Clause 5.1.5 shall waive the rights provided for in Arts. 696, 697 and 698 of the Brazilian Civil Code [*Código Civil*], in view of the fact that the Creditors' Trustee must make its best efforts to undertake disposal of the Shares for the sole and exclusive purpose of delivering financial resources to the Creditor, with no performance obligation, and to seek to maximize the sale price of the Shares, and no alleged losses deriving from the timing, form and/or amounts involved in disposing of the Shares may be imputed to it, nor to the Lupatech Group or its shareholders and directors, including losses deriving from any non-compliance on the part of the Shares' acquirer, for which it shall not be held jointly and severally liable.

5.1.5.4. Subsidiary option. In the event that, for any reason and any time, the Creditors' Trustee or Lupatech Group find that the implementation of Option D as provided for in Clause 5.1.5 has become infeasible due to

any prohibition or impediment, including operational, the Unsecured Creditors that had chosen Option D shall receive their Unsecured Credits in accordance with Option A as provided for in Clause 5.1.2.

5.1.6. Form of exercise of the payment option. Unsecured Creditors may opt for payment of their credits by means of Options A, B, C or D, as set forth in Clauses 5.1.2, 5.1.3, 5.1.4 and 5.1.5, respectively, and their respective sub-clauses. The option for each Unsecured Creditor must be communicated by completing and sending to the Lupatech Group the form contained in Appendix 5.1.6, within 30 (thirty) days after Court Approval of the Plan.

5.1.7. Default payment option in case of failure to select an option. Unsecured Creditors that fail to choose an option for receiving their Unsecured Credits in the form and within the period set forth in Clause 5.1.6, or that choose an option in violation of the instructions set forth in Clause 5.1.6, shall be considered, for all purposes, as having selected Option D under Clause 5.1.5.

5.1.8. Default option in case of inclusion or increase of Unsecured Credits. In the event of an inclusion or increase of any Unsecured Credit after the option period stipulated in Clause 5.1.6, Unsecured Creditors holding the included or increased credits shall be paid, with respect to the installment for included or increased Credits, in accordance with Option A pursuant to Clause 5.1.2.

5.1.9. Payment of Unsecured Credits of Noteholders. Noteholders are guaranteed the right to exercise the option provided for in Clause 5.1.6, and Noteholders may choose any of the four forms of receipt offered to the other Unsecured Creditors, in accordance with the form of receipt set forth in Clauses 5.1.9.1 to 5.1.9.6 below.

5.1.9.1. Settlement of current Notes. After Court Approval of the Plan, and after obtaining a Chapter 15 court decision recognizing the Plan's validity in US territory, Notes currently held by Noteholders shall be considered settled as a full matter of law, and shall be replaced by Type A Notes, Type B Notes, ADRs, or rights to the economic proceeds from disposal of the Shares, depending upon the option selected by each Noteholder.

5.1.9.2. Rules applicable to Noteholders who elect Option A. Payment of Unsecured Credits of Noteholders who opt to receive their credits under Option A pursuant to Clause 5.1.2 shall be by means of the issuance of Type A Notes, to be issued within 180 (one hundred eighty) days after obtaining a Chapter 15 court decision recognizing the Plan's validity in

US territory, to be issued in reais at the PTAX800 exchange rate current on the Request Date, to be converted to US dollars on each payment date.

5.1.9.3. <u>Rules applicable to Noteholders that opt for Option B</u>. Payment of Unsecured Credits of Noteholders that opt to receive their credits under Option B pursuant to Clause 5.1.3 shall be by means of the issuance of Type B Notes, within 180 (one hundred eighty) days after a Chapter 15 court decision recognizing the Plan's validity in US territory, to be issued in reais at the PTAX800 exchange rate current on the Request Date, and to be converted to US dollars on each payment date. All rights and obligations provided for in Clause 5.1.3.1 to 5.1.3.4 shall apply to Noteholders holding Type B Notes.

5.1.9.4. <u>Rules applicable to Noteholders that opt for Option C</u>. Payment of Unsecured Credits of Noteholders that opt to receive their credits under Option C as provided for in Clause 5.1.4 shall be by means of the issuance of ADRs representing the shares to be issued by the Depositary. For purposes of calculating the number of Shares and ADRs to be issued, the Noteholder's Unsecured Credit, with the exception of the restriction contained in Clause 5.1.4.1, shall be converted to reais using the conversion rate on the date of issuance of the respective Shares and ADRs.

5.1.9.5. <u>Rules applicable to Noteholders that opt for Option D</u>. Payment of Unsecured Credits of Noteholders that opt to receive their credits under Option D as provided for in Clause 5.1.5 shall be by means of the issuance to the Trustee of the value resulting from the sale of the Shares corresponding to said Noteholder. For purposes of calculating the number of Shares to be issued, the Noteholder's Unsecured Credit shall be converted to reais using the conversion rate on the date of issuance of the respective Shares.

5.1.9.6. <u>Form of payment of Type A and Type B Notes</u>. The credit deriving from the Type A and Type B Notes shall be paid in the form established by the respective issuance instruments and other documents governing Type A and Type B Notes. Independently of the direct and individual participation of Noteholders in the General Meeting of Creditors, any payments corresponding to Type A or Type B Notes must be made directly to the Trustee, who shall provide for distribution of the amounts owed to each

Noteholder holding Type A and Type B Notes, as the case may be.

5.1.10. <u>Credits in foreign currency</u>. In the event that all or part of the Unsecured Credits of the Unsecured Creditors that elect Payment Options A or B pursuant to Clauses 5.1.2 and 5.1.3 are originally denominated in foreign currency, the rate to be applied for purposes of final conversion of their Unsecured Credits to Reais, and subsequent payment in accordance with the Plan, shall be the reference conversion rate of the Central Bank of Brazil current for the sale of the respective foreign currency on the Request Date, disregarding any other conversion rate current on any other date.

5.1.11. <u>Increase or inclusion of Unsecured Credits</u>. In the event of the increase of any Unsecured Credit, or inclusion of a new Unsecured Credit, with the occurrence of any credit dispute or decision in any legal action, the respective amount (in the case of inclusion) or additional amount (in the case of increase) shall be paid under Option B as provided for in Clause 5.1.3.

5.1.12. <u>Classification disputes</u>. Unsecured Credits with classification disputed by any interested party may only be paid after the handing down of a sentence in judgment that determines the classification of the disputed credit, or subject to surety, in accordance with the Bankruptcy Act.


## CHAPTER VI

## RESTRUCTURING OF ME AND EPP CREDITS

**6.1 ME and EPP Credits**. The provisions of this Chapter apply only to ME and EPP credits, regardless of amount.

6.1.1. <u>Payment of ME and EPP Credits</u>. The payment of 100% (one hundred percent) of the value of the respective ME and EPP Credit shall be paid to each ME and EPP Creditor as follows: (i) 1 (one) initial installment in the fixed sum of R$ 500.00 (five hundred reais), to be paid within 12 (twelve) months counting from the Court Approval of the Plan; (ii) 4 (four) annual installments in the fixed sum of R$ 1,000.00 (one thousand reais) each, with the first coming due 24 (twenty-four) months after Court Approval of the Plan; (iii) 40 (forty) equal and sequential quarterly installments, calculated as a function of the outstanding debit balance on the 60th (sixtieth) month after Court Approval of the Plan, according to the payments schedule in <u>Appendix 6.1.1</u>, the first coming due 63 (sixty-three) months after Court Approval of the Plan. The value of the ME and EPP Credits shall be subject to interest and inflation adjustment in an amount equivalent to a fixed rate of 3% (three percent) per year, already incorporated into the payment schedule provided for in <u>Appendix 6.1.1</u>.

6.1.2. <u>Increase or inclusion of ME and EPP Credits</u>. In the event of increase in

any ME and EPP Credit, or inclusion of a new ME and EPP Credit as a result of any disputed credit or decision in any legal action, the respective amount (in the case of inclusion) or additional amount (in the case of an increase) shall be paid pursuant to Clause 6.1.1, by means of the proportional distribution of the value of future installments. No increase or inclusion of any ME and EPP Credit on the List of Creditors during the payment period shall generate for ME and EPP Creditors for which credits were increased any right to retroactive or proportional receipt of installments already paid.

6.1.3. Additional options. Each ME and EPP Creditor may, at its discretion, and within the period stipulated in Clause 5.1.6, elect to receive its ME and EPP Credit by any of the options A, B, C or D as provided for Unsecured Creditors in Clauses 5.1.2 to 5.1.5 and their respective sub-clauses. The option selected under these terms by an ME and EPP Creditor must be communicated within the timeframe and in the form stipulated in Clause 5.1.6.

6.1.4. Classification disputes. ME and EPP Credits with classification disputed by any interested party may only be paid after the handing down of a sentence in judgment that determines the classification of the disputed credit, or one subject to surety, in accordance with the Bankruptcy Act.

# CHAPTER VII

## CORPORATE REORGANIZATION

**7.1. Corporate Reorganization Measures**. Corporate reorganization measures involving the Lupatech Group companies shall be governed by this Chapter.

7.1.1. The Lupatech Group may, at its sole discretion and to obtain an economic-financial and/or operational return in conducting its activities, undertake any measures involving split, merger, incorporation, conversion of companies, assignment of quotas or shares, change in corporate control, drop-down of assets, increase of share capital, establishment of SPEs, or any other corporate measure.

7.1.2. Under no circumstances shall the corporate measures to be carried out pursuant to Clause 7.1.1. be to the detriment of payment of the Credits Subject to the Plan.

# CHAPTER VIII

## GENERAL BANKRUPTCY MEASURES FOR THE LUPATECH GROUP

**8.1. Overview of bankruptcy measures**. The Plan uses the following bankruptcy measures, among others, to undertake Reorganization of the Credit Structure

and other Plan obligations: awarding of special terms and conditions for paying the Lupatech Group's obligations, corporate reorganization of the Lupatech Group, partial sale of the Lupatech Group's assets, including corporate shares, payment in kind, leasing of assets and issuance of investment securities.

**8.2. New Funds**. The Lupatech Group may obtain New Funds, to be allocated as provided for in Clause 8.2.2.

8.2.1. <u>Means of obtaining New Funds</u>. New Funds may be obtained by any means the Lupatech Group deems appropriate, including (i) issuance of equity shares of any Lupatech Group companies; (ii) issuance of debentures, including those convertible to shares representing the equity of any Lupatech Group companies; (ii) issuance of subscription bonds by any Lupatech Group companies; (iv) issuance of securities representing foreign debt, either by any Lupatech Group companies or by any company, in Brazil or abroad, including those controlled by any of the Lupatech Group companies, that may be convertible to the equity of the issuing company; (v) disposal of assets, including IPUs and corporate interests, of the Lupatech Group; (vi) leasing or renting of assets; (vii) engagement of loans or other forms of financing; (viii) execution of measures involving split, merger, incorporation, conversion of companies, assignment of quotas of shares, change of corporate control, drop-down of assets, increase in share capital, establishment of SPEs or any other corporate measure. The capture of New Funds may be guaranteed by Lupatech Group assets, pursuant to Clause 8.3.

8.2.2. <u>Allocation of New Funds</u>. After Court Approval of the Plan, the Lupatech Group may use the New Funds to (a) restructure its working capital; (b) execute its business plan; (c) pay off Receivership expenses; (d) pay Creditors Subject to the Plan; and (e) advances of payments to Creditors Subject to the Plan.

**8.3. Guarantees**. The Lupatech Group may establish real and fiduciary guarantees on any of its permanent or current assets, except those already encumbered to Creditors with Collateral, as well as grant personal guarantees, to guarantee the capture of New Funds, while preserving the rights of Creditors with Collateral.

## CHAPTER IV

## DISPOSAL OF ASSETS AND IPUs

**9.1. Disposal of assets and IPUs**. Disposal of the Lupatech Group's assets and IPUs shall be governed by this Chapter, notwithstanding other disposals of assets

approved or submitted for approval to the Bankruptcy Court, to be governed by the respective court decisions pursuant to Clause 9.3.

**9.2. <u>Disposal of assets</u>**. The Lupatech Group may, as of Court Approval of the Plan, encumber, substitute or dispose of the following permanent assets, without need for prior authorization from the court or the General Meeting of Creditors, notwithstanding other disposals of goods or other transactions provided for by the Plan, in accordance with the contractual rights, encumbrances and other restrictions applicable to said assets:

(i)     Assets encumbered by Collateral or fiduciary guarantee, subject to authorization of the respective Creditor with Collateral holding the respective Collateral, or the respective Creditor Not Subject to the Plan holding the respective fiduciary guarantee, as the case may be;

(ii)    Assets to be offered in guarantee for the capture of New Funds, provided that said assets are free of any encumbrance or subject to the consent of Creditors with Collateral or Creditors Not Subject to the Plan holding guarantees on said assets;

(iii)   Assets that have incurred natural wear and tear resulting from regular activity or which have for any reason become unusable for the purpose for which they were intended;

(iv)   Assets that have become obsolete or unnecessary to the Lupatech Group's activities;

(v)    Assets for which the value, individual or combined, does not exceed a total of R$ 20,000,000.00 (twenty million reais) per year; and

(vi)   Assets not essential to execution of the Lupatech Group's core activities, as provided for in the demobilization of assets contained in the Economic-Financial Feasibility Analysis.

**9.3. <u>Approval for disposal of assets</u>**. Without prejudice to the assumptions of Clause 9.2., any other method of disposal, substitution or encumbrance of assets shall be permitted under the Plan, or by authorization of the Bankruptcy Court or approval by the General Meeting of Creditors, in accordance with the terms of the laws and agreements applicable to said assets. After the lapse of 2 (two) years from Court Approval of the Plan, the Lupatech Group may freely dispose of any of its current or permanent assets that are not encumbered, without application of the restrictions provided for in this Plan or in Art. 66 of the Bankruptcy Act, although subject to the usual restrictions contained in the corporate agreements and bylaws of the Lupatech Group companies and new debt instruments, as the case may be.

**9.4. <u>Disposal of IPUs</u>**. The Lupatech Group may dispose of any of its IPUs, including those listed in <u>Appendix 9.4</u>, by means of a Competitive Procedure, without

prejudice to the possibility that said disposals might be carried out by other means, safeguarding any rights of first refusal as might apply at the time of the disposal.

9.4.1. <u>Absence of succession of debts</u>. IPUs disposed of pursuant to Clause 9.4 shall be free of any encumbrance and their respective acquirers shall not be held liable for any Lupatech Group debt or contingency, including tax- and labor-related, pursuant to Arts. 60 and 141 of the Bankruptcy Act.

9.4.2. <u>IPU disposal procedure</u>. Any disposals of IPUs shall be carried out by Competitive Procedure or other methods, in accordance with the law. In any event, the disposal shall be made to the bidder offering the best conditions for fulfillment of the Plan, in accordance with the provisions of the respective bid terms, pursuant to the Bankruptcy Act, in accordance with the other conditions contained in this Plan. The Lupatech Group has discretion to opt for any types of Competitive Procedure or for other types, in accordance with the law.


# CHAPTER X

## EFFECTS OF THE PLAN

**10.1 <u>Binding nature of the Plan</u>**. The Plan's provisions are binding on the Lupatech Group and Creditors Subject to the Plan, and on their respective assignees and successors of any kind, as of Court Approval of the Plan.

**10.2. <u>Economic equivalence in fulfillment of the Plan</u>**. In the event that any measure provided for in the Plan, not involving cash payment to the Creditors Subject to the Plan, is unable or inconvenient to be implemented, even within the timeframes established for such measures to be implemented, and including for regulatory or tax reasons, the Lupatech Group shall take the necessary measures with a view to ensuring an economically equivalent result for Creditors Subject to the Plan, within a period not to exceed 180 (one hundred eighty) days from fulfillment of the original obligation provided for in the Plan.

**10.3. <u>Termination of legal proceedings</u>**. Upon Plan Approval, all court executions in progress against the Lupatech Group, its controlling entities, controlled entities, associates, affiliates and other companies belonging to the same corporate or economic group shall be terminated, and existing pledges and restrictions released.

**10.4. <u>Continuity of actions involving unsettled amounts</u>**. Known judicial and arbitral proceedings filed by Creditors Subject to the Plan aimed at obtaining a decision for unsettled amounts, or execution of a decision already handed down, may continue in their respective court forums, until such time as the amount of the Credit Subject to the Plan has been fixed, at which time the Creditor Subject to the Plan must provide for

inclusion of the aforementioned amount on the List of Creditors, for receipt in accordance with the Plan. Under no circumstances shall Creditors Subject to the Plan be paid in a manner other than as established in the Plan, including in judicial or arbitral proceedings that have been filed and are in progress upon Court Approval of the Plan or that are filed after Court Approval of the Plan.

**10.5. <u>Modification of the Plan in the General Meeting of Creditors</u>**. Amendments, alterations or modifications of the Plan may be proposed by the Lupatech Group at any time after Court Approval of the Plan and until Receivership is concluded, whether or not there are violations of the Plan, binding the Lupatech Group and all Creditors Subject to the Plan, provided that said amendments, alterations or modifications are approved by the Lupatech Group and are submitted to a vote in the General Meeting of Creditors, and that the quorum is met as required by Arts. 45 and 58, *caput* or § 1 of the Bankruptcy Act.

**10.6. <u>Assignments of credits</u>**. After Plan Approval, Creditors Subject to the Plan may assign their Credits Subject to the Plan to other Creditors or to third parties, and the respective assignment shall be valid as of notification of the Lupatech Group, pursuant to the Civil Code. For all intents and purposes, the assignee receiving the assigned Credit Subject to the Plan shall be considered a Creditor Subject to the Plan.

10.6.1. <u>Assignments of prior credits to the Plan</u>. All credits originating from assignments prior to the Plan, regardless of classification, shall be treated as Unsecured Creditors.

