UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

LUPATECH S.A., *et al.*,

Debtors in a Foreign Proceeding.

**FOR PUBLICATION**

Case No. 16-11078 (MG)
Chapter 15

**MEMORANDUM OPINION GRANTING FINAL RELIEF AND ORDERING THAT THE CASES BE CLOSED ON THE TERMS PROVIDED IN THE ACCOMPANYING ORDER**

*A P P E A R A N C E S:*

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
*Attorneys for the Foreign Representative*
875 Third Avenue, 9th Floor
New York, New York 10022
By:    Steven B. Eichel, Esq.

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

As the history of these chapter 15 cases shows, sometimes the interplay between a foreign proceeding that is subject to appellate challenge in the foreign country, and the relief needed to effect the consummation of a plan approved by the foreign court and to close the chapter 15 cases, can seemingly lead to a ping-pong match requiring new rulings from both courts on largely non-controversial issues, before an approved reorganization plan can be successfully consummated. Pending before the Court in these jointly administered chapter 15 cases is a Motion (the "Motion," ECF Doc. # 46) for entry of an order recognizing and enforcing the December 2018, September 2019, and November 2019 Orders (as defined below) within the territorial jurisdiction of the United States; authorizing and directing certain U.S. Intermediaries to carry out any ministerial actions that are required of them under the New Lupatech Plan and granting them protection for the performance of such actions; finding these cases to be fully

administered and closing these cases without prejudice; and granting such other relief as the Court deems just and proper.

The Motion was filed by Rafael Gorenstein, in his capacity as the authorized Foreign Representative (the "Foreign Representative") of Lupatech S.A. and its affiliated debtors (collectively, "Lupatech," or the "Debtors"). The Motion is supported by a declaration by Rafael Gorenstein. ("Gorenstein Declaration," ECF Doc. # 47.) The Motion is unopposed.

For the following reasons, the Motion is GRANTED and the cases are ordered to be closed on the terms provided in the separate accompanying order granting relief.

## I.    BACKGROUND

Lupatech S.A. is the direct or indirect parent company of each of the other Debtors. The Debtors form the "Lupatech Group," a provider of technical components and specialized services to the oil and gas industries. (Motion ¶ 5.)

### A.    Relevant Case Background

#### 1.    *The Original Lupatech Plan in the Foreign Court*

On August 24, 2015, the Debtors filed a judicial reorganization plan (the "Original Lupatech Plan") with the First Chamber of Bankruptcy, Judicial Recovery and Arbitration Disputes of the Comerca Forum of São Paolo (the "Foreign Court") to restructure their claims, including certain notes (the "Notes"), and provided four payment plans for unsecured creditors. (*Id.* ¶ 6.) The Original Lupatech Plan was approved by the requisite number of creditors, and on December 16, 2015, the Foreign Court entered its Order homologating (or approving) the plan (the "Original Homologation Order"). (*Id.* ¶¶ 7–8.) Two creditors subsequently filed appeals (the "Appeals"), alleging that the payment options contained in the Original Lupatech Plan violated Brazilian law. (*Id.* ¶ 9.)

      *2.*     *The Chapter 15 Cases*

On April 27, 2016 (the "Petition Date"), the Foreign Representative filed these chapter 15 cases by filing verified chapter 15 petitions in this Court. (*Id.* ¶ 10.) On the same day, the Foreign Representative filed a motion seeking entry of an order granting the chapter 15 petitions and recognizing the foreign proceeding in Brazil as a foreign main proceeding, recognizing and enforcing the Original Lupatech Plan and the Original Homologation Order, and granting additional relief (including authorizing certain U.S. Intermediaries to carry out ministerial actions required or necessary under the Original Lupatech Plan). (*Id.* ¶ 11.) On May 26, 2016, the Court granted the Foreign Representative's petition and motion, and entered its Order Granting Recognition of Foreign Main Proceeding and Certain Related Relief, including recognizing the Original Lupatech Plan. ("Recognition Order," ECF Doc. # 15, ¶ 12.)