**10.7. <u>Subrogations</u>**. Credits concerning right of return against the Lupatech Group, and which derive from the payment, at any time, by third parties, of Credits Subject to the Plan, shall be paid in accordance with the terms set forth in the Plan. For all intents and purposes, a creditor by subrogation shall be considered a Creditor Subject to the Plan.

<div align="center">

**CHAPTER XI**

**GENERAL PROVISIONS**

</div>

**11.1. <u>Divisibility of the provisions of the Plan</u>**. In the event that any term or provision of the Plan is considered invalid, null or ineffective by the Bankruptcy Court, the remaining terms and provisions of the Plan must remain valid and effective, provided that the premises on which they are based are maintained.

**11.2. <u>Discharge</u>**. Upon execution of payment of Credits Subject to the Plan, the respective Creditors Subject to the Plan shall grant the broadest, most general, irrevocable and irreversible discharge to the Lupatech Group, covering fines, financial charges or any other expenses incurred by the Creditor Subject to the Plan, to make no further attempts or claims at any time, of any kind.

**11.3. <u>Conclusion of Receivership</u>**. Receivership shall be concluded at any time after Court Approval of the Plan, at the request of the Lupatech Group, provided that all plan obligations coming due within 2 (two) years after Plan Approval are met.

**11.4. <u>Chapter 15</u>**. After Court Approval of the Plan, the Lupatech Group shall file for Chapter 15, to confer validity on the Plan in US territory, binding the Noteholders, the Trustee and any and all other Creditors Subject to the Plan residing, domiciled or established therein. Chapter 15 may not, under any circumstances, alter the conditions of payment and other rules provided for in this Plan.

**11.5. <u>Communications</u>**. In order to be valid, all notifications, requests, petitions and other communications to the Lupatech Group required or permitted by this Plan must be made in writing and shall be considered as completed when (i) sent by registered mail, with acknowledgment of receipt, or by courier, and actually delivered; or (ii) sent by email. All communications must be addressed as follows, or in any other way indicated by the Lupatech Group in the Receivership case files:

Lupatech Group:
Address: Avenida Maria Coelho Aguiar, 215, Bloco B, 5º andar, Jardim São Luis, CEP 05804-900
Attn.: Ricardo Doebeli
Attn.: João Marcos Cavichioli Feiteiro
Telephone: +55 11 2134 7000
Email: rj_lupatech@felsberg.como.br

With copy to:
Felsberg Advogados
Address: Avenida Cidade Jardim 803, 5º andar, Jardim Paulistano, São Paulo, SP, Brazil
Telephone: +55 11 3141 9138
Fax: +55 11 3141 9150
Email: rj_lupatech@felsberg.como.br

**11.6. <u>Applicable law</u>**. This Plan must be governed, interpreted and executed in accordance with the laws current in the Federative Republic of Brazil.

**11.7. <u>Election of forum</u>**. Any litigation or dispute that might arise or be related to this Plan or to the Credits Subject to Receivership shall be resolved:

11.7.1. By the Bankruptcy Court until extension of the decision to conclude the Receivership, and provided no contingent appeals are pending against the aforementioned decision;

11.7.2. By the competent courts, as set forth in the original agreements entered into between the Lupatech Group and the respective Creditors Subject to the Plan, or as

set forth by law.

The Plan is signed by the duly established legal representatives of the Lupatech Group.


São Paulo, August 24, 2015.


*(Followed by the signature page for the Receivership Plan of Lupatech S.A. – In Receivership, Lupatech – Equipamentos e Serviços para Petróleo Ltda. – In Receivership, Mipel Indústria e Comércio de Válvulas Ltda. – In Receivership, Amper Amazonas Perfurações Ltda. – In Receivership, Itacau Agenciamentos Marítimos Ltda. – In Receivership, Lochness Participações S/A – In Receivership, Matep S/A Máquinas e Equipamentos – In Receivership, Prest Perfurações Ltda. – In Receivership, Lupatech – Perfuração e Completação Ltda. – In Receivership, Sotep Sociedade Técnica de Perfuração S/A – In Receivership, Lupatech Finance Limited – In Receivership).*

*(Signature page for the Receivership Plan of Lupatech S.A. – In Receivership, Lupatech – Equipamentos e Serviços para Petróleo Ltda. – In Receivership, Mipel Indústria e Comércio de Válvulas Ltda. – In Receivership, Amper Amazonas Perfurações Ltda. – In Receivership, Itacau Agenciamentos Marítimos Ltda. – In Receivership, Lochness Participações S/A – In Receivership, Matep S/A Máquinas e Equipamentos – In Receivership, Prest Perfurações Ltda. – In Receivership, Lupatech – Perfuração e Completação Ltda. – In Receivership, Sotep Sociedade Técnica de Perfuração S/A – In Receivership, Lupatech Finance Limited – In Receivership).*

## APPENDIX 1.2

### Definitions

**Shares:** Common shares issued by Lupatech S.A., which may be subscribed pursuant to the Plan by Creditors with Collateral, Unsecured Creditors and Creditors Not Subject to the Plan, as the case may be, and which will be incorporated with their respective Credits Subject to the Plan and Credits Not Subject to the Plan, as applicable.

**Court Receiver:** Alta Administração Judicial Ltda., a Brazilian legal entity governed by private law, with address at Avenida Paulista, No. 1439, 13º andar, CEP 01311-926, São Paulo-SP, represented by Afonso Rodeguer Neto, registered with the OAB/SP [São Paulo Bar Association] under No. 60.583, appointed as court receiver by the Bankruptcy Court pursuant to Chapter II, Section III of the Bankruptcy Act, or by such party as might replace it.

**ADRs**: American Depositary Receipts, receipts representing the Shares, to be issued by the Depositary pursuant to this Plan, not listed on any US securities market or over-the-counter market, nor registered with the United States Securities and Exchange Commission.

**Economic-Financial Feasibility Analysis**: Restructuring Plan and Economic-Financial Feasibility Analysis prepared by BR Partners, financial advisor to the Lupatech Group, dated August 2015, which incorporates the Plan as Appendix A. The projections of the Economic-Financial Feasibility Analysis are based on various economic or marketing assumptions that may change without notice, and modify the conclusions of the Economic-Financial Feasibility Analysis. In that regard, the most significant of the principal risks to which the Plan is subject are the following: (i) delays and difficulties in implementing the plan; (ii) significant changes in input prices; (iii) judicial or arbitral decisions; (iv) strikes and losses of qualified workforce; (v) cancellation of agreements or breach by clients; (vi) technical and operational difficulties in project execution; and (vii) changes in the macroeconomic environment, with fluctuations in interest rates and exchange rates.

**Appendix:** Each document attached to the Plan. The numbering of each Appendix refers to the Clause of the Plan in which said Appendix was mentioned for the first time.

**Approval of the Plan:** Plan Approval by the General Meeting of Creditors, which is considered as having occurred on the date the General Meeting of Creditors discusses the Plan.

**General Meeting of Creditors**: The general meeting of creditors of the Lupatech Group, duly convened and in session, pursuant to Chapter II, Section II of the Bankruptcy Act.

**Plan Approval**: Approval of the Plan by the General Meeting of Creditors.

**Chapter 15:** Auxiliary bankruptcy proceeding to be filed by the Lupatech Group in the United States of America, before the competent bankruptcy court, in accordance with Chapter 15, Title 11 of the United States Code, to render the Plan valid in the territory of the United States of America.

**Clause:** Each item identified by cardinal and Roman numerals in the Plan.

**Civil Code**: Law No. 10,406/2002, which systematically regulates private civil and commercial relations in Brazil, and its subsequent changes.

**Creditors' Trustee**: Third party appointed by the Lupatech Group which, under Arts. 693 and thereafter of the Civil Code, will act on its own behalf and to the benefit of Unsecured Creditors that chose Option D as described in Clause 5.1.5, solely for adoption of the measures needed for payment of the respective Unsecured Credits, as provided for in this Plan.

**Credit with Collateral**: Each Credit Subject to the Plan belonging to the Creditor classified on the List of Creditors or by decision handed down in a Disputed Credit falling within the Class mentioned in Part II, Art. 41 of the Bankruptcy Act.

**ME and EPP Credit**: Each Credit Subject to the Plan belonging to a Creditor Subject to the Plan classified on the List of Creditors or by decision handed down in a Disputed Credit falling within the Class mentioned in Part IV, Art. 41 of the Bankruptcy Act.

**Intra-Group Credit or Intra-Group Debt**: Each Credit Subject to the Plan which has any of the Companies under Reorganization as Creditor.

**Credit Not Subject to the Plan**: Each credit and obligation of the Lupatech Group not subject to the effects of Receivership and thus not affected by the Plan, due to the provisions of Art. 49, *caput* and §§3 and 4, and Art. 194, both of the Bankruptcy Act. Credits Not Subject to the Plan are considered to include the following: (i) Credits established after the Request Date, including those deriving from New Funds; (ii) Credits guaranteed by fiduciary disposal or assignment in guarantee, up to the maximum value of the asset given in guarantee, pursuant to Art. 49, §3 of the Bankruptcy Act, provided that said fiduciary disposal or assignment in guarantee was duly and properly established and certified on a date prior to the Request Date; (iii) Credits deriving from commercial leasing agreements, pursuant to Art. 49, §3 of the Bankruptcy Act; and (iv) Credits deriving from taxes.

**Unsecured Credit**: Each Credit Subject to the Plan belonging to a Creditor Subject to the Plan classified on the List of Creditors or by decision handed down in a Disputed Credit falling within the Class mentioned in Part III, Art. 41 of the Bankruptcy Act, or any other Credit Subject to the Plan not structured

- 30 -

as a Labor Credit or as a Credit with Collateral.

**Credit Subject to the Plan**: Each credit and obligation of the Lupatech Group existing on the Request Date, whether due or coming due, effective or contingent, payable or not payable, appearing or not appearing on the List of Creditors, participating or not participating in the General Meeting of Creditors, and not excepted pursuant to Art. 49, §§ 3 and 4 and Art. 194, both of the Bankruptcy Act. Credits Subject to the Plan are subject to the effects of Receivership, and consequently may be substituted by the Plan. Credits Subject to the Plan include the following: (i) the values of Credits that exceed the values of assets given in fiduciary disposal in guarantee or credits given in fiduciary assignment in guarantee, as the case may be; (ii) the values of Credits deriving from court and arbitral rulings and decisions, including fines of any kind, handed down in court and arbitral proceedings filed before or after the Request Date, and concerning events that occurred prior to the Request Date; (iii) the values of Credits deriving from avals, surety or other personal guarantees provided, prior to the Request Date, by companies of the Lupatech Group to ensure the payment of debts of other companies of the Lupatech Group or third parties; and (iv) pecuniary and non-pecuniary obligations concerning generating facts that occurred prior to the Request Date.

**Disputed Labor Credit:** Labor Credit that is the object of a labor claim, credit challenge or any other legal proceeding pending judgment or in the process of judgment.

**Undisputed Labor Credit:** Labor Credit that is payable, correct and undisputed.

**Labor Credit**: Each Credit Subject to the Plan deriving from labor law or labor accident law, regardless of whether it is so classified on the List of Creditors.

**Credit**: Each Credit Subject to the Plan and Credit Not Subject to the Plan.

**Creditor Not Subject to the Plan:** any Creditor holding a Credit Not Subject to the Plan.

**Creditor Subject to the Plan:** any Creditor holding a Credit Subject to the Plan.

**Creditor:** any holder of a Credit, whether a Creditor Subject to the Plan or a Creditor Not Subject to the Plan.

**Creditor with Collateral:** any Creditor holding a Credit with Collateral.

**Request Date**: May 25, 2015, the date the Lupatech Group certified in court the request for Receivership.

**Depositary**: JPMorgan Chase, depositary for the ADRs.

**Business Day**: Any day other than a Saturday, Sunday or day when commercial banks are required or authorized by law to remain closed in the cities of São Paulo and Araraquara, both in the State of São Paulo.

**Collateral:** Each collateral right, including pledges and mortgages, established to ensure the payment of Credits with Collateral. For purposes of this Plan, Collateral is considered only collateral rights duly and regularly established and filed on the Request Date, in accordance with the respective laws governing them.

**Lupatech Group**: the *de facto* corporate group consisting solely by the companies Lupatech S.A. – In Receivership, Lupatech – Equipamentos e Serviços para Petróleo Ltda. – In Receivership, Mipel Indústria e Comércio de Válvulas Ltda. – In Receivership, Amper Amazonas Perfurações Ltda. – In Receivership, Itacau Agenciamentos Marítimos Ltda. – In Receivership, Lochness Participações S/A – In Receivership, Matep S/A Máquinas e Equipamentos – In Receivership, Prest Perfurações Ltda. – In Receivership, Lupatech – Perfuração e Completação Ltda. – In Receivership, Sotep Sociedade Técnica de Perfuração S/A – In Receivership, Lupatech Finance Limited – In Receivership

**Court Approval of the Plan**: The court decision handed down by the Bankruptcy Court or the Court of Justice [*Tribunal de Justiça*] of the State of São Paulo or another competent court, declaring the Lupatech Group as in receivership, pursuant to Art. 58, *caput*, or Art. 58, §1 of the Bankruptcy Act. For all purposes of this Plan, Court Approval of the Plan is considered to occur on the date of publication in the *Diário de Justiça Eletrónico* [Electronic Court Gazette] (DJE) of the court ruling declaring the Lupatech Group as in receivership.

**Bankruptcy Court:** 1st Bankruptcy and Receivership Court of the District of São Paulo, State of São Paulo, or any other court declared competent for the hearing and judging of the Receivership.

**Bankruptcy Act**: Law No. 11,101 of February 9, 2005, which regulates judicial and extra-judicial bankruptcy and receivership processes in Brazil and their subsequent changes.

**Companies Act:** Law No. 6,404 of December 15, 1976, which regulates the establishment and functioning of joint-stock companies [*sociedades por ações*] in Brazil and their subsequent changes.

**List of Creditors**: Any list containing the list of Creditors Subject to the Plan, prepared by the Companies under Reorganization or by the Court Receiver, pursuant to Arts. 7, II, 18, and 51, III of the Bankruptcy Act. For purposes of the Plan, the List of Creditors shall be considered

that which, on the date of the analysis, was most recently submitted to the Receivership case files.

**Notes**: Notes representing debt, governed by the laws of the State of New York, issued abroad by Lupatech Finance Limited and guaranteed by Lupatech S.A., existing on the Request Date.

**Type A Notes**: Notes representing debt, governed by the law of the State of New York, to be issued abroad by Lupatech Finance Limited, which will contain the following characteristics, and which will correspond to the form of payment provided for in Option A for the receipt of Unsecured Credits: (i) one initial installment of a sum set at R$ 500.00 (five hundred reais), to be paid within 12 (twelve) months after Court Approval of the Plan; (ii) 4 (four) annual installments of a sum set at R$ 1,000.00 (one thousand reais) each, with the first coming due 24 (twenty-four) months after Court Approval of the Plan; (iii) 72 (seventy-two) successive quarterly installments, calculated based on the outstanding debit balance in the 60th (sixtieth) month after Court Approval of the Plan, in accordance with the payments schedule provided for in Appendix 5.1.2, with the first of said installments coming due 63 (sixty-three) months after Court Approval of the Plan. The amount to be paid shall be subject to interest and inflation adjustment equivalent to a fixed rate of 3% (three percent) per year, in accordance with the payments schedule provided for in Appendix 5.1.2.

**Type B Notes:** Notes representing debt, governed by the law of the State of New York, to be issued abroad by Lupatech Finance Limited, which will contain the following characteristics, and which will correspond to the form of payment provided for in Option B for the receipt of Unsecured Credits: (i) one initial installment of a sum set at R$ 500.00 (five hundred reais), to be paid within 12 (twelve) months after Court Approval of the Plan; (ii) 4 (four) annual installments of a sum set at R$ 1,000.00 (one thousand reais) each, with the first coming due 24 (twenty-four) months after Court Approval of the Plan; (iii) 80 (eighty) successive quarterly installments, calculated as a function of the outstanding debit balance on the 60th (sixtieth) month after Court Approval of the Plan, in accordance with the payments schedule provided for in Appendix 5.1.3, with the first of said installments coming due 63 (sixty-three) months after Court Approval of the Plan. In that case, the amount to be paid shall be subject to interest and inflation adjustment equivalent to a fixed rate of 3% (three percent) per year, in accordance with the payments schedule provided for in Appendix 5.1.3; and (iv) Type B Notes may be subject to advance payment in the cases stipulated in Option B for payment of Unsecured Creditors.

**Noteholders:** Creditors holding Notes existing on the Request Date.

**New Funds**: Extra-bankruptcy securities to be obtained by the Lupatech Group after Court Approval of the Plan, and which will have the purpose stipulated in Clause 8.2.2.

**Plan:** This joint receivership plan of the Lupatech Group, as

submitted to the Bankruptcy Court

**Issuance Price**: Issuance price of the Shares to be issued in accordance with Clauses 4.1.3, 5.1.4 and 5.1.5, calculated according to the weighted average closing price of the shares of Lupatech S.A. on the trading desks of the São Paulo Securities Exchange [*Bolas de Valores de São Paulo*] (BOVESPA) between August 13, 2015 and August 20, 2015, equivalent to R$ 3.14 (three reais and fourteen centavos).

**Competitive Proceeding**: Any of the judicial proceedings provided for or authorized by Law No. 11,101/2005 for the disposal of bankruptcy assets or companies in receivership.

**Discharge:** Full, irrevocable and irreversible discharge of all Credits Subject to the Plan, including interest, inflation adjustment, penalties, fines and indemnifications, occurring at the time of subscription of Shares, or payment in cash of the respective Credit, pursuant to the Plan.

**Receivership:** The Lupatech Group receivership proceeding, filed under No. 1050924-67.2015.8.26.0100, and its course through the Bankruptcy Court.

**Company under Reorganization:** Any of the companies comprising the Lupatech Group, considered individually.

**Trustee:** The Bank of New York Mellon, trustee of the Notes, to be established as fiduciary agent of the Type A and Type B Notes, or any other that might replace it.