      *3.*     *The New Lupatech Plan*

In June 2016, the 2nd Reserved Chamber of Business Law of the Court of Appeals of São Paulo granted the Appeals, annulled the Original Lupatech Plan, and ordered that several criteria should be complied with in a new judicial reorganization plan (the "Reversal"). (*Id.* ¶ 13.) On July 20, 2016, after the Foreign Representative informed the Court of the Reversal, the Court entered an Order Modifying the Recognition Order, suspending its previous recognition of the Original Lupatech Plan and Original Homologation Order. (ECF Doc. # 22; Motion ¶ 14.)

On September 5, 2016, the Debtors filed a modified restructuring plan (the "New Lupatech Plan," or the "Plan") with the Foreign Court, which, *inter alia*, provides only one payment option for unsecured creditors, consistent with Brazilian law and the Reversal. (Motion ¶ 15.)

3

With respect to Noteholders' Unsecured Claims (as defined in the New Lupatech Plan), consummation of the Plan requires (i) 50% of the amount of such claims to be paid in cash and (ii) 50% of the amount of such claims to be paid with Subscription Warrants (as defined in the New Lupatech Plan). (*Id.* ¶ 16.) The cash payment is to be effectuated by delivery of notes to such claimants. The Plan provides that after the Foreign Representative obtains approval of the New Lupatech Plan and approval from this Court "acknowledging the efficacy of the [New Lupatech] Plan," the current notes will be "cancelled by operation of law and replaced by New Notes to be issued by Lupatech subsidiary Lupatech Finance Limited" (the "Exchange"). (*Id.*) (internal quotation marks and citations omitted). Paragraph 6.4.5 of the New Lupatech Plan also provides that Subscription Warrants due to the Noteholders shall be delivered by means of American Depositary Warrants representing such Subscription Warrants, or in another manner economically equivalent to the Noteholders. (*Id.* ¶ 17.) Paragraph 8.3.5 of the New Lupatech Plan indicates that if Noteholders want to participate in a future debt-to-equity exchange, they would receive American Depository Receiptss, whereby Paragraph 9.2 allows the Debtors to take economically equivalent measures when not possible to fulfill the original obligation. (*Id.*)

On November 8, 2016 the New Lupatech Plan was approved by (i) 98.63% of the labor-related creditors by number and 84.93% by amount of their claims, (ii) 84.13% of the unsecured creditors by number and 75.19% by amount of their claims, and (iii) 98.57% of the Microenterprise and Small Enterprise creditors by number and 75.51% by amount of their claims. (*Id.* ¶ 19.) No appeals were filed, and the appeals period has passed. (*Id.*) Thus, on December 1, 2016, the Foreign Court entered its order homologating the New Lupatech Plan (the "New Homologation Order"). (*Id.* ¶ 20.)

4

On January 12, 2018, the Foreign Representative filed a motion with the Court for an order (a) recognizing and enforcing the New Lupatech Plan and the December 2016 Homoglation Order; (b) authorizing and directing certain U.S. Intermediaries to carry out any ministerial actions that are required under the New Lupatech Plan and granting them protection for the performance of such actions; and (c) finding the chapter 15 cases to be fully administered and closing them without prejudice. (*Id.* ¶ 21.) On March 26, 2018, the Court approved the Foreign Representative's motion and entered an Order Granting Final Relief in Aid of Foreign Proceeding and Closing the Cases. ("Supplemental Recognition Order," ECF Doc. # 38.)