**IPU**: Individual productive unit or subsidiary, characterized as such pursuant to Art. 60 of the Bankruptcy Act.

**Investment Security:** Share or Type A Note or Type B Note.

## APPENDIX 4.1.2

## Payments schedule for Payment Option A of Credits with Collateral

| MONTH | QUARTER | Debit Balance | Install-ment | Principal | Interest and Inflation Adjustment | FACTOR |
|---|---|---|---|---|---|---|
| counting from Plan Approval | counting from Plan Approval | | | | | debit balance multiplier at end of month 60 |
| 60 | 20 | 100,000 | - | - | - | |
| 63 | 21 | 100,077 | 0,665 | 0,510 | 0,155 | 0,66513% |
| 66 | 22 | 100,154 | 0,665 | 0,514 | 0,152 | 0,66513% |
| 69 | 23 | 100,231 | 0,665 | 0,517 | 0,148 | 0,66513% |
| 72 | 24 | 100,310 | 0,665 | 0,521 | 0,144 | 0,66513% |
| 75 | 25 | 100,389 | 0,665 | 0,525 | 0,140 | 0,66513% |
| 78 | 26 | 100,468 | 0,665 | 0,529 | 0,136 | 0,66513% |
| 81 | 27 | 100,548 | 0,665 | 0,533 | 0,132 | 0,66513% |
| 84 | 28 | 100,629 | 0,665 | 0,537 | 0,128 | 0,66513% |
| 87 | 29 | 100,710 | 0,665 | 0,541 | 0,124 | 0,66513% |
| 90 | 30 | 100,792 | 0,665 | 0,545 | 0,120 | 0,66513% |
| 93 | 31 | 100,874 | 0,665 | 0,549 | 0,116 | 0,66513% |
| 96 | 32 | 100,957 | 0,665 | 0,553 | 0,112 | 0,66513% |
| 99 | 33 | 101,041 | 0,665 | 0,557 | 0,108 | 0,66513% |
| 102 | 34 | 101,125 | 0,665 | 0,561 | 0,104 | 0,66513% |
| 105 | 35 | 101,210 | 0,665 | 0,565 | 0,100 | 0,66513% |
| 108 | 36 | 101,296 | 0,665 | 0,570 | 0,096 | 0,66513% |
| 111 | 37 | 100,763 | 1,284 | 0,824 | 0,460 | 1,28418% |
| 114 | 38 | 100,226 | 1,284 | 0,830 | 0,454 | 1,28418% |
| 117 | 39 | 99,685 | 1,284 | 0,837 | 0,448 | 1,28418% |
| 120 | 40 | 99,141 | 1,284 | 0,843 | 0,441 | 1,28418% |
| 123 | 41 | 98,592 | 1,284 | 0,849 | 0,435 | 1,28418% |
| 126 | 42 | 98,039 | 1,284 | 0,855 | 0,429 | 1,28418% |
| 129 | 43 | 97,482 | 1,284 | 0,862 | 0,423 | 1,28418% |
| 132 | 44 | 96,921 | 1,284 | 0,868 | 0,416 | 1,28418% |
| 135 | 45 | 96,355 | 1,284 | 0,874 | 0,410 | 1,28418% |
| 138 | 46 | 95,786 | 1,284 | 0,881 | 0,403 | 1,28418% |
| 141 | 47 | 95,212 | 1,284 | 0,887 | 0,397 | 1,28418% |
| 144 | 48 | 94,634 | 1,284 | 0,894 | 0,390 | 1,28418% |
| 147 | 49 | 94,052 | 1,284 | 0,901 | 0,383 | 1,28418% |
| 150 | 50 | 93,465 | 1,284 | 0,907 | 0,377 | 1,28418% |
| 153 | 51 | 92,874 | 1,284 | 0,914 | 0,370 | 1,28418% |
| 156 | 52 | 92,279 | 1,284 | 0,921 | 0,363 | 1,28418% |
| 159 | 53 | 91,679 | 1,284 | 0,928 | 0,356 | 1,28418% |
| 162 | 54 | 91,075 | 1,284 | 0,935 | 0,350 | 1,28418% |
| 165 | 55 | 90,466 | 1,284 | 0,942 | 0,343 | 1,28418% |
| 168 | 56 | 89,853 | 1,284 | 0,949 | 0,336 | 1,28418% |
| 171 | 57 | 89,235 | 1,284 | 0,956 | 0,329 | 1,28418% |
| 174 | 58 | 88,613 | 1,284 | 0,963 | 0,322 | 1,28418% |
| 177 | 59 | 87,986 | 1,284 | 0,970 | 0,314 | 1,28418% |
| 180 | 60 | 87,355 | 1,284 | 0,977 | 0,307 | 1,28418% |

| MONTH | QUARTER | Debit Balance | Install-ment | Principal | Interest and Inflation Adjustment | FACTOR |
|---|---|---|---|---|---|---|
| counting from Plan Approval | counting from Plan Approval | | | | | debit balance multiplier at end of month 60 |
| 183 | 61 | 84,926 | 3,077 | 1,559 | 1,518 | 3,07665% |
| 186 | 62 | 82,479 | 3,077 | 1,570 | 1,506 | 3,07665% |
| 189 | 63 | 80,014 | 3,077 | 1,582 | 1,495 | 3,07665% |
| 192 | 64 | 77,531 | 3,077 | 1,594 | 1,483 | 3,07665% |
| 195 | 65 | 75,029 | 3,077 | 1,606 | 1,471 | 3,07665% |
| 198 | 66 | 72,509 | 3,077 | 1,618 | 1,459 | 3,07665% |
| 201 | 67 | 69,970 | 3,077 | 1,630 | 1,447 | 3,07665% |
| 204 | 68 | 67,413 | 3,077 | 1,642 | 1,435 | 3,07665% |
| 207 | 69 | 64,836 | 3,077 | 1,654 | 1,423 | 3,07665% |
| 210 | 70 | 62,240 | 3,077 | 1,666 | 1,411 | 3,07665% |
| 213 | 71 | 59,625 | 3,077 | 1,678 | 1,398 | 3,07665% |
| 216 | 72 | 56,991 | 3,077 | 1,691 | 1,386 | 3,07665% |
| 219 | 73 | 54,337 | 3,077 | 1,703 | 1,373 | 3,07665% |
| 222 | 74 | 51,663 | 3,077 | 1,716 | 1,361 | 3,07665% |
| 225 | 75 | 48,970 | 3,077 | 1,729 | 1,348 | 3,07665% |
| 228 | 76 | 46,256 | 3,077 | 1,742 | 1,335 | 3,07665% |
| 231 | 77 | 43,523 | 3,077 | 1,755 | 1,322 | 3,07665% |
| 234 | 78 | 40,769 | 3,077 | 1,768 | 1,309 | 3,07665% |
| 237 | 79 | 37,995 | 3,077 | 1,781 | 1,296 | 3,07665% |
| 240 | 80 | 35,200 | 3,077 | 1,794 | 1,283 | 3,07665% |
| 243 | 81 | 32,384 | 3,077 | 1,807 | 1,269 | 3,07665% |
| 246 | 82 | 29,548 | 3,077 | 1,821 | 1,256 | 3,07665% |
| 249 | 83 | 26,690 | 3,077 | 1,834 | 1,243 | 3,07665% |
| 252 | 84 | 23,812 | 3,077 | 1,848 | 1,229 | 3,07665% |
| 255 | 85 | 20,912 | 3,077 | 1,861 | 1,215 | 3,07665% |
| 258 | 86 | 17,990 | 3,077 | 1,875 | 1,201 | 3,07665% |
| 261 | 87 | 15,047 | 3,077 | 1,889 | 1,188 | 3,07665% |
| 264 | 88 | 12,082 | 3,077 | 1,903 | 1,174 | 3,07665% |
| 267 | 89 | 9,095 | 3,077 | 1,917 | 1,159 | 3,07665% |
| 270 | 90 | 6,086 | 3,077 | 1,931 | 1,145 | 3,07665% |
| 273 | 91 | 3,054 | 3,077 | 1,946 | 1,131 | 3,07665% |
| 276 | 92 | 0,000 | 3,077 | 1,960 | 1,116 | 3,07665% |

Notes:

- The value of the installment to be paid to the Creditor will be obtained by multiplying the FACTOR in the above table by the respective debit balance at the end of the 60th month.

- The debit balance in the 60th month will be calculated by the value of the credit in Reais on the Request Date, plus interest and inflation adjustment of 3% per year.

### APPENDIX 4.1.3

### Procedure for increasing the share capital of Lupatech S.A. by means of capitalization of Credits to increase the share capital of Lupatech S.A.

**(A)**      Within 180 (one hundred eighty days) after the lapse of the period set forth in Clauses 4.1.6 and 5.1.6 of the Plan, the first call will be published for convening the extraordinary general meeting of shareholders of Lupatech S.A., to approve the increase in share capital of Lupatech S.A. pursuant to Art. 171, § 2 of the Companies Law and other applicable legal provisions, with the issuance of new Shares, by means of the capitalization of credits held by Unsecured Creditors that chose Options C and D under Clauses 5.1.4 and 5.1.5, and Creditors with Collateral that chose Option B under Clause 4.1.3 of the Plan.

**(B)**      The extraordinary general meeting, the agenda of which contains approval for the capital increase by means of credit capitalization, shall be convened in accordance with applicable law.

**(C)**      In the event of an increase in authorized capital, it may be used by Lupatech S.A. to allow for the possibility of issuing new Shares to Unsecured Creditors that chose Options C and D under Clauses 5.1.4 and 5.1.5, and Creditors with Collateral that chose Option B under Clause 4.1.3 of the Plan.

**(D)**      The value of the capital increase through credit capitalization will be equal to the value of the sum: (i) of all Unsecured Credits held by the Unsecured Creditors that chose Options C and D under Clauses 5.1.4 and 5.1.6 of the Plan, as indicated in the statement contained in Appendix 5.1.6; (ii) all Unsecured Credits held by the Unsecured Creditors that did not choose said option, pursuant to Clause 5.1.7 of the Plan; and (iii) the value of Credits with Collateral indicated by Creditors with Collateral that completely or partially chose Option B as provided for in Clause 4.1.3 of the Plan, as indicated in the statement contained in Appendix 4.1.6.

**(E)**      Shares issued by Lupatech S.A. as part of the capital increase by capitalization of credit and subscribed by Creditors shall be free and unencumbered and shall confer on their holders the same rights as attributed to the other Shares, with no disbursement of funds or payment of price by Creditors, in view of their capacity as holders of credits subject to capitalization.

**(F)**      The increase in the capital of Lupatech S.A. by means of capitalization of credit shall occur privately, conferring on other Lupatech S.A. shareholders right of first refusal in accordance with the Companies Law. The Companies under Reorganization undertake, within 30 (thirty) days after publication of the minutes of the

extraordinary general meeting approving the capital increase or notice to shareholders referring to the resolution taken at the aforementioned extraordinary general meeting, to waive their respective right of first refusal, obtain a waiver of the right of first refusal of the companies controlled by the Companies under Reorganization, and take all necessary measures to that end, thus allowing the Unsecured Credits for which the holders chose Options C and D as provided for in Clauses 5.1.4 and 5.1.5, and the Credits with Collateral for which the holders completely or partially chose Option B as provided for in Clause 4.1.3 of the Plan, to be capitalized in Shares, in the form of and in compliance with this Plan.

**(G)**　　Pursuant to the statements set forth in Appendices 4.1.6 and 5.1.6 for the choice of options for receiving Credits with Collateral and Unsecured Credits, all necessary measures for implementing the Plan, in compliance with all applicable corporate, regulatory and legal authorizations, including to sign subscription bulletins, may be taken by the Creditors, in their own name, or by the Legal Representative, pursuant to the power of attorney provided for in Clause 5.1.5.1 of the Plan. In that latter case, Lupatech S.A., or a third party named thereby, as applicable, shall henceforth be irrevocably and irreversibly mandated and authorized under the Plan to represent the Creditors in signing any documents that may be needed to render delivery of the Shares feasible, including but not limited to the subscription bulletin, vis-à-vis the institution maintaining the Share records.

**(H)**　　The number of Shares to be issued in fulfillment of this Plan shall be simultaneously and proportionally adjusted to capital increases for share bonuses, splits or consolidations that might occur after this date, without encumbrance on the Creditor, and in the same proportions as applied for said events. Thus, for example, (i) in the case of a share consolidation, the number of Shares to be issued must be divided by the same rate as applied to the share consolidation; and (ii) in the case of a share split or bonus, the number of Shares to be issued must be multiplied by the same rate as applied to the share split or by the same rate as is used for the bonuses.

**(I)**　　Shares corresponding to the proportional value of the Credit shall be recorded on the books of Lupatech S.A. in the name of each Creditor, by the agent recording the Lupatech S.A. shares.

**(J)**　　The other timeframes and procedures related to the capital increase through the capitalization of credits, in addition to those already provided in this Appendix, shall be disclosed in a timely fashion in accordance with the Companies Law and the Bankruptcy Act, as applicable and necessary.

**(K)**　　The effective issuance of Shares deriving from the capital increase by means of the capitalization of credits to the respective Unsecured Creditors and Creditors with Collateral, as provided for in the Plan, free and unencumbered of any

burden, represents complete payment to Unsecured Creditors and Creditors with Collateral that chose that option, releasing the Companies under Reorganization with respect to Unsecured Credits and Credits with Collateral, including for credits deriving from guarantees provided by it, subrogating it before all joint and several debtors and obligors for right of return.

**APPENDIX 4.1.6**

**Model form for selecting the option for receiving Credits with Collateral**


To the
**Lupatech Group**
Avenida Maria Coelho Aguiar, 215, Bloco B, 5º andar
Jardim São Luis, São Paulo – SP
CEP 05804-900
Attn.: **Ricardo Doebeli, João Marcos Cavichioli Feiteiro**


CC:
**Alta Administração Judicial Ltda.**
Avenida Paulista, No. 1439, 13th andar
São Paulo – SP
CEP 01311-926
Attn.: **Afonso Rodeguer Neto**


CC:
**Felsberg Advogados**
Avenida Cidade Jardim, 803, 5º andar
Jardim Paulistano, Sao Paulo – SP
CEP 01453-000
Attn.: **Thomas Benes Felsberg, Paulo Fernando Campana Filho, Thiago Dias Costa**


Re: **Creditor with Collateral – Notification of choice of form of receipt of Credits – Lupatech Group Receivership Plan**


Dear Sirs,


_____, registered with the ( ) CPF/MF [Ministry of Finance Personal Tax Roll] or with the ( ) CNPJ/MF under No. _____, residing and domiciled at _____ _____ ("**Creditor**"), in the capacity of **Creditor with Collateral**, duly authorized in the case files of the Lupatech Group receivership proceeding, hereby appears in accordance with the provisions set forth above in Clause 4.1.6 of the Lupatech Group receivership plan ("**Plan**"), **to declare**, for all legal intents and purposes and pursuant to the terms set forth in the Plan, that it elects to receive its Credits with Collateral pursuant to Options A and B under Clauses 4.1.2 and 4.1.3 of the Plan, distributed in accordance with the percentages set forth below:

- 40 -

_____ % (_____ percent) of the Credit with Collateral under Clause 4.1.2 – Option A for Payment of Credits with Collateral (Payments in installments):

"*Payment of 100% (one hundred percent) of the value of the respective Credit with Collateral, to be made in 72 (seventy-two) successive quarterly installments, in accordance with the payments schedule provided for in Appendix 4.1.2, with the first coming due 63 (sixty-three) months after Court Approval of the Plan. The value of the Credits with Collateral to be paid pursuant to this Option A shall be subject to the application of interest and inflation adjustment equivalent to a fixed rate of 3% (three percent) per year, in accordance with the payments schedule provided for in Appendix 4.1.2.*"

_____ % (_____ percent) of the Credit with Collateral under Clause 4.1.3 – Option B for Payment of Credits with Collateral (Payments in installments):

"*Payment of the value of the Credit with Collateral, in accordance with the provisions of Clause 4.1.3.1, by means of the subscription of Shares through capitalization of the respective Credits with Collateral, pursuant to Art. 171, §2 of the Companies Law. Shares shall be issued at the Issuance Price, with the Shares to be incorporated with their respective Credits with Collateral, pursuant to Appendix 4.1.3;*

*In the event that the Credit with Collateral of the Creditor with Collateral that opts for receipt pursuant to Option B consists of the value of principal and interest or other legal or contractual charges, the capitalization provided for in Clause 4.1.3 shall necessarily be restricted to the value of the debit balance of the principal. The amount corresponding to interest, inflation adjustment and other contractual or legal charges shall apply to the value of the principal up to the Request Date, and must be paid to the Creditor with Collateral in the form of Option A under Clause 4.1.2.*

*In the event that a Creditor with Collateral that has opted for complete or partial conversion of its Credit with Collateral to Shares encounters the existence of any statutory or regulatory restriction to complete or partial conversion of its Credit, said restriction shall be complied with, and the additional balance shall be paid to the respective*

*Creditor with Collateral in the form of Option A under Clause 4.1.2.*

> *In the event that conversion of the Credit with Collateral to Shares as provided for in Clause 4.1.3 occurs only partially, the respective Creditor with Collateral must proportionally release Collateral in favor of the Lupatech Group, in order that assets remain in Collateral in an amount equivalent to the remaining balance of the Credits with Collateral."*

The Creditor with Collateral expressly declares it has read and understood all provisions of the Plan, acknowledging that all other provisions of the Plan are applicable to the forms of payment chosen thereby, especially those provided for in Chapter IV, governing the payment of Credits with Collateral.

Finally, the Creditor declares itself aware that the option hereby made is irrevocable, irreversible, final, definitive and binding, pursuant to Clause 2.1.4.2 of the Plan.