Following the Court's Supplemental Recognition Order, Debtors and their attorneys and advisors: (1) drafted an indenture relating to the issuance of New Notes (the "New Indenture"); (2) drafted a warrant agreement relating to the issuance of Subscription Warrants (the "Warrant Agreement"); (3) engaged Wilmington Savings Fund Society ("WSFS") to serve as indenture trustee for the New Notes under the New Indenture and as warrant agent for the Subscription Warrants under the Warrant Agreement; (4) engaged with BNY Mellon, the Current Indenture Trustee, to determine its requirements for allowing for the cancellation of the current Notes in the Exchange; (5) engaged with Depository Trust Company ("DTC") to determine its requirements for the cancellation of the current Notes and issuance of New Notes and Subscription Warrants in the Exchange; and (6) drafted a notice to holders of Notes relating to the Exchange and the issuance of New Notes under the New Indenture and Subscription Warrants under the Warrant Agreement. (*Id.* ¶ 23.)

    4.  *The Foreign Representative's Motion to Reopen*

On August 20, 2018, the Foreign Representative filed a motion to reopen the bankruptcy cases pursuant to section 350 of the Bankruptcy Code for the purpose of (1) declaring that the

issuance of New Notes and Subscription Warrants, in exchange for the cancellation of the current Notes in the Exchange, or any other transactions to be effected as part of the Exchange, are exempt from the registration requirements of Section 5 of the Securities Act of 1933; (2) declaring that the Trust Indenture Act of 1934 does not apply to the cancellation of the current Notes in exchange for the issuance of the New Notes and Subscription Warrants; and (3) granting such other relief as the Court deems just and proper.  (*Id.* ¶ 24.)

On October 3, 2018, the Court granted the Foreign Representative's motion to reopen the case.  (ECF Doc. # 44.)  In addition to reopening the case and exempting the issuance of New Notes and Subscription Warrants in exchange for the cancellation of the current Notes pursuant to the New Lupatech Plan from registration under the Securities Act, the Order also authorized and directed DTC and BNY Mellon (as Current Indenture Trustee) to take lawful actions that may be necessary to consummate the transactions contemplated under the New Lupatech Plan.  (*Id.* ¶ 25.)

Before the Supplemental Recognition Order and October 3, 2018 Orders were entered, BNY Mellon, the Current Indentured Trustee, had incurred approximately $191,815 in legal and other expenses from the reorganization in this Court and the Foreign Court (the "Outstanding Trustee Expenses").  (*Id.* ¶ 26.)  Even though the Current Indenture required reimbursement for the Outstanding Trustee Expenses, Brazilian law provides that each creditor is responsible for its own legal expenses, so the noteholders must bear their own legal expenses with respect to their participation in the bankruptcy process.  (*Id.*)  Thus, pursuant to the Supplemental Recognition Order, the Current Indenture Trustee is entitled to reimbursement for Outstanding Trustee Expenses under the Current Indenture, but the Debtors were unable to pay under Brazilian bankruptcy law.  (*Id.* ¶ 27.)  After discussions to resolve the issue proved unsuccessful, the

parties determined to make arrangements for WSFS to serve as the New Indenture Trustee under the New Indenture and warrant agent under the Warrant Agreement. (*Id.*)

Because Debtors could not pay Outstanding Trustee Expenses under Brazilian bankruptcy law, it was determined that payment of the Outstanding Trustee Expenses should be made by holders of the New Notes. (*Id.* ¶ 28.) As such, payment for the Outstanding Trustee Expenses was diverted to the Current Indenture Trustee from money distributed to holders of the New Notes under the New Indenture, until the Outstanding Trustee Expenses were paid in full. (*Id.*) The New Indenture reflected these arrangements, subject to approval by the Foreign Court and this Court. (*Id.* ¶ 29.)