Sincerely,

_____

**Creditor:**

By its legal representative:

RG:

CPF:

## APPENDIX 5.1.2

## Payments schedule for Payment Option A of Unsecured Credits

| MONTH | QUARTER | Debit Balance | Install-ment | Principal | Interest and Inflation Adjustment | FACTOR |
|---|---|---|---|---|---|---|
| counting from Plan Approval | counting from Plan Approval | | | | | debit balance multiplier at end of month 60 |
| 60 | 20 | 100,000 | - | - | - | |
| 63 | 21 | 100,077 | 0,665 | 0,510 | 0,155 | 0,66513% |
| 66 | 22 | 100,154 | 0,665 | 0,514 | 0,152 | 0,66513% |
| 69 | 23 | 100,231 | 0,665 | 0,517 | 0,148 | 0,66513% |
| 72 | 24 | 100,310 | 0,665 | 0,521 | 0,144 | 0,66513% |
| 75 | 25 | 100,389 | 0,665 | 0,525 | 0,140 | 0,66513% |
| 78 | 26 | 100,468 | 0,665 | 0,529 | 0,136 | 0,66513% |
| 81 | 27 | 100,548 | 0,665 | 0,533 | 0,132 | 0,66513% |
| 84 | 28 | 100,629 | 0,665 | 0,537 | 0,128 | 0,66513% |
| 87 | 29 | 100,710 | 0,665 | 0,541 | 0,124 | 0,66513% |
| 90 | 30 | 100,792 | 0,665 | 0,545 | 0,120 | 0,66513% |
| 93 | 31 | 100,874 | 0,665 | 0,549 | 0,116 | 0,66513% |
| 96 | 32 | 100,957 | 0,665 | 0,553 | 0,112 | 0,66513% |
| 99 | 33 | 101,041 | 0,665 | 0,557 | 0,108 | 0,66513% |
| 102 | 34 | 101,125 | 0,665 | 0,561 | 0,104 | 0,66513% |
| 105 | 35 | 101,210 | 0,665 | 0,565 | 0,100 | 0,66513% |
| 108 | 36 | 101,296 | 0,665 | 0,570 | 0,096 | 0,66513% |
| 111 | 37 | 100,763 | 1,284 | 0,824 | 0,460 | 1,28418% |
| 114 | 38 | 100,226 | 1,284 | 0,830 | 0,454 | 1,28418% |
| 117 | 39 | 99,685 | 1,284 | 0,837 | 0,448 | 1,28418% |
| 120 | 40 | 99,141 | 1,284 | 0,843 | 0,441 | 1,28418% |
| 123 | 41 | 98,592 | 1,284 | 0,849 | 0,435 | 1,28418% |
| 126 | 42 | 98,039 | 1,284 | 0,855 | 0,429 | 1,28418% |
| 129 | 43 | 97,482 | 1,284 | 0,862 | 0,423 | 1,28418% |
| 132 | 44 | 96,921 | 1,284 | 0,868 | 0,416 | 1,28418% |
| 135 | 45 | 96,355 | 1,284 | 0,874 | 0,410 | 1,28418% |
| 138 | 46 | 95,786 | 1,284 | 0,881 | 0,403 | 1,28418% |
| 141 | 47 | 95,212 | 1,284 | 0,887 | 0,397 | 1,28418% |
| 144 | 48 | 94,634 | 1,284 | 0,894 | 0,390 | 1,28418% |
| 147 | 49 | 94,052 | 1,284 | 0,901 | 0,383 | 1,28418% |
| 150 | 50 | 93,465 | 1,284 | 0,907 | 0,377 | 1,28418% |
| 153 | 51 | 92,874 | 1,284 | 0,914 | 0,370 | 1,28418% |
| 156 | 52 | 92,279 | 1,284 | 0,921 | 0,363 | 1,28418% |
| 159 | 53 | 91,679 | 1,284 | 0,928 | 0,356 | 1,28418% |
| 162 | 54 | 91,075 | 1,284 | 0,935 | 0,350 | 1,28418% |
| 165 | 55 | 90,466 | 1,284 | 0,942 | 0,343 | 1,28418% |
| 168 | 56 | 89,853 | 1,284 | 0,949 | 0,336 | 1,28418% |
| 171 | 57 | 89,235 | 1,284 | 0,956 | 0,329 | 1,28418% |
| 174 | 58 | 88,613 | 1,284 | 0,963 | 0,322 | 1,28418% |
| 177 | 59 | 87,986 | 1,284 | 0,970 | 0,314 | 1,28418% |
| 180 | 60 | 87,355 | 1,284 | 0,977 | 0,307 | 1,28418% |

| MONTH | QUARTER | Debit Balance | Install-ment | Principal | Interest and Inflation Adjustment | FACTOR |
|---|---|---|---|---|---|---|
| counting from Plan Approval | counting from Plan Approval | | | | | debit balance multiplier at end of month 60 |
| 183 | 61 | 84,926 | 3,077 | 1,559 | 1,518 | 3,07665% |
| 186 | 62 | 82,479 | 3,077 | 1,570 | 1,506 | 3,07665% |
| 189 | 63 | 80,014 | 3,077 | 1,582 | 1,495 | 3,07665% |
| 192 | 64 | 77,531 | 3,077 | 1,594 | 1,483 | 3,07665% |
| 195 | 65 | 75,029 | 3,077 | 1,606 | 1,471 | 3,07665% |
| 198 | 66 | 72,509 | 3,077 | 1,618 | 1,459 | 3,07665% |
| 201 | 67 | 69,970 | 3,077 | 1,630 | 1,447 | 3,07665% |
| 204 | 68 | 67,413 | 3,077 | 1,642 | 1,435 | 3,07665% |
| 207 | 69 | 64,836 | 3,077 | 1,654 | 1,423 | 3,07665% |
| 210 | 70 | 62,240 | 3,077 | 1,666 | 1,411 | 3,07665% |
| 213 | 71 | 59,625 | 3,077 | 1,678 | 1,398 | 3,07665% |
| 216 | 72 | 56,991 | 3,077 | 1,691 | 1,386 | 3,07665% |
| 219 | 73 | 54,337 | 3,077 | 1,703 | 1,373 | 3,07665% |
| 222 | 74 | 51,663 | 3,077 | 1,716 | 1,361 | 3,07665% |
| 225 | 75 | 48,970 | 3,077 | 1,729 | 1,348 | 3,07665% |
| 228 | 76 | 46,256 | 3,077 | 1,742 | 1,335 | 3,07665% |
| 231 | 77 | 43,523 | 3,077 | 1,755 | 1,322 | 3,07665% |
| 234 | 78 | 40,769 | 3,077 | 1,768 | 1,309 | 3,07665% |
| 237 | 79 | 37,995 | 3,077 | 1,781 | 1,296 | 3,07665% |
| 240 | 80 | 35,200 | 3,077 | 1,794 | 1,283 | 3,07665% |
| 243 | 81 | 32,384 | 3,077 | 1,807 | 1,269 | 3,07665% |
| 246 | 82 | 29,548 | 3,077 | 1,821 | 1,256 | 3,07665% |
| 249 | 83 | 26,690 | 3,077 | 1,834 | 1,243 | 3,07665% |
| 252 | 84 | 23,812 | 3,077 | 1,848 | 1,229 | 3,07665% |
| 255 | 85 | 20,912 | 3,077 | 1,861 | 1,215 | 3,07665% |
| 258 | 86 | 17,990 | 3,077 | 1,875 | 1,201 | 3,07665% |
| 261 | 87 | 15,047 | 3,077 | 1,889 | 1,188 | 3,07665% |
| 264 | 88 | 12,082 | 3,077 | 1,903 | 1,174 | 3,07665% |
| 267 | 89 | 9,095 | 3,077 | 1,917 | 1,159 | 3,07665% |
| 270 | 90 | 6,086 | 3,077 | 1,931 | 1,145 | 3,07665% |
| 273 | 91 | 3,054 | 3,077 | 1,946 | 1,131 | 3,07665% |
| 276 | 92 | 0,000 | 3,077 | 1,960 | 1,116 | 3,07665% |

Notes:

- The value of the installment to be paid to the Creditor will be obtained by multiplying the FACTOR in the above table by the respective debit balance at the end of the 60th month.

- The debit balance in the 60th month will be calculated by the value of the credit in Reais on the Request Date, plus interest and inflation adjustment of 3% per year, less a single installment of R$ 500.00 to be paid within the first 12 months after

Court Approval of the Plan and four annual installments of R$ 1,000.00 to be paid between the 2nd and 5th years after Court Approval of the Plan.

### APPENDIX 5.1.3

### Payments schedule for Payment Option B of Credits with Collateral

| MONTH | QUARTER | Debit Balance | Install-ment | Principal | Interest and Inflation Adjustment | FACTOR |
|---|---|---|---|---|---|---|
| counting from Plan Approval | counting from Plan Approval | | | | | debit balance multiplier at end of month 60 |
| 60 | 20 | 100,000 | - | - | - | |
| 63 | 21 | 99,080 | 1,662 | 0,794 | 0,868 | 1,66181% |
| 66 | 22 | 98,153 | 1,662 | 0,800 | 0,862 | 1,66181% |
| 69 | 23 | 97,219 | 1,662 | 0,806 | 0,856 | 1,66181% |
| 72 | 24 | 96,278 | 1,662 | 0,811 | 0,850 | 1,66181% |
| 75 | 25 | 95,331 | 1,662 | 0,818 | 0,844 | 1,66181% |
| 78 | 26 | 94,376 | 1,662 | 0,824 | 0,838 | 1,66181% |
| 81 | 27 | 93,414 | 1,662 | 0,830 | 0,832 | 1,66181% |
| 84 | 28 | 92,445 | 1,662 | 0,836 | 0,826 | 1,66181% |
| 87 | 29 | 91,469 | 1,662 | 0,842 | 0,820 | 1,66181% |
| 90 | 30 | 90,486 | 1,662 | 0,848 | 0,814 | 1,66181% |
| 93 | 31 | 89,495 | 1,662 | 0,855 | 0,807 | 1,66181% |
| 96 | 32 | 88,497 | 1,662 | 0,861 | 0,801 | 1,66181% |
| 99 | 33 | 87,492 | 1,662 | 0,867 | 0,795 | 1,66181% |
| 102 | 34 | 86,479 | 1,662 | 0,874 | 0,788 | 1,66181% |
| 105 | 35 | 85,458 | 1,662 | 0,880 | 0,782 | 1,66181% |
| 108 | 36 | 84,430 | 1,662 | 0,887 | 0,775 | 1,66181% |
| 111 | 37 | 83,395 | 1,662 | 0,893 | 0,769 | 1,66181% |
| 114 | 38 | 82,351 | 1,662 | 0,900 | 0,762 | 1,66181% |
| 117 | 39 | 81,300 | 1,662 | 0,907 | 0,755 | 1,66181% |
| 120 | 40 | 80,242 | 1,662 | 0,913 | 0,748 | 1,66181% |
| 123 | 41 | 79,175 | 1,662 | 0,920 | 0,742 | 1,66181% |
| 126 | 42 | 78,100 | 1,662 | 0,927 | 0,735 | 1,66181% |
| 129 | 43 | 77,018 | 1,662 | 0,934 | 0,728 | 1,66181% |
| 132 | 44 | 75,927 | 1,662 | 0,941 | 0,721 | 1,66181% |
| 135 | 45 | 74,829 | 1,662 | 0,948 | 0,714 | 1,66181% |
| 138 | 46 | 73,722 | 1,662 | 0,955 | 0,707 | 1,66181% |
| 141 | 47 | 72,607 | 1,662 | 0,962 | 0,700 | 1,66181% |
| 144 | 48 | 71,484 | 1,662 | 0,969 | 0,693 | 1,66181% |
| 147 | 49 | 70,352 | 1,662 | 0,976 | 0,686 | 1,66181% |
| 150 | 50 | 69,212 | 1,662 | 0,983 | 0,678 | 1,66181% |
| 153 | 51 | 68,064 | 1,662 | 0,991 | 0,671 | 1,66181% |
| 156 | 52 | 66,907 | 1,662 | 0,998 | 0,664 | 1,66181% |
| 159 | 53 | 65,741 | 1,662 | 1,005 | 0,656 | 1,66181% |
| 162 | 54 | 64,567 | 1,662 | 1,013 | 0,649 | 1,66181% |
| 165 | 55 | 63,384 | 1,662 | 1,020 | 0,641 | 1,66181% |
| 168 | 56 | 62,192 | 1,662 | 1,028 | 0,634 | 1,66181% |
| 171 | 57 | 60,992 | 1,662 | 1,036 | 0,626 | 1,66181% |
| 174 | 58 | 59,782 | 1,662 | 1,043 | 0,619 | 1,66181% |
| 177 | 59 | 58,564 | 1,662 | 1,051 | 0,611 | 1,66181% |
| 180 | 60 | 57,336 | 1,662 | 1,059 | 0,603 | 1,66181% |

| MONTH | QUARTER | Debit Balance | Install-ment | Principal | Interest and Inflation Adjustment | FACTOR |
|---|---|---|---|---|---|---|
| *counting from Plan Approval* | *counting from Plan Approval* | | | | | *debit balance multiplier at end of month 60* |
| 183 | 61 | 56,100 | 1,662 | 1,067 | 0,595 | 1,66181% |
| 186 | 62 | 54,854 | 1,662 | 1,075 | 0,587 | 1,66181% |
| 189 | 63 | 53,599 | 1,662 | 1,083 | 0,579 | 1,66181% |
| 192 | 64 | 52,335 | 1,662 | 1,091 | 0,571 | 1,66181% |
| 195 | 65 | 51,061 | 1,662 | 1,099 | 0,563 | 1,66181% |
| 198 | 66 | 49,778 | 1,662 | 1,107 | 0,555 | 1,66181% |
| 201 | 67 | 48,486 | 1,662 | 1,115 | 0,547 | 1,66181% |
| 204 | 68 | 47,183 | 1,662 | 1,123 | 0,539 | 1,66181% |
| 207 | 69 | 45,872 | 1,662 | 1,132 | 0,530 | 1,66181% |
| 210 | 70 | 44,550 | 1,662 | 1,140 | 0,522 | 1,66181% |
| 213 | 71 | 43,219 | 1,662 | 1,148 | 0,513 | 1,66181% |
| 216 | 72 | 41,877 | 1,662 | 1,157 | 0,505 | 1,66181% |
| 219 | 73 | 40,526 | 1,662 | 1,166 | 0,496 | 1,66181% |
| 222 | 74 | 39,165 | 1,662 | 1,174 | 0,488 | 1,66181% |
| 225 | 75 | 37,794 | 1,662 | 1,183 | 0,479 | 1,66181% |
| 228 | 76 | 36,412 | 1,662 | 1,192 | 0,470 | 1,66181% |
| 231 | 77 | 35,020 | 1,662 | 1,201 | 0,461 | 1,66181% |
| 234 | 78 | 33,618 | 1,662 | 1,209 | 0,452 | 1,66181% |
| 237 | 79 | 32,206 | 1,662 | 1,218 | 0,443 | 1,66181% |
| 240 | 80 | 30,783 | 1,662 | 1,227 | 0,434 | 1,66181% |
| 243 | 81 | 29,349 | 1,662 | 1,237 | 0,425 | 1,66181% |
| 246 | 82 | 27,905 | 1,662 | 1,246 | 0,416 | 1,66181% |
| 249 | 83 | 26,450 | 1,662 | 1,255 | 0,407 | 1,66181% |
| 252 | 84 | 24,985 | 1,662 | 1,264 | 0,398 | 1,66181% |
| 255 | 85 | 23,508 | 1,662 | 1,274 | 0,388 | 1,66181% |
| 258 | 86 | 22,021 | 1,662 | 1,283 | 0,379 | 1,66181% |
| 261 | 87 | 20,522 | 1,662 | 1,293 | 0,369 | 1,66181% |
| 264 | 88 | 19,013 | 1,662 | 1,302 | 0,360 | 1,66181% |
| 267 | 89 | 17,492 | 1,662 | 1,312 | 0,350 | 1,66181% |
| 270 | 90 | 15,960 | 1,662 | 1,322 | 0,340 | 1,66181% |
| 273 | 91 | 14,416 | 1,662 | 1,331 | 0,330 | 1,66181% |
| 276 | 92 | 12,862 | 1,662 | 1,341 | 0,321 | 1,66181% |
| 279 | 93 | 11,295 | 1,662 | 1,351 | 0,311 | 1,66181% |
| 282 | 94 | 9,717 | 1,662 | 1,361 | 0,301 | 1,66181% |
| 285 | 95 | 8,127 | 1,662 | 1,371 | 0,290 | 1,66181% |
| 288 | 96 | 6,526 | 1,662 | 1,381 | 0,280 | 1,66181% |
| 291 | 97 | 4,912 | 1,662 | 1,392 | 0,270 | 1,66181% |
| 294 | 98 | 3,287 | 1,662 | 1,402 | 0,260 | 1,66181% |
| 297 | 99 | 1,650 | 1,662 | 1,412 | 0,249 | 1,66181% |
| 300 | 100 | 0,000 | 1,662 | 1,423 | 0,239 | 1,66181% |

Notes:

- The value of the installment to be paid to the Creditor will be obtained by multiplying the FACTOR in the above table by the respective debit balance at the end of the 60th month.

- The debit balance in the 60th month will be calculated by the value of the credit in Reais on the Request Date, plus interest and inflation adjustment of 3% per year, less a single installment of R$ 500.00 to be paid in the first 12 months after Court Approval of the Plan and four annual installments of R$ 1,000.00 to be paid between the 2nd and 5th years after Court Approval of the Plan.