On October 29, 2018, the Debtors made a proposal adjusting the flow of payments to unsecured creditors ("Revised Payment Proposal"). (*Id.* ¶ 30.) At a meeting of creditors on November 30, 2018, creditors voted to approve the Revised Payment Proposal, and the Foreign Court entered an order approving the Revised Payment Proposal on December 7, 2018 (the "December 2018 Order"). (*Id.*)

On May 29, 2019, the Foreign Representative filed a motion in the Foreign Court seeking to implement the new arrangement for payment of the Outstanding Trustee Expenses. (*Id.* ¶ 31.) The holders of the Notes did not object to the proposed changes, and on September 2, 2019, the Foreign Court entered an order (the "September 2019 Order"): (1) authorizing the New Notes containing clauses providing for the payment of the Outstanding Trustee Expenses directly to BNY Mellon, as the Current Indenture Trustee, out of monies payable to the holders of the New Notes under the New Indenture, prior to the payment to the holders of the New Notes; (2) authorizing that the Outstanding Trustee Expenses be borne by the holders of the New Notes and not the Debtors; (3) authorizing the omission in the New Indenture of certain restrictive and

other covenants and provisions in the Current Indenture because they conflict with the terms of the Brazilian law; (4) authorizing payment to a New Indenture Trustee; and (5) requiring that the transaction to issue the New Notes shall be completed within 180 days from the confirmation of new payments to unsecured creditors in the chapter 15 bankruptcy case. (*Id.* ¶ 33.)

On November 8, 2019, the Foreign Court issued an order (the "November 2019 Order") allowing (1) the issuance of Subscription Warrants that are not "American Depositary Warrants," and that are instead U.S.-issued warrants that are exercisable locally in Brazil for shares of stock of Lupatech S.A. as publicly registered in Brazil by relying on the economic equivalence principles set forth in Paragraphs 6.4.5 and 9.2 of the New Lupatech Plan and (2) in line with the economic equivalence principles set forth in Paragraphs 8.3.5 and 9.2 of the New Lupatech Plan, in the event future capital raising where debt-to-equity conversion is allowed, the issuance of shares of stock of Lupatech S.A. as publicly registered in Brazil is allowed in lieu of American Depositary Receipts. (*Id.* ¶ 34.)

        5.    *The Foreign Representative's Final Report*

Pursuant to Bankruptcy Rule 5009, the Foreign Representative reports that the protections afforded to the Debtors by chapter 15 of the Bankruptcy Code have been fully realized. The Exchange will take place promptly following entry of the Proposed Order, and any remaining matters to be resolved do not require the assistance of courts in the United States. (*Id.* ¶ 35.)

    **B.**    **The Motion**

        1.    *Recognizing and Enforcing the December 2018 Order, the September 2019 Order and the November 2019 Order*

Through the Motion, the Foreign Representative seeks to recognize and enforce the December 2018, September 2019, and November 2019 Orders. (Motion ¶ 37.) The Foreign

8

Representative claims that the relief requested in the Motion is appropriate and necessary for several independent reasons:

    i. Brazilian insolvency law is substantially similar to applicable United States law, and here, the New Lupatech Plan was approved by the requisite number of creditors.

    ii. The Plan provides for fair distribution to the Debtors' creditors in accordance with Brazilian insolvency law.

    iii. Through the Homologation Order, the Foreign Court approved the New Lupatech Plan. No appeals were filed and the appeal period has passed.

    iv. The Foreign Representative's requested relief complies with the applicable sections of the Bankruptcy Code, *i.e.*, sections 1525 and 1527.

    v. The "additional assistance" requested in the Motion is warranted under Bankruptcy Code sections 105, 1507, and 1521 because "the U.S. Intermediaries may not be, or may not believe themselves to be subject to the jurisdiction of the Foreign Court, and therefore may be unwilling to act in support of the December 2018 Order, the September 2019 Order and the November 2019 Order without authorization and direction from, and limited protection granted by, a United States Court in the form of an entry of the Proposed Order."

(*Id.* ¶¶ 37–49.)

    2.    *Closing the Chapter 15 Cases*

The Foreign Representative argues that the Court should close the chapter 15 cases because there are no outstanding motions, contested matters, or adversary proceedings remaining in the cases. (*Id.* ¶ 51.) If the Court grants the Motion, the Exchange will occur shortly

thereafter, leaving nothing further to administer in the United States. (*Id.*) In addition, the Foreign Representative has complied with Bankruptcy Rule 5009(c) in filing the Final Report (encompassed in the Motion) describing the status of the cases and explaining that the cases have been fully administered. (*Id.* ¶ 52.)