## APPENDIX 5.1.5

### Creditors' Trustee Nomination Process and Functioning

**(A)**        Unsecured Creditors that elect Option D under Clause 5.1.5 of the Plan shall irrevocably and irreversibly appoint the Creditors' Trustee for purposes and effects of Arts. 693 and thereafter of the Civil Code, awarding it power of attorney and all necessary authority to *(i)* subscribe Shares in its own name, but on behalf of the Creditor; *(ii)* dispose of Shares on the BM&FBOVESPA, on any date; and *(iii)* at the Creditors' Trustee's sole discretion, take any and all necessary or reasonable measures, including remittance of the net funds originating from the disposal of Shares to the bank account indicated by the Creditor in the prior statement in Clause 2.1.6, net of any and all operating costs, taxes and duties, within 10 (ten) Business Days after completing disposal of the Shares.

**(B)**        The Creditors' Trustee is exempt of any and all liability deriving from the disposal of Shares for purposes of implementation of the Plan. In this regard, Unsecured Creditors that select Option D under Clause 5.1.5 shall waive the rights provided for in Arts. 696, 697 and 698 of the Civil Code, bearing in mind that the Creditors' Trustee must make its best efforts to undertake the disposal of Shares for the sole and exclusive purpose of delivering financial resources to the Creditor, with no performance obligation, and to seek to maximize the sale price of the Shares, and it may not be attributed any alleged loss due to the timing, form and/or calculated amounts upon disposing of the Shares, including losses originating from any insolvency on the part of the Shares' acquirer, for which it shall not be jointly and severally liable.

**(C)**        Unsecured Creditors that elect payment in the form provided for in Clause 5.1.5 and this Appendix declare that the issuance of Shares in the name of the Creditors' Trustee represents complete payment of Unsecured Creditors that chose that option, at which time they shall hold credit rights for disposal of the Shares, releasing Lupatech S.A. with respect to its respective Unsecured Credits.

## APPENDIX 5.1.6

### Model form for selecting the option for receiving Unsecured Credits

To the
**Lupatech Group**
Avenida Maria Coelho Aguiar, 215, Bloco B, 5° andar
Jardim São Luis, São Paulo – SP
CEP 05804-900
Attn.: **Ricardo Doebeli, João Marcos Cavichioli Feiteiro**

CC:
**Alta Administração Judicial Ltda.**
Avenida Paulista, No. 1439, 13th andar
São Paulo – SP
CEP 01311-926
Attn.: **Afonso Rodeguer Neto**

CC:
**Felsberg Advogados**
Avenida Cidade Jardim, 803, 5° andar
Jardim Paulistano, Sao Paulo – SP
CEP 01453-000
Attn.: **Thomas Benes Felsberg, Paulo Fernando Campana Filho, Thiago Dias Costa**

Re: **Unsecured Creditor – Notification of choice of form of receipt of Credits – Lupatech Group
Receivership Plan**

Dear Sirs,

_____, registered with the ( ) CPF/MF [Ministry of Finance
Personal Tax Roll] or with the ( ) CNPJ/MF under No. _____, residing and
domiciled at _____ ("**Creditor**"),
in the capacity of **unsecured creditor** duly authorized in the case files of the Lupatech Group
receivership proceeding, by means of this instrument, and in accordance with the explanation set forth
above in Clause 5.1.6 of the Lupatech Group receivership plan ("**Plan**"), **declares**, for all legal intents
and purposes and in accordance with the terms defined in the Plan, that it elects to receive its
Unsecured Credit in accordance with the form provided for in the option it indicates with an "X"
below:

**( ) Clause 5.1.2 – Option A Payment of the Unsecured Credit (Payment in installments):**

*"Payment of 100% (one hundred percent) of the value of the respective Unsecured Credit owed and individually authorized on the List of Creditors, in the following form: (i) 1 (one) initial installment in the fixed amount of R$ 500.00 (five hundred reais) for each Unsecured Creditor, to be paid within 12 (twelve) months after Court Approval of the Plan; (ii) 4 (four) annual installments in the fixed amount of R$ 1,000.00 (one thousand reais) for each Unsecured Creditor, the first coming due 24 (twenty-four) months after Court Approval of the Plan; (iii) 72 (seventy-two) successive quarterly installments, calculated based on the outstanding debit balance in the 60th (sixtieth) month after Court Approval of the Plan, in accordance with the payments schedule contained in Appendix 5.1.2, with the first of said installments coming due 63 (sixty-three) months after Court Approval of the Plan. The value of the Unsecured Credits to be paid under Option A shall be subject to interest and inflation adjustment equivalent to a fixed rate of 3% (three percent) per year, in accordance with the payments schedule provided for in Appendix 5.1.2."*

**For purposes of Article 50, § 2 of Law No. 11,101/2005, pursuant to Clause 5.1.10 of the Plan, an Unsecured Creditor that elected for payment Option A hereby declares itself expressly familiar and in agreement with the circumstance that, in the event that all or part of its credit is originally denominated in foreign currency, the rate to be applied for purposes of final conversion of its Credit to Reais, and subsequent payment in accordance with the Plan, shall be the reference conversion rate of the Central Bank of Brazil with current closing for the sale of the respective foreign currency on the Request Date (May 25, 2015), disregarding any other conversion rate current on any other date.**

**( ) Clause 5.1.3 – Option B for Payment of the Unsecured Credit (Payment in installments with payment due event):**

*"Payment of 100% (one hundred percent) of the value of the respective Unsecured Credit owed and individually authorized on the List of Creditors, in accordance with the provisions of Clause 5.1.3.1, in the following form: (i) 1 (one) initial installment in the fixed amount of R$ 500.00 (five hundred reais) for each Unsecured Creditor, to be paid within 12 (twelve) months after Court Approval of the Plan; (ii) 4 (four) annual installments*

*in the fixed amount of R$ 1,000.00 (one thousand reais) for each Unsecured Creditor, the first coming due 24 (twenty-four) months after Court Approval of the Plan; (iii) 80 (eighty) successive quarterly installments, calculated as a function of the outstanding debit balance in the 60th (sixtieth) month after Court Approval of the Plan, in accordance with the payments schedule contained in* Appendix 5.1.3, *with the first of said installments coming due 63 (sixty-three) months after Court Approval of the Plan. In that case, the value of the Unsecured Credits to be paid under Option B shall be subject to interest and inflation adjustment equivalent to a fixed rate of 3% (three percent) per year, in accordance with the payments schedule provided for in* Appendix 5.1.3.*"*

*During the entire payment period provided for in Option B for Unsecured Creditors, the Lupatech Group will make efforts to undertake the disposal of assets, as well as to obtain liquid funds from other sources. The Lupatech Group may use the amount obtained from the disposal of assets, as well as any other funds, from any other source, to, at any time, advance the payment of the installments owed to the Unsecured Creditors that have opted for Payment Option B, in accordance with Clause 5.1.3. Payments made in advance under this Clause will amortize a certain number of installments due from the payments schedule of* Appendix 5.1.3, *from earliest to latest, and will result in rescheduling of the due dates of the remaining installments, pursuant to Clause 5.1.3.2 below.*

*5.1.3.5. In the event that any change is made in the installments pursuant to Clause 5.1.3.1 above during the first 5 (five) years after Court Approval of the Plan, a certain number of remaining installments, from earliest to latest, will see their due dates extended to coincide with the due date of the last installment of debt to be paid under Option B. The number of future installments for which the due date will be extended will be calculated in accordance with the following table:*

| *Period of execution of the advance* | *Number of installments extended to the due date of the final installment* |
| --- | --- |
| *During the 1st or 2nd year after Court Approval of the Plan* | *3x (three times) the number of advance installments* |
| *During the 3rd year after* | *2.5x (two and a half times) the number* |

| Court Approval of the Plan | of advance installments |
|---|---|
| *During the 4th year after Court Approval of the Plan* | *2x (two times) the number of advance installments* |
| *During the 5th year after Court Approval of the Plan* | *1.5x (one and a half times) the number of advance installments* |

*The values of the installments for which the due date has been extended due to the execution of payment advances pursuant to Clause 5.1.3.1 shall not incur the application of interest and inflation adjustment between their original due date and the date to which the due date was extended. Interest and inflation adjustment that had applied up to the original due date shall be preserved, with the due date of said interest and inflation adjustment also extended to the expiration date of the final installment.*

*In the event that the Lupatech Group had discharged all installments provided for in Clause 5.1.3 of this Plan, with the exception of the installments for which the due date had been extended pursuant to Clause 5.1.3.1, said installments for which the due date had been extended, including the values of their principal, interest and inflation adjustment, shall be forgiven, on the date when the final installment not rescheduled pursuant to Clause 5.1.3 is paid (either in advance or according to the schedule set forth in Clause 5.1.3), with application of the Discharge with regard to the Unsecured Credits for which the holders had opted for Option B, and Unsecured Creditors that chose Option B may no longer file claim against the Lupatech Group of any kind, pursuant to Clause 11.2."*

**For purposes of Article 50, § 2 of Law No. 11,101/2005, pursuant to Clause 5.1.10 of the Plan, an Unsecured Creditor that elected for payment Option B hereby declares itself expressly familiar and in agreement with the circumstance that, in the event that all or part of its credit is originally denominated in foreign currency, the rate to be applied for purposes of final conversion of its Credit to Reais, and subsequent payment in accordance with the Plan, shall be the reference conversion rate of the Central Bank of Brazil with current closing for the sale of the respective foreign currency on the Request Date (May 25, 2015), disregarding any other conversion rate current on any other date.**

**( ) Clause 5.1.4 – Option C for Payment of Unsecured Credits (Capitalization of Credits):**

*"Payment of 100% (one hundred percent) of the value of the Unsecured Credit, pursuant to Clause 5.1.4.1, by means of the subscription of Shares through capitalization of the respective Unsecured Credits, in accordance with Art. 171, § 2 of the Companies Law. The Shares shall be issued at the Issuance Price, with the Shares to be incorporated with their respective Unsecured Credits, pursuant to Appendix 4.1.3.*

*In the event that the Unsecured Credit of an Unsecured Creditor that opts for receipt by means of Option C consists of the value of the principal and interest or other legal or contractual charges, the capitalization provided for in Clause 5.1.4 shall necessarily be restricted to the value of the debit balance of the principal. The amount corresponding to interest, inflation adjustment and other contractual or legal charges shall apply to the principal value up to the request Date, and must be paid to the Unsecured Creditor in the form of Option A as provided for in Clause 5.1.2.*

*In the event that an unsecured Creditor that opted for conversion of its Unsecured Credit to Shares encounters the existence of any statutory or regulatory restriction to the complete or partial conversion of its Credit, said restriction shall be complied with, and the balance shall be paid to the respective Unsecured Creditor in the form of Option A under Clause 5.1.2."*

**( ) Clause 5.1.5 – Option D for Payment of Unsecured Credits (Payment of amounts resulting from sale on the exchange of Shares resulting from the capitalization of Credits):**

*"Receipt in cash of amounts originating from the disposal, on the BM&FBOVESPA, of Shares subscribed pursuant to Clause 5.1.4. Disposal of the Shares as provided for in this Clause shall be executed by the Creditors' Trustee, pursuant to Appendix 5.1.5, within 24 (twenty-four) months of issuance of the Shares.*

*Unsecured Creditors that received their Unsecured Credits by means of Option D, pursuant to Clause 5.1.5, irrevocably and irreversibly authorize the Creditors' Trustee to act as their legal representative and creditors' trustee. The appointment and functioning of the*

Creditors' Trustee shall occur pursuant to <u>Appendix 5.1.5</u>, solely with respect to Option D as provided for in Clause 5.1.5.

Unsecured Creditors that receive their Unsecured Credits by means of Option D, pursuant to Clause 5.1.5, award power of attorney to the Lupatech Group, through any of the Companies under Reorganization, in order to, on their behalf, name the Creditors' Trustee, negotiate the terms of the receivership agreement, as well as for any other purposes necessary to implementation of Option D, pursuant to Clause 5.1.5.

The Creditors' Trustee and the Lupatech Group, including its shareholders and directors, are exempt from any and all liability deriving from adoption of the necessary measures for purposes of implementing the Plan. In that regard, Creditors that choose Option D as provided for in Clause 5.1.5 shall waive the rights stipulated in Arts. 696, 697 and 698 of the Civil Code, keeping in mind that the Creditors' Trustee must make its best efforts to undertake disposal of the Shares for the sole and exclusive purpose of delivering the financial resources to the Creditor, with no performance obligation, and to seek to maximize the sale price of the Shares, and that no alleged loss may not imputed to it, the Lupatech Group or its shareholders and directors deriving from the timing, form and/or amounts calculated for the disposal of the Shares, including losses resulting from any non-compliance by the Shares' acquirer, for which it shall not be held jointly and severally liable.

In the event that, for any reason and at any time, the Creditors' Trustee or the Lupatech Group find that the implementation of Option D as provided for in Clause 5.1.5 has become infeasible due to any prohibition or impediment, including of an operational nature, Unsecured Creditors that chose Option D shall receive their Unsecured Credits in accordance with Option A provided for in Clause 5.1.2."

The Unsecured Creditor hereby instructs the Creditors' Trustee to deposit the proceeds from sale of the Shares, net of any taxes or costs incurred in implementing the Plan, to the bank account held by the Unsecured Creditor indicated to the Lupatech Group pursuant to Clause 2.1.6 of the Plan.


Further, in accordance with the provisions set forth in Clause 5.1.5.1 of the Plan, the Unsecured Creditor hereby **declares**, for all legal intents and purposes and in accordance with the terms defined in the Plan, that the measures necessary for payment of the

respective Credits under Option D above shall be adopted by the Creditors' Trustee, which is hereby expressly appointed by the Unsecured Creditor as its legal representative and creditors' trustee, hereby receiving all authority needed as to act in the name and on behalf of the Unsecured Creditor, pursuant to Arts. 653 and thereafter of the Civil Code, and for purposes of execution of Payment Option D as provided for in Clause 5.1.5 of the Plan.

The Unsecured Creditor expressly declares that it has read and understood all provisions of the Plan, acknowledging that all other provisions of the Plan are applicable to the forms of payment chosen thereby, especially those provided for in Chapter V governing the payment of the Unsecured Credits.

Finally, the Creditor declares itself aware that the option hereby selected is irrevocable, irreversible, final, definitive and binding, pursuant to Clause 2.1.4.2 of the Plan.

**( ) The Creditor declares it is an ME and EPP Creditor in exercise of the options granted to Unsecured Creditors, pursuant to Clause 6.1.3 of the Plan.**

Sincerely,

_____

**Creditor:**

By its legal representative:

RG:

CPF:

## APPENDIX 6.1.1

### Payments schedule for ME and EPP Credits

| MONTH | QUARTER | Debit Balance | Install-ment | Principal | Interest and Inflation Adjustment | FACTOR |
|---|---|---|---|---|---|---|
| counting from Plan Approval | counting from Plan Approval | | | | | debit balance multiplier at end of month 60 |
| 60 | 20 | 100,000 | - | - | - | |
| 63 | 21 | 97,843 | 2,898 | 1,860 | 1,038 | 2,89836% |
| 66 | 22 | 95,671 | 2,898 | 1,874 | 1,024 | 2,89836% |
| 69 | 23 | 93,482 | 2,898 | 1,888 | 1,010 | 2,89836% |
| 72 | 24 | 91,277 | 2,898 | 1,902 | 0,996 | 2,89836% |
| 75 | 25 | 89,056 | 2,898 | 1,916 | 0,982 | 2,89836% |
| 78 | 26 | 86,818 | 2,898 | 1,930 | 0,968 | 2,89836% |
| 81 | 27 | 84,563 | 2,898 | 1,945 | 0,954 | 2,89836% |
| 84 | 28 | 82,292 | 2,898 | 1,959 | 0,939 | 2,89836% |
| 87 | 29 | 80,004 | 2,898 | 1,974 | 0,925 | 2,89836% |
| 90 | 30 | 77,699 | 2,898 | 1,988 | 0,910 | 2,89836% |
| 93 | 31 | 75,377 | 2,898 | 2,003 | 0,895 | 2,89836% |
| 96 | 32 | 73,038 | 2,898 | 2,018 | 0,880 | 2,89836% |
| 99 | 33 | 70,681 | 2,898 | 2,033 | 0,866 | 2,89836% |
| 102 | 34 | 68,307 | 2,898 | 2,048 | 0,850 | 2,89836% |
| 105 | 35 | 65,915 | 2,898 | 2,063 | 0,835 | 2,89836% |
| 108 | 36 | 63,506 | 2,898 | 2,078 | 0,820 | 2,89836% |
| 111 | 37 | 61,079 | 2,898 | 2,094 | 0,805 | 2,89836% |
| 114 | 38 | 58,633 | 2,898 | 2,109 | 0,789 | 2,89836% |
| 117 | 39 | 56,170 | 2,898 | 2,125 | 0,773 | 2,89836% |
| 120 | 40 | 53,688 | 2,898 | 2,141 | 0,758 | 2,89836% |
| 123 | 41 | 51,188 | 2,898 | 2,157 | 0,742 | 2,89836% |
| 126 | 42 | 48,669 | 2,898 | 2,173 | 0,726 | 2,89836% |
| 129 | 43 | 46,132 | 2,898 | 2,189 | 0,710 | 2,89836% |
| 132 | 44 | 43,576 | 2,898 | 2,205 | 0,693 | 2,89836% |
| 135 | 45 | 41,001 | 2,898 | 2,221 | 0,677 | 2,89836% |
| 138 | 46 | 38,406 | 2,898 | 2,238 | 0,661 | 2,89836% |
| 141 | 47 | 35,793 | 2,898 | 2,254 | 0,644 | 2,89836% |
| 144 | 48 | 33,160 | 2,898 | 2,271 | 0,627 | 2,89836% |
| 147 | 49 | 30,508 | 2,898 | 2,288 | 0,610 | 2,89836% |
| 150 | 50 | 27,835 | 2,898 | 2,305 | 0,593 | 2,89836% |
| 153 | 51 | 25,144 | 2,898 | 2,322 | 0,576 | 2,89836% |
| 156 | 52 | 22,432 | 2,898 | 2,339 | 0,559 | 2,89836% |
| 159 | 53 | 19,700 | 2,898 | 2,357 | 0,542 | 2,89836% |
| 162 | 54 | 16,947 | 2,898 | 2,374 | 0,524 | 2,89836% |
| 165 | 55 | 14,175 | 2,898 | 2,392 | 0,507 | 2,89836% |
| 168 | 56 | 11,382 | 2,898 | 2,409 | 0,489 | 2,89836% |
| 171 | 57 | 8,568 | 2,898 | 2,427 | 0,471 | 2,89836% |
| 174 | 58 | 5,733 | 2,898 | 2,445 | 0,453 | 2,89836% |
| 177 | 59 | 2,877 | 2,898 | 2,463 | 0,435 | 2,89836% |
| 180 | 60 | - 0,000 | 2,898 | 2,482 | 0,417 | 2,89836% |

Notes:

- The value of the installment to be paid to the Creditor will be obtained by multiplying the FACTOR in the above table by the respective debit balance at the end of the 60th month.