## II. LEGAL STANDARD

### A. Recognition and Enforcement in a Chapter 15 Case

Under section 1521(a)(7) of the Bankruptcy Code, upon recognition of a foreign proceeding, with certain enumerated exceptions, the Court may grant "any appropriate relief," including "any additional relief that may be available to a trustee" that the Court finds necessary to effectuate the purpose of chapter 15 and to protect assets of the debtor or the interests of the creditors. 11 U.S.C. § 1521(a)(7). "Appropriate relief" under section 1521 includes enforcing a foreign order confirming a debtor's plan. *See In re Rede Energia S.A.*, 515 B.R. 69, 92–93 (Bankr. S.D.N.Y. 2014). Relief under this section will be granted only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected. *Id.* at 90; 11 U.S.C. § 1522(a).

In addition to the types of relief enumerated in section 1521, section 1507(a) provides that "[s]ubject to the specific limitations stated elsewhere in this chapter[,] the court, if recognition is granted, may provide additional assistance to a Foreign Representative under this title or under other laws of the United States." *Id.* § 1507(a). "Pursuant to section 1507, the court is authorized to grant any 'additional assistance' available under the Bankruptcy Code or under 'other laws of the United States,' provided that such assistance is consistent with the principles of comity and satisfies fairness considerations set forth in section 1507(b)." *In re*

10

*Rede Energia S.A.*, 515 B.R. at 90.  Under section 1507(b), in considering a request for additional assistance, the Court also considers whether the relief will ensure:

> (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b).

"As with section 1521, relief under section 1507 may include recognition and enforcement of a plan approved by a foreign court."  *In re Cell C Proprietary Ltd.*, 571 B.R. 542, 551 (Bankr. S.D.N.Y. 2017) (citing *In re Rede Energia S.A.*, 515 B.R. at 94–95).

Section 1506 provides that a bankruptcy court may decline to grant relief requested in a chapter 15 case if the action would be "manifestly contrary to the public policy of the United States."  11 U.S.C. §§ 1506, 1517(a).  This public policy exception is narrowly construed.  *See In re Ocean Rig UDW Inc.*, 570 B.R. 687, 707 (Bankr. S.D.N.Y. 2017).

### B.    Closing a Chapter 15 Case

Section 1517(d) of the Bankruptcy Code provides that "[a] case under . . . [chapter 15] may be closed in the manner prescribed under section 350."  11 U.S.C. § 1517(d).  Section 350(a) of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case."  11 U.S.C. § 350.  The purpose of section 350 is to expedite disposition of the case and ensure fair treatment of all interested parties.  3 COLLIER ON BANKRUPTCY ¶ 350.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2010).  However, an estate is not created under chapter 15.  *See In re Fairfield Sentry Ltd.*,

11

458 B.R. 665, 683 (S.D.N.Y. 2011). "Fully administered" means, at a minimum, that administrative claims have been provided for, and there are no outstanding motions, contested matters or adversary proceedings. *See e.g.*, *In re Kliegl Bros. Universal Elec. Stage Lighting Co., Inc.*, 238 B.R. 531, 546 (Bankr. E.D.N.Y. 1999).

Bankruptcy Rule 5009(c) provides that a Foreign Representative shall "file a final report when the purpose of the representative's appearance in the court is completed. The report shall describe the nature and results of the representative's activities in the Court." FED. R. BANKR. P. 5009(c). If no objection to the final report is filed, the estate is presumed to have been fully administered and may be closed. FED. R. BANKR. P. 5009(c); *In re Ginsberg*, 164 B.R. 870, 873 (Bankr. S.D.N.Y. 1994). The intended meaning of section 1517(d) of the Bankruptcy Code and Bankruptcy Rule 5009(c) is clear: once the need for a chapter 15 case no longer exists and the purpose of the representative's appearance in the U.S. court is completed, the case may be closed.