- The debit balance in the 60th month will be calculated by the value of the credit in Reais on the Request Date, plus interest and inflation adjustment of 3% per year, less a single installment of R$ 500.00 to be paid in the first 12 months after Court Approval of the Plan and four annual installments of R$ 1,000.00 to be paid between the 2nd and 5th years after Court Approval of the Plan.

## **APPENDIX 9.4**

### **List of IPUs**

**(A)**      IPU CSL – individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the manufacture and marketing of polyester cables for anchoring platforms and other floating units;

**(B)**      IPU Colômbia - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources located in Colombia, oriented toward the execution of integrated services involving wells for the oil and gas industry;

**(C)**      IPU MNA + TECVAL - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the manufacture and marketing of valves for the oil and gas industry;

**(D)**      IPU MNA + TECVAL + MIPEL + VALMICRO - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the manufacture and marketing of industrial valves for the oil and gas industry;

**(E)**      IPU FIBER LINERS - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the manufacture of specially coated polyester pipes;

**(F)**      IPU FIBERWARE - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward internal pipe linings;

**(G)**      IPU TUBULAR SERVICES - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward automated hydro-jet cleaning services, conventional and automated inspection, maintenance, preservation, recoating and repair of pipelines and accessories;

**(H)**      IPU OIL TOOLS - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the manufacture of products and tools for the oil and gas industry;

**(I)**      IPU ASPRO - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the supply of equipment and systems for gas compression;

**(J)**    IPU UNAP - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources located in Cayman, consisting of equipment oriented toward the oil and gas industry;

**(K)**    IPU HOLANDA - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources located in Holland, consisting of equipment oriented toward the oil and gas industry;

**(L)**    IPU SOTEP - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources belonging to Sotep Sociedade Técnica de Perfuração S.A., oriented toward the specialized supply of services and solutions in the oil market;

**(M)**    IPU PREST - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources belonging to Prest Perfurações Ltda., oriented toward the specialized supply of services and solutions in the oil market;

**(N)**    IPU LUPATECH PERFURAÇÃO - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources belonging to Lupatech Perfuração e Completação Ltda., oriented toward the specialized supply of services and solutions in the oil market;

**(O)**    IPU IMÓVEL NOVA ODESSA – individual productive unit consisting of the property located in the city of Nova Odessa, São Paulo;

**(P)**    IPU IMÓVEL FELIZ - individual productive unit consisting of the property located in the city of Feliz, Rio Grande do Sul;

**(Q)**    IPU IMÓVEL CAXIAS DO SUL - individual productive unit consisting of the property located in the city of Caxias do Sul, Rio Grande do Sul;

**(R)**    IPU IMÓVEL MACAÉ - individual productive unit consisting of the property located in the city of Macaé, Rio de Janeiro;

**(S)**    IPU IMÓVEL CATU - individual productive unit consisting of the property located in the city of Catu, Bahia;

**(T)**    IPU SLICKLINE - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the provision of operating services with wire ("slickline") in oil and/or gas wells, water wells or other, as well as the leasing of equipment, accessories and tools;

**(U)**    IPU LIFTING FRAMES - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the provision of operating

services with Lifting Frames in oil and/or gas wells, water wells, etc. as well as the leasing of equipment, accessories and tools;

**(V)**  IPU CHAES HIDRÁULICAS - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the provision of services for pipe connection and disconnection as well as the leasing of equipment;

**(W)**  IPU NITROGENIO E FLEXITUBO - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward operations involving flexi-tube pipes and accessories in oil, gas or water wells and nitrogen pumping and gasification services;

**(X)**  IPU MICROFUSAO - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the manufacture and marketing of components for the valves industry;

**(Y)**  IPU OFICINAS - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources oriented toward the provision of preservation and general repair services for equipment, tools and materials, intended for finishing operations, testing wire, drilling and special services;

**(Z)**  IPU CAIXAS E CESTAS - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the leasing of metal basket-type cargo containers and skids;

**(AA)**  IPU LUEP - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources belonging to Lupatech Equipamentos e Serviços para Petróleo Ltda., oriented toward the specialized supply of services and solutions in the oil and gas market;

**(BB)**  IPU UGN - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the provision of services involving generating, compression and pumping units for atmospheric nitrogen;

**(CC)**  IPU WIRELINE - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, oriented toward the provision of intervention services in wells with wireline units;

**(DD)**  IPU SPTs (CATU) - individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources located in the city of Catu, Bahia, consisting of equipment oriented toward land drilling/production services, simple and multiple finishing and other activities involving oil, gas and water wells and auxiliary activities.

**(EE)**    IPU SPT's (SEAL) individual productive unit consisting of assets and/or rights and obligations and/or human resources and/or material resources, located in the States of Sergipe and Alagoas, consisting of equipment oriented toward ground drilling/production services simple and multiple finishing and other activities involving oil, gas and water wells, and auxiliary activities.

# APPENDIX A

## Economic-Financial Feasibility Analysis

*(Following is the Economic-Financial Feasibility Analysis for Lupatech S.A. – In Receivership, Lupatech – Equipamentos e Serviços para Petróleo Ltda. – In Receivership, Mipel Indústria e Comércio de Válvulas Ltda. – In Receivership, Amper Amazonas Perfurações Ltda. – In Receivership, Itacau Agenciamentos Marítimos Ltda. – In Receivership, Lochness Participações S/A – In Receivership, Matep S/A Máquinas e Equipamentos – In Receivership, Prest Perfurações Ltda. – In Receivership, Lupatech – Perfuração e Completação Ltda. – In Receivership, Sotep Sociedade Técnica de Perfuração S/A – In Receivership, Lupatech Finance Limited – In Receivership).*

**Exhibit "F"**

Pg. 13948



Receivers

TRIAL COURT JUDGE FOR THE 1ST COURT FOR BANKRUPTCY, RECEIVERSHIP AND ARBITRATION DISPUTES FOR THE DISTRICT OF SÃO PAULO/SP

COURT FILE #  1050924-67.2015.8.26.0100

"LUPATECH GROUP" RECEIVERSHIP

**ALTA ADMINISTRAÇÃO JUDICIAL LTDA.,** Receiver appointed in the receivership files of *LUPATECH S/A e Outras [Lupatech SA and others] ("Lupatech Group")*, pursuant to the provisions of Article 37, § 2 of Law # 11.101/05, does respectfully ask that the Minutes of the General Creditors Meeting held on November 18, 2015, upon the second summons, (**Doc. 01**) and the respective list of those in attendance (**Doc 02**) be attached.

In the Meeting. the Companies Being Reorganized presented revisions to the Reorganization Plan originally presented on pages 6938-7001. These revisions may be verified in the following provisions: Chapter IV, Clause 4.1.5; Chapter VIII, Clause 8.1 and Clause 8.2.1; Chapter VIII, Clause 0.3 and Clause 9.4.2; and Economic-Financial Feasibility Analysis, per the final version of the Reorganization Plan, annexed hereto (**Doc. 03**).

Page 1 of 4

[letterhead contact information on each page]

[Text up the right margin on each page: This document was recorded on November 23, 2015 at 5:16 p.m., and is a copy of the original digitally signed by the Sao Paulo Court of Justice and Afonso Rodeguer Neto. The original is available at https://esaj.jus.br/esaj; enter the case number 1050924-67.2015.8.26.0100 and code 17C7E9F.

.

Pg. 13949



Receivers

In attendance at the Meeting after the second summons were 922 creditors representing an amount owed of R$ 471,348,756.55 (**Doc 04**).

It should be noted that the only Class II creditor on the Creditors List on pages 10,863-10,888 (BANCO NACIONAL DE DESENVOLVIMENTO ECONÓMICO E SOCIAL) was not considered for purposes of verifying the quorums for summons and deliberation, pursuant to Article 43 of Law # 11.101/05.

Furthermore, For the purposes of calculating the creditors' votes, those abstaining at the time of the vote and contained on the attached List (**Doc. 05**) were not considered for purposes of calculating the final percentages of the votes.

In the Meeting following the second summons, taking into consideration the response by the creditors to suspending the process of the Meeting for one week, the vote was opened to creditors in attendance. **Suspension of the proceedings <u>was not approved</u>,** per the quorum indicated in the minutes (**Doc 01**) and on the attached List (**Doc. 06**), as well as in the following table and graph:

| Suspension of Creditors; Meeting for one Week | | | | |
|---|---|---|---|---|
| | Total in R$ from creditors in attendance with voting rights | YES | NO | ABSTAINING |
| Class I | 5,830,295.13 | -- | 5,727,289.38 | 103,005.75 |
| Class III | 458,752,466.74 | 58,896,689.64 | 213,332,421.55 | 186,523,355.55 |
| Class IV | 6,765,994.68 | -- | 6,696,530.11 | 69,464.57 |
| TOTAL | 471,348,756.55 | 58,896,689.64 | 225,756,241.04 | 186,695,825.87 |
| PERCENTAGE | 100.00% | 20.9% | 79.31% | - |

[Text in graph: Total - Values. 0.00%, 20.69%, 79.31%
Pending, Rejected, Approved[

.



Receivers

Then. after the questions and clarifications transcribed in the minutes, the **General CREDITORS MEETING approved, by majority vote, the Reorganization Plan and its revisions,** per the quorum indicated in the minutes (**Doc. 01**) and in the attached List (**Doc. 07**), as well as in the following tables and graphs:

| Reorganization Plan Approval | | | | | | |
|---|---|---|---|---|---|---|
| | Total in R$ from creditors in attendance with voting rights | YES | YES % | NO | NO % | ABSTAINING |
| Class III | 458,752,466.74 | 160,550,435.07 | 73.98% | 56,482,588.70 | 26.02% | 249,718,442.97 |

[Text in graphics:]
CLASS I CREDITORS (UNSECURED) - Values, 0.00%, 26.02%, 73.98%
Pending, Rejected, Approved

| Pattern: Reorganization Plan Approval - Head Count | | | | | | |
|---|---|---|---|---|---|---|
| | Total in R$ from creditors in attendance with voting rights | YES | YES % | NO | NO% | ABSTAINING |
| Class I | 759 | 757 | 99.87% | 1 | 0.13% | 1 |
| Class III | 68 | 43 | 68.25% | 20 | 31,75% | 5 |
| Class IV | 85 | 79 | 85.04% | 15 | 15.96% | 1 |
| TOTAL | 922 | 879 | -- | 36 | -- | 7 |

[Text in graphics:]
CLASS I CREDITORS - Number of Creditors 0.13%, 99.87%
Pending, Rejected, Approved

CLASS III CREDITORS (unsecured) - Number of Creditors 0.00%, 58.25%, 41.75%
Pending, Rejected, Approved

CLASS IV CREDITORS - Number of Creditors 0.99%, 85.08%, 15.96%
Pending, Rejected, Approved

.

Pg. 13951



Receivers

Lastly, we respectfully request this pleading be attached to the file.


Respectfully submitted


São Paulo, November 23, 2015


**ALTA ADMINISTRAÇÃO JUDICIAL LTDA.**

Afonso Rodeguer Neto

São Paulo Bar Association # 60/583


Eliza Fazan

Regional Acctg. Lic. 1SP194878/0

Lilian María de Freitas Souza Marques

São Paulo Bar Association # 319.455

.

**MINUTES OF GENERAL CREDITORS MEETING, SUMMONED FOR THE SECOND TIME, CALLED BY THE JUDGE OF THE 1ST COURT OF BANKRUPTCY, RECEIVERSHIP AND ARBITRATION DISPUTES FOR THE DISTRICT OF SÃO PAULO/SP, IN THE RECEIVERSHIP FILES OF LUPATECH S/A; LUPATECH - EQUIPAMENTOS E SERVIÇOS PARA PETROLEO LTDA.; MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA; AMPER AMAZONAS PERFORAÇÕES LTDA.; ITACAU AGENCIAMENTOS MARÍTIMOS LTDA.; LOCHNESS PARTICIPAÇÕES S/A' MATEP S/A MÁQUINAS E EQUIPAMENTOS; PRESTO PERFORAÇÕES LTDA.; LUPATECH PERFURACOES E COMPLETAÇÃO LTDA.; STEP SOCIEDADE TECHNICAL DE PERFURAÇÃO S/A AND LUPATECH FINANCE LIMITED. Case # 1050924-67.2015.8.26.0100.**

On November 18, 2015, at 3:10 p.m., at the Convention Center of the São Paulo Business Center (CENESP), at Avenida María Coelho Aguiar, 215, Block G, Jardim São Luis, São Paulo/SP, postal code 05804-900, under the Chairmanship of the Receiver, Alta Administração Judicial Ltda., represented by Afonso Rodeguer Neto, registered with the São Paulo bar association under # 60.583, and appointed by the Judge of the 1st Court of Bankruptcy, Receivership and Arbitration Disputes for the District of São Paulo/SP, in the case referred to in the header, the proceedings were opened of the General CREDITORS MEETING, called for the second time, for Lupatech Group, formed of the companies indicated in the header, now considered Companies Being Reorganized.

An attendance list was drawn up, containing the representatives and attorneys of the Companies Being Reorganized and the creditors on the attendance list for all signing and attached to these minutes.

The representative of the Receiver declared the General CREDITORS MEETING convened after the second summons, pursuant to Article 37, § 2, *in fine,* of Law # 11.101/05, meaning regardless of the existence of a minimum number of creditors. In any event, the quorum was projected on the screen, in accordance with the attached attendance list, for the information of those in attendance.

Then, the representative of the Receiver invited the representative of the creditor Shearman & Sterling LL Consultores em Direito Estrangeiro/Direito Norte-Americano, Dr. Matheus Henrique Sucupira Traballe, attorney registered with the Bar Association under number 301.223, to act as secretary, and he accepted the position and read the call notice.

The Receiver Representative then explained about the agenda, in accordance with the terms of the call notice. The Receiver Representative asked those present about interest  in the creditors forming a Creditors Committee. There was no response from anyone present, so the proceedings were held according to the agenda.

The representative of the Companies Being Reorganized, Mr. Ricardo Doebeli, requested the floor and was given it by the Chair of the Meeting, having made a Power Pont presentation projected on the screen, visible to all in attendance. The presentation was about management, activities of the Companies Being Reorganized., recent history of the company and next steps

[Footer: Minutes of the General CREDITORS MEETING - 11-18-2015  LUPATECH GROUP] [signatures[

.

for the recovery of the companies. Lastly, an explanation and summary was given of the Reorganization Plan proposed by the Companies Being Reorganized. The plan was set forth in detail to those present by the representative of the Companies Being Reorganized, including that referring to the specific revisions to the plan originally presented, the entire contents of which are attached hereto.

Then, the attorney of the Companies Being Reorganized, Dr. Paulo Fernando Campana Filho, requested the floor and explained that the assets that assets to be sold will not be used for any other purposes in the plan (such as paying creditors or offered as collateral).

The Receiver Representative gave the floor to the creditors present to request any clarifications about the reorganization plan.

Banco Bradesco S/A, represented by Dr. Carlos Augusto Nascimento, asked whether the sale value of the assets used as collateral will be sufficient to settle the loan with collateral after the call for working capital  and still pay creditors; whether any remaining amount from the sale will be used it pay the creditors; whether it would be possible to determine for which class of creditors the remaining resources would be used; whether there is an appraisal of the assets used as collateral.

The representative of the Companies Being Reorganized, Mr. Ricardo Doebeli, explained that: the balance exceeding the amount of the collateral will be used to pay the creditors and for the working capital of the Companies Being Reorganized; payment will be made to the creditors according to the reorganization plan, observing the deadline set respectively for each class and ensuring that the remaining amounts will be used as set forth in the accounts of the Companies Being Reorganized; all the assets of the Companies Being Reorganized have appraisals, which are attached to the files with the reorganization plan.

The creditor Financiadora de Estudos e Projetos - FINEP spoke through its attorney, Dr. Marcos Moura de Souza, and proposed that, because of the revisions to the Plan submitted by the Companies Being Reorganized, a vote be taken on a proposed suspension of the Meeting so the creditors can analyze the revisions.

The representative of the Companies Being Reorganized, Dr. Ricardo Doebeli, stated that the revisions to the plan are not substantial and favor carrying out the plan. He stressed the importance of haste in streamlining the reorganization plan vote so the Companies Being Reorganized can focus of carrying out the plan, which benefits the creditors directly.

To meet the interests of the creditors and the Companies Being Reorganized, the Receiver Representative  decided to suspend the Meeting for 3 Minutes so those present could analyze the revisions to the plan submitted by the Companies Being Reorganized in this meeting.
The proceedings were suspended for thirty minutes.

.

Pg. 13954

The meeting was resumed at 5:10 pm., and the floor was given to the creditor FINEP, which reiterated that it was interested in suspending the meeting for one week.

Next, the Receiver Representative placed the issue of requesting a suspension of them meeting for one week, so the proceedings would resume on November 25, 2015, at the same time and place, up for a vote.

Votes were obtained from the creditors with voting rights, pursuant to Law # 11.101/05, and 20.69% of creditors present voted to suspend the meeting, so the proposal to suspend the meeting was rejected. The documents related to the votes and abstentions by the creditors present are attached to these minutes.

The Receiver Representative again gave the floor to the creditors in attendance to raise any questions about the recovery plan and other issues of interest to the creditors.

The creditor Banco Bradesco S/A, through its representative, asked wither the sale of the assets will be based on any minimum target appraisal amount. The Receiver Representative, Mr. Ricardo Doebeli, said that the appraisal of the assets was already done and that the award will be a reference for any sale of assets, pursuant to the law. He further emphasized that the plan includes projections for the sale of assets, which will be respected.

After these clarifications, the Meeting said it was in a position to deliberate and vote on the reorganization plan.

In compliance with the agenda, the Receiver Representative placed up for vote the plan presented by the Companies Being Reorganized, with the revisions they presented, with the entire contents of the revised plan attached to these minutes and to the Receivership files. The votes were gathered from the creditors with voting rights, pursuant to Law # 11.101/05, and the plan was approved in full in the following proportion of votes:

(a) Head count
1.2) Class I: 99.87%
a.2) Class III: 68.25%
a.3) Class IV: 84.04%

(b) Count by value: Class III: 73.98%

The documents concerning the votes and abstentions of the creditors present are attached hereto/

.

Pg. 13955

The floor was given to the attorney for the Companies Being Reorganized, Dr. Thomas Benes Felsberg, who noted that the Plan was approved in 5 months and that this was only possible due to the efficiency of the Trial Judge for the case, Dr. Daniel Camio Costa, the receiver, the Lupatech team, the attorneys from Felsberg Advogados and the collaboration of BR Partners.

Banco BMG S/A asked for the floor through its attorney, Andre da Silva Sacramentio, and it was granted by the Chair of the meeting. The creditor made the following reservations: that it did not waive its guarantees, that it does not agree with the suspension or lapse in any performance under way and he repeated the terms of its challenge to credit pending a ruling.

The Receiver Representative offered the floor to those present and as there was nothing further to be addressed, the Meeting was suspended for the time needed to draw up these minutes. Then, the Secretary read the minutes, which were approved by the creditors present, in accordance with Article 37, § 7 of Law # 11.101.05.

São Paulo, November 18, 2015
[signature]
**ALTA ADMINISTRAÇÃO JUDICIAL LTDA.,**
**RECEIVER**
Afonso Rodeguer Neto Bar Association 60.583

[signature]
Secretary
**SHEARMAN & STERLING LL CONSULTORES EM DIREITO ESTRANGEIRO/DIREITO NORTE-AMERICANO**
p.p.  Matheus Henrique Sucupira Traballe, Bar Association # 301.223

[signature]
**Class I Creditor:**
**MACHADO MEYER, SENDACZ E OPICE ADVOGADOS**
p.p. Carolina Mascarenhas, Bar Association #303.851

[signature]
**ALEX ARMSTRONG  DE SOUSA**
ID Card: 1972884-SSP/RN

[signature]
**Class I Creditor:**
**BANCO NACIONAL DE DESENVOLVIMENTO ECONÓMICO E SOCIAL**
p.p. EDUARDO PONTIERI, Bar Association # 234.635

[signature]
**Class III Creditor:**
**BBTUR VIAGENS E TURISMO** LTDA
p.p. Mauricio Lourenço Cantagallo, Bar Association # 253.122

.

Pg. 13956

THIS SIGNATURE PAGE IS AN INTEGRAL PART OF THE MINUTES OF THE GENERAL CREDITORS MEETING FOR LUPATECH GROUP, HELD AFTER ITS SECOND SUMMONS, DESIGNATED BY THE JUDGE OF THE 1ST COURT FOR BANKRUPTCY, RECEIVERSHIP AND ARBITRATION DISPUTES FOR THE CAPITAL OF THE STATE OF SÃO PAULO, IN THE RECEIVERSHIP FILES NUMBERED 1050924-67.2015.8.26.0100, HELD ON NOVEMBER 18, 2015,

**GPCM LLC** [signature]

p.p. Jose Eduardo Tavanti Junior, São Paulo Bar Association # 299.907

**Class IV Creditor:**

[signature]

**L. FERNANDEZ REPRESENTAÇÕES - EPP**                    [signature]

Luiz Antonio Fernandes, Tax ID # 013.170.058-80          [illegible handwriting]

                                                          Flavia Alves Rodrigues

**RENOBAN INDUSTRIA COMERCIO SERVIÇOS**                   Bar Association 123.846

p.p. Tuanny Thais de Oliveira Fonseca, Pernambuca Bar Association # 34.821

**Representatives of the Companies Being Reorganized:** (LUPATECH S/A; LUPATECH - EQUIPAMENTOS E SERVIÇOS PARA PETROLEO LTDA.; MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA; AMPER AMAZONAS PERFORAÇÕES LTDA.; ITACAU AGENCIAMENTOS MARÍTIMOS LTDA.; LOCHNESS PARTICIPAÇÕES S/A' MATEP S/A MÁQUINAS E EQUIPAMENTOS; PRESTO PERFORAÇÕES LTDA.; LUPATECH PERFURACOES E COMPLETAÇÃO LTDA.; STEP SOCIEDADE TECHNICAL DE PERFURAÇÃO S/A AND LUPATECH FINANCE LIMITED).

Thiago Dias Costa, São Paulo Bar Association # 292.344 [signature]          [signature]

Ricardo Doebeli [signature]

.

[Translation on following pages:]

Table heading:

**GENERAL CREDITORS MEETING - LUPATECH GROUP - 11-18-2015**

**ATTENDANCE LIST - CREDITORS**

**A-C,  D-H, I-L, M-P, Q-T, U-Z**

Column headings, left to right:

TAX ID, CLASS, NAME OF REPRES., NAME OF ATTY., DOCUMENT, SIGNATURE

Starting on Pg. 14116 (Page 169 of source document):

**GENERAL CREDITORS MEETING - LUPATECH GROUP - 11-18-2015**

**ATTENDANCE LIST - CREDITORS**

Column headings, left to right:

NAME OF ATTORNEY, ATTORNEY DOCUMENT, SIGNATURE

Column headings, left to right:

NAME OF CREDITOR, ID #, CLASS

Starting on Page 14196 (Page 186 of the source file):

***AssembLex - AGC Automation***

Minutes of the meeting

***Assambleia LUPATECH - Second Summons***

São Paulo, 11-18-2015

Attendees (922)

Employees

Starting  on Page 14224 (Page 214 in the source):

Quirografário = Unsecured

Starting  on Page 14227 (Page 217 in the source):

MICROEMPRESA - MICROBUSINESS

Starting  on Page 14231 (Page 221 in the source):

ABSTENTIONS

MEETING SUSPENSION

Class I, Class III, Class I

REORGANIZATION PLAN

.

Class I, Class III, Class IV

Starting on Page 14252 (Page 222 in the source):
***AssembLex - AGC Automation***
***Do you approve the Reorganization Plan? - Reorganization Plan***
Employee

.

**Exhibit "G"**

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**
DISTRICT OF SÃO PAULO
CENTRAL CIVIL COURT
1ST BANKRUPTCY AND REORGANIZATION COURT
Praça João Mendes s/no., Sala 1608, Centro – CEP 01501-900, Telephone: (11) 2171-6505, São Paulo-SP – E-mail: sp1falencias@tj.sp.gov.br
**Public Service Hours: 12:30-7:00**

Pg. 3140

| DECISION |
| --- |

| | |
| --- | --- |
| Electronic Proceeding No.: | **1050924-67.2015.8.26.0100** |
| Type – Matter: | **Reorganization - Reorganization and Bankruptcy** |
| Petitioner: | **Lupatech – Equipamentos e Serviços para Petróleo Ltda. et al.** |
| Defendant: | **Lupatech S/A et al.** |

CONCLUSION

On **June 22, 2015**, I make these records under advisement to the Honorable Judge. I, Márcio Antonio de Oliveira, Registration No. 815.745-9.

Judge: **Daniel Carnio Costa**

Examined.

   **LUPATECH – EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA., CNPJ [national register of legal entities] 03.141.023/0001-04, LUPATECH S/A, CNPJ 89.463.822/0001-12, MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA., CNPJ 07.743.815/0001-00, AMPER AMAZONAS PERFURAÇÕES LTDA., CNPJ 05.488.549/0001-90, ITACAU AGENCIAMENTOS MARÍTIMOS LTDA., CNPJ 29.416.666/0001-07, LOCHNESS PARTICIPAÇÕES S/A, CNPJ 33.311.788/0001-06, MATEP S/A MÁQUINAS E EQUIPMAMENTS, CNPJ 33.311.788/0001-06, PREST PERFURAÇÕES LTDA. CNPJ 05.836.901/0001-31, LUPATECH PERFURAÇÃO E COMPLETAÇÃO LTDA., CNPJ 15.676.893/0003-29, SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S.A., CNPJ 15.129.646/0001-40 AND LUPATECH FINANCE LTD.**, called the "Lupatech Group" request reorganization on May 25, 2015.

   The documents attached to the records prove that the petitioners satisfy the legal requirements to request reorganization, in accordance with Art. 48 of Law No. 11.101/05. The initial petition was adequately prepared, pursuant to the exact terms required by Art. 51 of Law No. 11.101/05. In summary, the petition is acceptable for its processing to be granted since the legal requirements (Articles 47, 48 and 51 of Law 11.101/2005) are present, and the debtor's ability to overcome the "economic-financial crisis" has been confirmed.[1]

   Still pending judgment is the conflict of venue raised by the court of the 1st Court of Nova Odessa, even though the court obtaining jurisdiction is from the 2nd Court

---

[1] The reorganization set forth by Law 11.101/05 is a clear manifestation of the global tendency to mitigate the powerful nature of the rights of creditors in favor of the preservation of the company, as a way of satisfying the universal right of development of people, declared by the UN in 1988, and on the national level, consecrated as a fundamental objective of our Republic, in Art. 3, II of the FC. The economy and ownership are not the masters, and yes, instruments of the constitutional purpose of ensuring for all a dignified existence according to the principles of social justice, pursuant to Art. 170 of the FC. Art. 1, IV of the FC expressly recognizes as a fundamental principle of our Democratic State of Law the social values of free enterprise. The spirit of the institution of Reorganization and its compliance with the constitution are consistent with what Ricardo Sayeg and Wagner Balera maintain: "*Economic neoliberalism, with no humanist checks and calibration, is not capable of correcting negative externalities such as adequately harmonizing the externalities, especially those that are wanting, unequal and considered reciprocally. Such calibration is necessary and must affect the universal nature of the exercise of the natural subjective rights of ownership, making them relative, contrary to following the bias of the neoliberal, in which this exercise leans toward absolute.*" (O Capitalismo Humanist, Kbr: SP, 2011, p. 178)

[right margin:] This document was released in the records on June 22, 2015 at 5:41 p.m. by Márcio Antonio de Oliveira. It is a copy of the original signed digitally by DANIEL CARNIO COSTA. For access to the original, go to https://esaj.tjsp.jus.br/esaj, enter proceeding 1050924-67.2015.8.26.0100 and code 128B7A8.

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**

DISTRICT OF SÃO PAULO

CENTRAL CIVIL COURT

1ST BANKRUPTCY AND REORGANIZATION COURT

Praça João Mendes s/no., Sala 1608, Centro – CEP 01501-900, Telephone: (11) 2171-6505, São Paulo-SP – E-mail: sp1falencias@tj.sp.gov.br

**Public Service Hours: 12:30-7:00**

Pg. 3141

of that district due to the confirmation of the extrajudicial reorganization plan, the delay in granting the reorganization proceeding may be prejudicial to the continuation of the petitioners' businesses.

In that vein, considering that the Honorable Court of São Paulo determined that this court decides on urgent matters until the competence is defined, granting the reorganization proceeding is a measure that is carried out urgently without prejudice to the subsequent delivery of the records to the competent court.

Therefore, in accordance with Art. 52 of Law 11.101/2005, I GRANT the reorganization of the companies **Lupatech – Equipamentos e Serviços para Petróleo Ltda., CNPJ 03.141.023/0001-04, Lupatech S/A, CNPJ 89.463.822/0001-12, Mipel Indústria E Comércio de Válvulas Ltda., CNPJ 07.743.815/0001-00, Amper Amazonas Perfurações Ltda., CNPJ 05.488.549/0001-90, Itacau Agenciamentos Marítimos Ltda., CNPJ 29.416.666/0001-07, Lochness Participações S/A, CNPJ 09.443.937/0001-06, Matep S/A Máquina e Equipamentos, CNPJ 33.311.788/0001-06, Prest Perfurações Ltda. CNPJ 05.836.901/0001-31, Lupatech Perfuração e Completação Ltda., CNPJ 15.676.893/0003-29, Sotep Sociedade Técnica de Perfuração S.A., CNPJ 15.129.646/0001-40 and Lupatech Finance Ltd.**

Therefore,

1) As the bankruptcy trustee (Art. 52, I, and Art. 64) I appoint **Alta Administração Judicial Ltda.**, CNPJ No. 20.282.418/ 0001-46, represented by Afonso Rodeguer Neto, OAB/SP 60.583, address: Avenida Paulista, No. 1439, cj. 132, CEP 01311-926, Cerqueira Cesar, São Paulo/SP, for the purposes of Art. 22, III, and it must be notified so that the agreement is signed within 48 (forty-eight) hours under penalty of replacement (Articles 33 and 34) pursuant to Art. 21, sole paragraph, of Law 11.101/05, with notification via institutional e-mail authorized:

1.1) The bankruptcy trustee must inform the court of the company's situation within 10 days, for the purposes of Art. 22, II, "a" (first part) and "c", of Law No. 11.101/05.

1.2) If it is necessary to hire assistants, (accountant, attorneys, etc.), it must present the contract within 10 days.

1.3) The bankruptcy trustee is responsible for observing the regularity of the case and compliance with the periods by the parties under reorganization.

1.4) Within the same period indicated in Item 1.1, the bankruptcy trustee must submit his offer of fees.

1.5) With respect to the monthly reports, which should not be confused with the report ordered above in Item 1.1, the bankruptcy trustee must record the first report as corresponding to reorganization, while they must not be attached in the main records, since the subsequent monthly reports must always be directed to the incident already established.

2) In accordance with Art. 52, II of Law 11.101/2005, I order the "exemption from presentation of certificates of no overdue tax liability so that the debtors can exercise their activities, except for hiring with the government or receiving tax or public credit incentives or benefits," in the event the debtor, in accordance with Art. 69 of the LRF [tax responsibility law], that is to say the business name,

[right margin:] This document was released in the records on June 22, 2015 at 5:41 p.m. by Márcio Antonio de Oliveira. It is a copy of the original signed digitally by DANIEL CARNIO COSTA. For access to the original, go to https://esaj.tjsp.jus.br/esaj, enter proceeding 1050924-67.2015.8.26.0100 and code 128B7A8.

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**
DISTRICT OF SÃO PAULO
CENTRAL CIVIL COURT
1ST BANKRUPTCY AND REORGANIZATION COURT
Praça João Mendes s/no., Sala 1608, Centro – CEP 01501-900, Telephone: (11)
2171-6505, São Paulo-SP – E-mail: sp1falencias@tj.sp.gov.br
**Public Service Hours: 12:30-7:00**

Pg. 3142

is followed by the expression "In Reorganization," also notifying the São Paulo Board of Trade [JUCESP] for the due annotations, with the parties under reorganization arranging the routing.

3) I order, in accordance with Art. 52, III of Law 11.101/2005, "**the suspension of all actions or executions against the debtors**" in accordance with Art. 6 of the LRF and "the respective records" must remain "in the court where they are processed, with the exception of those actions set forth in §§ 1, 2 and 7 of Art. 6 of that Law and those relative to credits executed in accordance with §§ 3 and 4 of Art. 49 of that same Law," with the **debtors** arranging competent communications (Art. 52, § 3).

4) I order, in accordance with Art. 52, IV of Law 11.101/2005, the debtors to submit **monthly** financial statements while the reorganization is under way, under penalty of dismissal of their bankruptcy trustees," and the first monthly financial statement must be recorded as corresponding to the reorganization, whereas they must not be attached to the main records, as the subsequent monthly financial statements must always be directed to the incident already established.

5) Send a communication, **by letter**, to the Federal Treasury and the treasuries of all states and municipalities where the debtor has facilities and offices (LRF, Art. 52, V), with the parties under reorganization arranging the routing.

6) The period for **proof of claims or divergences from the credit listed** (by the debtor) is 15 (fifteen) days from publication of the respective notice (LRF, Art. 7, § 1).

In this way, the notice referenced in Art. 52, § 1 of the LRF is sent, where, for the knowledge of all interested parties the tax liability must appear as well, with a warning of the periods of Art. 7, § 1 and Art. 55 of the LRF.

Considering that the parties under reorganization presented a draft of the list of creditors listed in the early stage, consistent with model in Art. 41 of Law No. 11.101/05, it must be useful to add the referenced draft with the terms of this decision, and notify the parties under reorganization by telephone or institutional e-mail, which is certified in the records, so that they can collect the amount of the publication expenses in the Diário Oficial Eletrônico [official electronic gazette] of the São Paulo Court of Justice, according to the number of characters, within 24 hours, under penalty of revocation.

The parties under reorganization must also arrange for publication of the notice in a newspaper with wide circulation within five days.

7) Any proof of claims or divergences from the credits listed by the debtor (Art. 7, § 2), that are sent to the bankruptcy trustee **must be digitized and sent directly to the bankruptcy trustee via e-mail ONLY at the address:** altaadmjudicical@uol.com.br created specifically for this purpose and reported in the notice to be published in accordance with Item 6 above.

I observe in this topic in particular with respect to the labor credits, that for any divergence or proof of claim, it is necessary for there to be a liquidated and enforceable labor judgment (circulated in the judicial district), with the Labor Court responsible for establishment of any amount to be reserved.

8) The reorganization plan must be presented within a period of 60 days, in accordance with Art. 53, under penalty of transformation of the reorganization case into bankruptcy.

[right margin:] This document was released in the records on June 22, 2015 at 5:41 p.m. by Márcio Antonio de Oliveira. It is a copy of the original signed digitally by DANIEL CARNIO COSTA. For access to the original, go to https://esaj.tjsp.jus.br/esaj, enter proceeding 1050924-67.2015.8.26.0100 and code 128B7A8.

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**

DISTRICT OF SÃO PAULO

CENTRAL CIVIL COURT

1ST BANKRUPTCY AND REORGANIZATION COURT

Praça João Mendes s/no., Sala 1608, Centro – CEP 01501-900, Telephone: (11) 2171-6505, São Paulo-SP – E-mail: sp1falencias@tj.sp.gov.br

**Public Service Hours: 12:30-7:00**

Pg. 3143

With the presentation of the plan, a notice is issued containing the notice in Art. 53, sole paragraph, of Law No. 11.101/05, with a period of 30 days for objections, and the parties under reorganization must provide, in the action of presenting the plan, a draft of the notice, including in electronic format, as well as the collection of the costs for publication.

9) If the list of creditors has still not been published by the bankruptcy trustee, such objections may be legitimately presented by those reported in the debtors' notice and who have claimed a proof of claim.

10) Once the list of creditors is presented by the bankruptcy trustee (Art. 7, § 2), any objections (Art. 8) must be recorded as corresponding to the reorganization, while they must not be attached in the main records (Art. 8, sole paragraph).

11) Finally, even though the initial petition is sufficiently prepared for the purpose of granting the reorganization request, I observe the need for the parties under reorganization to complement the initial documentation in order to provide within 10 days the documents pointed out in the previous expert opinion entered on pages 413/442, and remedy the divergences also pointed out in the specified expert opinion.

12) Let this be notified, including to the Public Prosecutor's Office.

It is notified.

São Paulo, **June 22, 2015**

---

**DOCUMENT SIGNED DIGITALLY IN ACCORDANCE WITH LAW 11.419/2009
AS PER THE PRINT IN THE RIGHT MARGIN**

---

[right margin:] This document was released in the records on June 22, 2015 at 5:41 p.m. by Márcio Antonio de Oliveira. It is a copy of the original signed digitally by DANIEL CARNIO COSTA. For access to the original, go to https://esaj.tjsp.jus.br/esaj, enter proceeding 1050924-67.2015.8.26.0100 and code 128B7A8.

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**
DISTRICT OF SÃO PAULO
CENTRAL CIVIL COURT
1ST BANKRUPTCY AND REORGANIZATION COURT
PRAÇA JOÃO MENDES S/NO., São Paulo-SP-CEP 01501-900
 **Public Service Hours: 12:30-7:00**

Pg. 14691

| | |
|---|---|
| Electronic Proceeding No.: | **1050924-67.2015.8.26.0100** |
| Type – Matter: | **Reorganization - Reorganization and Bankruptcy** |
| Petitioner: | **Lupatech S/A et al.** |
| Defendant: | **Lupatech S/A et al.** |

CONCLUSION

On **December 11, 2015**, I make these records under advisement to the Honorable Judge. I, Márcio Antonio de Oliveira, Registration No. 815.745-9.

Judge: **Daniel Carnio Costa**

Examined.

1. Page 13948/13951: concerning the request for reorganization made on May 25, 2105 by LUPATECH – EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA., CNPJ 03.141.023/0001-04, LUPATECH S/A, CNPJ 89.463.822/0001-12, MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA., CNPJ 07.743.815/0001-00, AMPER AMAZONAS PERFURAÇÕES LTDA., CNPJ 05.488.549/0001-90, ITACAU AGENCIAMENTOS MARÍTIMOS LTDA., CNPJ 29.416.666/0001-07, LOCHNESS PARTICIPAÇÕES S/A, CNPJ 09.443.937/0001-06, MATEP S/A MÁQUINAS E EQUIPMAMENTS, CNPJ 33.311.788/0001-06, PREST PERFURAÇÕES LTDA. CNPJ 05.836.901/0001-31, LUPATECH PERFURAÇÃO E COMPLETAÇÃO LTDA., CNPJ 15.676.893/0003-29, SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S.A., CNPJ 15.129.646/0001-40 AND LUPATECH FINANCE LTD., called the "Lupatech Group".

Processing of the request was granted on June 22, 2015.

The Meeting of Creditors was held and the reorganization plan presented by the parties under reorganization was approved with modifications in the three classes of creditors, with a legal quorum being observed. (Page 13952/14271).

It is the short report.

I give the reasons and decide.

The reorganization plan must be confirmed, while it was approved by the Meeting of Creditors in accordance with the criteria established by Art. 45 of Law No. 11.101/05.

Through a legal quorum, the creditors deliberated on the plan presented originally and the modifications proposed at the Meeting of Creditors, and they were sufficiently proven, clarified and assured for their approval.

The merit of the reorganization plan must be analyzed by the creditors at the Meeting of Creditors, and the court does not intervene in aspects of the plan related to the means of reorganization, forms of payment, time periods or discounts, among other things.

**1**

**115526-04.2014.8.26.0100- expert opinion**

[right margin:] This document was released in the records on December 11, 2015 at 6:15 p.m. It is a copy of the original signed digitally by DANIEL CARNIO COSTA.
For access to the original, go to https://esaj.tjsp.jus.br/esaj, enter proceeding 1050924-67.2015.8.26.0100 and code 18738F7.

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**
DISTRICT OF SÃO PAULO
CENTRAL CIVIL COURT
1ST BANKRUPTCY AND REORGANIZATION COURT
PRAÇA JOÃO MENDES S/NO., São Paulo-SP-CEP 01501-900
 **Public Service Hours: 12:30-7:00**

Pg. 14692

It is observed that the plan was approved, with alterations, by a majority of those belonging to Classes I, III and IV, the only ones voting.

In this vein, the statement of the Meeting of Creditors is sovereign over the merit of the plan and its form of approval and must be confirmed judicially, following the decision of the creditors made in a free and regular manner, with unambiguous awareness of all aspects of the reorganization plan and observance of the legal quorum for approval, with no indications of defect of consent or any other element that could invalidate the legality of the legal matter (error, deceitfulness, coercion, simulation or fraud).

I do not discern the existence of any illegal or abusive clauses.

The failure period concerns the merit of the plan, with the creditors being aware that failure to comply with the obligations subsequent to the two-year court inspection will not entail the automatic transformation of the reorganization into bankruptcy.

Under those terms, the reorganization plan approved by the creditors must be confirmed.

It is certain that the debtor did not attach to the records the certificates of no overdue tax liability, as required by Art. 57 of the LRF. Nevertheless, this requirement cannot automatically lead to a ruling of bankruptcy.

That is why, according to the system in effect, debtors under reorganization should present certificates of no overdue tax liability or proof of division of tax liability into installments, pursuant to the specific law to be published in accordance with Art. 68 of the LRF, as a condition for granting the reorganization.

It is certain that Law No. 13.043/14, which entered into force in November 2014, created division into installments specifically for companies in reorganization, but only with respect to federal taxes.

There is still no legislation related specifically to state and municipal taxes.

In that vein, while there is no complete system for equalization of the tax liability of companies in reorganization, it will not be possible to require presentation of the certificates specified in Art. 57 of the LRF as a condition for granting the reorganization request.

Under these terms, given the important social purpose of the law of preservation of the company, jobs and economic activity, we must dispense with the presentation of certificates of no overdue tax liability for the case in question.

It is emphasized that such dispensation will not harm public revenue considering that the tax credit is not subject to the reorganization plan and tax foreclosure is not suspended by the reorganization process.

I observe further that the option of division of federal taxes into installments adapted to companies under reorganization was brought by Law No. 13.043/14, which is in force currently and already settled. In this way, while it cannot be considered a prerequisite for

**2**

**115526-04.2014.8.26.0100- expert opinion**

[right margin:] This document was released in the records on December 11, 2015 at 6:15 p.m. It is a copy of the original signed digitally by DANIEL CARNIO COSTA.
For access to the original, go to https://esaj.tjsp.jus.br/esaj, enter proceeding 1050924-67.2015.8.26.0100 and code 18738F7.

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**
DISTRICT OF SÃO PAULO
CENTRAL CIVIL COURT
1ST BANKRUPTCY AND REORGANIZATION COURT
PRAÇA JOÃO MENDES S/NO., São Paulo-SP-CEP 01501-900
**Public Service Hours: 12:30-7:00**

Pg. 14693

granting reorganization, it is a law that creates division into installments specific to companies under reorganization to which the party under reorganization may adhere.

It is highlighted, finally, that granting the processing of the reorganization does not create harm for public revenue since tax liabilities are not subject to bankruptcy proceedings.

That being said, on the basis of Art. 58 of Law No. 11.101/05, I grant reorganization to LUPATECH – EQUIPAMENTOS E SERVIÇOS PARA PETRÓLEO LTDA., CNPJ 03.141.023/0001-04, LUPATECH S/A, CNPJ 89.463.822/0001-12, MIPEL INDÚSTRIA E COMÉRCIO DE VÁLVULAS LTDA., CNPJ 07.743.815/0001-00, AMPER AMAZONAS PERFURAÇÕES LTDA., CNPJ 05.488.549/0001-90, ITACAU AGENCIAMENTOS MARÍTIMOS LTDA., CNPJ 29.416.666/0001-07, LOCHNESS PARTICIPAÇÕES S/A, CNPJ 09.443.937/0001-06, MATEP S/A MÁQUINAS E EQUIPMAMENTS, CNPJ 33.311.788/0001-06, PREST PERFURAÇÕES LTDA. CNPJ 05.836.901/0001-31, LUPATECH PERFURAÇÃO E COMPLETAÇÃO LTDA., CNPJ 15.676.893/0003-29, SOTEP SOCIEDADE TÉCNICA DE PERFURAÇÃO S.A., CNPJ 15.129.646/0001-40 AND LUPATECH FINANCE LTD., pointing out their compliance with the terms of Article 59-61 of the same law.

The payments must be made directly to the creditors, which must report their banking information directly to the parties under reorganization, with any deposits in the records being prohibited henceforth.

2. Pages 14340/14345: interested parties must raise their proof of claim as a procedural incident in accordance with Law No. 11.101/05.

3. Pages 14351 and 14453/14454: considering that there were no objections, and the advantages that the deal will bring to all the parties, as demonstrated by the bankruptcy trustee on pages 10974/10983, and considering the statements of the Public Prosecutor's Office (page 14351) and Banco Votorantim (pages 14453/14454), I authorize the party under reorganization to transfer 3,600,000 ordinary shares that it holds in the share capital of UNIFIT – Unidade de Fios Industrias de Timbaúba S.A. to Gulf Capital Américas e Participações Ltda. according to the request on pages 9411/9427.

4. With respect to the accounting presented by the party under reorganization (pages 10536/10537), given the favorable opinion of the bankruptcy trustee (pages 10974/10973) and the Public Prosecutor's Office (page 14351), I pronounce them approved.

5. Pages 14352/14366 (statement of the party under reorganization concerning the claims of Petrobrás – page 13924/13936) and pages 14499/14665 (statement of the bankruptcy trustee): the records show that the party under reorganization leases the referenced equipment to Petrobrás, which is not making the payments owed. The claims of Petrobrás, as justification for blocking the amounts owed unequivocally to the party under reorganization, do not merit protection. It is demonstrated in the records that there is no reason for Petrobrás to condition the payments owed under the leasing of equipment to the presentation of import clearance statements. This is because the operation of importing machinery (carried out by the party under reorganization) is not related to the contract to lease goods to Petrobrás. The payments owed by Petrobrás to the party under reorganization arise from the lease and not the importation of the goods. Therefore, the manner in which the importation of the goods was carried out (temporary admission regime) does not interfere with the leasing relationship, and does not condition the payment of the lease to presentation of the import statements or ROF (record of

3

**115526-04.2014.8.26.0100- expert opinion**

[right margin:] This document was released in the records on December 11, 2015 at 6:15 p.m. It is a copy of the original signed digitally by DANIEL CARNIO COSTA.
For access to the original, go to https://esaj.tjsp.jus.br/esaj, enter proceeding 1050924-67.2015.8.26.0100 and code 18738F7.

SP COURT OF JUSTICE
FEBRUARY 3 [illegible]

**COURT OF JUSTICE OF THE STATE OF SÃO PAULO**
DISTRICT OF SÃO PAULO
CENTRAL CIVIL COURT
1ST BANKRUPTCY AND REORGANIZATION COURT
PRAÇA JOÃO MENDES S/NO., São Paulo-SP-CEP 01501-900
**Public Service Hours: 12:30-7:00**

financial transactions).  In view of what is presented, I grant the request of the parties under reorganization, in accordance with the statement of the bankruptcy trustee. Petrobrás is notified and ordered to release the payments owed within 24 hours with attention to the debtors' urgent need for cash, principally based on the approval of the Reorganization Plan and obligation to pay employment compensation for the current period.

6. Pages 14367/14371: let it be noted.

7. Pages 14372/14441: let it be noted.

8. Pages 14442/14452: let it be noted.

9. Pages 14455/14468: interested parties must raise their proof of claim as a procedural incident in accordance with Law No. 11.101/05.

10. Pages 14469/14495: interested parties must raise their proof of claim as a procedural incident in accordance with Law No. 11.101/05.

Publish. Record. Notify

São Paulo, **December 11, 2015**

---

**DOCUMENT SIGNED DIGITALLY IN ACCORDANCE WITH LAW 11.419/2009
AS PER THE PRINT IN THE RIGHT MARGIN**

---

**115526-04.2014.8.26.0100- expert opinion**

**Exhibit "H"**

# LUPATECH

## LUPATECH S.A.

Corporate Taxpayers' Registry (CNPJ/MF) No. 89.463.822/0001-12
State Registration (NIRE) No. 35.3.0045756-1
Publicly-held Company – BMF&BOVESPA Novo Mercado

## MINUTES OF THE MEETING OF THE BOARD OF DIRECTORS 008/2015

**1.     DATE, TIME, AND PLACE:** May 25, 2015, at 9 a.m., at the Company's office, in the city of São Paulo, State of São Paulo, at Avenida Maria Coelho Aguiar, n° 215, Bloco B, 5° andar, Jardim São Luís, CEP 05804-900.

**2.     CALL NOTICE AND ATTENDANCE:** the call notice was dismissed due to the attendance of all members of the Board of Directors.  The meeting was installed in accordance with the quorum for installation and resolutions, pursuant to Article 22, paragraph 3 of the Company's Bylaws.

**3.     BOARD:** Celso Fernando Lucchesi (Chairman); Ricardo Doebeli (Secretary).

**4.     AGENDA AND RESOLUTIONS:** pursuant to the Company's Bylaws, after the analysis of the relevant documents and discussion of the items of the agenda, the board members in attendance, without any reservation or restriction, unanimously approved the following resolutions:

> **(a)**  as a result of the adverse scenario of the oil and gas industry, brought about by the drastic reduction in oil prices in the international market, combined with the crisis at Petrobras, the main customer of the Company, negatively affecting the entire supply chain of the industry, notwithstanding the efforts of Management in the negotiation with lenders and in the search for potential investors to balance working capital and CAPEX requirements in order to resume, more vigorously, the Company's operating activities, the Board Members decided to approve, on an urgent basis, the request for court-supervised reorganization of the Company, pursuant to Article 122, sole paragraph of Law No. 6.404/76.  The request for court-supervised reorganization aims at protecting the value of the Company, its social role, and the development of the economic activity, orderly meeting the interests of the Company's lenders and shareholders and responsibly creating a provision for the assets.  This resolution includes, in addition to the Company, the following direct or indirect subsidiaries:

> - Lupatech Finance Limited;
> - Amper Amazonas Perfurações Ltda.;
> - Itacau Agenciamentos Marítimos Ltda.;
> - Lochness Participações S.A.

- Lupatech – Equipamentos e Serviços para Petróleo Ltda.;

- Lupatech – Perfuração e Completação Ltda.;

- Matep S.A. Máquinas e Equipamentos;

- Mipel Indústria e Comércio de Válvulas Ltda.;

- Prest Perfurações Ltda.;

- Sotep Sociedade Técnica de Perfuração S.A.;

**(b)** the acceptance of the resignation request of **Luiz Augusto Marciano da Fonseca**, Independent Board Member, presented on May 15, 2015, which resignation is retroactive to such date.

As a result of the above resolutions, as of May 15, 2015, the Board of Directors is comprised of the following members: (1) Celso Fernando Lucchesi, Chairman of the Board; (2) Caio Marcelo de Medeiros Melo, Sitting Member; (3) Cesar Guillermo Gonzalez Neuman, Sitting Member; (4) Ricardo Doebeli, Sitting Member; and (5) Simone Anhaia Melo, Sitting Member.

**(c)** as a result of the resolution taken in Item (i), and in accordance with the Company's Bylaws and Article 122, sole paragraph of Law No. 6.404/76, the calling of an extraordinary shareholders' meeting to ratify the request for court-supervised reorganization of the Company and its direct or indirect subsidiaries listed above;

**(d)** the authorization to the Company's Officers to take the measures and practice the acts required to give effect to the matters approved, and ratify any acts already practiced, until the date hereof.

**5.     CLOSING:** With nothing further to discuss, the meeting was closed, these minutes were drafted, read, found conforming, and signed by all.  Paulo (SP), May 25, 2015. Celso Fernando Lucchesi, Chairman. Ricardo Doebeli, Secretary. Attending Board Members: Celso Fernando Lucchesi, Caio Marcelo de Medeiros Melo, Ricardo Doebeli, Cesar Guillermo Gonzalez Neuman, and Simone Anhaia Melo.


/signature/
Ricardo Doebeli
Secretary