### III. DISCUSSION

#### A. Recognition and Enforcement of the December 2018 Order, September 2019 Order and November 2019 Order in the United States

The Court recognizes and enforces the December 2018 Order, September 2019 Order, and November 2019 Order. The Court is persuaded that the Foreign Representative has made a sufficient showing that recognition and enforcement of the orders is necessary to effectuate the purposes of chapter 15 and protect the interests of creditors. *See* 11 U.S.C. §§ 1507, 1521. The Foreign Representative seeks recognition and enforcement of the December 2018 Order so that distributions in the agreed-upon revised amount may be made to unsecured creditors. (Motion ¶ 43.) The Foreign Representative seeks enforcement and recognition of the September 2019 Order so that (1) U.S. Intermediaries will have authority and direction under United States laws

to take all actions necessary to effectuate the terms of the September 2019 Order, (2) the exchange of the Notes for the New Notes and Subscription Warrants will occur, and in connection therewith the New Notes and Subscription Warrants will be distributed to the holders of the current Notes, (3) the Current Indenture Trustee will be paid the Outstanding Trustee Expenses, with such payment of the Outstanding Trustee Expenses being diverted to the Current Indenture Trustee out of monies being distributed to the holders of the New Notes under the New Indenture, until the Outstanding Trustee Expenses have been paid in full, and (4) the holders of the New Notes will be paid the amounts set forth in the New Indenture. (*Id.* ¶ 44.) Finally, the Foreign Representative seeks enforcement and recognition of the November 2019 Order so that Subscription Warrants that are not "American Depositary Warrants," and are instead U.S.-issued warrants may be issued, which are exercisable locally in Brazil for shares of stock of Lupatech S.A. as publicly registered in Brazil. (*Id.* ¶ 45.)

The Court finds persuasive the Foreign Representative's position that this relief is necessary because U.S. Intermediaries may not be subject to the direct jurisdiction of the Foreign Court, and therefore, may be unable or unwilling to act in support of the three orders at issue without authorization or direction from a United States Court. (*Id.* ¶ 47.) Thus, entry of the Foreign Representative's Proposed Order will direct the U.S. Intermediaries to carry out the requirements of the three orders—in, acknowledging the exchange of the Notes for the New Notes and Subscription Warrants, and for the distribution of the New Notes and Subscription Warrants to the holders of the current Notes. (*Id.*) Such relief will benefit the Debtors and their estates and assist the Foreign Court in implementing the three orders. (*Id.* ¶ 48.) Finally, without the requested relief, the New Lupatech Plan could not be consummated since no

payments could be made to the Debtors' noteholders and to the Current Indenture Trustee for the Outstanding Trustee Expenses owed to it. (*Id.* ¶ 49.)

### B. Closing the Chapter 15 Cases

The Court closes the chapter 15 cases on the terms provided in the separate accompanying order granting relief, as it appears the purposes of the cases have been met and the cases have been fully administered. Pursuant to Bankruptcy Rule 5009, the Foreign Representative included a final report in the Motion, which sufficiently explains that the protections afforded to the Debtors by chapter 15 have been fully realized. There were no objections filed to the final report, indicating that the estate is presumed to have been fully administered and may be closed. *See In re Ginsberg*, 164 B.R. at 873; *see also* FED. R. BANKR. P. 5009. More importantly, the Exchange will take place promptly following the entry of the Proposed Order. Thus, the Court should close the chapter 15 cases.

### IV. CONCLUSION

For the foregoing reasons, the Foreign Representative's Motion to recognize and enforce the December 2018 Order, the September 2019 Order, and the November 2019 Order in the United States is **GRANTED** and the chapter 15 cases are ordered to be closed, on the terms provided in the separate accompanying order granting relief.

**IT IS SO ORDERED.**

Dated:   January 10, 2020
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge